```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
SECURITIES & EXCHANGE COMMISSION,        :
                                         :        17cv1789(DLC)
                              Plaintiff,:
                                         :        OPINION AND ORDER
                -v-                      :
                                         :
LEK SECURITIES CORPORATION, SAMUEL       :
LEK, VALI MANAGEMENT PARTNERS d/b/a      :
AVALON FA, LTD., NATHAN FAYYER, and      :
SERGEY PUSTELNIK a/k/a SERGE             :
PUSTELNIK,                               :
                                         :
                              Defendants.:
                                         :
---------------------------------------- X
```

APPEARANCES

For the plaintiff:
David J. Gottesman
Robert A. Cohen
Olivia S. Choe
Sarah S. Nilson
Securities & Exchange Commission
100 F Street N.E.
Washington, DC 20549

E. Barrett Atwood
Securities & Exchange Commission
44 Montgomery Street, Suite 2800
San Francisco, CA 94104

For the defendant Vali Management Partners d/b/a Avalon FA, Ltd.:
James M Wines
Law Office of James M Wines
1802 Stirrup Lane
Alexandria, VA 22308

Steven Barentzen
Law Office of Steven Barentzen
375 Park Avenue, Suite 2607
New York, NY 10152

DENISE COTE, District Judge:

On March 10, 2017, the Securities and Exchange Commission ("SEC") filed this action against Avalon FA, Ltd. ("Avalon"), Nathan Fayyer ("Fayyer") and others for manipulative trading in violation of federal securities laws. On November 16, Avalon moved to disqualify all trial counsel for the SEC from pursuing this litigation due to their access to privileged communications between Avalon and its defense counsel. The privileged communications were contained in documents that were seized by federal agents pursuant to a search warrant and later provided by a federal prosecutor to the SEC. For the following reasons, the motion is denied.

BACKGROUND

I. The SEC's Investigation

Avalon is a day-trading firm incorporated in Seychelles and headquartered in Kiev, Ukraine, that employs foreign traders to conduct trades. Fayyer is its sole disclosed owner. The SEC began this investigation of Avalon's activities in May 2013. In September 2013, the SEC issued investigative subpoenas to Avalon and Fayyer for documents relevant to its investigation. They produced documents pursuant to these subpoenas between November 2013 and January 2014. Although Fayyer had identified the company's email address to the SEC as avalonfaltd@gmail.com

2

(the "Avalon Account"), as would become clear when the SEC later obtained access to the Avalon Account documents at issue here, those productions from Fayyer and Avalon omitted many documents highly relevant to the investigation that then existed in the Avalon Account.

In August 2015, the United States Attorney's Office for the District of New Jersey ("DNJ") advised the SEC that it had obtained records from the Avalon Account pursuant to a search warrant. The SEC provided the DNJ with a list of search terms to be used to screen for potentially privileged material (the "Filter Terms"). The Filter Terms included the names known to the SEC of counsel for the targets of the SEC investigation, including counsel for Avalon and Fayyer, those lawyers' law firm names, and those lawyers' email domain names. The DNJ advised the SEC that it had filtered the documents in the Avalon Account using the Filter Terms, and provided the remaining documents to the SEC on three discs. When an SEC attorney opened a disc and discovered a document that included a Filter Term, the SEC returned all three discs to the DNJ.

In October 2015, the DNJ made a second production to the SEC of the Avalon Account documents in .pdf format ("PDF Production"). This contained 34,000 documents and was supposed to have been rescreened by the DNJ using the Filter Terms. An SEC attorney again noticed a document containing a Filter Term.

3

The SEC then sent the entire PDF Production to its technology group to filter for the Filter Terms. This review identified 52 documents that contained a Filter Term, which were then segregated as potentially privileged. The remaining documents were provided to SEC attorneys as a "Working Database." An SEC filter attorney then reviewed these 52 documents and determined that 18 documents were not privileged, leaving 34 documents segregated as potentially privileged.

