```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :      17cv1789 (DLC)
SECURITIES AND EXCHANGE COMMISSION,     :
                                        :      MEMORANDUM OPINION
                Plaintiff,              :          AND ORDER
                                        :
        -v-                             :
                                        :
LEK SECURITIES CORPORATION, SAMUEL      :
LEK, VALI MANAGEMENT PARTNERS d/b/a     :
AVALON FA, LTD., NATHAN FAYYER, and     :
SERGEY PUSTELNIK a/k/a SERGE PUSTELNIK  :
                                        :
                Defendants.             :
                                        :
----------------------------------------X
```

APPEARANCES

For plaintiff Securities and Exchange Commission
David J. Gottesman
Olivia S. Choe
Sarah S. Nilson
U.S. Securities & Exchange Commission
100 F Street NE
Washington, DC 20549

For defendants Vali Management Partners d/b/a Avalon Fa Ltd.,
Nathan Fayyer, and Sergey Pustelnik
James M. Wines
Law Office of James M. Wines
1802 Stirrup Lane
Alexandria, VA 22308

Steven Barentzen
Law Office of Steven Barentzen
17 State Street, Suite 400
New York, NY 10004

DENISE COTE, District Judge:

    This Opinion addresses the motion of plaintiff U.S.

Securities and Exchange Commission ("SEC") to exclude expert

testimony based on the report of Ronald Filler ("Filler"), offered by defendants Avalon FA Ltd., Nathan Fayyer, and Sergey Pustelnik (the "Avalon Defendants"). The Filler report is purportedly submitted in rebuttal to the reports of SEC experts Terrence Hendershott ("Hendershott") and Neil Pearson ("Pearson"). For the following reasons, the SEC's motion is granted.

## Background

On March 10, 2017, the SEC sued defendants Lek Securities Corporation ("Lek Securities"), Samuel Lek ("Lek; and together with Lek Securities, the "Lek Defendants") and the Avalon Defendants, principally alleging that traders at Avalon engaged in two schemes to manipulate the securities markets and that they did so through trading at Lek Securities, a broker-dealer based in New York. Avalon is a foreign day-trading firm whose traders are largely based in Eastern Europe and Asia. Avalon is not a registered broker-dealer and relies on registered firms like Lek Securities to conduct trading in U.S. securities markets.

The SEC brought claims for violations of several provisions of the Securities Exchange Act of 1934 (the "Exchange Act") and the Securities Act of 1933 (the "Securities Act"). The SEC's claims against the Avalon Defendants are principally for violations of Sections 10(b) and 9(a) of the Exchange Act and

Section 17(a) of the Securities Act.

Following the close of discovery, on October 5, 2017, the SEC moved to exclude Filler and three other experts that the defendants intend to call as rebuttal expert witnesses to Hendershott and Pearson.  Those motions became fully submitted on November 16.  The Lek Defendants' motions to exclude testimony by Hendershott and Pearson, and the SEC's motions to exclude testimony from three of the four rebuttal expert witnesses offered by the defendants were addressed in a recently filed Opinion.  SEC v. Lek Sec. Corp., No. 17cv1789(DLC), 2019 WL 1198599 (S.D.N.Y. Mar. 14, 2019) (the "March 2019 Opinion").

A detailed recitation of the factual and procedural background to this motion, including descriptions of the two schemes alleged by the SEC -- a layering scheme and a Cross-Market Strategy -- is provided in the March 2019 Opinion.  The March 2019 Opinion also describes the legal framework for addressing a Daubert motion and summarizes the Hendershott and Pearson reports.  Familiarity with the March 2019 Opinion is assumed; it is incorporated by reference.

I. Summary of Filler Report

Filler's expert report, dated May 11, 2018, is divided into three sections.  The first section provides background information about several topics, including the financial markets, high-frequency trading, the securities laws, and market

3

competition. He explains, among other things, the difference between "market orders" and "limit orders," and he describes various strategies market makers and high-frequency trading firms might use to compete in the equities and options markets. He also describes his understanding of the legal standards that govern market manipulation. For example, while he acknowledges that market manipulation is illegal, Filler opines that "layering" is not prohibited by any "law, rule or regulation governing trading in the U.S. equities markets." He explains that regulators must provide proper notice prior to enforcing the securities laws and argues that the SEC's use of the term "layering" remains vague and undefined.

Portions of the first section of Filler's report also apply his understanding of the legal standards to the facts as alleged in the SEC's complaint. He concludes that "[i]t would be extremely difficult, if not impossible" for Avalon to know of any layering activity, that "it was reasonable" for Avalon to rely on Lek Securities' compliance procedures, and that "[i]t is unreasonable" to expect Avalon to comply with regulators' concerns about layering, "especially when there is no such prohibition under the federal securities laws." He adds that the trading activity in this case "is indistinguishable from the legitimate market making strategy that the SEC and Professor Hendershott find to be perfectly legal and beneficial to the

4

market."

