```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :      17cv1789 (DLC)
SECURITIES AND EXCHANGE COMMISSION,     :
                                        :      OPINION AND ORDER
                Plaintiff,              :
                                        :
        -v-                             :
                                        :
LEK SECURITIES CORPORATION, SAMUEL      :
LEK, VALI MANAGEMENT PARTNERS d/b/a     :
AVALON FA, LTD., NATHAN FAYYER, and     :
SERGEY PUSTELNIK a/k/a SERGE PUSTELNIK  :
                                        :
                Defendants.             :
                                        :
----------------------------------------X
```

APPEARANCES

For plaintiff Securities and Exchange Commission:
David J. Gottesman
Olivia S. Choe
Sarah S. Nilson
U.S. Securities and Exchange Commission
100 F Street NE
Washington, DC 20549

For defendants Lek Securities Corporation and Samuel Lek:
Steve M. Dollar
David B. Schwartz
Norton Rose Fulbright US LLP
1301 Avenue of the Americas
New York, NY 10103

Kevin J. Harnisch
Norton Rose Fulbright US LLP
799 9th Street NW, Suite 1000
Washington, DC 20001

Ronald D. Smith
Norton Rose Fulbright US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201

DENISE COTE, District Judge:

On August 24, 2018, defendants Lek Securities Corp. ("Lek Securities") and Samuel Lek ("Lek"; together with Lek Securities, the "Lek Defendants") filed a motion for summary judgment seeking dismissal of all claims brought against them by the U.S. Securities and Exchange Commission ("SEC"). The SEC has brought claims against the Lek Defendants for violations of: § 20(e) of the Securities Exchange Act of 1934 ("Exchange Act") and § 15(b) of the Securities Act of 1933 ("Securities Act") for aiding and abetting the primary violations of Avalon FA Ltd. ("Avalon"), Nathan Fayyer ("Fayyer"), and Sergey Pustelnik ("Pustelnik"; together with Avalon and Fayyer, the "Avalon Defendants"); § 17(a)(3) of the Securities Act as a primary violator; and § 20(a) of the Exchange Act based on the Lek Defendants' control of Pustelnik, who the SEC alleges violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. SEC v. Lek Sec. Corp., 276 F. Supp. 3d 49, 57-58 (S.D.N.Y. 2017).

The SEC's allegations concern two schemes to manipulate the U.S. securities markets. The first scheme involved Avalon's alleged use of a trading strategy referred to as layering. A trader engaged in layering typically places a large number of buy (or sell) orders on one side of the market without intending to execute those orders. The trader does so to increase the

2

perceived demand (or supply) of the stock and to influence the price per share or volume of shares the trader is able to sell (or buy) on the opposite side of the market. See SEC v. Lek Sec. Corp., No. 17cv1789(DLC), 2019 WL 1198599, at *2-3 (S.D.N.Y. Mar. 14, 2019). The SEC claims that Avalon engaged of hundreds of thousands of instances of layering through Lek. Id. at *3.

The second alleged scheme is a Cross-Market Strategy. In a Cross-Market Strategy, a trader manipulates the prices of options through trading in the corresponding stocks. See id. at *8. The SEC claims that Avalon engaged in the Cross-Market Strategy over 600 times through Lek. Id. at *9.

A motion for summary judgment may not be granted unless all of the submissions taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 113 (2d Cir. 2017) (citation omitted). The moving party bears the burden of demonstrating the absence of a material factual question. Gemmink v. Jay Peak Inc., 807 F.3d 46, 48 (2d Cir. 2015). In making this determination, the court must "view the evidence in the light most favorable to the party

opposing summary judgment" and "draw all reasonable inferences in favor of that party."  Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996).

Once the moving party has asserted facts showing that the non-movant's claims or affirmative defenses cannot be sustained, the party opposing summary judgment "must set forth specific facts demonstrating that there is a genuine issue for trial."  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation omitted).  "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment," Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011) (citation omitted), as is "mere speculation or conjecture as to the true nature of the facts."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).  Only disputes over material facts will properly preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In bringing this motion, the Lek Defendants emphasize that they had a surveillance system which they improved over time, that the system prevented many manipulative trades, and that regulators failed to respond adequately to the Lek requests for assistance to improve the system.  They assert that they are entitled to summary judgment because the SEC has presented insufficient evidence that Avalon engaged in manipulative

4

trading, that the Lek Defendants assisted Avalon, or that Lek Securities controlled Pustelnik. These arguments are addressed in turn.

