UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE
COMMISSION,

                                    Plaintiff,

                    v.

LEK SECURITIES CORPORATION,
SAMUEL LEK,
VALI MANAGEMENT PARTNERS
    dba AVALON FA LTD,
NATHAN FAYYER, and
SERGEY PUSTELNIK
    a/k/a SERGE PUSTELNIK,

                                    Defendants.

---

Case No. 17-CV-1789 (DLC)

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LEK SECURITIES AND SAMUEL LEK'S MOTION FOR PARTIAL RECONSIDERATION

David J. Gottesman
Olivia S. Choe
Sarah S. Nilson
U.S. Securities and Exchange Commission
100 F Street N.E.
Washington, D.C. 20549
Tel.: (202) 551-4881 (Choe)
Fax: (202) 772-9292
Email:  choeo@sec.gov

*Counsel for Plaintiff*

Dated:  April 12, 2019

# **TABLE OF CONTENTS**

BACKGROUND ...................................................................................................... 1

GOVERNING LAW................................................................................................. 2

ARGUMENT ........................................................................................................... 3

   I.   THE COURT SHOULD NOT RECONSIDER ITS RULING LIMITING GRIGOLETTO'S TESTIMONY.................................................................. 4

       A.   Grigoletto Should Not Be Permitted to Testify About Avalon's Trading  in CAB ......................................................................... 4

          1.  Procedural History................................................................ 5

          2.  Discussion............................................................................ 6

       B.   Grigoletto Should Not Be Permitted to Offer Additional Testimony on the Cross-Market Strategy .................................. 8

   II.   THE COURT SHOULD NOT RECONSIDER ITS RULING LIMITING ROSS'S TESTIMONY ....................................................................... 11

       A.   Ross Should Not Be Permitted to Testify About Additional Calculations.... 11

       B.   Ross Is Not Qualified to Render Opinions Excluded by the Court .............. 14

       C.   Ross Should Not Be Permitted to Testify About Avalon's Other Trading Activity ......................................................... 16

       D.   Ross Should Not Be Permitted to Testify About Purported "Inconsistencies" He Identified in the Layering and Cross-Market Loops ...................................................... 17

       E.   Ross Should Not Be Allowed to Testify About His Purported "Alternative Explanation" for the Cross-Market Strategy ........................... 18

CONCLUSION........................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**

*Aczel v. Labonia*, 584 F.3d 52 (2d Cir. 2009)................................................................ 3

*Adiel v. The Pharmacy Fund, Inc.*, No. 00 Civ. 3273(DLC), 2000 WL 1634381
   (S.D.N.Y. Oct. 30, 2000) ........................................................................... 3, 4, 7

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36 (2d Cir. 2012)...................... 2, 3, 6

*Casey v. Merck*, 653 F.3d 95 (2d Cir. 2011)................................................................ 10

*In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001*, No. 02 MDL 1448(RWS),
   2007 WL 4563485 (S.D.N.Y. Dec. 18, 2007) .......................................................... 4

*In re Application of Furstenberg Fin. SAS*, 334 F. Supp. 3d 616 (S.D.N.Y. 2018) ..................... 3

*In re Beacon Assocs. Litig.*, 818 F. Supp. 2d 697 (S.D.N.Y. 2011) ................................. 2

*In re Gen. Elec. Co. Sec. Litig.*, 856 F. Supp. 2d 645 (S.D.N.Y. 2012) ....................................... 14

*In re Rezulin Prod. Liab. Litig.*, 224 F.R.D. 346 (S.D.N.Y. 2004 ........................................... 7, 13

*In re Tribune Co. Fraudulent Conveyance Litig.*, No. 11md2296(DLC),
   2019 WL 549380 (S.D.N.Y. Feb. 12, 2019)................................................................ 8

*Israel v. Spring Indus.*, No. 98 CV 5106, 2006 WL 3196956 (E.D.N.Y. Nov. 3, 2006).............. 18

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99
   (2d Cir. 2013)........................................................................................ 3, 11

*LinkCo, Inc. v. Fujitsu Ltd.*, No. 00 Civ. 7242(SAS), 2002 WL 1585551
   (S.D.N.Y. July 16, 2002) ...................................................................... 10

*Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*,
   No. 11-CV-681, 2015 WL 5459662 (S.D.N.Y. Sept. 16, 2015)................................. 7

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612 (S.D.N.Y. 2016).... 10

*Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228 (7th Cir. 1988) .......................... 4

*Peoples v. Fischer*, 898 F.Supp.2d 618 (S.D.N.Y. 2012)............................................................ 13

*Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450 (S.D.N.Y. 2001) ............................... 10

*Reynolds v. Hearst Comms., Inc.*, No. 17cv6720(DLC), 2018 WL 1602867
(S.D.N.Y. Mar. 29, 2018) ............................................................................. 9

*Rockland Exposition, Inc. v. Alliance of Automotive Serv. Providers of N.J.*,
894 F. Supp. 2d 288 (S.D.N.Y. 2012)...................................................... 7, 13

*Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33 (S.D.N.Y. 2016) ........................................ 8

*SEC v. Lek Sec. Corp.*, -- F. Supp. 3d --, 2019 WL 1198599 (S.D.N.Y. Mar. 14, 2019)...... passim

