UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Plaintiff,<br><br>              v.<br><br>LEK SECURITIES CORPORATION, SAMUEL LEK, VALI MANAGEMENT PARTNERS d/b/a AVALON FA LTD, NATHAN FAYYER, and SERGEY PUSTELNIK a/k/a/ SERGE PUSTELNIK,<br><br>                              Defendants. | 17-cv-01789 (DLC) |

**DEFENDANTS LEK SECURITIES CORPORATION
AND SAMUEL LEK'S REPLY MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION FOR PARTIAL RECONSIDERATION**

Steve M. Dollar
David B. Schwartz
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, New York 10019
Tel.:    (212) 318-3000
Fax:    (212) 318-3400
steve.dollar@nortonrosefulbright.com
david.schwartz@nortonrosefulbright.com

Kevin J. Harnisch (*pro hac vice*)
799 9th Street NW, Suite 1000
Washington, District of Columbia 20001
Tel.:    (202) 662-4520
Fax:    (202) 662-4643
kevin.harnisch@nortonrosefulbright.com

Ronald D. Smith (*pro hac vice*)
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Tel.:    (214) 855-8000
Fax:    (214) 855-8200
ron.smith@nortonrosefulbright.com

*Attorneys for Defendants
Lek Securities Corporation and Samuel Lek*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 1

    I.    THE COURT SHOULD RECONSIDER ITS EXCLUSION OF PORTIONS OF GRIGOLETTO'S TESTIMONY ................................................. 1

        A.    Grigoletto Should be Allowed to Testify Regarding Example Trading Data. ........................................................................................ 1

        B.    Grigoletto Should be Allowed to Testify More Fully Regarding the Cross-Market Trading. .................................................................. 3

    II.    THE COURT SHOULD RECONSIDER ITS EXCLUSION OF PORTIONS OF ROSS' TESTIMONY ......................................................................... 5

        A.    Ross Performed Certain Additional Calculations That Are Within the Expertise the Court Found He Possessed. .................................... 5

        B.    Upon Consideration of All Available Facts, Ross is Qualified to Render His Proffered Opinions. ................................................................. 7

        C.    Ross Should Be Allowed to Testify Based Upon His Testing of Hendershott's Analysis Against the Whole of Avalon's Trade Data. ........................................................................................................... 8

        D.    Ross Should Be Allowed to Testify Regarding His Evaluation of Hendershott and Pearson's Results Against Their Descriptions of the Strategies. .......................................................................................... 9

        E.    Ross Should Be Allowed to Testify Regarding an Obvious Alternative Explanation for the Cross-Market Trading. ........................... 10

CONCLUSION ...................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Barbaro v. United States ex rel. Fed. Bureau of Prisons FCI Otisville*,
   No. 05-cv-6998, 2006 WL 3161647 (S.D.N.Y. Oct. 30, 2006) (Cote, J.) ........................ 1, 9

*Bd. of Trade of City of Chicago v. S.E.C.*,
   187 F.3d 713 (7th Cir. 1999) ............................................................................................... 8

*CFTC v. Moncada*,
   No. 12 Civ. 8791, 2014 WL 2945793 (S.D.N.Y. June 30, 2014) ........................................ 5

*Elliott v. Commodity Futures Trading Comm'n*,
   202 F.3d 926 (7th Cir. 2000) ............................................................................................... 8

*Highland Capital Mgmt., L.P. v. Schneider*,
   551 F. Supp. 2d 173 (S.D.N.Y. 2008) ................................................................................. 5

*Markowski v. S.E.C.*,
   274 F.3d 525 (D.C. Cir. 2001) ............................................................................................. 8

*S.E.C. v. Masri*,
   523 F. Supp. 2d 361 (S.D.N.Y. 2007) ................................................................................. 8

*In re Zyprexa Prods. Liab. Litig*,
   489 F. Supp. 2d 230 (E.D.N.Y. 2007) ................................................................................. 8

Defendants Lek Securities Corporation ("LSC") and Samuel Lek (together, the "Lek Defendants") respectfully submit this Reply Memorandum of Law in Support of their Motion for Partial Reconsideration of the Court's Opinion and Order entered March 14, 2019 (the "Opinion" or "Op.") excluding in part the testimony and opinions of Alan Grigoletto and David J. Ross.

