UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>LEK SECURITIES CORPORATION,<br>SAMUEL LEK,<br>VALI MANAGEMENT PARTNERS dba<br>    AVALON FA LTD,<br>NATHAN FAYYER, and<br>SERGEY PUSTELNIK a/k/a SERGE<br>    PUSTELNIK,<br>    Defendants. | CASE NO. 17-CV-1789 (DLC) |

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS LEK SECURITIES'
AND SAMUEL LEK'S MOTION FOR RECONSIDERATION**

David J. Gottesman
Olivia S. Choe
Sarah S. Nilson
U.S. Securities and Exchange Commission
100 F Street N.E.
Washington, D.C. 20549
Tel.: (202) 551-4470 (Gottesman)
Fax: (202) 772-9292
Email:  gottesmand@sec.gov

*Counsel for Plaintiff*

Dated:  April 30, 2019

## **TABLE OF CONTENTS**

BACKGROUND .................................................................................................................. 1

GOVERNING LAW ........................................................................................................... 2

ARGUMENT ....................................................................................................................... 3

   I.   THE COURT SHOULD NOT RECONSIDER ITS RULING THAT BEGELMAN IS NOT QUALIFIED TO TESTIFY AS AN EXPERT ............................................................ 4

      A.   The Court Applied the Correct Legal Standard for Evaluating Expert Qualifications  4

      B.   The Lek Defendants Fail to Show Clear Error or Manifest Injustice in the Court's Ruling Regarding Begelman's Lack of Relevant Expertise ....................................... 4

      C.   Without Relevant Expertise, Begelman's Opinions Are Irrelevant and Would Not Be Helpful to the Jury ................................................................................................. 8

   II.   THE COURT SHOULD NOT RECONSIDER ITS RULING THAT BEGELMAN'S OPINIONS LACKED A SUFFICIENT BASIS ............................................................ 9

      A.   Begelman's Conclusory References to "My Experience" Fail to Provide a Reliable Basis for His Opinions ................................................................................. 10

      B.   Begelman Had Insufficient Knowledge and Did Not Consider Sufficient Data ........ 11

   III.   THE COURT SHOULD NOT RECONSIDER ITS RULING THAT BEGELMAN'S OPINIONS WOULD NOT BE HELPFUL TO THE JURY ...................................... 12

CONCLUSION ................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Aczel v. Labonia*, 584 F.3d 52 (2d Cir. 2009) ................................................................................ 3

*Adiel v. The Pharmacy Fund, Inc.*, No. 00 Civ. 3273(DLC), 2000 WL 1634381
  (S.D.N.Y. Oct. 30, 2000) ......................................................................................................... 3, 4

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36 (2d Cir. 2012) .................... 2, 3, 12

*Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993) ............................................................ 4

*Grant v. City of Syracuse*, No. 5:15-CV-445, 2018 WL 4778901 (N.D.N.Y. Oct. 3, 2018) ......... 6

*In re Application of Furstenberg Fin. SAS*, 334 F. Supp. 3d 616 (S.D.N.Y. 2018) ....................... 3

*In re Beacon Assocs. Litig.*, 818 F. Supp. 2d 697 (S.D.N.Y. 2011) ................................................ 2

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99
  (2d Cir. 2013) ......................................................................................................................... 3, 14

*LinkCo, Inc. v. Fujitsu Ltd.*, 2002 WL 1585551 (S.D.N.Y. July 16, 2002) .................................. 10

*Reach Music Pub., Inc. v. Warner Chappell Music, Inc.*, 988 F. Supp. 2d 395
  (S.D.N.Y. 2013) .......................................................................................................................... 10

*Ruggiero v. Warner–Lambert Co.*, 424 F.3d 249 (2d Cir. 2005) .................................................. 12

*SEC v. Lek Sec. Corp.*, No. 17cv1789 (DLC), 2019 WL 1512713 (S.D.N.Y. Apr. 8, 2019) .......... 1

*SEC v. Lek Sec. Corp.*, No. 17cv1789(DLC), 2019 WL 1304452 (S.D.N.Y. Mar. 21, 2019) ....... 1

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995) ............................................................. 3

*United States v. Tin Yat Chin*, 371 F.3d 31 (2d Cir. 2004) ............................................................. 4

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this memorandum of law in opposition to the Motion for Reconsideration and supporting memorandum ("Lek Mem.") filed by defendants Lek Securities Corporation and Samuel Lek (collectively, the "Lek Defendants"). ECF Nos. 365-366. The Lek Defendants' motion seeks reconsideration of the Court's ruling that excluded the opinions and testimony of putative expert witness Roger S. Begelman ("Begelman"). *See*, ECF No. 355, *SEC v. Lek Sec. Corp.*, No. 17cv1789 (DLC), 2019 WL 1512713 (S.D.N.Y. Apr. 8, 2019) ("Apr. 8 Op.").

