```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
                                        :       17cv1789 (DLC)
SECURITIES AND EXCHANGE COMMISSION,     :
                                        :       OPINION AND ORDER
                Plaintiff,              :
                                        :
                                        :
        -v-                             :
                                        :
LEK SECURITIES CORPORATION, SAMUEL      :
LEK, VALI MANAGEMENT PARTNERS d/b/a     :
AVALON FA, LTD., NATHAN FAYYER, and     :
SERGEY PUSTELNIK a/k/a SERGE            :
PUSTELNIK,                              :
                                        :
                Defendants.             :
                                        :
----------------------------------------X
```

APPEARANCES

For plaintiff Securities and Exchange Commission
David J. Gottesman
Olivia S. Choe
Sarah S. Nilson
U.S. Securities and Exchange Commission
100 F Street NE
Washington, DC 20549

For defendants Lek Securities Corporation and Samuel Lek:
Steve M. Dollar
David B. Schwartz
Norton Rose Fulbright US LLP
1301 Avenue of the Americas
New York, NY 10103

Kevin J. Harnisch
Norton Rose Fulbright US LLP
799 9th Street NW, Suite 1000
Washington, DC 20001

Ronald D. Smith
Norton Rose Fulbright US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201

DENISE COTE, District Judge:

On March 28, 2019, the Lek Defendants[1] moved for partial reconsideration of a Daubert opinion issued on March 14, 2019. See SEC v. Lek Sec. Corp., No. 17cv1789(DLC), 2019 WL 1198599 (S.D.N.Y. Mar. 14, 2019)("Daubert Opinion"). Familiarity with the Daubert Opinion is assumed.

The Lek Defendants are a broker-dealer and its principal who are charged with violations of the securities laws in connection with trading done through Lek Securities by traders at Avalon FA Ltd. ("Avalon"), a foreign day-trading firm whose traders are largely based in Eastern Europe and Asia. The Lek Defendants seek reconsideration of the exclusion of certain testimony from two experts, David Ross and Alan Grigoletto. These two experts were offered in rebuttal to testimony from two SEC witnesses, Terrence Hendershott and Neil Pearson.

Hendershott offered expert testimony about Avalon's manipulation of the market through a trading scheme called layering. A trader engaged in layering typically places a large number of buy (or sell) orders on one side of the market without intending to execute those orders. The trader does so to increase the perceived demand (or supply) of the stock and to

---

[1] The Lek Defendants are Lek Securities Corporation and Samuel Lek.

influence the price per share or volume of shares the trader is able to sell (or buy) on the opposite side of the market. See Daubert Opinion, 2019 WL 1198599, at *2-3.

Pearson offered expert testimony about Avalon's manipulation of the market through a scheme called the Cross-Market Strategy. In a Cross-Market Strategy, a trader manipulates the prices of options through trading in the corresponding stocks. See id. at *8. For the following reasons, the motion for reconsideration is granted in part. Ross will be permitted to testify as to two additional calculations.

## Discussion

The standard for granting a motion for reconsideration is "strict." Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted). "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." Id. (citation omitted). "A motion for reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 104 (2d Cir. 2013) (citation omitted). It is "not a vehicle for

3

relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." Analytical Surveys, 684 F.3d at 52 (citation omitted).  The decision to grant or deny the motion for reconsideration is within "the sound discretion of the district court."  Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009) (citation omitted).

I. Grigoletto

The Daubert Opinion largely granted the SEC's motion to exclude testimony from defense expert Alan Grigoletto.  While the Opinion found Grigoletto qualified to serve as an expert, it excluded his proffered testimony with two exceptions, one in connection with layering and one in connection with the Cross-Market Strategy.  He will be permitted to testify about certain inferences to be drawn from the fact that Avalon's Loud-side orders remained in the market for an average duration of 10.18 seconds and were primarily at or inside the NBBO.  Daubert Opinion, 2019 WL 1198599, at *22.  He will also be permitted to testify about certain inferences to be drawn from the fact that the stock price either remained unchanged or moved in the opposite direction of Avalon's stock trades made in connection with some Cross-Market Loops.  Id. at *23.

Through this motion, the Lek Defendants seek to resurrect three other portions of Grigoletto's expert report. That motion is denied.

