UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                                  Plaintiff,<br><br>                v.<br><br>LEK SECURITIES CORPORATION, SAMUEL LEK, VALI MANAGEMENT PARTNERS d/b/a AVALON FA LTD, NATHAN FAYYER, and SERGEY PUSTELNIK a/k/a/ SERGE PUSTELNIK,<br><br>                                  Defendants. | 17-cv-01789 (DLC) |

**DEFENDANTS LEK SECURITIES CORPORATION AND SAMUEL LEK'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF ERIN SMITH AND PATRICK MCCLUSKEY**

Steve M. Dollar
David B. Schwartz
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, New York 10019
Tel.:   (212) 318-3000
Fax:   (212) 318-3400
steve.dollar@nortonrosefulbright.com
david.schwartz@nortonrosefulbright.com

Kevin J. Harnisch (*pro hac vice*)
799 9th Street NW, Suite 1000
Washington, District of Columbia 20001
Tel.:   (202) 662-4520
Fax:   (202) 662-4643
kevin.harnisch@nortonrosefulbright.com

Ronald D. Smith (*pro hac vice*)
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Tel.:   (214) 855-8000
Fax:   (214) 855-8200
ron.smith@nortonrosefulbright.com

*Attorneys for Defendants
Lek Securities Corporation and Samuel Lek*

## TABLE OF CONTENTS

Page

Table of Authorities ................................................................................................................ ii
PRELIMINARY STATEMENT ............................................................................................... 1
ARGUMENT .............................................................................................................................. 3
    I.    Smith and McCluskey Offer Improper Summary Witness Testimony .................. 3
        A.    Portions of Smith's Declaration Exceed The Bounds Of Summary Testimony. ................................................................................................ 4
            1.    Smith's RTR Analysis ................................................................... 4
            2.    Smith's Impermissible Data Manipulation ................................... 6
            3.    Smith's Commissions Analysis ..................................................... 7
            4.    Comparison to Sam Lek and Nicolas Louis Testimony ................ 8
            5.    Smith's Impermissible "Gloss of Expertise" ................................ 8
        B.    McCluskey's Testimony Has No Appropriate Basis For His Trading Group "Summaries." ..................................................................... 9
    II.    The Court Should Limit Smith and McCluskey to Appropriate Summary Witness Testimony ............................................................................................. 10
CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re 650 Fifth Ave. & Related Properties*,
    No. 08 CIV. 10934, 2017 WL 6631568 (S.D.N.Y. June 13, 2017) ........................................ 3, 4

*Auto Indus. Supplier Employee Stock Ownership Plan v. Ford Motor Co.*,
    435 F. App'x 430 (6th Cir. 2011) ........................................................................................ 5, 6

*Eichorn v. AT&T Corp.*,
    484 F.3d 644 (3d Cir. 2007) ................................................................................................ 4, 5

*U.S. v. Armstrong*,
    619 F.3d 380 (5th Cir. 2010) ................................................................................................... 3

*U.S. v. Barnwell*,
    No. 15 CR. 620, 2017 WL 1063457 (S.D.N.Y. Mar. 20, 2017) ...................................... passim

*U.S. v. Conlin*,
    551 F.2d 534 (2d Cir. 1977) .................................................................................................... 3

*U.S. v. Lemire*,
    720 F.2d 1327 (D.C. Cir. 1983) ..................................................................................... 3, 6, 10

*U.S. v. McElroy*,
    587 F.3d 73 (1st Cir. 2009) ..................................................................................................... 3

*U.S. v. Stierhoff*,
    500 F. Supp. 2d 55 (D.R.I. 2007), aff'd, 549 F.3d 19 (1st Cir. 2008) ..................................... 6

*United States v. Rigas*,
    490 F.3d 208 (2d Cir. 2007) .................................................................................................... 8

**Rules and Statutes**

Fed. R. Civ. P. 26(e)(1) .................................................................................................................. 2

Fed. R. Evid. 701 ........................................................................................................................... 8

Fed. R. Evid. 1006 ................................................................................................................ passim

Defendants Lek Securities Corporation ("LSC") and Samuel Lek (together, the "Lek Defendants") respectfully submit this Reply Memorandum of Law in Support of their Motion *in Limine* to exclude or limit the testimony of Erin Smith and Patrick McCluskey, require disclosure of anticipated summary witness testimony as described below, or, in the alternative, require the SEC[1] to comply with expert disclosure rules.

