```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
                                        :       17cv1789 (DLC)
SECURITIES AND EXCHANGE COMMISSION,     :
                                        :       OPINION AND ORDER
                    Plaintiff,          :
                                        :
              -v-                       :
                                        :
LEK SECURITIES CORPORATION, SAMUEL      :
LEK, VALI MANAGEMENT PARTNERS d/b/a     :
AVALON FA, LTD., NATHAN FAYYER, and     :
SERGEY PUSTELNIK a/k/a SERGE            :
PUSTELNIK,                              :
                                        :
                    Defendants.         :
                                        :
----------------------------------------X
```

APPEARANCES

For plaintiff U.S. Securities and Exchange Commission:
David J. Gottesman
Olivia S. Choe
Sarah S. Nilson
U.S. Securities and Exchange Commission
100 F Street NE
Washington, DC 20549

For defendants Lek Securities Corporation and Samuel Lek:
Steve M. Dollar
David B. Schwartz
Norton Rose Fulbright US LLP
1301 Avenue of the Americas
New York, NY 10103

Kevin J. Harnisch
Norton Rose Fulbright US LLP
799 9th Street NW, Suite 1000
Washington, DC 20001

Ronald D. Smith
Norton Rose Fulbright US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201

DENISE COTE, District Judge:

On November 19, 2018, the Lek Defendants[1] moved in limine to preclude certain testimony from Erin Smith ("Smith") and Patrick McCluskey ("McCluskey"), who the plaintiff U.S. Securities and Exchange Commission ("SEC") expects to call at trial to provide summaries of voluminous evidence and to introduce charts reflecting those summaries. The Lek Defendants contend that some of their testimony, proffered in the witnesses' declarations submitted in opposition to the Lek Defendants' motion for summary judgment, constitutes expert testimony and must be barred due to the SEC's failure to timely identify Smith and McCluskey as experts. As reflected in their declarations, the witnesses are not functioning as experts but as summary witnesses. The motion to preclude is therefore denied.

The factual and procedural history of this case has been described in several recent Opinions, including a March 26, 2019 Opinion denying the Lek Defendants' motion for summary judgment, see SEC v. Lek Sec. Corp., No. 17cv1789(DCL), 2019 WL 1375656 (S.D.N.Y. Mar. 26, 2019), and a March 14, 2019 Opinion denying the Lek Defendants' motion to exclude two of the SEC's expert witnesses, Terrence Hendershott ("Hendershott") and Neil

---

[1] The Lek Defendants are Lek Securities Corporation ("Lek Securities") and its principal Samuel Lek.

2

Pearson.  See SEC v. Lek Sec. Corp., 370 F. Supp. 384 (S.D.N.Y. 2019).  Familiarity with those Opinions is assumed; they are incorporated by reference.

In brief, the SEC sued the Lek Defendants, Avalon FA Ltd. ("Avalon"), and other Avalon Defendants[2] on March 10, 2017.  Lek Securities is a broker-dealer based in New York.  Avalon is a foreign day-trading firm whose traders are largely based in Eastern Europe and Asia.  Because Avalon is not a registered broker-dealer, it relies on registered firms like Lek Securities to conduct trading in U.S. securities markets.  The SEC principally alleges that traders at Avalon engaged in two schemes to manipulate the securities markets and that they did so through trading at Lek Securities.

**Background**

Smith's testimony offered in opposition to a summary judgment motion is set forth in an October 4, 2018 declaration. McCluskey's testimony in opposition to the summary judgment motion is set forth in an October 3, 2018 declaration.[3]  The summary judgment motion to which these declarations relate was

---

[2] The Avalon defendants are Avalon, Nathan Fayyer, and Sergey Pustelnik.

[3] McCluskey also filed declarations dated March 7, 2017, and July 5, 2017.  The Lek Defendants do not appear to take issue with the content of those declarations.

3

denied on March 26, 2019.  See Lek Sec. Corp., 2019 WL 1375656.

On November 19, 2018, the Lek Defendants moved to limit testimony from Smith and McCluskey as untimely disclosed expert testimony.  The motion became fully submitted on May 10, 2019.  For purposes of this motion, a summary of the information provided in the declarations is set out below.  Then, after a description of the legal standard for receipt of summary evidence, the Lek Defendants' objections to portions of the declarations as constituting expert testimony are addressed.

