**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | 17-cv-01789 (DLC) |
| v. | |
| LEK SECURITIES CORPORATION, SAMUEL LEK, VALI MANAGEMENT PARTNERS d/b/a AVALON FA LTD, NATHAN FAYYER, and SERGEY PUSTELNIK a/k/a/ SERGE PUSTELNIK, | |
| Defendants. | |

## DEFENDANTS LEK SECURITIES CORPORATION AND SAMUEL LEK'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO REOPEN EXPERT DISCOVERY

Richard D. Owens
Nicholas L. McQuaid
Alysha M. Naik
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022
Tel:       (212) 906-1200
Fax:      (212) 751-4864
richard.owens@lw.com
nicholas.mcquaid@lw.com
alysha.naik@lw.com

Steve M. Dollar
David B. Schwartz
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, New York 10019
Tel.:       (212) 318-3000
Fax:      (212) 318-3400
steve.dollar@nortonrosefulbright.com
david.schwartz@nortonrosefulbright.com

Kevin J. Harnisch (*pro hac vice*)
799 9th Street NW, Suite 1000
Washington, District of Columbia 20001

Ronald D. Smith (*pro hac vice*)
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201

*Attorneys for Defendants Lek Securities Corporation and Samuel Lek*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ..................................................................................................................... 2

I.      Relevant Procedural History ........................................................................................ 2

II.     The Court's *Daubert* Opinions ................................................................................... 4

III.    Proposed Experts ......................................................................................................... 5

      A.      Market Microstructure – Professor Chester Spatt ................................................ 5

            1.      Qualifications ........................................................................................ 5

            2.      Summary of Proposed Testimony ......................................................... 6

      B.      Compliance Expert – James Cangiano ................................................................. 7

            1.      Qualifications ........................................................................................ 7

            2.      Summary of Proposed Testimony ......................................................... 8

      C.      Proposed Schedule ............................................................................................... 9

LEGAL STANDARD ............................................................................................................. 9

ARGUMENT ...................................................................................................................... 10

I.      The Lek Defendants Were Diligent In Identifying Expert Witnesses ............................ 10

II.     The Proposed Expert Testimony Is Important and Relevant to the Case ........................ 11

III.    Granting the Application for Additional Expert Testimony Is a Fair Outcome that
        Will Not Prejudice The SEC ...................................................................................... 12

CONCLUSION ................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Jung v. Neschis*,
   No. 01-CV-6993, 2007 WL 5256966 (S.D.N.Y. Oct. 23, 2007)............................................12

*New York v. Solvent Chem Co.*,
   685 F. Supp. 2d 357 (W.D.N.Y. 2010).........................................................................13, 14

*Restivo v. Hessemann*,
   846 F.3d 547 (2d Cir. 2017)...............................................................................................4

*Rubik's Brand Ltd. v. Flambeau, Inc.*,
   329 F.R.D. 55 (S.D.N.Y. 2019) ...............................................................................9, 10, 12

*SEC v. Boock, et al.*,
   No. 09-CV-8261, 2011 WL 7477006 (S.D.N.Y. Feb. 2, 2011)..........................................8

*SEC v. Boock, et al.*,
   No. 1:09-CV-08261, 2010 WL 8471627 (S.D.N.Y. Dec. 3, 2010) ....................................8

*SEC v. East Delta Resources Corp., et al.*,
   No. 10-cv-00310 (E.D.N.Y.) .............................................................................................8

*SEC v. Lines, et al.*,
   No. 1:07-CV-11387, 2009 WL 6634109 (S.D.N.Y. Oct. 30, 2009)...................................8

*SEC v. Levine, et al.*,
   No. 07-CV-0506, 2008 WL 5744013 (D. Nev. May 1, 2008)............................................8

*SEC v. Pasternak, et al.*,
   No. 05-CV-3905, 2006 WL 5999870 (D.N.J. Dec. 22, 2006)............................................8

*U.S. v. Homm, et al.*,
   No. 2:13-cr-00183 (C.D. Cal.) ..........................................................................................8

*U.S. v. Margulies*,
   No. 08-736 (E.D. PA) ........................................................................................................8

*U.S. v. Shoss, et al.*,
   No. 8:11-cr-00366 (M.D. FL.) ..........................................................................................8