Preferring to work in native format, the SEC then asked the DNJ to provide the Avalon Account documents in native format. In December 2015, the DNJ re-produced the Avalon Account documents to the SEC in native format. The SEC believed that the DNJ had screened for all the Filter Terms before doing so.[1] Because, unlike the PDF Production, the native file production treated emails and their attachments as separate records, the native file production consists of 51,000 records. The SEC's attorneys did not read all 51,000 records. Instead, the SEC used targeted searches to locate documents of potential significance to its investigation. During their review of the retrieved documents, no SEC trial attorney saw a document with the label "attorney-client privilege" or any similar

---

[1] The SEC's submissions indicate that it believed the DNJ had corrected the screening error that had allowed the 52 documents to slip through the prior screening process.

4

formulation, or any that appeared to them to be an email communication between Fayyer and one of his attorneys.

On October 2, 2017, the SEC produced to all defendants a copy of the native file production of the Avalon Account documents in its possession. On October 26, counsel for Avalon notified the SEC that an unsigned agreement among the produced documents might be privileged. Upon learning for the first time that the native file production might contain privileged documents, the SEC contacted the DNJ. On October 31, the SEC learned for the first time that although the DNJ had withheld documents containing the Filter Terms, it had not withheld the attachments to those documents unless the attachments themselves also contained Filter Terms. The SEC promptly shared this information, as well as a list of the Filter Terms, with defense counsel. On November 6, Avalon provided the SEC with a list of 28 potentially privileged documents. The SEC has segregated those documents. The SEC has also identified approximately 330 attachments to emails that contained Filter Terms (the "Attachments"). Twenty-five of the 28 potentially privileged documents identified by Avalon's counsel are among the 330 Attachments. The SEC has also segregated all of the

Attachments.² On December 1, Avalon identified four of the 28 potentially privileged documents as documents as to which it was asserting a privilege. It is those four documents on which Avalon's motion concentrates.

The SEC trial team has now segregated and ceased reviewing most of the Avalon Account documents that it received from the DNJ. On December 15, the Court approved the SEC's proposed privilege review process for the Avalon Account documents, over Avalon's objection.³ Pursuant to this process, the only Avalon Account documents that the SEC has kept for use by its trial team are email exchanges in which layering, one of the trading strategies at issue in this case, is discussed. Avalon and Fayyer had not produced these email exchanges to the SEC in response to the subpoenas it issued to Fayyer and Avalon in September 2013, despite the fact that the emails are within the scope of the subpoenas. The defendants have not asserted a claim of privilege over these emails and Avalon has not contested the SEC's decision to retain these email exchanges,

---

² Because the SEC does not have the parent emails for the Attachments, a privilege review of the Attachments is more difficult.

³ Under the privilege review protocol, an SEC filter team uses filter terms to search the documents, segregating potentially privileged documents until Avalon agrees the document is not privileged or until the Court rules on any privilege dispute.

premising its motion to disqualify solely on the SEC's review of and/or access to the four documents described below.

II. The Four Documents

One of the four documents was reviewed by an SEC attorney during her work on this case, before it was identified by counsel for Avalon as potentially privileged and segregated. This document is approximately fifteen typed pages of notes ("Notes") written in the third person. The Notes have now been identified as prepared by Fayyer and sent as an attachment to an email to his attorney, although neither its authorship nor the fact it was sent to an attorney is self-evident.[4] Several sections of the Notes are marked sensitive. The DNJ production to the SEC included the Notes, but not the email.

Avalon has submitted the email to which the Notes were attached to the Court ex parte. The email indicates that Fayyer drafted the Notes in order to provide his attorney, Mr. Tom Sporkin, with a timeline of events relevant to Fayyer's career and the creation and operation of Avalon.