The second and third sections of Filler's report purport to dispute the analyses conducted by Hendershott and Pearson, largely by applying Filler's understanding of the legal principles that should govern the jury's assessment of the trading at issue. Filler did no econometric assessment of either expert's report; he admits that he is not qualified to do so. Nor did Filler do any independent analysis of Avalon's trading activity. Instead, he offers broad criticisms about legal insufficiencies in the SEC's case. He concludes that the SEC's allegations are "vague in concept and application" and that the Hendershott and Pearson reports do not prove any violations of the federal securities laws.

In the section directed to Hendershott's layering analysis, for example, Filler states his understanding of various legal elements that constitute a violation of the securities laws and explains why, in his view, Hendershott's analysis does not prove the required elements.[1] Among other things, he opines that the securities laws are violated through allegedly manipulative trading only when that trading artificially affects a security's

---

[1] Separate from this discussion, Filler also opines that Hendershott's analysis cannot be used as a basis for disgorgement because Hendershott failed to "isolate [Avalon's] wrongful gains from those resulting from unrelated market forces."

5

price in a deceptive manner.  He claims that Hendershott's analysis does not show proof of price impact.  He also faults Hendershott for failing to account for external market factors that could have caused a price impact.  Filler concludes that the Layering Loops identified by Hendershott cannot be manipulative.

As a second example, Filler argues that open-market orders at risk of execution "cannot satisfy" the SEC's burden, and that Avalon's cancellations of those orders "cannot form the basis for any reasonable inference of fraudulent intent."  According to Filler, this is because order cancellation is a common practice among high-frequency traders.  Filler criticizes Hendershott's conclusions on the grounds that Hendershott "has no knowledge regarding actual intent of any of the Individual Traders" at Avalon.

As a third example, Filler opines that the securities laws are not violated unless the SEC can show that Avalon took some action to prevent its Loud-side orders from executing.[2]  Filler contrasts the SEC's allegations in this case with a lawsuit brought by the U.S. Commodity Futures Trading Commission

---

[2] As explained in the March 2019 Opinion, Loud-side orders are placed in a layering scheme to manipulate the market and facilitate profitable trading of Quiet-side orders.  See Lek Sec. Corp., 2019 WL 1198599, at *3.

6

("CFTC") against a trader who placed orders away from the "inside price" and automatically modified the orders to keep them away from the inside price as the market shifted.[3]

The third section of Filler's report briefly addresses the alleged Cross-Market Strategy. He opines that Avalon's equity trades did not artificially change the price of the corresponding options. According to Filler, this is because the equities trades were "actual trades executed with willing unaffiliated market participants" and the SEC failed to allege any "collusion, insider information or any other factors that would render these [transactions] . . . fraudulent." Instead, he claims that Avalon simply tested the liquidity in the equities markets and, having determined that the options were inaccurately priced, took advantage of a "legitimate arbitrage opportunity."

IV. The Motion to Exclude

The SEC moves to exclude Filler's expert testimony, which the Avalon Defendant's seek to introduce to rebut the testimony from Hendershott and Pearson. The SEC contends that Filler is unqualified to serve as a rebuttal expert and that his opinions, which are essentially arguments by counsel, are inadmissible.

---

[3] The "inside price" is a price within the National Best Bid and Offer ("NBBO"). See Lek Sec. Corp., 2019 WL 1198599, at *4 n.9, 19-20.

The SEC is correct.

The law governing the admissibility of expert testimony was set forth in the March 2019 Opinion.  Lek Sec. Corp., 2019 WL 1198599, at *13-14.  Of particular importance to this motion, an expert may not provide testimony that "will usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it."  United States v. Lumpkin, 192 F.3d 280, 289 (2d Cir. 1999).  "It is not for witnesses to instruct the jury as to the applicable legal principles of law, but for the judge."  Marx & Co. v. Diners' Club Inc., 550 F.2d 505, 509 (2d Cir. 1977).

### A. Filler's Expertise

Filler has extensive experience as an attorney and law professor.  He is well qualified to serve as counsel for the defendants; he is not qualified to serve as a rebuttal expert to Hendershott and Pearson.  Filler has no experience as a professional trader, almost no formal education in statistics, and limited experience in the equities and options markets.  These gaps make it impossible for Filler to offer a reliable critique of the sophisticated and intricate analyses performed by Hendershott and Pearson.  Lek Sec. Corp., 2019 WL 1198599, at *5-13, 21-31.