## I. Avalon's Primary Violations

The Lek Defendants principally argue that the record contains insufficient evidence to support a violation of the securities laws by the Avalon Defendants. Through two experts, the SEC has offered detailed analyses of the Avalon trading that purports to demonstrate voluminous trading consistent with the two alleged manipulative trading strategies. Lek Sec. Corp., 2019 WL 1198599, at *3-5, 8-11. The motion to exclude testimony from those experts was recently denied. Id. at *14-16. The Lek Defendants contend that, even with a denial of their motion to strike the SEC expert testimony, summary judgment is nonetheless appropriate.

According to the Lek Defendants, the SEC has failed to show market manipulation since a market manipulation scheme requires the SEC to offer evidence that Avalon injected false price information into the market. Because every order Avalon placed was a "real, actionable" order, the Lek Defendants reason that the Avalon orders were incapable of sending false price signals into the market. This very argument was rejected in the decision denying the Lek Defendants' motion to dismiss. Lek Sec. Corp., 276 F. Supp. 3d at 64. As explained there, the

defendants' position that open market orders may never constitute manipulative conduct is not the law.  Id.[1]

With respect to the Cross-Market Strategy in particular, the Lek Defendants also contend that Avalon's trading strategy was not manipulative because it was part of "price discovery" and hedging strategies.  Given these legitimate economic purposes, they argue that there can be no finding that the Avalon trading connected to the alleged Cross-Market Strategy was manipulative.  This line of argument also fails.  The Lek Defendants do not point to any affirmative evidence that they have offered to demonstrate what trading strategy or strategies Avalon was pursuing in connection with the accused trading.  For instance, they have not presented expert testimony that defines the characteristics of any particular trading strategy, that demonstrates how one can locate that strategy from an examination of a body of trades, and that identifies the specific trades that conformed to that strategy.  While they offered expert testimony to rebut the testimony of the two SEC

---

[1] The Lek Defendants have relied to some extent on CFTC v. Wilson, No. 13cv7884(RJS), 2018 WL 6322024 (S.D.N.Y. Nov. 30, 2018).  Wilson concerned a different alleged manipulative scheme and is inapposite. Moreover, the defendants in Wilson offered evidence of a legitimate economic rationale underlying the trading strategy they designed.  Avalon has not offered admissible evidence of either the trading strategy it was pursuing or a legitimate economic rationale for it.

experts, the defendants' expert reports disclosed no independent analysis of the Avalon trading. Conclusory opinion testimony does not raise a question of fact. Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 310-11 (2d Cir. 2008).[2]

Nor have the Lek Defendants provided declarations from fact witnesses, such as the traders who were responsible for designing a trading strategy, to support their motion for summary judgment. But, even if the Lek Defendants had filled either of these evidentiary gaps, the analyses of the Avalon trading performed by the two SEC experts would raise questions of fact regarding whether Avalon was engaged in market manipulation. From the testimony provided by these two SEC experts and the other evidence to which the SEC points, the record contains evidence from which a jury could conclude that the Avalon Defendants engaged in layering and the Cross-Market Strategy with the intent to manipulate the market. Either of these strategies would constitute a violation of § 10(b) of the Exchange Act if proven at trial.

---

[2] Four of the SEC's Daubert motions to exclude the defense expert testimony have been addressed and they have been granted in whole or in part. Lek Sec. Corp., 2019 WL 1198599, at *16-27; SEC v. Lek Sec. Corp., No. 17cv1789(DLC), 2019 WL 1304452, at *3-4 (S.D.N.Y. Mar. 21, 2019).

7

II. Aiding and Abetting

The Lek Defendants also argue that there is insufficient evidence that they aided and abetted Avalon's alleged violations of the securities laws. They contend principally that they were properly responsive to regulators' concerns about layering and that they only provided services to Avalon that brokers provide to all customers.

To prevail on a claim of aiding and abetting, the SEC must prove two elements in addition to the existence of a primary violation by the Avalon Defendants: "[1] knowledge of [a] violation on the part of the aider and abettor; and [2] substantial assistance by the aider and abettor in the achievement of the primary violation." SEC v. Apuzzo, 689 F.3d 204, 211 (2d Cir. 2014) (citation omitted). In opposition to the Lek Defendants' motion for summary judgment, the SEC has presented evidence that raises a genuine issue of fact as to both of these elements.

With respect to the Lek Defendants' knowledge of the schemes, the SEC points to the Lek Defendants' receipt of numerous regulatory inquiries identifying patterns of manipulative trading within Avalon subaccounts. They also point to Lek's responses to these inquiries, which the SEC contends were either inadequate or misleading. In addition, the SEC offers evidence that at Avalon's request the Lek Defendants

8

adjusted their internal control system -- the Q6 Layering Control system -- to relax controls for certain Avalon subaccounts.  The SEC relies as well on a series of e-mails between Lek and an individual trader who was seeking to engage in layering.  Although Avalon and the SEC dispute the inferences to be drawn from the correspondence, the trader opened a subaccount at Lek Securities through which thousands of orders allegedly consistent with layering were placed.  This evidence, which is not the only evidence on which the SEC relies, is sufficient to raise a genuine issue as to the Lek Defendants' knowledge of Avalon's alleged violations.