*SEC v. Lek Sec. Corp.*, No. 17cv1789(DLC), 2019 WL 1304452 (S.D.N.Y. Mar. 21, 2019) ....... 1

*SEC v. Lek Sec. Corp.,* Nov. 17cv1789(DLC), 2019 WL 1512713 (S.D.N.Y. Apr. 8, 2019)…….1

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995) ...................................................... 3, 11

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this memorandum of law in opposition to the Motion for Partial Reconsideration filed by defendants Lek Securities Corporation and Samuel Lek (collectively, the "Lek Defendants"). ECF Nos. 352-353. Dissatisfied with the Court's clear and thorough ruling, the Lek Defendants ask the Court to permit two of its proffered experts – Alan Grigoletto and David Ross – to offer more testimony than the Court deemed admissible in its March 14, 2019 Opinion and Order. *See SEC v. Lek Sec. Corp.*, -- F. Supp. 3d --, 2019 WL 1198599 (S.D.N.Y. Mar. 14, 2019) ("March 14 Op."). But the Lek Defendants offer no evidence, cite no intervening change in controlling law, and identify no error – let alone clear error – that might support reconsideration of the Court's ruling. Instead, they simply rehash the same arguments they unsuccessfully made before. Their Motion should be denied.

## BACKGROUND

In October 2018, the SEC moved to exclude the testimony of Grigoletto and Ross, two rebuttal experts proffered by the Lek Defendants.[1] ECF Nos. 241-242, 244, 252-254. The Lek Defendants opposed both motions, filing memoranda of law and multiple supporting documents in connection with each. ECF Nos. 289-90, 292-293.

On March 14, 2019, the Court granted the SEC's motions in part. In a comprehensive opinion, the Court reviewed in extensive detail the opinions and analyses offered by Ross and Grigoletto, as well as their qualifications. The Court found Ross "unqualified to give an opinion about the phenomena of layering and cross-market manipulation or about high-frequency trading

---

[1] The SEC also filed motions to exclude a third expert witness proffered by the Lek Defendants, as well as two expert witnesses proffered by the Avalon Defendants. Those motions, which have been granted, are not at issue here. *See* March 14 Op., at *24-27 (excluding Bodek's testimony); *SEC v. Lek Sec. Corp.*, No. 17cv1789(DLC), 2019 WL 1304452, at *3-4 (S.D.N.Y. Mar. 21, 2019) (excluding Filler's testimony); *SEC v. Lek Sec. Corp.*, No. 17cv1789(DLC), 2019 WL 1512713 (S.D.N.Y. Apr. 8, 2019) (excluding Begelman's testimony).

practices more generally," noting that his "generic expertise" as an expert witness did not "enable him to offer an informed and reliable expert opinion relevant to this action."  March 14 Op., at *16-17.  The Court further found that Ross's opinions "rest on false assumptions, display faulty logic, depend on mischaracterizations, and would lead the jury astray if admitted."  *Id.* at *18.  The Court concluded that Ross could testify about a limited number of calculations, but only "to the extent they are tethered to other relevant and admissible expert testimony."  *Id.* at *19, 21.  The Court specifically precluded Ross from testifying on the "significance of these calculations."  *Id.* at *19.

As for Grigoletto, the Court found that while he was qualified to testify about the functioning of the U.S. securities markets and about options trading, his opinions were nevertheless largely "naked" and "conclusory statements" without "any supporting analysis."  *Id.* at *22, 23.  While the Court found many of Grigoletto's opinions to be "just flat wrong," the Court did identify three limited areas in which Grigoletto's opinions – while "shaky" and "weak" – were admissible.  *Id.* at 22.[2]

## GOVERNING LAW

Reconsideration is an "extraordinary remedy to be employed sparingly."  *In re Beacon Assocs. Litig.*, 818 F. Supp. 2d 697, 701 (S.D.N.Y. 2011) (citation omitted).  "[T]he standard for granting a . . . motion for reconsideration is strict."  *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted).  The "movant carries a heavy burden."  *In*

---

[2] With regard to layering, the Court concluded that Grigoletto could testify, based on two calculations conducted by Ross, that "Avalon's Loud-side orders were 'at risk' to execute and therefore inconsistent with the SEC's assertion that Avalon did not 'intend' these orders to execute."  *Id.* at *22.  With regard to the Cross-Market Strategy, the Court held that Grigoletto could testify, based on another calculation by Ross, that in certain Cross-Market Loops, "if Avalon's trading was dependent on moving the stock price, Avalon would never have engaged in option purchases under these conditions."  *Id.* at *23 (internal quotation marks and brackets omitted).  The Court also noted that Grigoletto might be permitted to testify "about general market functioning," subject to agreement among the parties or a further ruling from the Court.  *Id.* at *27.

*re Application of Furstenberg Fin. SAS*, 334 F. Supp. 3d 616, 618 (S.D.N.Y. 2018).  A motion

should be granted "only when the [moving party] identifies an intervening change of controlling

law, the availability of new evidence, or the need to correct a clear error or prevent manifest

injustice."  *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104

(2d Cir. 2013) (citation omitted).