## PRELIMINARY STATEMENT

The Lek Defendants brought their motion for partial reconsideration to request that the Court review certain key facts and issues contained in the voluminous briefings that were before it when it excluded portions of Grigoletto and Ross' testimony. A motion for reconsideration is precisely the vehicle to raise issues that the Court did not address in its original opinion. *See, e.g., Barbaro v. United States ex rel. Fed. Bureau of Prisons FCI Otisville*, No. 05-cv-6998, 2006 WL 3161647, at *2 (S.D.N.Y. Oct. 30, 2006) (Cote, J.). In its Opposition ("Pl. Br."), the SEC does not dispute that certain facts and issues were incorrectly recited in or omitted from the Opinion. The record supports the motion for reconsideration and that the Court's Opinion would result in manifest injustice in this case. More fundamentally, the SEC cannot make any argument why the Court would be outside of its discretion in reconsidering its own Opinion on any basis with respect to the issues raised in the motion. Based on the facts and issues highlighted in the motion, the Lek Defendants request that the Court reconsider its previous ruling and grant the relief requested.

## ARGUMENT

**I.   THE COURT SHOULD RECONSIDER ITS EXCLUSION OF PORTIONS OF GRIGOLETTO'S TESTIMONY**

    **A.   Grigoletto Should be Allowed to Testify Regarding Example Trading Data.**

The SEC does not dispute that Grigoletto used CAB trading data to illustrate and explain what he opines are the limitations of Hendershott's methodology—namely that Hendershott's

opinion "lack[s] context and do[es] not incorporate important information" because it fails to consider "Avalon's trading in the context of other traders' activities in the full limit order book." (Dkt. No. 254-1 ("Grigoletto Rpt.") ¶¶ 49, 51.)  The SEC does not dispute that the Court is allowing Hendershott to testify regarding examples of trading to explain his own methodology. (*See* Op. at 74 ("Hendershott may have found these eight examples of assistance in explaining his methodology.").)  Nor does the SEC offer any argument that allowing such testimony from the SEC's experts, but not Grigoletto, would not be manifestly unjust or that Grigoletto would somehow be unqualified to explain the trading he reviewed to a jury.

Instead, the SEC wrongly asserts that Grigoletto also offered opinions as to all of Avalon's trading in all the Layering Loops based upon his review of the CAB data.  (Pl. Br. at 7-8.)  Indeed, the SEC concedes that, in his report, Grigoletto explicitly limited his conclusions from his analysis of CAB data to the specific trading in CAB he reviewed.  (*See id.* at 5 (citing Grigoletto Rpt. ¶¶ 52-53).)  The SEC attempts to reconcile these inconsistencies in its position by claiming that these limited opinions were somehow expanded by general statements at Grigoletto's deposition about the entirety of what he did to form the opinions reflected his report.  (*See id.* at 5, 7.)  No matter how fiercely the SEC argues the point, Grigoletto did not testify that he extrapolated from the CAB data to form opinions as to all the Layering Loops; rather, he pointed to multiple sources of information.[1]

Even if Grigoletto had offered a global opinion on all the Layering Loops based upon the CAB trading, he would have done so *in addition to* his use of the CAB examples to illustrate and

---

[1] The SEC cites two passages from Grigoletto's deposition. (*See* Pl. Br. at 5, 7.)  The first is in an 11-page string of testimony about all he considered and did to come to the conclusions in the entirety of his report. (*See* Dkt. No. 254-10 ("Grigoletto Dep. Tr.") at 74-83.)  On the more narrow question of how he was able to opine that "Avalon's purported non-bona fide orders were actually consistent with the goal for trades to be executed," Grigoletto specifically testified that his conclusions were based on his "review[] of Ross' reports" and "[his] own experience" in addition to his review of the CAB data. (*Id.* at 192-3.)

- 2 -

explain the limitations of Hendershott's methodology.  The SEC offers no reason why *both* opinions should have been excluded.  If the Court fears that Grigoletto may offer unsupported global opinions based on CAB trading (which he will not do), the Court can simply limit his testimony accordingly.  Having conceded that Grigoletto *does* offer CAB specific opinions (*see id.* at 5), the SEC offers no reason why these opinions must be excluded along with whatever purported global opinions he offers.[2]

Grigoletto's observations concerning context are particularly important as they provide a fuller picture of how the order book looked in total, a key point for a case brought against the Lek Defendants, who indisputably entered no trades themselves.  Each of Hendershott's examples only review the trades of a single Avalon trader and will leave the jury with an overly narrow and incomplete picture of what the allegedly wrongful trading activity looked like.  To prevent manifest injustice and provide the jury with a fuller understanding of trading in this case, the Lek Defendants request that the Court reconsider its exclusion of Grigoletto's testimony concerning CAB data.