The Lek Defendants fail to meet the standards for reconsideration, and instead simply rehash arguments already considered and rejected. They identify no legal or factual error, point to nothing that was overlooked, and fail to show any "manifest injustice." There is no basis for the Court to reverse its decision. Their Motion should be denied.

## BACKGROUND

The SEC moved on October 5, 2018 to exclude the testimony of Begelman, a putative expert witness proffered by the Lek Defendants.[1] *See* ECF Nos. 247, 249, 251. The Lek Defendants filed an Opposition, along with a declaration of Begelman, in which he belatedly attempted to bolster his qualifications. ECF Nos. 286-288. The SEC filed a reply. ECF No. 303.

On April 8, 2019, the Court granted the SEC's motion. The Court reviewed Begelman's qualifications, opinions and analysis. Apr. 8 Op., at *3-4. The Court discussed the relevant Supreme Court and Second Circuit law governing expert testimony (*id.* at *3), and the Court

---

[1] The Court also has granted in part the SEC's motions to exclude the two other expert witnesses proffered by the Lek Defendants, i.e., David Ross and Alan Grigoletto. *See SEC v. Lek Sec. Corp.,* -- F. Supp. 3d --, 2019 WL 1198599, at *21, 23-24 (S.D.N.Y. Mar. 14, 2019). The Lek Defendants have moved for partial reconsideration of that ruling. That motion has been fully briefed. *See* ECF Nos. 352, 353, 358, 363. The Court also granted the SEC's motion to exclude the two experts proffered by the Avalon Defendants. *See SEC* v. *Lek Sec. Corp.,* 2019 WL 1198599, at *24-27 (excluding Haim Bodek's testimony); *SEC v. Lek Sec. Corp.*, No. 17cv1789 (DLC), 2019 WL 1304452, at *3-4 (S.D.N.Y. Mar. 21, 2019) (excluding Ronald Filler's testimony).

analyzed Begelman's supposed analysis and the opinions offered in his report (*id.* at \*2, \*4-5). The Court found that Begelman "[l]acks [r]elevant [e]xpertise," and "is unqualified to give an opinion about the adequacy of a broker-dealer's systems and procedures to detect and prevent manipulative trading." *Id.* at \*3.  Further, the Court noted that Begelman "appears to have taken no steps to remedy" the deficiencies in his experience. *Id.* at \*4.

The Court stated that Begelman's report "is not grounded in data or statistics," and further that while Begelman purports to base his report on his "claim to expertise through experience," his experience provides no basis for his opinions, and indeed, "[t]his deficiency is so extreme that it may not be addressed solely through cross-examination." *Id.* at \*4. Moreover, the Court observed that Begelman's deposition testimony revealed ignorance of fundamental facts and documents concerning various issues on which he opines.  In the Court's view, these examples revealed "that Begelman's report does not reflect any expert knowledge that he possesses." *Id*. at \*4 n.2.

The Court further held that, "[e]ven if Begelman had relevant expertise, many of his opinions would still be inadmissible." *Id.* at \*4.  The Court observed that "the heart of Begelman's report is little more than a narrative of Lek Securities' communications with regulators and its adjustments to the Q6 Layering Control System," and that "few of the issues Begelman addresses in his report concern issues beyond the ken of a layperson." *Id.* at \*5.

## GOVERNING LAW

Reconsideration is an "extraordinary remedy to be employed sparingly." *In re Beacon Assocs. Litig.*, 818 F. Supp. 2d 697, 701 (S.D.N.Y. 2011) (citation omitted).  "[T]he standard for granting a . . . motion for reconsideration is strict." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted).  The "movant carries a heavy burden." *In*

2

*re Application of Furstenberg Fin. SAS*, 334 F. Supp. 3d 616, 618 (S.D.N.Y. 2018).  A motion should be granted "only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (citation omitted).