A. Avalon's Trading in CAB

The Daubert Opinion excluded Grigoletto's testimony about the Avalon trading in Cabela's Incorporated ("CAB") stock because he used his examination of this trading in a single security over a 45-minute period to make sweeping statements about the entirety of the Hendershott analysis of 675,504 Layering Loops. Id. at *22. In their motion for reconsideration, the Lek Defendants explain that Grigoletto used the Avalon trading in CAB as an example of a broader point. They contend that Grigoletto should be allowed to testify, using the CAB trading as an example, that Hendershott's entire analysis is flawed since it did not consider the Avalon trading in the "context of other traders' activities." They also equate Grigoletto's testimony regarding CAB with Hendershott's use of examples to illustrate his analysis of the Layering Loops.[2]

---

[2] The Lek Defendants also argue, inconsistently, that Grigoletto wasn't using the CAB trading to draw any global conclusion but to explain his criticism of Hendershott's methodology. They assert that Grigoletto's discussion of the CAB trading explained why Hendershott's analysis was flawed, specifically, that Hendershott did not consider Avalon's trading "in the context of other traders' activities in the full limit order book." This assertion is just what the Lek Defendants declare it is not. It is a broad assertion that the "other" trading is relevant in some way to a determination of whether Avalon was engaged in

5

Grigoletto did not explain in his report why "other traders' activities" were relevant to the issues the jury must resolve, much less develop an analysis to show that those activities indeed were relevant.[3]  Grigoletto did not even assert in his report in connection with the 45 minutes of CAB trading he examined that Avalon's Layering Loops during that period did not contribute to order imbalances in the market.  But, more to the point, as observed in the Daubert Opinion, "[t]his extremely limited set of data provides no reliable basis from which to form an opinion about the larger set of Layering Loops or Hendershott's analysis."  Id.

It is true that Hendershott used examples to illustrate his analysis and make it more comprehensible.  Grigoletto, however, did not perform any independent analysis of either the Avalon trading or of the Layering Loops identified by Hendershott and therefore is not using the CAB trading to illuminate his own

---

layering as well as to the soundness of Hendershott's examination of that question.

[3] It is not even clear to what "other" trading Grigoletto is referring.  Is it other Avalon trading?  If so, for reasons described elsewhere in the Daubert Opinion, the defendants have not shown that that provides a sound basis for any comparison.  Is it trading by all other market participants?  Given the anonymity of buyers and sellers, it is difficult to explain how any reliable conclusions can be drawn from that comparison.  In any event, no sound analysis has been presented that would explain the relevance of the proffered comparison.

analysis. There is, therefore, no equation between Grigoletto's use of CAB as a purported "example" and Hendershott's use of his examples. The motion to reconsider the exclusion of Grigoletto's testimony regarding the CAB trading must be denied for other reasons as well, including that it does not identify any argument that the Lek Defendants made that the Daubert Opinion overlooked.

B.   Testing Liquidity

The Daubert Opinion excluded Grigoletto's testimony that Avalon's large number of stock transactions with no corresponding options trade demonstrated Avalon's intention to use stock trades to gauge liquidity. Id. at *23. The Daubert Opinion explained that, in contrast to Pearson, Grigoletto offered nothing more than "his ipse dixit" on this issue. Id.

Pearson's testimony, offered to rebut anticipated testimony of Lek employee Sergey Pustelnik that the trades in the Cross-Market Strategy were a "liquidity arbitrage," explained that Avalon's trades in its Cross-Market Strategy were "much larger than was necessary to test liquidity." Pearson based his opinion on an analysis of the size of Avalon's equities orders, which he found, inter alia, were substantially larger than the typical orders of institutional traders and had impacted stock prices. Pearson supported his conclusion with analysis and citations to peer reviewed literature.

7

The Lek Defendants argue in their reconsideration motion that Grigoletto's assertion is admissible because he is an experienced trader. They do not contend that his report explained how he reached his conclusion, described the methods traders use to test liquidity, provided any standard to judge when orders would be indicative of testing for liquidity and when they would not, or engaged with Pearson's analysis. In the two paragraphs of the Grigoletto report to which the Lek Defendants point,[4] he opined, for example, that there were "numerous examples" (which he did not list) within the Cross-Market Loops consistent with an attempt to gauge relative liquidity; that testing the market for liquidity is an art; and that, in his experience, sending larger orders will more likely reveal real buyers and sellers.

There is no dispute that Grigoletto is qualified to serve as an expert regarding the trading strategies at issue in the Cross-Market Strategy, but expertise is only a threshold issue for admitting expert testimony. Grigoletto must use his expertise to provide the fact-finder with the tools for assessing relevant data and the reliability of his opinion. This he has not done. See Gen.Elec. Co. v. Joiner, 522 U.S.

---

[4] Paragraphs 62 and 63.

136, 146 (1997); <u>Amorgianos v. Nat'l R.R. Passenger Corp.</u>, 303 F.3d 256, 267 (2d Cir. 2002).