## PRELIMINARY STATEMENT

The Lek Defendants' Motion asks the Court to limit Smith and McCluskey to proper summary testimony and exclude portions of their declarations that cross the line into undisclosed expert testimony. The SEC devotes the bulk of its opposition ("Opp.") to arguing that portions of Smith and McCluskey's declarations—about which the Lek Defendants make no complaint—are proper summary witness testimony. The SEC offers little to no argument concerning the specific portions of Smith and McCluskey's testimony identified by the Lek Defendants as exceeding the bounds of summary testimony. The Court should grant the Motion and limit Smith and McCluskey's testimony to proper summary testimony.[2]

## BACKGROUND

The SEC failed to timely designate Smith and McCluskey as experts, and the Lek Defendants offer the following to rebut incorrect statements by the SEC in its opposition. The SEC admits—as it must—that Smith and McCluskey's declarations were served months after the deadline to disclose expert witnesses and six weeks after the close of expert discovery and Smith was added to its initial disclosures seven weeks after the close of fact discovery. (*See* Defs. Br. at

---

[1] Capitalized terms used, but not defined, herein shall have the meanings set forth in the Defendants' Brief.

[2] Only if the Court finds that the SEC was substantially justified in its late disclosure of expert testimony and such delay was harmless, the Lek Defendants seek an order compelling the SEC to comply with its expert disclosure obligations while providing the Lek Defendants with an opportunity to rebut and depose the SEC's previously undisclosed experts. (*See* Defs. Br. at 15.)

3, 5; Opp. at 7-9.)  In response, the SEC claims that the declarations do not amount to expert testimony.  (*See* Opp. at 23-24.)  Further, to defend its untimely disclosure of Smith, the SEC misstates and mischaracterizes the record to suggest the timing of the Lek Defendants' productions dictated the SEC's late disclosures.  (*See id.* at 4-8.)  In fact, the Account Credit Change Log— produced months before the close of fact discovery—contains the overwhelming majority of the Q6 control thresholds placed on Avalon sub-accounts about which Smith opines.  (*See* Choe Decl. Ex. 7 at 1 ("Q6 layering control limits are generally reflected in the excerpt from the Account Credit Limit Change Log . . . but that the log may be incomplete in that certain "NULL" entries may not reflect the then current value of certain limits.").)  As to the RTR files, the overwhelming majority were produced before the close of fact discovery and more than 10 weeks before the SEC's identification of Smith.  (*See id.* (production of RTR files was on March 15).)  Only files dealing with a single day's Q6 controls—less than one-tenth of one percent of the total RTR files produced—were produced, at the SEC's demand, after the close of fact discovery.  (*See* Choe Decl. Ex. 11 at 1.)  Indeed, the SEC delayed nearly four weeks after production of the files, from the single day, to identify Smith (*see id.*), and the files are substantively addressed in only two of the 42 paragraphs in Smith's declaration (*see* Smith Decl. ¶¶ 25-26).[3]

As to Smith's purported calculation of LSC's revenue, the SEC blames the Lek Defendants for doing what is required under the Federal Rules of Civil Procedure: updating their interrogatory responses over the course of fact discovery.  *See* Fed. R. Civ. P. 26(e)(1).  In any event, it cannot

---

[3]  The SEC also asserts that the timing of Mr. Louis' second deposition to address RTR questions delayed their disclosure (*see* Opp. at 7), but the Lek Defendants' counsel answered in detail, in writing and by telephone, all questions regarding interpreting the RTR files posed by the SEC months before Smith's disclosure.  (*See, e.g.,* Choe Decl. Ex. 9 ("If you have any questions about the extracts from the daily RTR files, we would be happy to consider them."); Ex. 11 at 1 ("As we agreed, we have provided you detailed information and answered your questions regarding the produced RTR messages."); Ex. 17 at 1-2 (Lek Defendants' counsel providing detailed written answers to the SEC's RTR questions), 4-6 (referencing a lengthy April 5, 2018 call during which Lek Defendants' counsel explained, in detail, the RTR messages and answered the SEC's questions).)

excuse the more than eight weeks that passed before the SEC disclosed Smith or the more than six months that passed before it disclosed her calculations.  (*See* Choe Decl. Ex. 3.)