Smith

Smith reviewed over a million daily RTR messages ("RTRs") which, according to Lek Securities' president, reflect the company's layering and depth controls for co-defendant Avalon's trading and the trading by Avalon's sub-accounts.  Based on that review, Smith identified the periods of time when there were either no layering or depth controls implemented for Avalon sub-accounts or when the controls that were implemented were less restrictive than what Lek Securities represented them to be.[4]

---

[4] In brief, layering and depth controls are applications designed to block certain orders (or sequences of orders) that may reflect manipulative trading.  A layering control with a "delta" of 10, for example, would block a trader from entering more than 10 orders on one side of the market while at the same time entering an order on the opposite side of the market.  A depth control with a setting of 10 would restrict a trader from entering more than 10 orders on one side of the market

Smith also compared these time periods to data compiled by SEC expert Hendershott in order to calculate the number of Layering Loops that occurred at times when the depth controls were set at different levels.[5]

Smith also reviewed and summarized monthly reports produced by the Lek Defendants reflecting the commissions it received from Avalon's trading.  Smith calculated the portion of Lek Securities' commissions that are attributable to Avalon's Layering Loops and Cross-Market Loops.[6]  She concluded that it received almost $600,000 in commissions from Avalon's trading in the Layering and Cross-Market Loops.  To make these calculations, Smith relied on a procedure described by the Lek Defendants.  Using Lek Securities' annual Profit and Loss statements, Smith calculated that from March 10, 2012 through October 13, 2016, the Avalon commissions represented 12.3% of its total commission income.

McCluskey

McCluskey reviewed voluminous e-mails and other documents to determine which Avalon trade groups were associated with

---

regardless of whether the trader had placed any orders on the opposite side of the market.

[5] For a description of Layering Loops, see Lek Sec. Corp., 370 F. Supp. 3d at 390-93.

[6] For a description of Cross-Market Loops, see id. at 397-400.

certain trade group leaders who exchanged e-mail communications with Nathan Fayyer, the sole disclosed owner of Avalon. McCluskey filtered Hendershott's Layering Loops to determine how many Layering Loops were associated with those trade groups.  He calculated that sub-accounts associated with five different Avalon trade group leaders, whom he identified by name, engaged in 242,143 Layering Loops, which is over 35% of Avalon's Layering Loops.

Finally, McCluskey calculated how many orders Avalon placed in the Layering Loops, including Loud-side and Quiet-side orders, and the revenues associated with those orders.  He also calculated the revenues associated with the twenty Avalon trade groups with the highest percentage of Layering Loops, as well as those figures for smaller sets of the trade groups.

## Discussion

The admission of summary evidence -- whether by chart or through a summary witness -- is governed by Rule 1006, Fed. R. Evid.  Rule 1006 provides that

> [t]he proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court.  The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

6

To be admissible under Rule 1006, "[a] summary must . . . be based on foundation testimony connecting it with the underlying evidence summarized."  Fagiola v. Nat'l Gypsum Co. AC & S., Inc., 906 F.2d 53, 57 (2d Cir. 1990).  Before admitting such testimony, "the court must ascertain with certainty that [the summaries] are based upon and fairly represent competent evidence already before the jury."  United States v. Conlin, 551 F.2d 534, 538 (2d Cir. 1977) (citation omitted).

The Second Circuit has "repeatedly approved" the use of summary testimony to facilitate jury deliberations, see, e.g., id., including "to avoid forcing the jury to examine boxes of documents in order to make simple calculations."  Fagiola, 906 F.2d at 57.  A summary witness may not, however, "usurp[] the function of the jury to decide what to infer from the [evidence]."  United States v. Grinage, 390 F.3d 746, 750 (2d Cir. 2004) (excluding summary testimony interpreting the meaning and significance of telephone conversations).