*Williams v. Rosenblatt Sec., Inc.*,
   236 F. Supp. 3d 802 (S.D.N.Y. 2017)................................................................................9

*Young v. Sw. Airlines Co.*,
   No. 14-CV-1940, 2016 WL 3257008 (E.D.N.Y. May 4, 2016) .......................................11, 15

**RULES**

Fed. R. Civ. P. 16(b)(4)...........................................................................................................9, 10

**TREATISES**

8-40 Moore's Federal Practice - Civil § 40.02 (Matthew Bender, 3d ed.) ......................................9

Defendants Lek Securities Corporation ("LSC") and Samuel Lek (together, the "Lek Defendants") respectfully submit this Memorandum of Law in Support of their Motion to Reopen Expert Discovery to allow for the disclosure of Professor Chester Spatt and Mr. James Cangiano as defense expert witnesses and to set a schedule for the submission of their reports, their depositions, and any motions related to Spatt and Cangiano to follow thereafter.[1]  For the reasons set forth below, the Lek Defendants believe that Spatt's and Cangiano's qualifications meet the criteria set by the Court for experts on layering and compliance, respectively.  Moreover, the Lek Defendants believe discovery can be completed without delaying the current trial schedule.

## PRELIMINARY STATEMENT

The Lek Defendants respectfully move that the Court reopen expert discovery to permit the disclosure of Spatt and Cangiano as defense expert witnesses.  The recent adjournment of the trial date to October 21, 2019 provides sufficient time for Spatt and Cangiano to submit their expert reports, be deposed, and to litigate any challenges to their qualifications or the substance of their expected testimony in advance of trial.  The Court has broad discretion over the pre-trial schedule and has acknowledged that relevant testimony about market microstructure and the Lek Defendants' compliance programs would be helpful to the jury.  The Lek Defendants have been diligent and timely with previous deadlines related to experts and submitted this motion as soon as possible after the Court's recent decisions excluding the Lek Defendants' market microstructure and compliance experts and granting the SEC's request for an adjournment of the trial date.

Permitting this motion would be consistent with other modifications to the discovery and trial schedule in this case and would not prejudice the SEC.  In granting the motion, the Court would not be expanding the scope of discovery or the subject matter of testimony to be presented

---

[1] The Lek Defendants have conferred with the SEC about this motion and the SEC opposes the request to reopen expert discovery.

at trial, but rather permitting testimony that would be helpful to the jury in fully understanding critical factual issues that both parties agree are central to the trial.

## BACKGROUND

### I. RELEVANT PROCEDURAL HISTORY

Pursuant to Fed. R. Civ. P. 16(b)(1), the Court has set pre-trial deadlines in this case by scheduling order. (*See, e.g.*, Scheduling Order, Mar. 15, 2017 (Dkt. 18); Pretrial Scheduling Order, Aug. 3, 2017 (Dkt. 98).)  On numerous occasions, often at the request of the SEC, the Court has amended its Scheduling Orders to extend and modify fact and expert discovery deadlines.  (*See* Endorsed letter from SEC, Dec. 18, 2017 (Dkt. 146) at 1-2 (extending fact and expert discovery deadlines); Endorsed letter from SEC, Mar. 6, 2018 (Dkt. 161) at 1 (extending the close of fact discovery); Endorsed letter from SEC, Mar. 22, 2018 (Dkt. 165) at 1 (same); Endorsed letter from SEC, Mar. 30, 2018 (Dkt. 167) at 1-2 (same); Endorsed letter from SEC, Apr. 13, 2018 (Dkt. 174) at 1-2 (same); Scheduling Order, Apr. 17, 2018 (Dkt. 177) at 1-2 (extending expert discovery deadlines); Order, May 31, 2018 (Dkt. 186) at 1-2 (same); Endorsed letter from the Lek Defendants, July 13, 2018 (Dkt. 196) at 1-2 (same).)