The next two documents are tables, entitled "Roster of Key Individuals" and "Key Entity Descriptions," both of which are marked as drafts. The header on each page reads "Fayyer/Avalon SEC Testimony" and lists a matter number; the footer on each

---

[4] At first, Avalon incorrectly identified this document as notes taken by an attorney based on his interview of Fayyer.

page reads "Confidential & Privileged, Attorney-Client Communication, Attorney Work Product." The Key Individuals table lists individuals, and under bullet points describes each individual's job and connections to Fayyer and Avalon. Similarly, the Key Entity Descriptions table lists entities, and includes bullet points naming each entity's founder and each entity's relationship with Fayyer and Avalon. Avalon has identified these documents as tables prepared by Mr. Sporkin. The metadata indicates they were prepared by his paralegal. No SEC trial attorney recalls viewing either table.

The fourth document is an email from Fayyer to Mr. Sporkin and Heather Jones, an associate of Mr. Sporkin, describing a 2010 loan to Avalon. At the top of this document is a very brief reply to Fayyer's email asking for additional documentation. No SEC trial attorney recalls viewing this document.[5]

III. The Motion to Disqualify

In this action, the SEC alleges that Avalon, Fayyer, and Serge Pustelnik, an associate of Fayyer, (together the "Avalon Defendants") engaged in two schemes to manipulate the United States stock market in violation of Sections 10(b), 17(a)(1),

---

[5] The SEC attorney principally responsible for the document review represents that she did not review documents that appeared to be an attorney-client communication, including documents marked as such or emails from Fayyer to Mr. Sporkin.

8

17(a)(3), 9(a)(2), and 20(a) of the Exchange Act of 1934 ("Exchange Act"). The SEC also alleges that each of the Avalon Defendants aided and abetted the other defendants' violations. The SEC further alleges that two other defendants, Lek Securities Corporation ("LEK") and Samuel Lek (together the "Lek Defendants"), violated Section 17(a)(3) of the Exchange Act, that LEK violated Section 20(a) of the Exchange Act, and that the Lek Defendants aided and abetted the violations of the Avalon Defendants.

After Avalon's counsel notified the SEC on October 26 that it may have obtained privileged documents, Avalon moved on November 16 to disqualify counsel for the SEC. On December 1, the Court granted the SEC's request to allow its filter attorney to explain the SEC's privilege review process. Avalon's request to reconsider the ruling was denied December 1. The motion to disqualify became fully submitted December 18, with the four documents on which Avalon bases its motion submitted ex parte and filed under seal.

DISCUSSION

"The attorney-client privilege is one of the oldest recognized privileges for confidential communication." Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998). The rationale for the privilege is rooted in the English barrister's

9

code of honor, but has evolved over time. See In re Grand Jury Investigation, 399 F.3d 527, 531 (2d Cir. 2005). Today, the privilege is understood as "encourage[ing] full and frank communication between attorneys and their clients and thereby promot[ing] broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). "In order to balance this protection of confidentiality with the competing value of public disclosure, however, courts apply the privilege only where necessary to achieve its purpose and construe the privilege narrowly because it renders relevant information undiscoverable." United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011) (citation omitted).

"The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process." Hempstead Video, Inc. v. Inc. Vill. Of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005) (citation omitted). "Because the courts must guard against tactical use of motions to disqualify counsel, they are subject to fairly strict scrutiny." Lamborn v. Dittmer, 873 F.2d 522, 531 (2d Cir. 1989).

The Second Circuit has adopted a restrained approach, where "disqualification is called for only where an attorney's conduct tends to taint the underlying trial." United States v. Prevezon

Holdings Ltd., 839 F.3d 227, 241 (2d Cir. 2016) (citation omitted). Thus,

> [d]isqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests . . . undermines the court's confidence in the vigor of the attorney's representation of his client, or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation.

Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 764-65 (2d Cir. 1990) (citation omitted). Although "decisions on disqualification motions often benefit from guidance offered by the American Bar Association (ABA) and state disciplinary rules, such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification." Hempstead Video, Inc., 409 F.3d at 132 (citation omitted). Finally, the movant "bears the burden of demonstrating specifically how and as to what issues . . . prejudice may occur." Murray v. Metropolitan Life Ins. Co., 583 F.3d 173, 178 (2d Cir. 2009) (citation omitted).