Filler barely engages with the Hendershott or the Pearson

8

reports. The few comments he makes about the reports misrepresent their analyses and misinterpret their conclusions. He frankly admitted his lack of relevant expertise in his deposition. Accordingly, Filler is unqualified to serve as a rebuttal witness in response to these two SEC experts.

### B. Filler's Opinions Are Inadmissible

Filler's expert report must be excluded in its entirety because his opinions are inadmissible. Filler's report functions as a legal brief, and in some portions as an argument in summation. It is not admissible testimony from an expert. To the extent Filler's report touches upon the Hendershott or Pearson methodologies, Filler's opinions are speculative and conclusory; they would mislead and confuse the jury if admitted.

In his proffered testimony, Filler attempts to instruct the jury on the governing law in this case and its application to the facts as Filler describes them. The cornerstone of Filler's rebuttal to Hendershott is that "layering" is not prohibited by "any applicable law, rule or regulation." Filler then proceeds to define the legal standard that governs the liability of the Avalon Defendants. Citing to federal caselaw, Filler opines that open-market orders cannot qualify as "inaccurate information . . . injected into the marketplace," that the jury may not "infer unlawful intent from [open-market orders]," and that order cancellations are not evidence of a "manipulative

9

act."  Filler's testimony would usurp the role of the court and invade the jury's prerogative to apply the law to the facts as the jury determines them.  See Lumpkin, 192 F.3d at 289.[4]

Filler's legal analysis permeates his report, including his criticisms of Pearson's report and his "background" section on the financial markets.  In rebuttal to Pearson, Filler contends that Avalon's equities trades could not "artificially" move the market because they were "actual trades executed with willing unaffiliated market participants."  Without an allegation such as "collusion" or "insider information," Filler concludes that Pearson and the SEC cannot prove that Avalon's trades were fraudulent.  Likewise, Filler opines in his background section that Avalon's trading activity is "indistinguishable" from legitimate market making, that Avalon's Loud-side orders "cannot be deemed to be illegal orders," and that "[i]t is unreasonable" for Avalon to understand and comply with the nuances of regulators' layering concerns.

---

[4] As the SEC notes, at least one other court has excluded Filler's proffered testimony for providing legal conclusions. See Paulina Guirola De David v. Alaron Latin Am., No. 10cv3502 (N.D. Ill. Mar. 21, 2016) (order granting in part defendant's motion in limine).  The Honorable Daniel Martin held that "the Court's own review of [Filler's] expert report shows that it contains numerous conclusions about whether Defendants committed fraud, and whether one Defendant is liable for the acts of another.  Clearly, Filler may not make such statements at trial.  They constitute prohibited legal conclusions that could determine the outcome of the case."  Id. at 12.

Filler's opinions in the background section also contain veiled arguments about due process and supervisory liability. For example, Filler suggests that the SEC's enforcement action against Avalon is improper because the government has not provided "[p]roper notice and explanation." Many of Filler's legal conclusions contradict previous rulings in this case holding that both manipulative schemes alleged by the SEC would violate the federal securities laws if proven at trial. See SEC v. Lek Sec. Corp., 276 F. Supp. 3d 49, 60 (S.D.N.Y. Aug. 25, 2017). Filler also implies that the Avalon Defendants should not be held liable because it was "Individual Traders, acting as independent contractors," who "placed each of the orders at issue in this case." This is not admissible expert testimony. It contains opinions regarding what the law requires and is devoid of any appropriate response to the analyses performed by Hendershott and Pearson. If there is any appropriate comment on the evidence, that is for defense counsel to add to his summation argument.

To the extent Filler mentions the Hendershott and Pearson reports, his opinions are conclusory and fail to meaningfully engage with those experts' analyses. For example, while Filler claims that Hendershott failed to consider "price impact," Filler does not address -- and appears not to have considered -- Hendershott's NBBO Movement Analysis, which demonstrated a

11

favorable shift in the NBBO midpoint more often than would be expected by chance. In rebuttal to Pearson's report, Filler concludes that Avalon's traders "tested the available liquidity in the equities markets" and "made the determination" to pursue an arbitrage opportunity.[5] Filler has identified no admissible evidence and has conducted no analysis of Avalon's trading data to support this conclusion. Pearson admitted in his deposition testimony that he "did not examine any of [Pearson's] analysis" because he did not understand it.

## Conclusion

The SEC's October 5, 2018 motion to exclude Filler's testimony is granted.

Dated:    New York, New York
          March 21, 2019

_____
DENISE COTE
United States District Judge

---

[5] Filler may not conduct factfinding for the jury by opining on what the Avalon traders "tested" or "determined" with respect to their cross-market trades. That is for the jury, not Filler. See Lumpkin, 192 F.3d at 289.

12