The SEC also points to evidence that Lek Securities' registered representative Pustelnik knew of and furthered Avalon's manipulative schemes.  Pustelnik's knowledge of Avalon's primary violations may be imputed to the Lek Defendants if he was acting within the scope of his employment and in the interests of the corporation.  Wight v. BankAmerica Corp., 219 F.3d 79, 87 (2d Cir. 2000).  While the Lek Defendants argue against imputation, there are factual disputes that must be resolved at trial.

The SEC has also pointed to evidence that the Lek Defendants provided substantial assistance to Avalon.  First and foremost, Lek Securities provided brokerage services.  The fact that it is the business of a brokerage company to provide such

9

services to its customers does not mean that those services are not of substantial assistance to manipulative traders. Lek Sec. Corp., 276 F. Supp. 3d at 65; see also Graham v. SEC, 222 F.3d 994, 1004 (D.C. Cir. 2000).

The SEC also points to what it characterizes as Lek Securities' flawed and inconsistent use of the Q6 Layering Control system, as mentioned above. The Lek Defendants also provided Avalon with technology and capital that allowed Avalon traders to engage more effectively in the allegedly manipulative Cross-Market Strategy. This evidence raises a question of material fact regarding substantial assistance for the jury to resolve.

The Lek Defendants' citation to Armstrong v. McAlpin, 699 F.2d 79 (2d Cir. 1983), does not support their motion. Although the court in Armstrong was not prepared to hold a broker liable as an aider and abettor for "merely execut[ing] an investment manager's [improper] orders," the court concluded that the complaint alleged sufficient evidence to support a claim for aiding and abetting against a broker-dealer. Id. at 91. The court highlighted that the complaint included allegations of "greater wrongdoing," including that the defendant "acted as broker for substantially all the [transactions at issue] with knowledge of their fraudulent nature in order to generate commissions for himself." Id.

Here, the SEC points to evidence that, as Avalon's broker-dealer, the Lek Defendants knew of and furthered Avalon's improper orders in order to generate additional commissions for the company. In addition, the SEC points to statements by Fayyer from which a jury could conclude that Avalon viewed Lek Securities as "the only solution" for traders seeking to engage in layering or the Cross-Market Strategy.[3]

### III. Lek's Primary Violation

The Lek Defendants argue that the SEC has not adduced evidence that the Lek Defendants committed a primary violation of the securities laws. The Lek Defendants are mistaken. Primary liability may be imposed not only on persons who initiate a scheme of manipulation, "but also on those who had knowledge of the fraud and assisted in the perpetration." SEC v. First Jersey, 101 F.3d 1450, 1471 (2d Cir. 1996) (citation omitted).

The evidence to which the SEC points includes evidence that the Lek Defendants relaxed controls under its Q6 Layering

---

[3] Nor is Levitt v. J.P. Morgan Securities, Inc., 710 F.3d 454 (2d Cir. 2013), instructive here. That case addressed, in the context of a motion for class certification, the liability of a clearing broker for aiding and abetting an allegedly manipulative trading scheme. Id. at 457. The Court of Appeals drew a sharp distinction between clearing brokers, whose involvement in a transaction ordinarily "begins after the execution of a trade," and introducing brokers, which bear "the burden of monitoring trades." Id. at 466-67. Lek Securities is not a clearing broker.

Control system, misled regulators concerning the actions it took to address potential market manipulation, installed and financed technological improvements at the request of the Avalon Defendants, and provided Avalon access to the U.S. securities markets notwithstanding numerous regulatory inquiries about potentially manipulative trading in Avalon subaccounts.

IV. Control Liability

Finally, the Lek Defendants contend that they cannot be held liable under § 20(a) of the Exchange Act because the SEC has not demonstrated that the Lek Defendants controlled Pustelnik, their registered representative. In the alternative, the Lek Defendants argue that they should not be liable for Pustelnik's violations because they acted in good faith. The SEC, however, points to several facts from which a jury could conclude that the Lek Defendants controlled Pustelnik, including with respect to the specific actions that form the basis for Pustelnik's alleged securities law violations, and that much of Pustelnik's allegedly violative conduct fell within the scope of his employment. The SEC also points to evidence from which a reasonable jury could infer that Lek Securities did not act in good faith. The SEC has shown that there are material factual disputes that are inappropriate for resolution on summary judgment.

## **Conclusion**

The Lek Defendant's August 24, 2018 motion for summary judgment is denied.

Dated: New York, New York
       March 26, 2019

```
            _____
                  DENISE COTE
            United States District Judge
```