"Courts narrowly construe this standard and apply it strictly against the moving party so

as to dissuade repetitive arguments on issues that have already been fully considered by the

court."  *Adiel v. The Pharmacy Fund, Inc.*, No. 00 Civ. 3273(DLC), 2000 WL 1634381, at *1

(S.D.N.Y. Oct. 30, 2000) (citation omitted).  A motion for reconsideration "will generally be

denied unless the moving party can point to controlling decisions or data that the court

overlooked – matters, in other words, that might reasonably be expected to alter the conclusion

reached by the court."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the

case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at

the apple."  *Analytical Surveys*, 684 F.3d at 52 (citation omitted).  The movant cannot raise "new

facts, issues or arguments not previously presented to the Court."  *Adiel*, 2000 WL 1634381, at

*1 (citation omitted).  The decision to grant or deny a motion to reconsider rests within the sound

discretion of the district court.  *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (citations

omitted).

## **ARGUMENT**

The Lek Defendants ask the Court to expand the scope of testimony that the Court will

allow from Grigoletto and Ross.  But in support of their Motion, the Lek Defendants do not –

and cannot – point to an intervening change in controlling law or any new evidence.  Instead,

3

they are forced to claim that the Court's rulings will result in "manifest injustice."  ECF No. 353

("Lek Mem."), at 1.[3]  Nothing in their Motion, however, suggests, let alone establishes, that the

Court committed clear error.[4]  Indeed, virtually all of the arguments the Lek Defendants make

have already been "fully considered" and rejected by the Court.  *Adiel*, 2000 WL 1634381, at *1.

The Lek Defendants have failed to satisfy their heavy burden, and their Motion should

accordingly be denied.

## I.     THE COURT SHOULD NOT RECONSIDER ITS RULING LIMITING GRIGOLETTO'S TESTIMONY

### A.     Grigoletto Should Not Be Permitted to Testify About Avalon's Trading in CAB

The Lek Defendants first argue that Grigoletto should be permitted to "testify regarding

his examination of the CAB trading data" and that excluding this testimony would be

"manifestly unjust."  Lek Mem. 3.  They assert that the Court was mistaken in concluding that

"Grigoletto offers broad conclusions" based on his review of the CAB trading data and claim

that, in fact, "Grigoletto did not offer a global opinion concerning Avalon's trading."  *Id.* at 2;

*see also id.* at 4 (arguing that Grigoletto "carefully limited his conclusions … from the CAB

analysis only to the four purported Layering Loops he reviewed").  They also complain that it

would be "fundamentally misleading and unfair" if Hendershott were permitted to testify about

---

[3] The Lek Defendants also ask the Court to reconsider its rulings on grounds that "certain facts and arguments … may have not been highlighted clearly for the Court."  Lek Mem. 1.  The detailed and thorough findings set forth in the March 14 Op., however, make clear that the Court fully understood the facts, the opinions being offered by Ross and Grigoletto, and the arguments of the parties.  In any event, a motion for reconsideration is not an opportunity for the Lek Defendants to "highlight" arguments that they wish they had made, or wish they made more "clearly."

[4] While courts "have not defined precisely what constitutes clear[] erro[r] or manifest injustice for reconsideration purposes," at least one circuit court has held that "reconsideration is not warranted unless the prior decision is 'dead wrong.'"  *In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001*, No. 02 MDL 1448(RWS), 2007 WL 4563485, at *1 n.1 (S.D.N.Y. Dec. 18, 2007) (citing *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)).

certain Layering Loops, but Grigoletto were not permitted to testify about the CAB trading data. *Id.* at 4.

### 1. Procedural History

In his rebuttal report, Grigoletto analyzed Avalon's trading in a single security, CAB, examining the full limit order book for that security over a 45-minute period.  ECF No. 254-2, ¶¶ 52-53.  He opined that "Avalon's trading in CAB is not consistent with layering," "would not induce a typical trader to trade with Avalon's so-called 'Quiet-side' orders," and "would [not] have influenced me as a trader to trade with Avalon's orders on the so-called 'Quiet side.'"  ECF No. 254-2, ¶¶ 52-53.

During his deposition, Grigoletto testified that in reaching conclusions about "what happened in this case," he "looked at the [CAB] stock and observed the trading behavior of the [CAB] stock."  ECF No. 254-10, at 78.  He further testified that in reaching the conclusion that "Avalon's purportedly non-bona fide orders were actually consistent with the goal for the trades to be executed," he had reviewed Avalon's trading in CAB.  *Id.* at 192-93.

In moving to exclude Grigoletto's testimony, the SEC noted that the only trading activity that Grigoletto could recall reviewing was Avalon's trading in CAB.  ECF No. 253, at 22.  The SEC specifically noted that Grigoletto's review of trading activity thus involved "only ***four*** out of the 675,504 Layering Loops" at issue.  *Id.* (emphasis in original).  The SEC expressly argued that Grigoletto had "only reviewed a minuscule amount of the relevant trading activity," which "invalidate[d] his opinions about whether layering occurred here." *Id.* at 21-22; *see also* ECF No. 304, at 9-10 (arguing in reply brief that Grigoletto had reviewed only four Layering Loops and "sought to extrapolate to the remaining 675,504 Layering Loops, without any reliable means of doing so").