### B.  Grigoletto Should be Allowed to Testify More Fully Regarding the Cross-Market Trading.

The SEC does not dispute that the Court correctly found that Grigoletto's "thirty-seven years of experience in the securities industry" qualified him "to provide his opinions on the

---

[2]   The SEC also inexplicably asserts that "the Lek Defendants chose not to directly address the SEC's argument that Grigoletto was offering global opinions about whether Avalon engaged in layering based upon his review of CAB stock" in briefing on the Grigoletto *Daubert* motion (Pl. Opp. at 7), while simultaneously citing language from the Lek Defendants' Opposition Brief contradicting their assertion (*see id.* at 6, n.5 ("The Commission cannot seriously maintain that it should be able to proffer expert analysis of specific examples while arguing that Grigoletto should not be able to criticize an example the that Commission put front and center in its own Complaint.") (citing ECF No. 289, at 23).)  The Lek Defendants have always taken the position that "CAB was an example on which [Grigoletto] concentrated his examination" (Dkt. No. 289 ("Lek Grigoletto Opp. Brief") at 22) rather than a basis on which he reached conclusions about the nature and characteristics of *every* Layering Loop.  Moreover, the SEC acknowledges that it only explicitly argued that Grigoletto had improperly "extrapolate[d] to the remaining 675,504 Layering Loops" from the CAB data in its *reply brief*, to which the Lek Defendants had no opportunity to respond.  (*See* Pl. Opp. at 5.)

- 3 -

functioning of the U.S. securities markets and in particular options trading" (Op. at 63) and that Pearson has no comparable experience. The SEC merely asserts, contrary to the actual record, that Grigoletto "does not explain how his experience permitted him to reach" his opinions regarding Pearson's report. (Pl. Br. at 9.) Grigoletto explained how he reached his opinions. (*See* Defs. Br. at 4-5 (citing Grigoletto Rpt. ¶¶ 55-63).) For example, Pearson's report contains an opinion that the stock trades were too large to be testing liquidity. (*See* Dkt. No. 244-5 ("Pearson Rpt.") ¶ 96.) Grigoletto disagreed with this conclusion, because, as he explained, he had first-hand experience as a trader "sending larger orders [to test liquidity because larger orders] will more likely reveal where buyers and sells are." (Grigoletto's Rpt. ¶ 62.)

Pearson also opined that it was "not credible" that the stock trades were being used to test liquidity because buying stock "is not the best or most natural way to discover how the stock market would respond to sales by option market makers. The best way to discover[] how the market would respond to sales is by selling stock." (*See* Pearson Rpt. ¶¶ 97.) Grigoletto again disagreed with Pearson's conclusions and explained:

> In my experience, traders can use small or large orders in either direction to test liquidity. A trader who has a forecast that the stock is going lower might not wish to show his intent by entering sell orders immediately. The trader instead may enter buy orders to gauge the strength of the selling interest. For instance, if the trader is filled below the ask price, it may indicate aggressive selling pressure and the trader, therefore, needs to then sell the long shares acquired and aggressively sell stock or use options to go short the security. Conversely, if a trader whose original intent was to go short was to discover that his buy orders were not being filled even at the ask price, the trader might reverse and go long in the security. Also, the manner in which Avalon traded (e.g. establishing a long equity position and then purchasing puts) provided a partial hedge if Avalon's information concerning liquidity turned out to be incorrect.

(Grigoletto's Rpt. ¶ 63.) Grigoletto's explanations are, in fact, just as detailed as Pearson's and, unlike Pearson's claims, are supported by actual experience trading. Grigoletto's criticism of

Pearson's conclusions based on Grigoletto's experiences as a trader is appropriate expert testimony "about whether traders routinely evaluate the market," "how they go about doing so," and "what sort of market evaluation an experienced trader can perform." *See CFTC v. Moncada*, No. 12 Civ. 8791, 2014 WL 2945793, at *5 (S.D.N.Y. June 30, 2014). The SEC cannot explain how it would be fair to let Pearson, a non-trader, testify about how traders would test liquidity without allowing Grigoletto to rebut his assertions.