"Courts narrowly construe this standard and apply it strictly against the moving party so as to dissuade repetitive arguments on issues that have already been fully considered by the court." *Adiel v. The Pharmacy Fund, Inc.*, No. 00 Civ. 3273(DLC), 2000 WL 1634381, at *1 (S.D.N.Y. Oct. 30, 2000) (citation omitted).  A motion for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys*, 684 F.3d at 52 (citation omitted).  The movant cannot raise "new facts, issues or arguments not previously presented to the Court." *Adiel*, 2000 WL 1634381, at *1 (citation omitted).  The decision to grant or deny a motion to reconsider rests within the sound discretion of the district court.  *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (citations omitted).

## ARGUMENT

The Lek Defendants fail to satisfy any of the standards for a motion for reconsideration.  Instead, they simply re-argue the same legal and factual points that were already considered by the Court, and that the Court ruled upon in the April 8 Opinion.  The Lek Defendants have failed

3

to satisfy their heavy burden, and their Motion therefore should be denied.

**I.      THE COURT SHOULD NOT RECONSIDER ITS RULING THAT BEGELMAN IS NOT QUALIFIED TO TESTIFY AS AN EXPERT**

   **A. The Court Applied the Correct Legal Standard for Evaluating Expert Qualifications**

The Lek Defendants erroneously argue that the Court applied too narrow of a standard for expert qualifications. Lek Mem. 6. The Court applied the correct legal standard, relying upon and citing not only *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993), but also several Second Circuit decisions. *See* Apr. 8 Op., at *3. The Lek Defendants fail to present any "controlling decisions . . . that the court overlooked." *Shrader*, 70 F.3d at 257.

The Court cited and properly applied the standard from *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004), evaluating whether Begelman is qualified by "compar[ing] the area in which the witness has superior knowledge, education, experience or skill with the subject matter of the proffered testimony." The Court properly found that Begelman proffered opinions about the standards for a broker-dealer such as Lek Securities to detect and prevent layering and spoofing, but did not demonstrate expertise on that subject. Apr. 8 Op., at *3-5. Therefore, the Court properly excluded him.

   **B. The Lek Defendants Fail to Show Clear Error or Manifest Injustice in the Court's Ruling Regarding Begelman's Lack of Relevant Expertise**

The Lek Defendants assert that the totality of Begelman's experience is sufficient to qualify him as an expert, and that the Court failed to consider this. They argue that the Court should reconsider its ruling based upon "(1) [Begelman's] experience at a broker-dealer (2) with manipulation scheme detection systems (3) used in the equities market." Lek Mem. 7.

Their argument fails for several reasons. First, the topic already was "fully considered by the court." *Adiel,* 2000 WL 1634381, at *1. The Lek Defendants' November 2, 2018 opposition

4

to the SEC's *Daubert* motion (ECF No. 286) ("Lek Nov. 2 Brief") fully argued the point. In that brief, the Lek Defendants pointed to Begelman's work history (*id.* at 9), his positions in various securities industry entities (*id.*), and included several pages discussing his various positions at Goldman Sachs (*id.* at 10-12). The Court's opinion discussed and evaluated Begelman's experience in his various positions and ruled that he lacked sufficient expertise. Apr. 8 Op., at *3-4.

The Lek Defendants state that Begelman "worked the broker-dealer arm of Goldman Sachs" from 1993 to 2008.[2] Lek Mem. 8. They suggest that the Court must not have considered that experience, because the Court stated that "Begelman's experience is grounded in his work at a wholesale bank; he does not have relevant experience at a broker-dealer." Lek Mem. 7 (citing Apr. 8 Op., at *3). But the Lek Defendants take that language from the Court's opinion out of context and overlook the Court's direct discussion of Begelman's work with the broker-dealer component of Goldman Sachs. The Court stated:

> Begelman asserts he previously worked in divisions at Goldman Sachs that largely ***focused on Goldman Sachs broker-dealer operations***. But Begelman readily admits in his deposition that his work as Global Head of Control Rooms and Regulatory Reporting did not involve detection or surveillance for layering or spoofing in the equities markets. And while he asserts that the ***Compliance Surveillance and Strategy division addressed spoofing and layering issues,*** Begelman was ***unable to describe in his deposition any parameters that Goldman Sachs used*** to detect or surveil for layering spoofing, or any other form of market manipulation.