There is a larger point to be made here.  The SEC, through Pearson's expert report, has provided a robust examination of associated Avalon stock and options trading that it asserts was a coordinated Cross-Market Strategy to manipulate the market. Placing orders in the market usually provides traders with information about market liquidity and the interest of other market participants in buying or selling securities, whether the trader placing the orders is engaged in manipulation schemes or not.  Even if the Avalon orders provided Avalon traders with information about market receptivity, that does not mean that Avalon was or was not engaged in a Cross-Market Strategy. Indeed, information from stock trades could assist a manipulator in deciding when and how to move prices artificially to optimize a manipulation scheme.  Nonetheless, Grigoletto's testimony regarding the extent to which Avalon was engaged in a liquidity testing strategy would have been admissible if properly supported.  There is no requirement that expert testimony provide a complete rebuttal to an adversary's case -- only that it be sufficiently rigorous and relevant to be admissible.  If Grigoletto had provided admissible testimony, and the Lek Defendants had opposed the motion to exclude by pointing to that testimony, then the motion to exclude would have been denied.

C.  Citadel Complaint

The Daubert Opinion excluded on the ground of relevance Grigoletto's testimony about his review of a complaint that Citadel Securities ("Citadel") made to the SEC about Avalon's options trading.  Lek Sec. Corp., 2019 WL 1198599, at *23.  The Daubert Opinion explained that the SEC's allegations are contained in its own complaint and through discovery and its expert reports.  Id.  Further, as the SEC explains in opposition to this motion, any discussion of Citadel's complaint would be misleading since Citadel "had no visibility into the identity of the parties trading in stock at the time that it submitted its complaint" and its complaint was therefore "limited to the options trading activity that it observed."

In this motion for reconsideration, the Lek Defendants explain that Grigoletto's testimony about the matters raised in the Citadel complaint are relevant to the jury's determination of Avalon's intent to manipulate the market.  They assert that the Citadel complaint describes trading "without any allegedly improper manipulation of stock prices."[5]

---

[5] In his expert report, Grigoletto reported that he had reviewed the Citadel complaint and that it did not describe "manipulative or deceptive behavior," but complained instead that it was unable to profitably hedge options trades that it quoted.

10

Grigoletto's testimony about Citadel's complaint to the SEC is inadmissible. Even if a Citadel witness testified at trial about its observations of marketplace behavior, no expert may advise the jury about the inferences it may properly draw from a fact witness's testimony. Grigoletto did no independent analysis of the trading discussed in the Citadel complaint and has no relevant testimony to offer on this matter.

II. Ross

The Daubert Opinion found Ross unqualified to give the opinions proffered in his reports. Id. at *16-18. It permitted him, however, to testify about four calculations that appeared in his reports. Those calculations are that 56.6% of the Loud-side orders in the Layering Loops were placed at or inside the NBBO; that the average duration of the Loud-side orders was 10.18 seconds; how often stock prices were unchanged or moved in the opposite direction of the stock trades in Avalon's Cross-Market Loops; and the disaggregation of Pearson's average trading revenues. Id. at *19-21.

The Daubert Opinion identified the calculations that Ross could describe to the jury despite the absence of any argument from the Lek Defendants that these calculations would be admissible even if Ross lacked expertise about layering or the Cross-Market Strategy. In their motion for reconsideration, the Lek Defendants request that Ross be permitted to testify about

11

several additional calculations. Those requests are granted in part. They also seek reconsideration of Ross's expertise and of certain opinions that he would offer if qualified as an expert. That application is denied.

A. Additional Calculations

    i. Trading Outside the Layering Loops

The Daubert Opinion excluded Ross's opinions on Avalon's alleged layering scheme for several reasons in addition to his lack of expertise. Id. at *18-20. Ross opined, among other things, that Hendershott failed to assess adequately the entirety of Avalon's trading. Ross then purported to do so, using the false assumption that the SEC had conceded that any Avalon trading not included in Hendershott's Layering Loops was neither layering nor manipulative. For reasons explained in the Daubert Opinion, his comparisons between the Layering Loops and the remainder of the Avalon trading were both unhelpful and misleading. Id. at *18.

The Lek Defendants seek to have Ross testify to the following three calculations to compare in three ways the Layering Loops to the rest of Avalon's trading at Lek Securities: that the Layering Loops constituted only 1.4% of Avalon's Loops; that 74.1% of Avalon's Loops were on only one side of the market; and that over 1 million of the Loops met Hendershott's Order Imbalance criterion but not his Execution

Imbalance criterion. In his report, Ross explained that he disaggregated all of the "Loops" in the Avalon Trade Data to make these calculations.