**ARGUMENT**

**I.  SMITH AND MCCLUSKEY OFFER IMPROPER SUMMARY WITNESS TESTIMONY**

The SEC argues that the use of summary witnesses is a "common procedure" that the Second Circuit has "repeatedly approved."  (Opp. at 11 (quoting *U.S. v. Conlin*, 551 F.2d 534, 538 (2d Cir. 1977).)[4]  The Lek Defendants have not argued to the contrary.  (*See* Defs. Br. at 6-8.)  Still, summary witness testimony is limited and should be policed.  Even the authority relied upon by the SEC explains that summary testimony is a "persuasive and powerful tool and must be fairly used, since, by its arrangement and use, it is an argument to the jury."  *Conlin*, 551 F.2d at 538-39.  The Second Circuit stated that the inclusion of inadmissible portions of a summary chart would be "quite damaging," a "potent weapon for harm," and an "error."  *Id.* at 539.[5]  As a result, courts restrict summary testimony to charts or other aids that present facts already in evidence.[6]  Both

---

[4] The "common procedure" that the court was specifically referring to was the use of an IRS agent as a summary witness.  *Conlin*, 551 F.2d at 538.  In fact, the SEC relies on several cases where the summary witness at issue was an IRS agent in a tax case.  *See, e.g., U.S. v. McElroy*, 587 F.3d 73, 82 (1st Cir. 2009) (The court found "summary witnesses to be appropriate within the context of tax cases."  However, the court "urged caution" with regard to summary witness testimony more broadly because the court was reluctant "to allow the government an additional opportunity to present its case in a tidy package at the end of its presentation of evidence.").  While these courts were careful to explain that IRS agents specifically have the unique ability to testify as summary witnesses, the SEC makes no showing that such a standard should apply to its in-house economists, like Smith, who are proffered to provide undisclosed expert testimony.

[5] *See also U.S. v. Armstrong*, 619 F.3d 380, 385-86 (5th Cir. 2010) ("Although this court allows summary witness testimony in 'limited circumstances' in complex cases, we have 'repeatedly warned of its dangers.'"); *U.S. v. Lemire*, 720 F.2d 1327, 1348 (D.C. Cir. 1983) ("Even with such [guarding] instructions, a summary may be considered too conclusory, or as emphasizing too much certain portions of the Government's case, or as presenting incompetent facts.") (internal citations omitted).

[6] *See U.S. v. Barnwell*, No. 15 CR. 620, 2017 WL 1063457, at *2 (S.D.N.Y. Mar. 20, 2017) ("[Summary] testimony 'does no more than analyze facts already introduced into evidence and spell out . . . consequences that necessarily flow from those facts . . . .'") (internal citations omitted); *see also In re 650 Fifth Ave. & Related Properties*, No. 08 CIV. 10934, 2017 WL 6631568, at *3 (S.D.N.Y. June 13, 2017) ("[A summary witness is] expected simply to recite where the numbers came from and the simple math that is then reflected on the chart.").  The SEC attempts to distinguish certain cases cited by the Lek Defendants stating these limitations (*see* Opp. at 15, n.11), but ignores

Smith and McCluskey's Declarations include improper conclusions and inferences that the courts prohibit in summary witness testimony.  Therefore, the Court should exclude the portions of Smith and McCluskey's testimony that go beyond what is appropriate.