The testimony proffered by Smith and McCluskey in their declarations, including the tables and charts that they prepared to present that testimony, is classic summary evidence.  They reviewed voluminous materials to calculate trading patterns and trading revenues and similar data points.  Their work will make portions of critical evidence more accessible to the jury.  They

are not testifying as experts and the SEC had no duty to disclose them as expert witnesses.

The Lek Defendants make principally four arguments in support of their motion to exclude certain testimony from these two witnesses as untimely expert testimony.  The Lek Defendants first argue that Smith relied on assumptions and inferences outside the evidentiary record to prepare portions of her summary concerning the RTRs.  They admit that a summary of the contents of RTR files is properly presented through a summary witness such as Smith, but complain that on a few occasions she explained the assumptions she had used in making her calculations.  For instance, when the last change to a control setting was made in October 2013, Smith assumed for purpose of her analysis that that setting remained constant through September 29, 2016.

Neither this nor the other assumptions of which the Lek Defendants complain constitute expert testimony.  They are instead Smith's explanations of the process she used in summarizing massive data.  Whether her assumptions were conservative or not can be tested through cross-examination. Summary witnesses who pull together massive quantities of data customarily make assumptions.  So long as they are disclosed and reasonably drawn from the data being summarized, the use of

8

assumptions is appropriate and does not convert the summary evidence into expert testimony.

For instance, Smith's declaration does not suggest that she is acting either as a fact witness or an expert witness in making an assumption that a control setting remained constant for three years when the records she reviewed did not reflect that it was altered during that time.  She is not purporting to know anything either as an expert or a fact witness about the actual operations of Lek Securities, but is merely describing what the records she reviewed reflected and the assumptions she made in setting forth that evidence in a chart.

The Lek Defendants next argue that Smith became an expert when she manipulated data.  They have not shown either that she manipulated data or that her testimony regarding the data was expert testimony.  The Lek Defendants point, for instance, to Smith's disclosed decision to omit from her summary charts information about one Avalon sub-account because the RTRs indicated that it had a negative control value.  Because the interpretation of a negative setting was unclear from the underlying documents, she left data regarding that sub-account out of a chart reporting Layering Loops.  This was an entirely appropriate response by a summary witness to confusing or incomplete data.

9

The Lek Defendants next complain that Smith was functioning as an expert when she calculated and then compared the commissions Lek Securities earned from Avalon to an amount reported on a line on Lek Securities' Profit and Loss statements labeled "Commissions - Billings." The Lek Defendants assert that the evidence at trial will demonstrate that the Avalon commissions are not a part of that P&L line, and that that line does not reflect the total commissions it earned. This comparison, which does not appear to be an unreasonable one at first blush, may prove to be unreliable. But, the comparison does not convert testimony about the comparison into expert testimony. The comparison involved little more than making an adjustment to account for different time periods and dividing two numbers.

Finally, with respect to McCluskey's testimony, the Lek Defendants assert that McCluskey assumed the role of an expert when he identified certain individuals associated with Avalon trade groups as "leaders" and referred to them by name, as in "Avalon Trade Group Leader Andy" and "Avalon Trade Group Leader Reggy."[7] The identification of these individuals as trade group

---

[7] As the Lek Defendants admit in their reply brief, the names that McCluskey ascribes to Avalon traders -- "Andy," "Reggy," "Edison," "Tim," and "Michael Chen" – come from the names in e-mail addresses or exchanges.

10

"leaders," and the use of these individuals' names as a shorthand reference to trade groups with which they were affiliated, comes directly from the evidence being summarized.[8] It does not reflect use of expertise to opine upon the evidence. To the extent that the Lek Defendants are concerned that such references imply extra-record knowledge or the application of any particular expertise, this concern can be addressed through cross-examination.

## Conclusion

The Lek Defendants' November 19, 2018 motion in limine is denied. The parties are instructed to exchange any summary exhibits or charts on a schedule to which they agree, but on a date not less than two weeks before the deadline for filing the Joint Pretrial Order.

Dated:　　New York, New York
　　　　　July 11, 2019

_____
DENISE COTE
United States District Judge

---

[8] The individuals identified were engaged in e-mail negotiations with Fayyer on behalf of a group of Avalon traders. Fayyer testified that Avalon generally entered into agreements with trade group leaders who oversaw a number of traders.

11