The Court has repeatedly exercised its discretion in granting the SEC's scheduling requests. For example, in anticipation of a preliminary injunction hearing, the Court ordered that the Defendants depose Terrence Hendershott—the SEC's primary expert witness in support of its layering claims—on May 9, 2017, a month after the SEC identified Hendershott as its expert. (Scheduling Order, Mar. 15, 2017 (Dkt. 18) at 1-3.)  In addition, the Court allowed the SEC to submit reply expert reports and to submit a report from a new expert, Lawrence Pines, in June 2018, nearly 100 days after the deadline for disclosure.  (*See* Letter from the Lek Defendants, June 11, 2018 (Dkt. 188).)  The Court allowed the SEC to serve three reports from Pines, along with eight other reply reports from its other experts, on June 22, 2018, and the Lek Defendants were

required to take his deposition 18 days later.  (*See id.*; Reply Expert Report of Lawrence A. Pines to the Rebuttal Report of Alan G. Grigoletto, June 22, 2018 (Dkt. 254-4); Deposition Transcript of Lawrence A. Pines, dated July 10, 2018 (Dkt. 239-16).)

On May 10, 2019, the SEC requested that the Court adjourn the start date for trial from July 22, 2019 by several months, despite the fact that the Lek Defendants were ready to proceed in July.  (Letter from SEC, May 10, 2019 (Dkt. 376) at 1); (Letter from Lek Defendants, May 10, 2019 (Dkt. 378).)  Following a conference with the parties on June 10, 2019, the Court granted the SEC's request and scheduled trial to begin on October 21, 2019.  (Scheduling Order, June 12, 2019 (Dkt. 384).)  Pursuant to the most recent Scheduling Order, the parties shall identify all trial witnesses by September 3, 2019.  (*Id.* at 1.)  Any depositions of trial witnesses not yet deposed must occur no later than October 18, 2019.  (*Id.*)

The Lek Defendants timely complied with all previous Scheduling Orders related to expert discovery.  Begelman's report was properly disclosed pursuant to the Court's endorsement of a revised Scheduling Order on December 18, 2017 that called for expert disclosures and reports by March 16, 2018.  (*See* Expert Report of Roger S. Begelman (Dkt. 251-1); Endorsed Letter (Dkt. 146) at 2.)  The Lek Defendants also timely submitted Grigoletto's and Ross's reports pursuant to the Court's Order dated April 17, 2018 requiring the identification of rebuttal experts and disclosure of their expert testimony by May 11, 2018.  (*See* Rebuttal Expert Report of Alan G. Grigoletto (Dkt. 254-1); Rebuttal Report of David J. Ross Regarding the Alleged Layering Scheme (Dkt. 244-7); Scheduling Order (Dkt. 177) at 2.)

The Lek Defendants also timely complied with all deadlines relating to the SEC's *Daubert* motions and the subsequent motions for reconsideration.  The Lek Defendants filed their oppositions to the SEC's *Daubert* motions on November 2, 2018 pursuant to the Court's Order

dated September 17, 2018.  (*See* Dkts. 286, 289, and 292; Order, Sept. 17, 2018 (Dkt. 226).)  After the Court granted the SEC's *Daubert* motions with regard to Ross and Grigoletto in part on March 16, 2018, (Dkt. 349 at 47-69), and Begelman in its entirety on April 8, 2019 (Dkt. 355 at 12-14), the Lek Defendants timely sought partial reconsideration of those decisions on March 28, 2019 (Dkt. 353) and April 22, 2019 (Dkt. 366).  Those motions for reconsideration were largely denied on May 8, 2018.  (Dkts. 374 and 375.)

## II.   THE COURT'S *DAUBERT* OPINIONS

In rendering its *Daubert* Opinions, the Court recognized the appropriate role for expert testimony regarding market microstructure in assisting the jury by helping to explain patterns of trading that are central to this case.  The Court noted that an expert witness whose "research focus is the field of market microstructure, including strategies employed in high-frequency trading and how those strategies affect securities prices" (referring to Hendershott) "bears directly on the issues" that are relevant to determining liability.  (*See* Opinion and Order, March 14, 2019 (Dkt. 349) at 41.)  Furthermore, the Court emphasized the importance of an expert's methodology being "reasonably related to the academic and regulatory definitions of layering," not "in tension with the literature in the field," and employing "'the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'"  (*Id.* at 42-43 (quoting *Restivo v. Hessemann*, 846 F.3d 547, 577 (2d Cir. 2017).)