Applying these principles, Avalon's motion is denied. The SEC's conduct in connection with the Avalon Account documents has neither violated the principles that underlie our system's respect for the attorney client privilege nor infringed on the integrity of the judicial process. Avalon had identified the Avalon Account as its regular business account. Nonetheless, the SEC used caution before receiving the Avalon Account

11

documents from the DNJ.  It provided the DNJ with a list of Filter Terms, and when it spotted a document that had escaped a filter review, it returned the entire set of documents for re-screening.  This careful approach reflects respect for the privilege.

As significantly, there is a danger that the motion to disqualify the entire SEC trial team from an investigation that has been ongoing since 2013 is tactically motivated.  Avalon has not shown that it has suffered any prejudice from the SEC's possession of the Avalon Account documents.  To the contrary, among the documents are items that the SEC finds highly relevant to its claims in this litigation, but that Avalon and Fayyer failed to produce when required to do so pursuant to administrative subpoenas, and for which Avalon makes no claim of privilege.  Moreover, assuming for the purposes of this motion that the four documents are indeed privileged, it appears that the SEC trial team has only reviewed one of the four documents, the Fayyer Notes.  Avalon has not pointed to any statement in the Notes, however, that is at odds with the positions it has taken publicly in opposition to the SEC's litigation or that reveals any undisclosed litigation strategy or statement harmful to Avalon.  Even with respect to the other three documents, Avalon does not indicate how the lists of names of individuals or entities associated with Avalon would be a disclosure of

information with which the SEC was not otherwise familiar, or why the information about the 2010 loan is significant.

Avalon contends that the SEC violated Rule 4.4 of the New York Rules of Professional Conduct, which provides as follows:

> (a) In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass or harm a third person or use methods of obtaining evidence that <u>violate the legal rights</u> of such a person.
> (b) A lawyer who receives a document, electronically stored information, or other writing relating to the representation of the lawyer's client and knows or reasonably should know that it was <u>inadvertently sent shall promptly notify the sender</u>.

N.Y. Rules of Professional Conduct 4.4 (2017) ("Rule 4.4") (emphasis supplied). Avalon has not shown that the SEC has violated Rule 4.4.

For instance, the SEC did not "violate [Avalon's] legal rights" when it "obtain[ed] evidence" from the DNJ that the DNJ had in turn obtained through a court-issued search warrant. Rule 4.4(a). As described above, when it accepted the DNJ's offer of documents obtained from a search of Avalon's email account, the SEC took the precaution of preparing a list of Filter Terms and expected to receive only those documents seized from the business's email account that survived the filter.

As for subsection (b), the SEC complied with that rule by returning the production to the DNJ -- which sent the Avalon Account documents to the SEC -- as soon as an SEC attorney

identified a document with a Filter Term.  See Nilson Decl. ¶¶ 17-18, 20-24.  As comment 3 explains, the Rule "does not subject a lawyer to professional discipline for reading and using . . . information" contained in a document inadvertently sent.  Rule 4.4, cmt. 3.

Finally, Avalon argues that it has been "irreparabl[y] injur[ed] by the disclosure of Avalon's and its counsel's thoughts, strategies, priorities, theories and impressions" in the four documents over which it asserts privilege.  As noted above, however, Avalon has not identified any specific way in which it is prejudiced by the SEC's possession of three documents or by its review of the Notes.  Avalon's generic assertion of prejudice is insufficient to demonstrate that its trial would be tainted by the SEC's review of the Notes and its possession, prior to the ongoing privilege review, of the other three documents.

CONCLUSION

Avalon's November 16, 2017 motion to disqualify the SEC's trial attorneys is denied.

Dated:   New York, New York
         January 16, 2018

_____
DENISE COTE
United States District Judge