In response, the Lek Defendants argued (1) that Grigoletto had reviewed CAB data "because the Commission focused on the CAB data"; and (2) that it was unfair for the SEC to "proffer expert analysis of specific examples while arguing that Grigoletto should not be able to criticize an example that the Commission put front and center."  ECF No. 289, at 27.  The Lek Defendants did not deny – nor could they, given his testimony – that Grigoletto had formed his opinions about "what happened in this case" (*i.e.*, about whether Avalon engaged in layering) based in part upon his review of Avalon's trading in CAB.

> 2.    *Discussion*

The Lek Defendants offer no compelling reason for the Court to reconsider its original ruling regarding Grigoletto's review of the CAB trading data, let alone anything approaching manifest injustice.

First and foremost, the Lek Defendants seek to relitigate issues the Court has already fully considered.  In its motion to exclude Grigoletto's testimony, the SEC explicitly referred to Grigoletto's review of Avalon's trading in CAB and argued that Grigoletto's opinions "about whether layering occurred here" were "invalid[]" because Grigoletto had only reviewed a tiny portion of Avalon's trading activity.  ECF No. 253, at 21-22.  The Lek Defendants had ample opportunity to respond to this argument and, in fact, did make other arguments relating to Grigoletto's review of the CAB data – including the argument, raised again here, that it would be unfair for Hendershott, but not Grigoletto, to testify about specific Layering Loops.[5]

---

[5] *Compare* ECF No. 289, at 23 ("The Commission cannot seriously maintain that it should be able to proffer expert analysis of specific examples while arguing that Grigoletto should not be able to criticize an example that the Commission put front and center in its own complaint."), *with* Lek Mem. 4 ("If only Hendershott is permitted to present examples, the jury will be left with a fundamentally misleading and unfair impression that each 'Layering Loop' functioned as represented by the SEC and Hendershott.").

To the extent that the Lek Defendants raise arguments already considered and rejected by the Court, they seek an impermissible "second bite at the apple."  *Analytical Surveys*, 684 F.3d at 52; *Adiel*, 2000 WL

For whatever reason, strategic or otherwise, the Lek Defendants chose not to directly address the SEC's argument that Grigoletto was offering global opinions about whether Avalon engaged in layering based upon his review of CAB stock. They cannot now use a motion for reconsideration as a vehicle for making arguments they wish they had made before. *See, e.g.*, *Rockland Exposition, Inc. v. Alliance of Automotive Serv. Providers of N.J.*, 894 F. Supp. 2d 288, 344 (S.D.N.Y. 2012) (movant "cannot now seek to re-litigate the same issue based on arguments it previously could have, but elected not to make"); *In re Rezulin Prod. Liab. Litig.*, 224 F.R.D. 346, 352 (S.D.N.Y. 2004) (where litigants chose not to make argument despite "ample opportunity to do so," they had no basis for seeking reconsideration and would not be permitted to "litigate issues in whatever piecemeal fashion they wish, trying out one argument and then, if unsuccessful, starting all over again with a new one").

Second, the Lek Defendants are wrong on the merits. While they point to language in his report, they ignore Grigoletto's testimony that he formed his opinions about "what happened in the case" from his review of Avalon's trading in CAB. As the Court correctly concluded, "[t]his extremely limited set of data provides no reliable basis from which to form an opinion about the larger set of Layering Loops or Hendershott's analysis." March 14 Op., at *22. Grigoletto performed no econometric analysis and used no other reliable methodology to reach his opinions about Avalon's trading. *Id.* (noting that "[w]ith narrow exceptions," Grigoletto's opinions were "conclusory statements, unaccompanied by any description of the data examined or the analytical steps taken to form the opinions").[6]

---

1634381, at *1 (rejecting motion for reconsideration that was "a re-argument" of claims that "were available to – and considered by – this Court" in its original decision).

[6] The Lek Defendants again cite *Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, No. 11-CV-681, 2015 WL 5459662, at *12 (S.D.N.Y. Sept. 16, 2015) – a case they cited in their opposition to the SEC's *Daubert* motion, *see* ECF No. 289, at 21 n.16 – for the proposition that a rebuttal expert does not need to have done the work that he asserts the other side's expert should have done. *See* Lek

The Lek Defendants have not cited any facts or controlling law overlooked by the Court, nor have they established error, let alone clear error, that might warrant reconsideration.  *See In re Tribune Co. Fraudulent Conveyance Litig.*, No. 11md2296(DLC), 2019 WL 549380, at *2 (S.D.N.Y. Feb. 12, 2019) (rejecting claim of manifest injustice where movant failed to show any error in the Court's original ruling).  The Court should not reconsider its decision to exclude testimony by Grigoletto concerning his review of the CAB trading data.

**B.    Grigoletto Should Not Be Permitted to Offer Additional Testimony on the Cross-Market Strategy**

The Lek Defendants ask the Court to permit Grigoletto to offer additional testimony on the Cross-Market Strategy.  Specifically, they contend that Grigoletto should be permitted to offer the opinions he sets forth in paragraphs 61 through 63 of his report, about how traders would normally test liquidity, arguing that it would be "manifestly unjust to allow Pearson, who has never been a trader, to provide his view of how traders would normally test liquidity without allowing Grigoletto to rebut Pearson's claims."  Lek Mem. 4-5.