As for Grigoletto's analysis of and reliance on the Citadel complaint, the SEC apparently disagrees with the Court's finding that "[t]his portion of Grigoletto's report is irrelevant" (Op. at 68), as it admits that it may seek to have a Citadel representative testify about its complaint at trial (Pl. Br. at 10). Grigoletto's analysis of the Citadel complaint directly rebuts Pearson's assertions in his but-for analysis that Avalon purportedly entered into the stock trades to move stock prices and make the options trades profitable (*see* Pearson Rpt. ¶¶ 65-67) because the options trading described in the Citadel complaint was extremely profitable absent any allegation of improper manipulation of stock prices (*see* Grigoletto Rpt. ¶¶ 55-58). The SEC instead argues that Grigoletto's testimony would provide no benefit to the jury (*see* Pl. Br. at 10), but "expert testimony to assist the trier of fact in understanding trading patterns . . . and complicated terms and concepts inherent in the practice of the security industry" are regularly admitted. *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 178 (S.D.N.Y. 2008). The Lek Defendants request the Court reconsider its partial exclusion of Grigoletto's testimony.

## II. THE COURT SHOULD RECONSIDER ITS EXCLUSION OF PORTIONS OF ROSS' TESTIMONY

### A. Ross Performed Certain Additional Calculations That Are Within the Expertise the Court Found He Possessed.

The SEC does not argue that Ross is unqualified to perform the three calculations the Lek Defendants ask the Court to reconsider, but wrongly asserts that the calculations are "intended to

support an opinion that Ross is unqualified to offer, and each rests upon a flawed premise and is thus unreliable and misleading." (Pl. Br. at 12.)

The SEC erroneously conflates facts with opinions and arguments, asserting that the Court's rulings that certain of Ross' proffered opinions rest on incorrect assumptions (Pl. Br. at 12) or that Hendershott's methodology is not inadmissible based solely on being inconsistent with FINRA's Report Cards (*id.* at 13) mean that the unaddressed calculations must be excluded. But the numbers yielded by Ross' calculations and categorization of Avalon's trading based on Hendershott's criteria are indisputably correct and include no assumptions.[3]  So, too, is a straightforward comparison of Hendershott's Layering Loops with the trading identified in the FINRA Report Cards, which can assist a jury in evaluating Hendershott's criteria even if the comparison alone would not justify exclusion of Hendershott's opinions.

The SEC provides no argument for why Ross' presentation of these neutral calculations are not akin to the testimony of a summary witness.  (*See* Defs. Br. at 8.)  The SEC also asserts these calculations should be tied to another expert's testimony because the Court found "Ross is otherwise unqualified to offer opinions about layering and the Cross-Market Strategy" (Pl. Br. at 13), but these straightforward calculations simply do not require any expertise with respect to layering or cross-market manipulation.  The Lek Defendants request that the Court allow Ross to testify about these calculations that he is qualified to perform and to which "the jury may weigh their relevance."  (Op. at 62.)

---

[3]  The SEC wrongly asserts that Ross' calculations are equivalent to the Hendershott's calculation of the total trading volume in billions of shares (*see* Pl. Br. at 13, n.9), but as explained in the Lek Defendants' moving brief, Ross' disaggregation of the total data is much more comprehensive including, for each category of trading based on Hendershott's criteria, (i) the number of Loops, (ii) number of Loud-Side and Quiet-Side orders, (iii) the number of shares executed on the Loud-Side and Quiet-Side, and (iv) calculated comparisons between them (*see* Defs. Br. at 7).  Neither Hendershott nor Pearson has proffered these calculations.

### B. Upon Consideration of All Available Facts, Ross is Qualified to Render His Proffered Opinions.

The Lek Defendants requested that the Court reconsider its finding that Ross is not qualified to testify regarding the results of his layering and cross-market analysis because, in part, the Opinion stated that he "has not published any work that involved a statistical analysis of trading data." (Defs. Br. at 8-10 (quoting Op. at 49).) The SEC does not dispute that Ross' articles "involve statistical analysis of trading data"[4] and concedes that "Ross may be perfectly competent at analyzing trading data," but now claims that "the real problem with Ross's qualifications [is] his lack of relevant expertise in market manipulation, market microstructure, and the trading practices at issue here." (Pl. Br. at 15.)[5]

However, as the Lek Defendants stated in their Opposition, some of "Ross' articles analyze various aspects of trading and market microstructure" (Dkt. No. 292 ("Lek Ross Opp. Brief") at 12), including one of the same articles that includes statistical analysis of trading data. *See* Sanford J Grossman, Merton H. Miller, Kenneth R. Cone, Daniel R. Fischel & David J. Ross, *Clustering and Competition in Asset Markets*, 40 J. LAW & ECON. 23, 27 (April 1997) (discussing, among other things, the informational and transactional roles of quotes in securities markets, which are precisely the subjects of Ross's testimony in this case); *see also id.* at 24, 29-39 (analyzing the "market structure" of four stock markets, as well as the markets for several other types of assets).