Apr. 8 Op., at *4 (emphasis added).

Thus, the Court fully considered Begelman's work regarding Goldman Sachs' broker-dealer operation, but found that Begelman failed to establish his actual expertise based on his

---

[2] Even if Begelman had experience with the standards or practices at a broker-dealer between 1993 and 2008, that would be of doubtful relevance in this case, in which the trading activity at issue occurred between late 2010 and 2016. The Lek Defendants, who have the burden of proof regarding Begelman's expertise, make no showing that broker-dealer standards or practices in 2008 or earlier were still relevant in 2010 and later.

5

work there.

Second, even if the issue of whether Begelman has relevant expertise were open to re-litigation, the Lek Defendants fail to make a sufficient showing. The Lek Defendants note that Begelman had the position of "Co-Head of the Compliance and Surveillance Strategy Group" involving Goldman Sachs' broker-dealer component. Lek Mem. 8. But it is "the actual qualifications that matter, rather than mere titles." *Grant v. City of Syracuse*, No. 5:15-CV-445, 2018 WL 4778901, at *2 (N.D.N.Y. Oct. 3, 2018). As supposed proof of Begelman's experience, the Lek Defendants offer generalized assertions about Begelman's work regarding systems to detect and prevent layering. But those statements are too vague and conclusory to support Begelman's claimed expertise. *See* Lek Mem. 8-9.

Moreover, even Begelman's conclusory statements about his expertise collapsed when he was questioned in deposition. As the Court noted, Begelman was unable to give any specifics to support his supposed expertise. Apr. 8 Op., at *4. The Lek Defendants cite paragraph 6 of Begelman's Declaration dated November 2, 2018 (ECF No. 288) ("Begelman Declaration"), in which Begelman states, "[a]s shown by my discussion of orders placed and cancellations at my deposition, I became familiar with common methodologies of reviewing for spoofing and observed that our parameters for potentially manipulative activity, including spoofing, evolved over time." *See* Lek Mem. 8. But when asked in deposition whether the surveillance systems that he supposedly developed generated exceptions for layering or spoofing activity, Begelman testified: "I am certain there must have been exceptions for some type of spoofing or manipulation. I can't tell you what they are today and what they would have looked at or how many." ECF No. 251-3 (Begelman Dep. Tr.) at 127:24-128:2.[3] Thus, he was unable to say

---

[3] The Begelman deposition pages cited herein are included in ECF No. 251-3, which is Exhibit 3 to the SEC's Oct. 8, 2018 *Daubert* motion to exclude Begelman (ECF No. 251).

"what" was detected in the way of spoofing, what the systems "would have looked at," or "how many" instances were involved.  When further pressed to describe the parameters that the system used to detect layering or spoofing activity, he stated he did not remember.[4]  *Id.* at 128:22-129:9.

In short, Begelman failed to establish his expertise in evaluating the sufficiency of systems to detect and prevent spoofing or layering, and the Lek Defendants offer no information, new or overlooked, to the contrary.

Third, the Lek Defendants repeat their arguments that Begelman's experience at the wholesale bank (GS Bank) provides the necessary expertise.  Lek Mem. 8 & n.6.  The Court has already rejected that argument, noting the many reasons why Begelman's experience at a wholesale bank is inapposite to his proffered testimony.  Apr. 8 Op., at *3.  The Lek Defendants fail to demonstrate any flaw in that holding.

The Lek Defendants argue that, even if Begelman does not have expertise regarding systems to detect or prevent manipulation in equities, "spoofing and layering in the commodities and equities markets are direct analogues."  Lek Mem. 9.  Contrary to the Lek Defendants' assertion, whether Begelman – who asserts expertise based on experience – has experience relating to detection of spoofing and layering in ***equities*** goes to the heart of whether he has relevant expertise in this case.  Moreover, even assuming experience with spoofing or layering in commodities would constitute relevant experience, Begelman fails to establish that he has any.  He did not mention it -- let alone establish expertise -- in his deposition, his report, or his