Ross may testify regarding one of these three calculations. He may testify that the Layering Loops constitute only 1.4% of Avalon's trading at Lek Securities.[6] Ross may not testify as to his other two calculations. Unlike the first calculation, the other two calculations are far from being pure calculations. Faulty and misleading assumptions are embedded within them. It is important to note, for instance, that neither Ross nor any other defense expert did an independent analysis of the Avalon trading data. These calculations, therefore, are offered as relevant commentary on the Hendershott analysis. Without admissible expert testimony to explain their significance, they are irrelevant and misleading. The expert testimony the Lek Defendants offered with these calculations was inadmissible for several reasons explained in the Daubert Opinion. Id. at *18-19. These include that it was based on false and misleading

---

[6] It is assumed that Ross's calculation, which he describes in terms of "Loops," is a measurement of all of the Avalon equities trading. Hendershott also describes the volume of Avalon's total equities trading and the volume of its trading in the Layering Loops. If Ross is measuring something other than all of the Avalon equities trading through this statistic, then the motion for reconsideration is denied.

assumptions. It does not pass muster under Daubert or Rules 702 and 403, Fed. R. Evid.

    ii.   Group 038

The Lek Defendants seek to offer Ross's calculation that 99.73% of Avalon Group 038's trading Loops consisted entirely of stock orders, or what he calls "Stock Loops." That application is granted.

    iii.   FINRA Report Cards

Ross calculated that 82.2% of Hendershott's Layering Loops did not overlap with the trading identified in the FINRA Report Cards. But, for reasons explained in the Daubert Opinion, this comparison is spurious. 2019 WL 1198599, at *14. "Exchanges and regulators are performing different functions than trial experts, and they may be using different data sets and more easily applied tests to perform their tasks." Id. Ross will not be permitted to testify to this calculation.

B. Expertise

The Lek Defendants ask the Court to reconsider its finding that Ross is not qualified to testify as an expert on either layering or the Cross-Market Strategy. They do not point to any change in controlling law or any argument that they presented in

14

opposition to the motion to exclude his testimony that the Court overlooked.[7]  That motion is denied.

Assuming that the Court reconsiders Ross's qualifications to testify as an expert, and that it now determines that Ross is qualified as an expert to testify on the subjects set forth in his reports, the Lek Defendants argue that he should be permitted to testify as to three discrete opinions.[8]  The Lek Defendants first argue that Ross should be able to compare Avalon's trading, taken as a whole, with the Avalon trading appearing in Hendershott's Layering Loops.  As explained above, to the extent that comparison is the calculation that was contained in his expert report, Ross may do so.  The figure he has calculated is 1.4%.

The Lek Defendants have not shown that reconsideration is appropriate for the other two Ross opinions.  The Lek Defendants seek to offer Ross's testimony in which he purports to identify inconsistencies between the SEC experts' Layering Loops and Cross-Market Loops and those experts' descriptions of those two

---

[7] As already noted, in opposing the motion to exclude, the Lek Defendants did not identify any parts of Ross's report that might survive the motion.  Nonetheless, the Court unilaterally chose to identify calculations as to which Ross was qualified to provide testimony.

[8] The Daubert Opinion excluded Ross's opinions not only because he did not possess the qualifications as an expert to present them, but also because those opinions were inadmissible.

strategies.  The Lek Defendants do not identify precisely which portions of the Ross expert reports to which they are referring, but they appear to be referring to Ross's list of nine characteristics of manipulative trading.  He obtained that list of characteristics by examining an example set forth in the SEC's complaint.  Id. at *18-19.  As explained in the Daubert Opinion, this testimony is unreliable and misleading.  Id.  It was properly excluded pursuant to Rules 403 and 702.

The Lek Defendants further argue that Ross's comparison, using the nine characteristics, is admissible even if he did no independent analysis and would be unqualified to perform any independent analysis.  They argue it is proper rebuttal testimony because an expert is allowed to criticize another expert's methodology.  The Lek Defendants are correct that a qualified expert may criticize another's methodology without performing or presenting any independent analysis.  But that is not what Ross did here.  He set up a false comparison that would provide a jury with no illuminating testimony about the soundness of the SEC's experts' methodology.  Nor does he have the expertise to set up a reliable standard of comparison.  The Lek Defendants' contention that no expertise is required to critique another expert's methodology for analyzing layering or a Cross-Market Strategy (which is an argument that they did not previously make) is meritless.

Finally, the Lek Defendants argue that Ross should be able to present an alternative cause for the trading identified by Pearson as the Cross-Market Strategy: that other information had entered the market. They rely on Ross's citation to a study that reports, uncontroversially, that there is an almost continuous flow of news into financial markets, and that such news and other trades are a "source of information for pricing" assets.

Again, the Lek Defendants have not identified any controlling law overlooked by the Court or any argument they made which the Court failed to consider. As explained in the <u>Daubert</u> Opinion, without any independent analysis to support the proposition that new information had actually entered the market during the relevant time period such that it could have influenced the identified trades entered in the Cross-Market Strategy, this general, common sense observation does nothing more than invite speculation. <u>Id.</u> at *21.

## Conclusion

The Lek Defendants' March 28 motion for reconsideration is granted in part.

Dated:   New York, New York
         May 8, 2019

                                   _____
                                            DENISE COTE
                                   United States District Judge