## A. Portions of Smith's Declaration Exceed The Bounds Of Summary Testimony.

Smith includes calculations, charts, and conclusions in her declaration that exceed the bounds of proper summary witness testimony.  (*See* Defs. Br. at 8-11.)  In its opposition, the SEC largely fails to address these portions of Smith's testimony; instead, the SEC focuses on aspects of Smith's declaration that provide appropriate summary information.  (*See* Opp. at 12-20.)  While certain summary testimony presented by Smith is proper (*see* Defs. Br. at 14), she does not *only* summarize.  In several instances, Smith reaches impermissible conclusions, makes improper assumptions, and conducts her own independent analyses.  Smith also conducts a synthesis of data from which she draws conclusions that is inappropriate summary witness testimony.  *See Eichorn*, 484 F.3d at 650 (proffered testimony inadmissible because it was "better described as a synthesis rather than a summary of the charts and other evidence"); *see also In re 650 Fifth Ave.*, 2017 WL 6631568, at *3 (Summary witness is not expected "to 'get behind' the numbers in any way.").

### 1. Smith's RTR Analysis

The SEC argues that Smith's summaries of RTR files do not require expertise.  (Opp. at 12-15.)[7]  The SEC then portrays Smith's work as simply performing a benign summary of voluminous

---

the propositions for which the cases are cited.  *See In re 650 Fifth Ave*, 2017 WL 6631568, at *2 (limiting a newly disclosed replacement witness to summary testimony.); *Barnwell*, 2017 WL 1063457, at *2 (laying out the "boundaries" of summary testimony to caution an IRS agent serving as a summary witness who the Defendant is concerned will provide undisclosed expert witness testimony.); *Eichorn v. AT&T Corp.*, 484 F.3d 644, 650–51 (3d Cir. 2007) (rejecting the plaintiffs' argument that the witness was presenting summary testimony under Rule 1006 as the "calculations [were] better described as a synthesis rather than a summary of the charts and other evidence.").

[7]  In the body of the opposition, the SEC offers an incomplete and misleading quote from Lek Defendants' counsel to suggest that the Lek Defendants have conceded that analyzing the RTR files requires no expertise.  (*See* Opp. at 15.)  As the SEC buries in a footnote (*see id.* at 14, n.10), Lek Defendants' counsel stated that "import[ing] the

RTR files. (*Id.*) However, while summarizing certain contents of the RTR files may be a proper role for a summary witness, Smith also describes how she analyzed data, from different evidentiary sources, and synthesized it to create the charts and graphs in her Appendices and attached graphical Figure. (*See, e.g.,* Smith Decl. ¶¶ 14-15 ("[C]omparing the date of each sub-account's first RTR to its first Layering Loop . . . .")

Moreover, Smith relied on assumptions and inferences outside of the facts in evidence to prepare portions of her summary concerning the RTRs. *See Eichorn*, 484 F.3d at 650; *Auto Indus. Supplier Employee Stock Ownership Plan v. Ford Motor Co.*, 435 F. App'x 430, 452 (6th Cir. 2011). There are several instances where Smith notes the assumptions she made in her calculations and further invites inferences or makes them herself. (*See* Smith Decl. ¶ 11, n.9 (referencing assumptions), ¶ 12 ("In total, during the Q6 Period, Avalon sub-accounts engaged in 56,481 Layering Loops on days when the subaccounts did not have a corresponding RTR message either because *(1) there was a delay between when a sub-account started trading and its first RTR message, or (2) there was a gap in RTR coverage*.") (emphasis added), ¶ 21, n.11 ("The last change date that appears in LSC's Represented Layering Control Settings is October 14, 2013; however, for purposes of this analysis, *I assume that this value controls through September 29, 2016*.") (emphasis added).) These statements go far beyond merely summarizing data, but instead reflect assumptions about how LSC operated the Q6 system and coverage of the system's specific controls.