The Court also observed with respect to a potential compliance expert that "it would likely be helpful to the jury to hear testimony from an expert qualified in the design and implementation of broker-dealer compliance systems."  (Opinion and Order, April 8, 2019 (Dkt. 355) at 13.)  The Court also noted that the testimony from a compliance expert placing LSC's "compliance in the context of the broker-dealer industry's broader compliance efforts" could "assist[] the jury in assessing the soundness and rigor of Lek Securities' programs and its good faith in adopting them."

(*Id.* at 14.)  Specifically, that testimony could include (i) a "description of the industry standard in developing programs aimed at detecting and controlling for layering," including "the challenges faced by broker-dealers in developing robust compliance systems" and "the features of systems that broker-dealers commonly employ to detect and prevent layering"; and (ii) a comparison of "the components of Lek Securities' layering controls to those of well-regarded broker-dealers in the industry," including the "mapping over time how the industry responded to the emergence of manipulative layering in the equities markets" and "how it upgraded and improved its compliance programs."  (*Id.* at 13.)

## III.   PROPOSED EXPERTS

For the reasons discussed below, the proposed experts that the Lek Defendants seek to offer have the relevant expertise identified by the Court and could provide testimony helpful to the jury's consideration of relevant issues at trial.

### A.   Market Microstructure – Professor Chester Spatt

#### 1.   Qualifications

Spatt has been the Pamela R. and Kenneth B. Dunn Professor of Finance at the Tepper School of Business at Carnegie Mellon University since 2008.  For the past two years, he was the Golub Distinguished Visiting Professor of Finance at the MIT Sloan School of Management and a Distinguished Senior Fellow at the Golub Center at MIT.  His areas of academic focus include market microstructure and options trading, and he has published almost 20 articles in those areas since 1988.[2]

---

[2] Indeed, the SEC cites Spatt in its expert reports.  Spatt's 1995 article published in *The Journal of Finance* titled "An Empirical Analysis of the Limit Order Book and the Order Flow in the Paris Bourse" is cited by Hendershott in his reply expert report to the rebuttal of Ross's layering report, dated June 22, 2018 (Dkt. 244-9 at 19).   Pearson cites Spatt's 2005 article published in the *Journal of Financial Markets* titled "Market Microstructure: A Survey of Microfoundations, Empirical Results, and Policy Implications" in his expert report dated March 16, 2018 (Dkt. 244-5 at 48.)

His prior experience includes being the Chief Economist and Director at the Office of Economic Analysis at the SEC from 2004 to 2007 and a Visiting Scholar at the Federal Reserve Bank of New York in 2010.  He was a member of the SEC's Equity Market Structure Advisory Committee from 2015 to 2017, the Federal Reserve's Model Validation Council from 2012 to 2014, and the Office of Financial Research's Advisory Committee from 2014 to 2017.  He was a magna cum laude graduate of Princeton University, with a degree in Economics, and received both a Ph.D. and A.M. in Economics from the University of Pennsylvania.

2.    *Summary of Proposed Testimony*

Spatt will provide background on the role of high-frequency trading in the equities markets, identifying the use of non-manipulative strategies that are similar to layering and why those strategies can make layering difficult to identify.  He will conduct his own analysis of the Avalon trading data and address the challenges presented in assessing that data from the perspective of an executing broker.  Finally, Spatt will examine the criteria identified by Professor Hendershott and offer his assessment of the strengths and weaknesses of those criteria in identifying manipulative trading in light of his analysis of the Avalon trading data.

Spatt will also address Professor Pearson's report on the cross-market strategy.  Spatt will provide background on price sensitivity and performance, the competitive nature of trading, and recognized trading strategies centered on the interplay between equity and options prices.  Spatt will conduct an independent assessment of Avalon trading data focused on the cross-market strategy, and offer his own opinion concerning the relevant trading patterns.  Spatt will also assess the criteria identified by Professor Pearson in his expert report in light of Spatt's analysis of the Avalon trading data.

### B.    Compliance Expert – James Cangiano

#### 1.    *Qualifications*

Cangiano retired in 2004 as the Senior Vice President of Regulation and Controls for the NASDAQ Stock Market, where he served as NASDAQ's chief regulatory officer and liaison with NASD.  Previously, he was the Senior Vice President of Market Regulation for NASD where he was the executive fully responsible for regulatory policy and real-time and historical surveillance, investigation, and enforcement of all matters pertaining to the NASDAQ Stock Market and the U.S. Over-the Counter ("OTC") market.  He began his career with NASD as a District Examiner for NASD's largest district office conducting on-site inspections of broker-dealers for violations of NASD and SEC rules and regulations.