They also ask the Court to permit Grigoletto to testify about his review of the Citadel complaint.  They do not present any new evidence supporting this request, and do not refer to any intervening change in controlling law.  They do not even attempt to argue manifest injustice.  Instead, they simply argue that the testimony that they want Grigoletto to provide would be "relevant."  Lek Mem. 6.

The Court should not entertain these requests, which merely "rehash[]" arguments that "the Court has already addressed."  *Reynolds v. Hearst Comms., Inc.*, No. 17cv6720(DLC), 2018

---

Mem. 3.  They do not assert that the Court failed to consider *Luitpold* or that it constitutes an intervening change in the law.  Nor can they deny that even a rebuttal expert must satisfy *Daubert*'s "threshold standards regarding the qualifications of the expert, sufficiency of the data, reliability of the methodology, and relevance of the testimony."  *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016).

WL 1602867, at *2 (S.D.N.Y. Mar. 29, 2018).  Indeed, the Lek Defendants' Motion uses much of the same language as their original opposition to the SEC's *Daubert* motion.  For example, in their original brief, the Lek Defendants argued that "Citadel is expected to testify at trial and has accused Avalon of engaging in manipulative and deceptive behavior.  Such claims are directly relevant to Grigoletto's analysis of whether Avalon's traders [sic] were consistent with the intent to manipulate."  ECF No. 289, at 21.  In their Motion for Reconsideration, the Lek Defendants repeat the same refrain, arguing that "[t]he SEC has identified Citadel representatives as having relevant information and their complaints informed Pearson's identification of the Cross-Market Loops.  Such claims are directly relevant to Grigoletto's analysis of whether Avalon's trades were consistent with the intent to manipulate."  Lek Mem. 6 (footnote omitted).[7]  The Lek Defendants do not bother to suggest, let alone demonstrate, any permissible ground for reconsideration of the Court's rulings on these issues.

On the merits, the Lek Defendants' arguments are equally unpersuasive the second time around.  As the Court correctly observed, "Grigoletto does not explain the basis for his conclusion that Avalon's stock trades were consistent with a practice of testing liquidity." March 14 Op., at *23.  In paragraphs 61 through 63 of his report, Grigoletto repeatedly draws conclusions based upon his "experience," but he does not explain how his experience permitted him to reach those opinions.  He was similarly unable to describe his methodology in his deposition.  *See* ECF 254-10, at 263-265.  While an expert may "base his opinion on his own experience, he must do more than aver conclusorily that his experience led to his opinion."

---

[7] *Compare also* ECF No. 289, at 19 (arguing in original opposition brief that Grigoletto's experience as a trader provides sufficient support for his opinions on how traders normally test liquidity), *and id.* at 20-21 (arguing that in paragraphs 61-63 of his report, Grigoletto properly rebutted Pearson's "academic" opinions about when traders trade in options based upon liquidity information provided by their trades in stock), *with* Lek Mem. 5 (arguing in motion for reconsideration that Grigoletto relies on his "own first-hand experience as a trader" in offering opinions about how traders test liquidity).

*Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 529-30 (S.D.N.Y. 2001), *abrogated on other grounds by Casey v. Merck*, 653 F.3d 95 (2d Cir. 2011).  "[I]f the witness is relying solely or primarily on experience, then he must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."  *LinkCo, Inc. v. Fujitsu Ltd.*, No. 00 Civ. 7242(SAS), 2002 WL 1585551, at *4 (S.D.N.Y. July 16, 2002) (brackets and citation omitted); *see also LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 647 (S.D.N.Y. 2016) ("Use of a qualitative or experience-based methodology does not exempt an expert from *Daubert* scrutiny.").

As for the Lek Defendants' arguments regarding the Citadel complaint, they simply make no sense.  Grigoletto performed no analysis of the trading identified in the Citadel complaint, but instead seeks to offer his "observations" on the complaint.  It is unclear how "observations" unsupported by analysis of any rigor would be an appropriate subject of expert testimony.  The Lek Defendants argue that Grigoletto should be able to testify about Citadel's complaint because a Citadel representative may testify at trial.  But they do not explain why an expert witness should be permitted to opine about something as to which a fact witness might offer percipient testimony.  Indeed, to the extent that Grigoletto intends to tell the jury how to interpret Citadel's complaint, his proffered testimony is improper.  *See, e.g.*, *Primavera Familienstifung*, 130 F. Supp. 2d at 529.

Finally, Citadel had no visibility into the identity of the parties trading in stock at the time that it submitted its complaint, and its complaint was accordingly limited to the options trading activity that it observed.  It would be highly misleading for Grigoletto to opine that Citadel's complaint – which was necessarily made from a circumscribed perspective – sheds light on

whether Avalon's initial stock trades were manipulative.  *See* ECF No. 253, at 20 & n.16.