---

[4] The SEC attempts to marginalize the articles' import because the articles were published "between 13 and 23 years ago." (Pl. Br. at 15.) This criticism is irrelevant and particularly misplaced as the Court itself has relied on contemporary (and older) publications in its own opinions. (*See, e.g.,* Opinion and Order entered August 25, 2017 (denying the Lek Defendants' motion to dismiss) at 22 (citing Lewis D. Lowenfels, *Sections 9(a)(1) and 9(a)(2) of the Securities Exchange Act of 1934: An Analysis of Two Important Anti-Manipulative Provisions Under the Federal Securities Laws*, 85 NW. U. L. Rev. 698, 707-08 (1991)).

[5] The SEC also argues that the Lek Defendants should have more plainly stated in its Opposition to the Ross *Daubert* motion that Ross' published articles do include statistical analysis of trading data, but the SEC never made such an argument in its moving brief, merely asserting that Ross could not recount which articles included such analysis from memory. (*See* Defs. Br. at 9.) In any event the Lek Defendants referenced the articles in its response to the *Daubert* motion. (Lek Ross Opp. Brief at 12.)

In addition, an article by Ross submitted with the SEC's *Daubert* motion specifically concerns market manipulation, market microstructure, and the types of trading practices at issue in this case. (Dkt. No. 244-14, Daniel R. Fischel & David J. Ross, *Should the Law Prohibit "Manipulation" in Financial Markets?*, 105 Harv. L. Rev. 503, 513-519, 521 (1991) (discussing "the relationship between trading and price movements," its "relevance to manipulation," the "information hypothesis," how the "existence of a bid-ask spread necessarily results in a relationship between trading and price" changes that occur as orders arrive, and how to analyze manipulation schemes involving the placement of "successive bids at higher prices.")) While the SEC attempts to paint Mr. Ross with a broad brush, the SEC failed to direct the Court's attention to the many cases in which courts have cited to Mr. Ross' article approvingly, showing that he has valuable insights to offer with respect to market microstructure and manipulation that have been considered by multiple federal courts. *See, e.g. S.E.C. v. Masri*, 523 F. Supp. 2d 361, 367-68 (S.D.N.Y. 2007); *Markowski v. S.E.C.*, 274 F.3d 525, 528 (D.C. Cir. 2001); *Elliott v. Commodity Futures Trading Comm'n*, 202 F.3d 926, 942 (7th Cir. 2000) (Easterbrook, J. dissenting); *Bd. of Trade of City of Chicago v. S.E.C.*, 187 F.3d 713, 725 (7th Cir. 1999).

Ross' publication history (along with his years of experience in financial economics, testimony in dozens of relevant cases, and extensive consulting history) is more than enough to meet the "liberal" standard of for qualifying an expert witness. *In re Zyprexa Prods. Liab. Litig*, 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007). The Lek Defendants request that the Court reconsider its finding regarding Ross' qualifications.

### C. Ross Should Be Allowed to Testify Based Upon His Testing of Hendershott's Analysis Against the Whole of Avalon's Trade Data.

The Lek Defendants requested that the Court reconsider its exclusion of Ross' evaluation of Hendershott's analysis utilizing the entirety of Avalon's trading because the Court did not

address Hendershott's use of Avalon's Non-Layering Loops as a yardstick for non-manipulative trading in his reports when concluding that Ross had rested his analysis on a false assumption. (Defs. Br. at 10-11.) The SEC does not dispute Hendershott's use of the Non-Layering Loops in that manner, but instead argues that this issue was previously raised in the Lek Defendants' Opposition. (*See* Pl. Br. at 12.) That is precisely why the Lek Defendants have moved for reconsideration: an issue that the Court may have overlooked may change the Court's determination. *See, e.g., Barbaro*, 2006 WL 3161647, at *2.[6]

### D. Ross Should Be Allowed to Testify Regarding His Evaluation of Hendershott and Pearson's Results Against Their Descriptions of the Strategies.