---

[4] Moreover, Begelman notably phrased his deposition answers in the passive voice and the collective "we," in order to gloss over the fact that he cannot establish his own, personal experience on these topics.  For example, Begelman stated "parameters ***were focused on*** through research and activity, and ***we would*** break down activity and utilize that activity to make judgments" (ECF No. 251-3 (Begelman Dep. Tr.) at 128:13-15) (emphasis added), and that "***it was referenced*** to activity in the market place and that's how ***we created***, you know, what ***we thought*** were the right number, and then ***we would look at it*** and amend it and change it over time." (*id.* at 128:17-20) (emphasis added).  Begelman does not show that he personally has experience.

curriculum vitae. His Declaration makes a passing reference to "commodities" in paragraph 8 as one of many types of investments with which he worked at the wholesale bank. But that mere mention of the word "commodities" is hardly sufficient to establish expertise in the standards regarding detection or prevention of layering or spoofing in commodities.

Finally, the Lek Defendants fail to shore up Begelman's expertise by comparing him to the SEC's expert witnesses, Professor Terrence Hendershott and Professor Neil Pearson. Lek Mem. 10. The Lek Defendants argue that Hendershott and Pearson developed new criteria to evaluate layering and the cross-market strategy in the trading data in this case. Therefore, the Lek Defendants argue, Begelman should be allowed to apply whatever experience he has. *Id.* The argument is a non-sequitur and fails because Hendershott and Pearson have demonstrable and deep expertise in the precise fields that encompass layering and the cross-market strategy, and based their analyses on robust methodologies, objective criteria and established principles in their respective areas.[5] Begelman, in contrast, shows no relevant expertise, relies on conclusory statements about his "experience" that he was unable to substantiate with details, and does not employ objective criteria or any reliable methodology in reaching his opinions.

### C. Without Relevant Expertise, Begelman's Opinions Are Irrelevant and Would Not Be Helpful to the Jury

The Lek Defendants argue that even if Begelman "has no relevant spoofing or layering experience, it still would not merit exclusion" of his opinions regarding the reasonableness of

---

[5] As the Court noted in denying the Lek Defendants' motion to exclude Hendershott, "[h]is area of expertise bears directly on the issues on which he is opining in this case. His research focus is the field of market microstructure, including strategies employed in high-frequency trading and how those strategies affect securities prices." *Lek*, 2019 WL 1198599, at *14. And, the Court stated, Hendershott's methodology to detect layering "springs directly from" the well-accepted understanding among the parties and regulators on what trading constitutes layering. *Id.*

The Court found Pearson's analysis to be similarly well supported, because it used analytical tools "described and employed in articles appearing in peer-reviewed journals" and much of Pearson's report is supported by citations to "published works in the field of economics." *Id.* at *16.

Lek Securities' controls, or its communications with regulators. Lek Mem. 11. They are wrong.

For example, the Lek Defendants point to Begelman's opinion that Lek Securities' "compliance, surveillance, and risk controls were consistent with a compliance framework to prevent potential manipulative trading." Lek Mem. 11. But such a conclusion is baseless and not relevant to this case unless it is grounded in expertise in how broker-dealers detect and prevent layering and spoofing. As shown above, Begelman has no such expertise.

The Lek Defendants further advocate allowing Begelman to opine that no controls are "fool proof" and that "securities compliance functions 'undergo[] a series of controls and reviews." *Id.* These empty platitudes are not sufficiently probative of any issues in this case. They are akin to opinions that the Court described as "tangential to the issue of whether Lek Securities developed a sufficiently robust compliance program," and "[i]t would not help the jury for Begelman to alert it of [such] plainly common phenomen[a]." Apr. 8 Op., at *5. The Lek Defendants show no error in the Court's holding.

The Lek Defendants argue that Begelman should be allowed to opine that Lek Securities' controls were not in conflict with communications from regulators and exchanges. Lek Mem. 11-12. The Court correctly held that the jury is capable of understanding such things on its own. Apr. 8 Op., at *4. Begelman's "opinion" on that subject is not an expert opinion grounded on documented standards or criteria, but rather is just an advocate's argument.