---

data in the RTR extracts into a database . . . does not require any specialized knowledge *unique to Lek*." (Choe Decl. Ex. 17 at 1 (emphasis added).) These final three words—excluded without ellipsis from the SEC's quotation in the body of the opposition (*see* Opp. at 15)—are critical to understanding the statement's meaning. Rather than suggesting that *anyone* could import the RTR data into a database for analysis, Lek Defendants' counsel stated that anyone with that expertise, *e.g.* an SEC economist, could do so and that such task need not be performed by someone with specialized knowledge *unique to LSC*.

The SEC claims that it is not "improper for a summary witness to make assumptions, draw inferences, or form conclusions" because the Lek Defendants will have access to underlying records and the opportunity to cross-examine Smith. (Opp. at 17-18.) However, there is no case law that would support allowing improper testimony under Rule 1006 solely because the party offering the testimony would be subject to cross-examination. All witnesses are subject to cross examination. The fact that a witness may be cross examined does not transform inadmissible evidence offered by the witness into admissible evidence.

### 2. *Smith's Impermissible Data Manipulation*

Further, the SEC argues that Smith's data manipulation is proper summary testimony. (*See* Opp. at 18.) Despite the SEC's attempt to distinguish *Auto Indus. Employee Stock Ownership Plan v. Ford Motor Co.* (*see id.* at 18, n.15), the court plainly held that "[the witness's] report was more than just a summary of data under Fed. R. Evid. 1006 because his report also included *data manipulations, adjustments, and calculations* using the data presented, and therefore subject to rules governing opinion testimony and expert testimony." 435 F. App'x at 452 (emphasis added). It was the content of the report that rendered it inadmissible summary testimony, not who prepared the summary. The two cases cited by the SEC in support of Smith's data manipulations are also distinguishable and actually support the Lek Defendants' arguments. *See Lemire*, 720 F.2d at 1350 (allowing summary witnesses to omit only "confusing and extraneous evidence" and not "draw controversial inferences or pronounce[] judgment"); *U.S. v. Stierhoff*, 500 F. Supp. 2d 55, 67 (D.R.I. 2007), aff'd, 549 F.3d 19 (1st Cir. 2008) (allowing a summary witness to forego including ATM cash withdrawals in his summaries of Defendant's tax liability because there was no underlying evidence reflecting how the cash was used). Smith admitted, in her declaration, that she performed independent analyses to manipulate the data and omitted data that "[was] not clear to [her]" that significantly affects her summaries. (Smith Decl. ¶ 24, n.14.) In multiple instances,

Smith impermissibly manipulates the data while constructing her "summary" charts[8] and all such manipulations should be excluded.

### 3. *Smith's Commissions Analysis*

The SEC asserts that Smith makes no representations about the meaning of the "Commissions-Billings" line entry in performing her commissions analysis (*see* Opp. at 20), but her comparison of this line entry to her purported calculation of Avalon's billings ascribes meaning to it. By calculating the percentage of the "Commissions-Billings" that Avalon's commissions amounts to, Smith is representing that Avalon's commissions *are a part of* "Commissions-Billings" (they are not), (*see* ECF No. 294-2 ¶¶ 3-12), and suggests that the "Commissions-Billings" are the total commissions earned by LSC during the period (again, they are not) (*id.*). Because the SEC admits she has no basis to make that comparison or make any representation about the "Commissions-Billings" line, (Opp. at 20), she should be precluded from doing so.

In addition, in providing her commissions analysis, Smith—as she does with the RTR analysis—synthesized data from different evidentiary sources it to create the charts and graphs in her Appendices. (*See, e.g.,* Smith Decl. ¶ 36 & App. 5 (departing from the procedure described in evidence to create her own to arrive at LSC's commissions from Avalon.); ¶ 40 & App. 6 (adjusting data in furtherance of an independent analysis regarding LSC "Commission – Billings" from Avalon sub-accounts.).