While at NASDAQ, Cangiano extensively worked with the SEC, Securities Industry Association, and Securities Traders Association in developing and enhancing policies and practices relating to better and more efficient equity markets.  Under his direction, NASD's Market Regulation became known as a leader in real-time and historical surveillance technology.  When he assumed the role of Director of Market Regulation, he oversaw the significant growth and effectiveness of NASD's surveillance efforts, keeping pace with the overall growth of the NASDAQ market and developed expertise in the construction and implementation of sophisticated surveillance technology designed to flag unusual activity in the marketplace.  While at NASD, Cangiano twice served as President of the Intermarket Surveillance Group consisting of the market surveillance heads of the six primary markets in the United States and others from foreign exchanges throughout the world.

Cangiano has served as an expert witness on market manipulation for both the DOJ and SEC on multiple occasions.[3]   As part of that expert testimony, Cangiano applied analytical techniques to review and interpret trading data to ascertain: (1) the existence of trading patterns that may have been indicative of typical market manipulation, and (2) whether certain trading patterns and activities exhibited characteristics that industry professionals and securities regulators would recognize as irregular and artificial.[4]   He has also testified as an expert witness on the role of market makers in over-the-counter securities markets, best execution, and broker-dealer supervision.

Cangiano currently works as an expert consultant specializing in providing advice on supervision and policies and procedures to detect fraud and market manipulation, as well as the use of technology to conduct surveillance more broadly.   His work includes consulting with leading software companies in developing market surveillance programs used by trading firms, among others, to detect aberrant trading within the firms as part of their overall supervisory systems.   He was also recently hired to conduct a risk analysis of the clearing business of a broker-dealer on behalf of a consulting firm.

## 2.   *Summary of Proposed Testimony*

Cangiano will testify about the industry standard in developing programs aimed at detecting and controlling for market manipulation.   He will discuss the challenges in developing

---

[3] *See, e.g., U.S. v. Homm, et al.*, No. 2:13-cr-00183 (C.D. Cal.); *U.S. v. Shoss, et al.*, No. 8:11-cr-00366 (M.D. Fla.); *SEC v. East Delta Resources Corp., et al.*, No. 10-cv-00310 (E.D.N.Y.); *SEC v. Boock, et al.*, No. 1:09-CV-08261 (S.D.N.Y.); *U.S. v. Margulies*, No. 08-736 (E.D. Pa.); *SEC v. Lines, et al.*, No. 1:07-CV-11387 (S.D.N.Y.); *SEC v. Levine, et al.*, No. 07-CV-0506 (D. Nev.); *SEC v. Pasternak, et al.*, No. 05-CV-3905 (D.N.J.).

[4] *Id.*   Many of these reports on behalf of the SEC also laid out Cangiano's relevant experience regarding surveilling for market manipulation that is described above.  *See e.g., SEC v. Boock, et al.*, No. 09-CV-8261, 2011 WL 7477006 (S.D.N.Y. Feb. 2, 2011); *SEC v. Boock, et al.*, No. 1:09-CV-08261, 2010 WL 8471627 (S.D.N.Y. Dec. 3, 2010); *SEC v. Lines, et al.*, No. 1:07-CV-11387, 2009 WL 6634109 (S.D.N.Y. Oct. 30, 2009); *SEC v. Levine, et al.*, No. 07-CV-0506, 2008 WL 5744013 (D. Nev. May 1, 2008); *SEC v. Pasternak, et al.*, No. 05-CV-3905, 2006 WL 5999870 (D.N.J. Dec. 22, 2006).

robust compliance systems and commonly employed features of market surveillance systems. Cangiano will discuss how the industry responded to the emergence of different types of market manipulation, including how compliance programs were upgraded and improved over time. Cangiano will conduct an independent analysis of LSC's compliance programs, including adjustments to those programs in response to input from regulators, and will opine on their soundness, rigor, and good faith adoption.

C.     **Proposed Schedule**

The Lek Defendants propose that Spatt and Cangiano complete their expert reports by August 23, 2019, and be reasonably available for depositions thereafter as soon as requested by the SEC, with briefing of any motions related to Spatt and Cangiano to follow thereafter.