## II.   THE COURT SHOULD NOT RECONSIDER ITS RULING LIMITING ROSS'S TESTIMONY

### A.   Ross Should Not Be Permitted to Testify About Additional Calculations

The Lek Defendants first ask the Court to permit Ross to testify about three additional calculations:  (1) "how much of Avalon's trading was outside of the Layering Loops"; (2) "how much of Avalon Group 038's trading was outside of the Cross-Market Loops"; and (3) his "comparison of Hendershott's Layering Loops with the trading identified in the FINRA Report Cards."  Lek Mem. 7-8.  They claim that Ross should be permitted to testify about these calculations because they are "straightforward disaggregations or comparisons of data" and that accordingly "there is no need for these calculations to be 'tethered to other relevant and admissible expert testimony.'"  *Id.* at 8.  For multiple reasons, this request should be denied.

First, the Lek Defendants point to no new evidence, no intervening change in controlling law, and no clear error that might merit reconsideration.  They refer to no controlling decisions or data that the Court overlooked.  In other words, they offer no permissible, let alone persuasive, basis for reconsideration.  *Kolel Beth Yechiel Mechil of Tartikov, Inc.*, 729 F.3d at 104; *Shrader*, 70 F.3d at 257.

The Lek Defendants attempt to suggest – without explicitly making the claim – that the Court overlooked these calculations, noting that they were "not addressed in the Opinion."  Lek Mem. 6.  But it is plain from the Court's comprehensive opinion that the Court thoroughly and painstakingly reviewed each of the calculations Ross conducted.[8]  For example, while the Court

---

[8] Indeed, the Court expressly noted that its Opinion encompassed all of Ross's analyses.  March 14 Op., at *20 ("While many additional points could be made to show that Ross's opinion testimony is fundamentally unreliable and misleading, the above discussion is sufficient.").

chose to admit one of the calculations set forth in a footnote to paragraph 18 of Ross's report on the Cross-Market Strategy, the Court made clear that it had also carefully reviewed another calculation described in the same footnote and found that it was "fatally misleading." March 14 Op., at *21 & n.27 (admitting one calculation while explaining in detail why testimony on a second calculation described "[i]n the same footnote" was excluded). Similarly, while the Court chose to permit Ross to testify considering the percentage of Loud-side orders that were "at or inside the NBBO" and the average duration of Avalon's Loud-side orders, the Court rejected a third calculation concerning the percentage of Layering Loops with Quiet-side orders that executed at a time when Hendershott's Order Imbalance criterion was not met. *Id.* at *19 & n.24. In fact, while it was the Lek Defendants' burden to establish the admissibility of Ross's testimony, it was the Court that took the step of parsing his analyses and identifying those calculations that could survive *Daubert* review. *See id.* at *21 (noting that "the Lek Defendants have not identified parts of Ross's report that might survive the motion to exclude," but nevertheless deeming certain portions admissible).

Nor are these "straightforward" or neutral calculations. Each is intended to support an opinion that Ross is unqualified to offer, and each rests upon a flawed premise and is thus unreliable and misleading. The first two calculations, for example, concern Avalon's other trading activity – *i.e.*, trading in equities not encompassed by the Layering Loops, and trading conducted by trade group 038 not encompassed by the Cross-Market Loops. But as the Court has already ruled, these calculations "rest[] on the false assumption that Hendershott found (and that the SEC has conceded) that any Avalon trading not included in a Layering Loops is neither layering nor manipulative." March 14 Op., at *18; *see also id.* at *20 ("Ross's arguments regarding selection bias fare no better in his attack on Pearson's analysis than they did in his

attack on Hendershott's analysis.").[9]  Permitting Ross to testify about these calculations would confuse the jury, by suggesting that Avalon's other trading activity somehow constituted a valid "measuring stick" for the trading patterns exhibited by the Layering Loops.  *Id.* at *18.

As for the third calculation, concerning trading identified in FINRA's Report Cards and how it differs from the trading in the Layering Loops identified by Hendershott, the Lek Defendants contend that such testimony "may assist the jury in determining whether Hendershott's [sic] employed appropriate criteria in determining instances of layering."  Lek Mem. 8.  Again, this argument rests upon a flawed premise – "that experts [may] use only those methodologies used by exchanges or regulators" – already considered and rejected by the Court. March 14 Op., at *14 ("Hendershott was not required to design a methodology that would identify the same sets of layering as a regulator.").

There is a reason why the Court required that any calculation about which Ross testifies be "tethered" to otherwise admissible testimony:  because Ross is otherwise unqualified to offer opinions about layering and the Cross-Market Strategy, and "unsound logic pervades" the opinions he offers.  March 14 Op., at *18.  These three calculations only underscore those fundamental problems with his proposed testimony.[10]

---

[9] The Lek Defendants argue that it will be "helpful" to their case to present calculations showing the "volume of trading that LSC processed and the amount of trading in which the alleged manipulative strategy was present."  Lek Mem. 7.  But a motion for reconsideration is not a vehicle for raising arguments that a particular ruling would be "helpful" to the movant, particularly where such arguments were absent from the movant's original brief.  *See, e.g.*, *Rockland Exposition, Inc.*, 894 F. Supp. 2d at 344; *In re Rezulin Prod. Liab. Litig.*, 224 F.R.D. at 352.