The Court excluded portions of Ross' testimony because it held that he examined inconsistencies between the identified Layering Loops and Cross-Market Loops and "example[s] of . . . activity that the SEC used in its complaint." (Op. at 53-54 (layering); *see also id.* at 61-62 (cross-market).) The Lek Defendants requested that the Court reconsider this exclusion because the Complaint's descriptions of layering and cross-market manipulation are effectively the same as the ones defined by Hendershott and Pearson in their reports. (*See* Defs. Br. at 12.) The SEC does not and cannot dispute that these descriptions are nearly identical. The SEC instead argues that, in comparing the Layering Loops and Cross-Market Loops with Hendershott and Pearson's *own* descriptions of layering and cross-market manipulation, "Ross implicitly offers a definition of what behavior is layering, and what is not." (Pl. Br. at 17.) This is simply not true. Ross compares the trading in the Layering Loops and Cross-Market Loops with Hendershott and Pearson's descriptions of the purported manipulative strategies and does not argue about whether

---

[6] The Lek Defendants also argued that whatever deficiencies there may be in Ross' assumption, they do not meet the high standard for exclusion. (*See* Defs. Br. at 11; Op. at 39 (expert testimony should be excluded "if it is speculative or conjectural or *based on assumptions that are so unrealistic and contradictory as to suggest bad faith.*") (emphasis added) (citation omitted).) The SEC argues that this is "hardly a resounding endorsement," but offer no argument that the Ross' assumption met this high standard. (Pl. Br. at 16.)

- 9 -

they are right or wrong.  (*See* Defs. Br. at 12-13.)  No expertise in layering or the cross-market strategy was required.

> E. **Ross Should Be Allowed to Testify Regarding an Obvious Alternative Explanation for the Cross-Market Trading.**

The Lek Defendants requested that the Court reconsider its exclusion of Ross' testimony regarding alternative explanations of Avalon's trading in options and equities because the Court may have overlooked the academic study cited by Ross in support of this "obvious alternative cause" for trading patterns identified by Pearson.  (Defs. Br. at 13-14.)  That study, which the SEC failed to address in its Opposition or any of its earlier briefing—states plainly that "[t]oday's financial markets are characterized by an almost continuous flow of 'news.'  *Every quote update or trade in one asset* (e.g., a stock index futures or an exchange-traded fund) *is a source of information for pricing other assets*."  (Dkt. No. 244-8 ("Ross Cross-Market Rpt.")) ¶ 34 (quoting Thierry Foucault, Johan Hombert & Ioanid Rosu, "News Trading and Speed," 71 J. of Fin. 335, 335-36 (2016) (emphasis added).)  Despite the SEC's unsupported assertions to the contrary, this alternative hypothesis explains Pearson's return reversal findings (showing that the price change was based primarily on factors other than Avalon's trading).  (*Id.* ¶¶ 31-34.)  Rather than address these arguments, the SEC merely asserts that the Lek Defendants "do not offer . . . any new evidence or caselaw" justifying reconsideration.  (Pl. Br. at 18.)

## **CONCLUSION**

For the foregoing reasons, the Lek Defendants respectfully request that the Court grant their Motion for Partial Reconsideration.

| | |
|---|---|
| Dated: New York, New York<br>April 19, 2019 | NORTON ROSE FULBRIGHT US LLP<br><br>By: /s/ Steve M. Dollar<br>    Steve M. Dollar<br>    David B. Schwartz<br>1301 Avenue of the Americas<br>New York, New York 10019<br>Tel.: (212) 318-3000<br>Fax: (212) 318-3400<br>steve.dollar@nortonrosefulbright.com<br>david.schwartz@nortonrosefulbright.com<br><br>Kevin J. Harnisch (*pro hac vice*)<br>799 9th Street NW, Suite 1000<br>Washington, District of Columbia 20001-4501<br>Tel.: (202) 662-4520<br>Fax: (202) 662-4643<br>kevin.harnisch@nortonrosefulbright.com<br><br>Ronald D. Smith (*pro hac vice*)<br>2200 Ross Avenue, Suite 3600<br>Dallas, Texas 75201<br>Tel.: (214) 855-8000<br>Fax: (214) 855-8200<br>ron.smith@nortonrosefulbright.com<br><br>*Attorneys for Defendants Lek Securities Corporation and Samuel Lek* |