## II. THE COURT SHOULD NOT RECONSIDER ITS RULING THAT BEGELMAN'S OPINIONS LACKED A SUFFICIENT BASIS

The Court correctly held that Begelman lacked a sufficient basis for his opinions. For example, Begelman opined that Lek Securities' surveillance was "consistent with the industry standard," despite his failure to conduct any research into how other broker-dealers surveil for market manipulation. Apr. 8 Op., at *4. He relied only on conclusory references to "[his]

9

experience," his opinions are "not grounded in data or statistics," are "not supported by citations to peer-reviewed literature," and are "not based on a comparative study of other broker-dealers' compliance practices." *Id.* The Lek Defendants show no error in the Court's holding.

### A. Begelman's Conclusory References to "My Experience" Fail to Provide a Reliable Basis for His Opinions

The Lek Defendants argue that Begelman was not required to perform "specific data analysis or consideration of peer-reviewed literature." Lek Mem. 12-13. They argue that he need not rely on a "scientific method," and they cite *Reach Music Pub., Inc. v. Warner Chappell Music, Inc.,* 988 F. Supp. 2d 395, 404 (S.D.N.Y. 2013) (quoting Advisory Committee Notes to Fed. R. Civ. P. 702). *Id.* at 12. But they omit the language from *Reach* and the Advisory Committee Notes that explains why Begelman's conclusory, "my-experience-is-my-experience" approach fails. As stated in *Reach*:

> "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." [quoting Advisory Committee Notes to Rule 702]. ***This does not mean that an expert may give an unsupported opinion*** merely because the expert has experience in a particular field. *See generally LinkCo, Inc. v. Fujitsu Ltd.,* 2002 WL 1585551, at *4 (S.D.N.Y. July 16, 2002) (***experts "must provide some explanation for their conclusions, rather than referring generally to their experience*** [because] [w]ithout good explanations, courts cannot assess the reliability of any conclusion drawn by an expert, even if he possesses relevant experience"). Rather, "[i]f the witness is relying solely or primarily on experience, then the witness ***must explain how that experience leads to the conclusion reached***, ***why that experience is a sufficient basis for the opinion, and how that experience is reliably applied*** to the facts." Fed.R.Evid. 702 advisory committee's note.

988 F. Supp. 2d at 404-05 (emphasis added).

Begelman did exactly what these authorities hold he cannot do: He repeatedly offered conclusory opinions backed by nothing except his assertion that these opinions were based on "my experience." And when questioned in deposition to explain the bases for his opinions, he evaded the questions and talked in circles, ultimately offering no basis other than to say "my

10

experience is my experience." *See* ECF No. 249 ("SEC Oct. 5 Mem."), at 10-16.

The Lek Defendants argue that Begelman reviewed "over 470 documents," as though that would have some significance in a case involving millions of documents, and that he applied his "28 years of experience." Lek Mem. 13. But he has not explained "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Reach*, 988 F. Supp. 2d at 405; Fed. R. Evid. 702 advisory committee's note. And Begelman has articulated no specific, objective criteria or industry standards to support his conclusions. *See* SEC Oct. 5 Mem. 14-16 (citing case law requiring experts to specify objective bases for opinions).

**B. Begelman Had Insufficient Knowledge and Did Not Consider Sufficient Data**

The Court found that Begelman was "unable to understand or interpret the very documents that he cited in his report which describe the specific layering controls Lek Securities applied to particular Avalon sub-accounts." Apr. 8 Op., at *4. The Lek Defendants try to minimize this deficiency by arguing that Begelman is not an expert in computer code. Lek Mem. 13-14. But that argument fails. The specific layering controls in place at particular times were an important part of Begelman's opinions about the sufficiency of Lek Securities' layering control system. As discussed in detail in the SEC's original *Daubert* motion to exclude Begelman's testimony, the documents on which he purported to rely -- but that he could not interpret -- seriously undermined his statements about what controls were actually in place. SEC Oct. 5 Mem (ECF No. 249) 21-22.

Even if Begelman needed someone to interpret the documents for him in order to perform his work in this case, he failed to make sure that he learned the information reflected in the documents. As became clear in Begelman's deposition, he was unfamiliar not only with the

documents themselves, but also the information they reflected.  *See* SEC Oct. 5 Mem. 22 (explaining that Begelman failed to even consider in how many instances Lek Securities failed to actually apply the layering controls that Begelman says were in place).

Begelman based his opinions on the layering control documents, but he failed to consider the significance of the information contained in those documents.  This renders his opinions unreliable.  *See Ruggiero v. Warner–Lambert Co.*, 424 F.3d 249, 253 (2d Cir. 2005) ("[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." ).