---

[8] *See* Smith Decl. ¶ 24 & App. 4 ("To summarize the Depth Control settings, I identified date ranges during which the set of unique Depth Control settings did not change. Appendix 4 reports the number of Avalon sub-accounts that had a particular Depth Control setting (defined in paragraph 7 above) as of the end of the corresponding date range, based on the RTRs produced by the Lek Defendants"); ¶ 24, n.14 ("This summary and Appendix 4 exclude one subaccount that had a Depth Control value of -1 from April 14, 2016 to May 12, 2016 during which the sub-account did not complete any Layering Loops. This case is excluded from my analysis as the interpretation of a negative setting is not clear to me from the documents I reviewed"), ¶ 41 & App. 6 ("Commissions from Avalon's trading from March 10, 2012 through October 13, 2016 comprised 11.3% of the Commissions -Billings amount reported in LSC's Profit &Loss statements. Adjusting for the fact that the Avalon commission period covers 92% of the trading days covered by the Commissions -Billings period, Avalon's commissions during this period were 12.3% of LSC's total Commission – Billings (11.3% is 92% of 12.3%).").

### *4.     Comparison to Sam Lek and Nicolas Louis Testimony*

The SEC erroneously compares Smith's testimony with that of Sam Lek and Nicolas Louis. (*See* Opp. at 15, n.12; 19, n.16.) The SEC argues that Nicolas Louis' analysis of the RTR messages involved a process similar to Smith's and, thus, the Lek Defendants should have been required to disclose his testimony during expert discovery. (*Id.* at 15, n.12.) Confusingly, the SEC also argues that Sam Lek conducted an analysis of the Avalon commissions comparable to Smith and should, therefore, be disclosed as an expert witness. (*Id.* at 19, n.16.) Lek and Louis are both fact witnesses with personal knowledge of LSC, Avalon's trading through LSC, and the RTRs. They are, therefore, qualified as witnesses under Rule 701. As such, they can base their testimony on "observations" from their time at LSC. *See United States v. Rigas*, 490 F.3d 208, 224 (2d Cir. 2007) (admitting witness under Rule 701 who provided summary testimony based on personal knowledge.). Smith has no personal knowledge of the RTRs or the Avalon commissions. Therefore, she is restricted to appropriate summary witness testimony under Rule 1006.

### *5.     Smith's Impermissible "Gloss of Expertise"*

The SEC does not dispute that Smith improperly adds a "gloss of expertise" to "lend an aura of credibility" to her testimony by detailing her credentials in her declaration. *Barnwell*, 2017 WL 1063457, at *2. While the SEC argues that the existence of such expertise does not preclude Smith from providing summary testimony (*see* Opp. at 16-17), the Lek Defendants have never made that argument. Even if that were the case, the SEC has not and cannot provide any explanation for why her purportedly irrelevant and unnecessary expertise is detailed in her declaration. Such testimony concerning qualifications should be excluded.[9]

---

[9]   The authority cited by the SEC that courts in other districts have found the experience of a summary witness may be relevant is unavailing. (*See* Opp. at 16, n.13.) If, as the SEC asserts repeatedly, neither Smith nor McCluskey needed any expertise to prepare their purported summary testimony, then there is no reason for Smith to review

### B.     McCluskey's Testimony Has No Appropriate Basis For His Trading Group "Summaries."

McCluskey's testimony on the Avalon trade group leaders is impermissible summary witness testimony with no basis in the facts in evidence. The SEC argues without support that McCluskey's assumptions and inferences about the identity of Avalon trade group leaders are appropriately grounded in his review of the underlying evidence. (Opp. at 22-23.) But McCluskey has no basis for his extrapolation—based solely on names found in emails—regarding certain trade group leaders, what traders they may control, and what trading they may have knowledge of over a five year time period. (*See* Defs. Br. at 11.) McCluskey is not simply "summarizing testimony and 'facts already introduced into evidence.'" (Opp. at 22, n.19.) McCluskey's conclusions are well outside the bounds of proper summary testimony.[10]

To reach his conclusions, McCluskey examined emails between Fayyer and certain individuals. (McCluskey Decl. ¶ 12.) The SEC uses the example of emails between Fayyer and an individual using the email address andyaijjj@gmail.com who referred to himself as "Andy." (Opp. at 22.) The SEC argues that McCluskey's assumptions based on this email exchange are proper because "[n]owhere in the McCluskey SJ Declaration does he claim that the person using the e-mail account is actually named "Andy" or that he has identified him in any way." (*Id.*) This does not address the Lek Defendants' objection. While McCluskey does not exceed the scope of summary testimony by identifying the individual as "Andy" after reviewing emails in which he referred to himself as "Andy," McCluskey's additional conclusions about Andy's identity in

---

her qualifications as a Financial Economist with the SEC other than to add an impermissible "gloss of expertise." *Barnwell*, 2017 WL 1063457, at *2.