## LEGAL STANDARD

Trial courts have broad authority to oversee and set a discovery schedule as appropriate for each case. *Rubik's Brand Ltd. v. Flambeau, Inc.*, 329 F.R.D. 55, 58 (S.D.N.Y. 2019) (citing *Williams v. Rosenblatt Sec., Inc.*, 236 F. Supp. 3d 802, 803 (S.D.N.Y. 2017)); *see also* 8-40 Moore's Federal Practice - Civil § 40.02 (Matthew Bender, 3d ed.) (under the good cause standard, "[i]t is clear that a district court has substantial inherent power to control and to manage its docket, and, in doing so, the court must strike a balance between the needs of judicial efficiency and the rights of litigants"). This broad discretion includes the setting of deadlines for expert disclosures. *Id.*

Once set by the court, a scheduling order may be modified for good cause and with a judge's consent. Fed. R. Civ. P. 16(b)(4).   In determining whether good cause exists for reopening discovery or permitting certain discovery after the expiration of a court-established deadline, courts consider a number of factors, including (1) the moving party's diligence and explanation for failing to comply with the scheduling order, (2) the importance and relevance of the expert

testimony to the case, (3) whether the party seeking the additional discovery has had an adequate opportunity for discovery, (4) prejudice to the party opposing the request, and (5) imminence of trial.  *See id.*

## ARGUMENT

Rooted in its inherent power to control its docket, the Court has broad discretion over whether to modify the current Scheduling Order.  The Court should grant the Lek Defendants' application to reopen expert discovery for the narrow purpose of disclosing the additional two Lek Defendants' experts because good cause exists for doing so.  Specifically, the Lek Defendants have been diligent in their attempt to secure and disclose the experts, the experts' testimony is essential to the Lek Defendants' case, and the prejudice to the SEC as a result of their disclosure is minimal.

## I.   THE LEK DEFENDANTS WERE DILIGENT IN IDENTIFYING EXPERT WITNESSES

The Lek Defendants should be permitted to disclose Spatt and Cangiano as market microstructure and compliance experts, respectively, because the Lek Defendants have exercised diligence in quickly disclosing the proposed experts after the Court's recent expert rulings and the SEC's request for a later trial date.  A moving party's diligence is the primary factor in showing good cause exists to modify a discovery schedule under Fed. R. Civ. P. 16(b)(4).  *See Rubik's Brand Ltd.*, 329 F.R.D. at 58.  Such diligence can be demonstrated by the moving party's efforts to secure discovery during the original discovery period and to seek out court approval for the schedule modification.  *See id.* at 59.

The Lek Defendants previously disclosed and timely submitted reports of all three of their originally proposed experts—Ross, Grigoletto, and Begelman—by the appropriate Court-ordered deadlines, and defended their selection by timely opposing the SEC's *Daubert* motions.  In

granting in part the SEC's *Daubert* motions on March 14, 2019, the Court greatly restricted the testimony of Ross and Grigoletto, in particular the portions of their testimony that could be used to rebut Hendershott and Pearson, the SEC's market microstructure experts.  (Opinion and Order, March 14, 2019 (Dkt. 349) at 47-69.)  In its April 8, 2019 Order, the Court entirely excluded Begelman's testimony, which focused on broker-dealer regulatory compliance.  (Opinion and Order, April 8, 2019 (Dkt. 355) at 12-14.)  The Lek Defendants sought partial reconsideration of both the Court's March 14 and April 8 Orders, with the Court issuing its decisions on reconsideration on May 8, 2019.  (Dkts. 374-75.)

Two days later, the SEC requested the trial date be extended by a number of months, and that request was granted at the June 10, 2019 scheduling conference.  (Scheduling Order, June 12, 2019 (Dkt. 384).)  In view of the additional time sought by the SEC, the Lek Defendants identified, and now seek to disclose, Spatt and Cangiano, and to set a schedule for disclosure of their expert reports and subsequent depositions.  As such, the Lek Defendants have been diligent in their efforts to secure expert discovery during the original discovery period and have acted swiftly to seek court approval for reopening expert discovery after the Court ruled on the Lek Defendants' motions for reconsideration and adjourned the trial date.