In any event, the volume of Avalon's total equities trading and the volume of its trading in Layering Loops are set forth in Hendershott's original report.  *See* ECF No. 210-1 (Exhibit 16).  Testimony from Ross on the same figures would be cumulative.

[10] The Lek Defendants also assert for the first time that Ross's testimony concerning these three calculations should be allowed because it is "no different than that of a summary witness."  Lek Mem. 8.  "A motion for reconsideration is not an 'opportunity for making new arguments that could have been previously advanced,' nor is it a substitute for appeal.'"  *Peoples v. Fischer*, 898 F.Supp.2d 618, 624 (S.D.N.Y. 2012) (internal citations omitted).

### B.     Ross Is Not Qualified to Render Opinions Excluded by the Court

The Lek Defendants also ask the Court to reconsider its ruling that Ross is unqualified to

testify about layering or the Cross-Market Strategy.  Again, they offer no new evidence and cite

no intervening change in controlling law.  They make no argument that the Court's ruling would

result in manifest injustice, nor do they claim that the Court overlooked any data or controlling

caselaw.[11]  In other words, they present the Court with nothing "that might reasonably be

expected to alter the conclusion reached by the court," *In re Gen. Elec. Co. Sec. Litig*., 856 F.

Supp. 2d 645, 651 (S.D.N.Y. 2012) (Cote, J.) (internal citations omitted).  The Court should not

entertain this request.

In support of their request, the Lek Defendants argue that "[a]fter checking, it is clear that

many of Ross' articles identified on his *curriculum vitae* do, in fact, involve statistical analysis of

trading data."  Lek Mem. 9.  It is preposterous for the Lek Defendants to suggest that the Court

should reconsider its ruling because the Lek Defendants have now bothered to do some

"checking" on their expert's qualifications.  It was the Lek Defendants who proffered Ross as an

expert.  It was the Lek Defendants who bore the burden of establishing that he was qualified to

offer his proffered testimony.  And it was thus the Lek Defendants who should have done

whatever "checking" they needed to do to satisfy that burden at the time that they submitted their

opposition to the SEC's *Daubert* motion.

It is equally absurd for the Lek Defendants to suggest that the Court did not thoroughly

examine Ross's qualifications.  The Lek Defendants discussed Ross's qualifications at length in

their original opposition brief, ECF No. 292, at 2-3, and multiple copies of Ross's *curriculum

vitae* – listing his articles, his work as a referee and peer reviewer and all of the cases in which he

---

[11] The Lek Defendants cite three cases that were cited in their original opposition brief.  *Compare* Lek
Mem. 9-10 (citing three cases), *with* ECF No. 292, at ii-iii (listing multiple citations to the same three cases).

has testified or consulted – were submitted to the Court.  ECF Nos. 244-7 (App. A), 244-8 (App.

A).  The Court reviewed Ross's qualifications in detail, noting that he "does not have a

doctorate," "has never worked as a trader or in the securities industry," and has published largely

non-peer-reviewed articles concerning "the calculation of damages in securities fraud litigation."

March 14 Op., at *16.  The Court further noted that none of the three cases highlighted by the

Lek Defendants "involved market manipulation" or "topics related to his testimony here."  *Id.* at

*17.  The Court also found that Ross's own deposition testimony "demonstrated [that] he has not

yet acquired the depth of knowledge and familiarity with this field that would qualify him as an

expert."  *Id.*[12]

  While the Lek Defendants cite three articles that Ross co-authored that supposedly

"involve statistical analysis of trading data," they offer no further explanation of how the work

that Ross did in those articles (which were published between 13 and 23 years ago) would

provide him with "the kind of advanced knowledge about market structures and trading that

would enable him to offer an informed and reliable expert opinion relevant to this action."

March 14 Op., at *17.  In focusing on Ross's supposed experience with statistical analysis of

trading data, the Lek Defendants also sidestep the real problem with Ross's qualifications:  his

lack of relevant expertise in market manipulation, market microstructure, and the trading

practices at issue here.  Ross may be perfectly competent at analyzing trading data, and indeed,

---

[12] While the Lek Defendants obliquely refer to work that Ross has supposedly done on market manipulation cases, Lek Mem. 9 n.7; *id.* at 10 (referring vaguely to Ross's "years of experience in financial economics, history of publications, testimony in dozens of relevant cases, and extensive consulting history"), they do not point to any specific experience that would render Ross qualified to offer opinions in this case, let alone any grounds sufficient to satisfy their burden on a motion for reconsideration.  They cite to excerpts from Ross's deposition testimony previously considered by the Court and expressly found to be inadequate.  *See* Lek Mem. 9 (citing Ross's deposition testimony); March 14 Op., at *17 ("[A]s Ross's deposition demonstrated, he has not yet acquired the depth of knowledge and familiarity with this field that would qualify him as an expert.").

the Court recognized that Ross was qualified to perform certain calculations that "do not call upon any expertise in market microstructure or the trading strategies at issue here." *Id.* What he is not qualified to do is serve as an expert on layering or the Cross-Market Strategy.