The Lek Defendants offer a false narrative about Begelman's deposition testimony regarding the "depth control."[6]  They argue that Begelman was just "confused" because the SEC referred to the depth control as a "control system," when, according to them, it was just *part* of Lek Securities' Q6 control system.  Lek Mem. 14.  The Lek Defendants previously raised this argument in their Opposition, (ECF No. 286 at 21), and a motion to reconsider is not an opportunity to get a "second bite at the apple."  *Analytical Surveys*, 684 F.3d at 52 (citation omitted).  In any event, the SEC already refuted the argument in its November 16, 2018 reply memorandum (ECF No. 303), at 8.  In his deposition, Begelman himself clarified that he understood "it's all part of Q6."  *Id.*  Thus, there was no confusion.

### III. THE COURT SHOULD NOT RECONSIDER ITS RULING THAT BEGELMAN'S OPINIONS WOULD NOT BE HELPFUL TO THE JURY

The Court found that,

> [e]ven if Begelman had relevant expertise, many of his opinions would still be inadmissible.  The heart of Begelman's report is little more than a narrative of

---

[6] The Court found that Begelman showed "significant ignorance of the way in which the 'depth control' feature operates," and that this "is just one more example of the fact that Begelman's report does not reflect any expert knowledge that he possesses."  Apr. 8 Op. at *4 n.2.

12

> Lek Securities' communications with regulators and its adjustments to the Q6 Layering Control system. This is not admissible expert testimony. Business records and lay witnesses are the appropriate vehicle for providing such historical evidence to the jury.

Apr. 8 Op., at *4. The Lek Defendants show no reason to reconsider that ruling.

The Lek Defendants incorrectly assert that Begelman recites facts just to show the predicate for his opinions. But that is not so; Begelman offers a running commentary on the communications, which amounts to mere advocacy, not expert opinion.[7]

The Lek Defendants repeat their argument that Begelman should be allowed to opine that Lek Securities' actions "were not in conflict with communications from regulators and exchanges." Lek Mem. 15. But the jury is perfectly able to decide that without an expert telling it what to think.

Moreover, Begelman has no reliable basis for his opinion on that score. The Lek Defendants argue that the "industry standard at issue is whether [Lek Securities'] responses or compliance systems were objectively 'reasonable.'" *Id.* This issue was fully briefed. Begelman was unable to provide any objective criteria for how one would measure "reasonableness" and instead offered pure *ipse dixit*. SEC Oct. 5 Mem. 12-13. He assessed reasonableness "based on my opinion and my experience in the industry. . .," and when asked how he applied that experience in this case, all he could say was, "my experience is my experience." *Id.* (quoting Begelman deposition testimony). Because Begelman offered no objective criteria, his opinion about what is "reasonable" is not reliable. *See id.* at 14-16 (citing caselaw).

---

[7] For example, Begelman opines that recommendations from regulators "are not unreasonable or uncommon," and that FINRA's Wells notices to Lek Securities provided "mixed messages," and he offers a commentary on what "in my experience" regulators might do after receiving a "target's" response to a Wells notice. ECF No. 251-1, ¶¶ 45, 48. He then opines that, for example, FINRA's actions were not "swift" enough, and that it is "unusual" for the SEC to not have issued a Wells notice before filing this case. Id. ¶ 49. As another example, Begelman offers commentary on a public speech by a FINRA official, quotes a passage from that speech, and makes several "notable observations" about its supposed meaning. Id. ¶ 52.

13

**CONCLUSION**

The Lek Defendants assert that excluding Begelman's testimony would result in "manifest injustice." Lek Mem. 16. But their argument actually is just that excluding Begelman would be unhelpful to their case. They fail to show any "need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc.* 729 F.3d at 104. They show no basis for reconsideration. Their motion should be denied.

Dated:  April 30, 2019

Respectfully submitted,

/s/ David J. Gottesman
David J. Gottesman
Olivia S. Choe
Sarah S. Nilson
U.S. Securities and Exchange Commission
100 F Street N.E.
Washington, D.C. 20549
Tel.: (202) 551-4470 (Gottesman)
Fax: (202) 772-9292
Email:  gottesmand@sec.gov
*Attorneys for Plaintiff*