[10] The SEC wrongly implies that the Lek Defendants should have raised objections to McCluskey in response to the SEC's requests for a Temporary Restraining Order and Preliminary Injunction. (*See* Opp. at 2-3.) The SEC ignores that these requests for relief were not directed to the Lek Defendants (*see* Defs. Br. at 3, n.1), and the Court made clear the Lek Defendants had no role in that process. (*See* Dkt. No. 99 at 2:4-7 ("I don't think [counsel for codefendant Lek Securities and Mr. Lek] have a role in this preliminary injunction hearing.").)

relation to the Avalon trading groups *are* improper summary witness testimony. McCluskey impermissibly concludes that "Andy" is the leader of an Avalon trade group simply because he mentions that trade group in an email. As a result, he improperly assumes that Andy speaks for the entire trade group and all their trading activity over a five year period. Such conclusions are in no way reflected in the facts already in evidence and should be excluded and are not proper Rule 1006 testimony.

## II. THE COURT SHOULD LIMIT SMITH AND MCCLUSKEY TO APPROPRIATE SUMMARY WITNESS TESTIMONY

The Court should not permit Smith and McCluskey to offer testimony that exceed the bounds of proper summary testimony as described above. Moreover, to avoid prejudice or misleading the jury, the court should offer "guarding instructions" concerning the use of summary witness testimony and charts. *See Lemire*, 720 F.2d at 1348 ("One danger is that a jury will treat the summary as additional evidence or as corroborative of the truth of the underlying testimony. 'This danger has led to the requirement of 'guarding instructions' to the effect that the [summary] is not itself evidence but is only an aid in evaluating evidence.'") (citation omitted).[11]

## CONCLUSION

For the foregoing reasons, the Lek Defendants' Motion *in Limine* to Exclude or Limit the Testimony of Erin Smith and Patrick McCluskey should be granted.

---

[11] The SEC has offered to exchange descriptions of summary testimony and copies of summary exhibits prior to the filing of the Joint Pretrial Order as well as to make available its trial witnesses for deposition that have not yet been deposed pursuant to the Court's earlier Orders (*See* Opp. at 25 & n.21.) The Lek Defendants agree that such offers are appropriate and has proposed a schedule for these and other pretrial disclosures and depositions to the SEC. These offers, however, do not rectify Smith and McCluskey's going beyond the limits of summary testimony and so should not affect the outcome of the Motion.

| | |
|---|---|
| Dated: New York, New York<br>May 10, 2019 | NORTON ROSE FULBRIGHT US LLP<br><br>By: /s/ Steve M. Dollar<br>    Steve M. Dollar<br>    David B. Schwartz<br>1301 Avenue of the Americas<br>New York, New York 10019<br>Tel.: (212) 318-3000<br>Fax: (212) 318-3400<br>steve.dollar@nortonrosefulbright.com<br>david.schwartz@nortonrosefulbright.com<br><br>Kevin J. Harnisch (*pro hac vice*)<br>799 9th Street NW, Suite 1000<br>Washington, District of Columbia 20001-4501<br>Tel.: (202) 662-4520<br>Fax: (202) 662-4643<br>kevin.harnisch@nortonrosefulbright.com<br><br>Ronald D. Smith (*pro hac vice*)<br>2200 Ross Avenue, Suite 3600<br>Dallas, Texas  75201<br>Tel.: (214) 855-8000<br>Fax: (214) 855-8200<br>ron.smith@nortonrosefulbright.com<br><br>*Attorneys for Defendants Lek Securities Corporation and Samuel Lek* |