## II.   THE PROPOSED EXPERT TESTIMONY IS IMPORTANT AND RELEVANT TO THE CASE

Spatt's testimony as a market microstructure expert and Cangiano's testimony as an expert in broker-dealer regulatory compliance are crucially important to advancing the Lek Defendants' case at trial.  Their testimony goes to the heart of the complexities of identifying market manipulation and whether the Lek Defendants took reasonable steps to prevent it.  As the "exact subject" of Spatt's and Cangiano's intended expert testimony is at the center of the case, the testimony is obviously relevant.  *See Young v. Sw. Airlines Co.*, No. 14-CV-1940, 2016 WL

3257008, at *4 (E.D.N.Y. May 4, 2016).  The Lek Defendants need not show that the new expert testimony will be decisive in the outcome of the case, or even that the expert testimony "will be helpful to the jury" at all for good cause to reopen discovery.  *See Jung v. Neschis*, No. 01-CV-6993, 2007 WL 5256966, at *16 (S.D.N.Y. Oct. 23, 2007); *Rubik's Brand Ltd.*, 329 F.R.D. at 60. Instead, the new expert testimony need only have "sufficiently articulated possible relevance" to the case.  *See Rubik's Brand Ltd.*, 329 F.R.D. at 60.

The SEC's case for layering relies largely on one expert's definition of layering and his analysis of a subset of Avalon trading considered to be "layering loops": Hendershott.  Allowing the Lek Defendants to offer Spatt's testimony would assist the jury in evaluating Hendershott's testimony and allow the Lek Defendants to evaluate the trading data.

Similarly, in its decision excluding Begelman, the Court articulated precisely why a compliance expert is so important, as it would place LSC's "compliance in the context of the broker-dealer industry's broader compliance efforts" and therefore "assist[] the jury in assessing the soundness and rigor of Lek Securities' programs and its good faith in adopting them." (Opinion and Order (Dkt. 355) at 14.)  Consistent with the Court's ruling, it is anticipated that Cangiano's testimony will include a "description of the industry standard in developing programs aimed at detecting and controlling for layering" and a comparison of "the components of Lek Securities' layering controls to those of well-regarded broker-dealers in the industry."  (*Id.*)

## III.  GRANTING THE APPLICATION FOR ADDITIONAL EXPERT TESTIMONY IS A FAIR OUTCOME THAT WILL NOT PREJUDICE THE SEC

The Court should grant the Lek Defendants' application because it is fundamentally fair and does not prejudice the SEC, which cannot claim any unfair surprise and will have a lengthy time period to consider the expert testimony during trial preparation.  Although the parties have had access to some form of expert discovery since shortly after the case was filed in 2017, the

process by which expert testimony has been disclosed has been a fluid one.  The Court has granted modifications to the scheduling orders no fewer than ten times—many at the SEC's behest and to its advantage.  (*See, e.g.*, Endorsed letter from SEC (Dkt. 146); Order, April 13, 2018 (Dkt. 174); Order, May 31, 2018 (Dkt. 186).)  One such amendment specifically extended the discovery schedule to allow the SEC the opportunity to serve reply expert reports and disclose an additional expert, Pines, nearly 100 days after the deadline for close of expert discovery had passed.  (*See* Scheduling Order, April 17, 2018 (Dkt. 177) at 1-2.)  (Endorsed Letter from the SEC, June 12, 2018 (Dkt. 191).)  In spite of the prejudice faced by the Lek Defendants, who were required to depose Pines only 18 days later and would shortly move for summary judgment following the SEC's late disclose of Pines, the Court acceded to the SEC's disclosure.  (*Id.*)

The pending litigation's duration and information generated through discovery thus far also favor the Lek Defendants' application.  *See New York v. Solvent Chem Co.*, 685 F. Supp. 2d 357 (W.D.N.Y. 2010).  In *Solvent Chem*, for example, the defendant sought to strike testimony that plaintiff claimed was intended to rebut defendant's expert.  The court found that the testimony served to rebut the testimony offered by plaintiff's expert and that defendant suffered no prejudice because the topics covered by the defense expert had been covered previously by the plaintiff's expert.  The court noted: "given the volume of information generated . . . over the course of the long pendency of this litigation, as well as the number of depositions taken and exhibits produced during the years of pre-trial discovery, the court has trouble with the notion that any party could claim unfair surprise or prejudice resulting from opinion testimony-rebuttal or otherwise."  *Id.* at 416.