Finally, the Lek Defendants complain that the Court's ruling means that only an expert who "conducted the precise statistical analyses relied upon by the SEC in this case" could ever be deemed qualified. Lek Mem. 10 (arguing that "*no one other than the SEC's two chosen experts*" could satisfy the Court's standard (emphasis in original)). This argument makes no sense: Ross himself is permitted to testify about certain other statistical analyses that he conducted, and Grigoletto is permitted to offer opinions based upon Ross's calculations. Nothing in the Court's opinion comes close to suggesting that only an expert who conducted the exact same analyses as Hendershott and Pearson could satisfy *Daubert*. The fact that the Court found Ross unqualified to testify in this case simply means that Ross failed to satisfy *Daubert*'s requirements. It does not mean that "*no one*" ever could.

### C. Ross Should Not Be Permitted to Testify About Avalon's Other Trading Activity

The Lek Defendants again recycle arguments previously raised and rejected, asking the Court to permit Ross to testify about the analyses he conducted of Avalon's other trading data, and complaining that it would be "manifestly unjust" to exclude this testimony. Lek Mem. 11. In what is hardly a resounding endorsement, they contend that even if the assumptions underlying these analyses "raised questions," none of those assumptions were made in "bad faith." *Id.* The notion that Ross did not act in "bad faith" in conducting his analyses is not an argument the Lek Defendants have ever offered before, nor is it a reason to conclude that those analyses pass muster under *Daubert*. It certainly provides no basis for the Court to reconsider its ruling.

16

The Lek Defendants also complain that "the Court does not address that Hendershott himself utilized Avalon's Non-Layering Loops as a yardstick for non-manipulative trading in his reports." Lek Mem. 11. This language appeared nearly verbatim in the Lek Defendants' original opposition brief and was addressed at length in the parties' *Daubert* filings. ECF No. 292, at 14; *see also id.* at 14-16; ECF No. 242, at 9-10; ECF No. 310, at 4-5. The Court considered these arguments and correctly concluded that it would be "unhelpful and misleading" to permit Ross to testify about these comparisons, given that they rest upon the "false assumption that Hendershott found (and that the SEC has conceded) that any Avalon trading not included in a Layering Loop is neither layering nor manipulative." March 14 Op., at *18. The Lek Defendants say nothing to make this argument more persuasive on reconsideration.

### D.   Ross Should Not Be Permitted to Testify About Purported "Inconsistencies" He Identified in the Layering and Cross-Market Loops

The Lek Defendants ask the Court to permit Ross to testify "regarding inconsistencies between the identified Layering Loops and Cross-Market Loops and how Hendershott and Pearson described such strategies." Lek Mem. 12. They do not bother to offer any permissible ground for reconsideration, let alone a compelling one. The Court has already fully considered and rejected the Lek Defendants' arguments. March 14 Op., at *18-19.

Because the Court has found Ross unqualified, the Lek Defendants attempt to argue that Ross's testimony on these purported inconsistencies does not require any "specific expertise." Lek Mem. 13. This argument is disingenuous. In formulating, describing, and opining on characteristics that he claims are "inconsistent" with layering, Ross implicitly offers a definition of what behavior is layering, and what is not. He is unqualified to offer this definition, and his methodology for identifying these characteristics was unreliable. March 14 Op., at *18. Reconsideration is unwarranted.

E.      **Ross Should Not Be Allowed to Testify About His Purported "Alternative Explanation" for the Cross-Market Strategy**

Finally, the Lek Defendants asks the Court to permit Ross to testify about the "obvious alternative explanation" that he developed to explain Avalon's trading activity during the Cross-Market Loops.  Lek Mem. 13.  In support, the Lek Defendants cite a case that they cited in support of the same argument in their original opposition brief.  *Compare* ECF No. 292, at 23 (citing *Israel v. Spring Indus.*, No. 98 CV 5106, 2006 WL 3196956 (E.D.N.Y. Nov. 3, 2006), *with* Lek Mem. 13 (citing the same case for the same proposition).  They also cite paragraphs from Ross's Cross-Market Report and portions of his deposition testimony.  What they do not offer is any new evidence or caselaw suggesting that the Court should entertain their request for reconsideration.  Ross's "alternative explanation" remains fundamentally unsound.  It fails to account not only for Pearson's return reversal analysis, but also the well-accepted scientific consensus providing the basis for that analysis.  The Lek Defendants do not come anywhere close to rehabilitating Ross's highly problematic opinions.

18

## **CONCLUSION**

For the foregoing reasons, the Lek Defendants' Motion for Partial Reconsideration of the

Court's March 14, 2019 Opinion and Order should be denied.


Dated:  April 12, 2019                                    Respectfully submitted,

                                                         /s/  Olivia S. Choe
                                                         David J. Gottesman
                                                         Olivia S. Choe
                                                         Sarah S. Nilson
                                                         U.S. Securities and Exchange Commission
                                                         100 F Street N.E.
                                                         Washington, D.C. 20549
                                                         Tel.: (202) 551-4881 (Choe)
                                                         Fax: (202) 772-9292
                                                         Email:  choeo@sec.gov

                                                         *Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 12, 2019, the foregoing document was filed via CM/ECF and thereby served on all counsel of record.

/s/  Olivia S. Choe
Olivia S. Choe