The same is true in this case, which has developed over two years, and the parties have taken 29 days of depositions and exchanged millions of electronic files during discovery.  By

allowing the disclosure of Spatt and Cangiano, the Court would not be expanding the scope of discovery or the subject matter of testimony to be presented at trial. Rather, it would simply be allowing important and relevant information to supplement the extensive factual and expert testimony generated in this case and is currently anticipated to be heard at trial.

Moreover, as outlined above, the Lek Defendants have proposed a reasonable timeline for considering Spatt's and Cangiano's testimony, which would not delay the current scheduling order or the trial start date of October 21, 2019. Under the Lek Defendants' proposal, they would submit expert reports by August 23, 2019, and the SEC would depose Spatt and Cangiano thereafter as soon as requested by the SEC, giving it approximately a month to prepare following the submission of the experts' reports. This is more time than the Lek Defendants had to prepare for Pines' deposition, and roughly the same timeline as the Defendants had to prepare for Hendershott's deposition. This timeline is less burdensome on the SEC, given the amount of work Hendershott and the SEC's consultants had completed prior to Hendershott's disclosure as the SEC's witness. (*See* Scheduling Order, Mar. 15, 2017 (Dkt. 18) at 1-2 (ordering SEC to disclose its expert witness by April 3, 2017 and scheduling his deposition on May 9, 2017).). Hendershott testified that he had worked roughly 200 hours on the SEC's case prior to his first deposition, (Notice of Transcript Designations from Deposition of Terrence Hendershott with Summary, May 9, 2017 (Dkt. 75) at 32:21-22), and has in total submitted an initial expert report, two supplementary reports, and four reply reports in the case (*see, e.g.*, Endorsed Letter from Avalon Defendants, July 3, 2018 (Dkt. 194) at 1.)

Although allowing the additional experts will require further work by the SEC, any prejudice stemming from a party's "expended time and resources" alone does not suffice to

mandate denial of a motion to reopen discovery.  *See Young*, 2016 WL 3257008, at *3.[5]  In addition, the Lek Defendants are willing to make accommodations to ease any burden on the SEC, such as making the proposed new experts available locally for depositions, and conferring with the SEC further concerning any other requested accommodations.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Lek Defendants respectfully request that the Court reopen expert discovery to allow for the disclosure of Spatt and Cangiano as defense expert witnesses and set a schedule in line with the current deadlines for the submission of their reports, their depositions, and briefing on any related motions.

---

[5] In light of the SEC's announcement at the June 10, 2019 Conference that it intends to call eight witnesses who are not yet deposed (*see* Transcript of June 10, 2019 Conference at 13:13-20), both parties will need to expend significant efforts on depositions in the weeks before trial.

Dated: July 16, 2019
     New York, New York

Respectfully submitted,

**LATHAM & WATKINS LLP**

/s/ Richard D. Owens
Richard D. Owens
Nicholas L. McQuaid
Alysha M. Naik
885 Third Avenue
New York, NY 10022
Tel:    (212) 906-1200
Fax:    (212) 751-4864
Email: richard.owens@lw.com
       nicholas.mcquaid@lw.com
       alysha.naik@lw.com


**NORTON ROSE FULBRIGHT US LLP**

/s/ Steve M. Dollar
Steve M. Dollar
David B. Schwartz
1301 Avenue of the Americas
New York, New York 10019
Tel.:    (212) 318-3000
Fax:    (212) 318-3400
Email: steve.dollar@nortonrosefulbright.com
       david.schwartz@nortonrosefulbright.com

Kevin J. Harnisch (*pro hac vice*)
799 9th Street NW, Suite 1000
Washington, District of Columbia 20001-4501
Tel.:    (202) 662-4520
Fax:    (202) 662-4643
Email: kevin.harnisch@nortonrosefulbright.com

Ronald D. Smith (*pro hac vice*)
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Tel.:    (214) 855-8000
Fax:    (214) 855-8200
Email: ron.smith@nortonrosefulbright.com

*Attorneys for Defendants Lek Securities
Corporation and Samuel Lek*