UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

Plaintiff,

v.

CASE NO. 17-CV-1789 (DLC)

LEK SECURITIES CORPORATION,
SAMUEL LEK,
VALI MANAGEMENT PARTNERS dba
    AVALON FA LTD,
NATHAN FAYYER, and
SERGEY PUSTELNIK a/k/a
    SERGE PUSTELNIK,
                            Defendants.

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LEK SECURITIES AND SAMUEL LEK'S MOTION TO REOPEN EXPERT DISCOVERY

David J. Gottesman
Olivia S. Choe
Sarah S. Nilson
U.S. Securities and Exchange Commission
100 F Street N.E.
Washington, D.C. 20549
Tel.: (202) 551-4881 (Choe)
Fax: (202) 772-9292
Email:  choeo@sec.gov

*Counsel for Plaintiff*

Dated:  July 29, 2019

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 2

    I.    EXPERT DISCOVERY ............................................................................................ 2

        A. Expert Discovery Deadlines .......................................................................... 2

        B. Initial Expert Disclosures.............................................................................. 2

        C. Rebuttal and Reply Expert Disclosures ........................................................ 3

    II.   THE COURT'S *DAUBERT* RULINGS .................................................................. 5

    III.  THE JUNE 2019 SCHEDULING CONFERENCE.................................................... 7

    IV.  THE LEK DEFENDANTS' MOTION.................................................................... 8

GOVERNING LAW.............................................................................................................. 9

ARGUMENT ....................................................................................................................... 10

    I.    NO GOOD CAUSE EXISTS FOR REOPENING EXPERT DISCOVERY ........... 10

    II.   THE LEK DEFENDANTS' PROPOSED EXPERTS SHOULD BE
         PRECLUDED UNDER RULE 37 ........................................................................ 14

        A.   The Lek Defendants Offer No Explanation for Their Failure to Timely
            Disclose Their Proposed Expert Witnesses ....................................................... 15

        B.   The Proposed Expert Testimony Covers the Same Topics as the
            Expert Testimony the Lek Defendants Previously Disclosed ............................. 15

        C.   Permitting New Expert Disclosures at This Late Date Will Severely
            Prejudice the SEC ........................................................................................... 18

        D.   Permitting New Expert Disclosures at This Late Date Is Impracticable
            Because Trial Is Imminent................................................................................. 24

CONCLUSION..................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Auscape Int'l v. Nat'l Geographic Soc'y*, No. 02 Civ. 6441(LAK), 2003 WL 2004463
   (S.D.N.Y. April 28, 2003) ......................................................................................... 10

*Bakalar v. Vavra*, 851 F. Supp. 2d 489 (S.D.N.Y. 2011**)** ............................................... 11

*Bastys v. Rothschild*, 154 F. App'x 260, 263 (2d Cir. 2005) .................................... 15, 19

*Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357 (2d Cir. 1991) .......................... 10

*Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527 (E.D.N.Y. 2010) ...................... 9, 11

*Every v. Makita U.S.A., Inc.*, No. 02 CIV 8545 (GEL), 2005 WL 2757952
   (S.D.N.Y. Oct. 24, 2005) ........................................................................................... 21

*Fidelity Info. Servs., Inc. v. Debtdomain GLMS Pte Ltd.*, No. 09 Civ. 7589,
   2011 WL 3665138 (S.D.N.Y. Aug. 11, 2011) .............................................................. 9

*Glowczenski v. Taser Int'l Inc.*, 594 F. App'x 723 (2d Cir. 2014) ......................... 14, 17

*Gotlin v. Lederman*, No. 04-CV-3736(ILG), 2007 WL 1429431 (E.D.N.Y. May 7, 2007)......... 12

*Hananburgh v. Metro-North Commuter RR*, No. 13-CV-2799 (JMF), 2015 WL 1267145
   (S.D.N.Y. Mar. 18, 2015) ...................................................................................... 19, 21

*Holmes v. Grubman*, 568 F.3d 329 (2d Cir. 2009) ........................................................ 9

*Jackson v. Fed. Express*, 766 F.3d 189 (2d Cir. 2014) ................................................. 11

*Jung v. Neschis*, No. 01-CV-6993, 2007 WL 5256966 (S.D.N.Y. Oct. 23, 2007)....................... 16

*King v. Friend of Farmer, Inc.*, No. 97CIV.9264 BSJ RLE, 2000 WL 290355
   (S.D.N.Y. Mar. 21, 2000)............................................................................................ 15

*Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962) ........................................................... 11

*Millenium Expressions, Inc. v. Chauss Mktg., Ltd.*, No. 02 Civ 7545 (RMB),
   2006 WL 288353 (S.D.N.Y. Feb. 6, 2006) ................................................... 19, 22, 24

*New York v. Solvent Chem. Co.*, 685 F. Supp. 2d 357 (W.D.N.Y. 2010)......................................23

*Paulus v. Holimont, Inc.*, 315 F.R.D. 13 (W.D.N.Y. 2016)....................................................passim

*Pierre v. Hilton Rose Hall & Spa*, No. 14 Civ. 3790, 2016 WL 2745821
    (E.D.N.Y. May 11, 2016)....................................................................11, 17, 18

*Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*,
    282 F.R.D. 76 (S.D.N.Y. 2012)................................................................14

*Rodriguez v. Ortiz*, No. 92 Civ. 1385, 1995 WL 728438 (S.D.N.Y. Dec. 8, 1995) ...............10, 14

*Rubik's Brand Ltd. v. Flambeau, Inc.*, 329 F.R.D. 55 (S.D.N.Y. 2019)......................................11

*SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1473 (2d Cir. 1996) .............................................3

*Scott v. N.Y. Dep't of Corr.*, 445 F. App'x 389 (2d Cir. 2011)....................................................11

*Softel, Inc. v. Dragon Med. & Sci. Comms., Inc.*, 118 F.3d 955 (2d Cir. 1997)...................passim

*Venite v. St. Luke's/Roosevelt Hosp.*, No. 01 Civ. 4067(SAS), 2002 WL 1461493
    (S.D.N.Y. July 3, 2002)....................................................................12, 21, 23

*Wolak v. Spucci*, 217 F.3d 157, 161 (2d Cir. 2000)............................................................21, 24

*Young v. Sw. Airlines Co.*, No. 14-CV-1940(LDH), 2016 WL 3257008
    (E.D.N.Y. May 4, 2016)....................................................................16

## Statutes and Rules

15 U.S.C. § 78t(a) .........................................................................................3

Fed. R. Civ. P. 16(b)(4) .................................................................................9

Fed. R. Civ. P. 26(a)(2).................................................................................9

Fed. R. Civ. P. 37(c)(1)...........................................................................9, 14, 18

## PRELIMINARY STATEMENT

Plaintiff Securities and Exchange Commission opposes the Lek Defendants' motion to reopen expert discovery.  ECF No. 390.[1]  A year after the close of expert discovery, months after the Court excluded their original experts, and just two months before trial is scheduled to commence, the Lek Defendants seek to disclose the reports of two entirely new experts.[2]  They offer no sufficient justification for their failure to comply with the Court's scheduling orders, nor do they provide an adequate excuse for their delay in notifying the Court or the SEC that they might seek to introduce new expert testimony.

Permitting the Lek Defendants to offer new expert reports and opinions less than 60 days before trial would severely prejudice the SEC in ways that cannot be remedied.  The SEC is already far along in its preparation for trial based on the current slate of expert witnesses and would be unfairly sandbagged by the introduction of two new experts, who would be offering new opinions and new analyses.  Indeed, at this late date, in the midst of final trial preparations, it would be impossible for the SEC and its expert witnesses to review, absorb, evaluate, and respond to myriad new expert opinions and disclosures; and for the SEC to identify any necessary rebuttal experts, conduct depositions of two new experts, and have sufficient time for the filing and briefing of any appropriate *Daubert* motions and the tailoring of its case to the Court's rulings upon such motions.

The Lek Defendants may be unhappy with the Court's *Daubert* rulings and may have recently chosen to hire new trial counsel, but they should not be permitted to sandbag the SEC on what, in a case as complex as this, is essentially the eve of trial.

---

[1] The Lek Defendants' Memorandum of Law (ECF No. 391) is denoted "Lek Br." throughout.

[2] The Lek Defendants have proposed that their new experts "complete their expert reports by August 23, 2019."  Lek. Br. 9.

## BACKGROUND

### I.   EXPERT DISCOVERY

#### A.   Expert Discovery Deadlines

On August 3, 2017, the Court entered a scheduling order requiring disclosure of expert

reports "by the party bearing the burden on an issue" by March 16, 2018, and requiring

disclosure of rebuttal expert testimony by April 20, 2018 and completion of all expert discovery

by May 18, 2018.  ECF No. 98.  In subsequent scheduling orders, the deadlines for disclosure of

rebuttal experts, reply experts, and the completion of expert discovery were set for May 11,

2018, June 22, 2018, and August 3, 2018, respectively.  *See* ECF No. 146, 177, 186.  At the

request of the Lek Defendants, the close of expert discovery was ultimately extended to August

21, 2018.  ECF No. 195.[3]

#### B.   Initial Expert Disclosures

On March 16, 2018, the SEC timely disclosed two experts:  Professors Terrence

Hendershott and Neil Pearson (*see* ECF Nos. 213-1, 239-1), although the Lek Defendants had

been made aware in April 2017 that the SEC was relying on Professor Hendershott and had

obtained substantial discovery relating to Hendershott's opinions at that time.[4]  These disclosures

made clear that (1) the SEC was offering Professor Hendershott as an expert in market

microstructure who had analyzed Avalon's equity trading activity and would provide opinions,

---

[3] While the Lek Defendants contend that the Court has modified fact and expert discovery deadlines "often at the request of the SEC," Lek Br. 2, 13, in fact, during discovery, the parties jointly requested multiple extensions, *see* ECF Nos. 113, 141, 160, 165, 167, 173, 175, in more than one instance due to issues raised by defense witnesses, *see, e.g.*, ECF Nos. 173, 195.

[4] In connection with preliminary injunction proceedings, the SEC disclosed an extensive report by Professor Hendershott, a supplemental report, and voluminous related discovery in April and June 2017.  ECF Nos. 210-1, 210-5.  Professor Hendershott was also deposed for eight hours in May 2017.  ECF No. 18, ¶ 6.  A second supplemental report authored by Professor Hendershott was disclosed on March 16, 2018, and he was deposed a second time, for four hours, on August 3, 2018.  ECF Nos. 239-1, 194.

among other things, about whether that trading activity was consistent with a manipulative layering strategy; and (2) the SEC was offering Professor Pearson as an expert in the options markets, who had analyzed Avalon's options and equity trade data and would provide opinions, among other things, about whether that trading activity was consistent with a manipulative cross-market strategy.  *See* ECF No. 210-1, 210-5, 239-1, 213-1.

The Lek Defendants disclosed Roger Begelman on March 16, 2018, and he purported to offer expert opinions concerning Lek Securities' compliance, surveillance, and risk controls in the context of industry standards.  *See* ECF No. 251-1, at 3; *see also* ECF No. 355, at 3-7 (noting that Begelman described "what are, in his view, some of the difficulties that broker-dealers face when trying to surveil for manipulative layering in the equities markets").[5]  At the time of this disclosure, the case had been pending for a year (*see* ECF No. 1), and the Lek Defendants were fully familiar with the issues in the case.  During that year, the Lek Defendants had made the strategic decision to select as their compliance expert someone who had no "relevant experience at a broker-dealer" and "no experience related to the detection or surveillance of layering in the equities market."  ECF No. 355, at 8.

## C.    Rebuttal and Reply Expert Disclosures

On May 11, 2018, the Lek Defendants disclosed two rebuttal experts:  David Ross and Alan Grigoletto.  At the time of these disclosures, the Lek Defendants had been in possession of Pearson's report and analyses for almost two months and had spent well over a year examining the bulk of Hendershott's opinions and analyses.  They had made the tactical decision to select Ross as their rebuttal expert.  Ross is an executive vice president at Compass Lexecon, who has

---

[5] The Lek Defendants presumably disclosed Begelman as an expert on this date because, as to control person liability, Lek Securities is the "party bearing the burden" on the affirmative defense of good faith.  ECF No. 98; *see* 15 U.S.C. § 78t(a); *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1473 (2d Cir. 1996).

"never worked as a trader or in the securities industry"; whose "principal claim to expertise" was working as an expert, although never "in a case involving layering or cross-market manipulation"; and who "lacked the kind of advanced knowledge about market structures and trading that would enable him to offer an informed and reliable expert opinion relevant to this action." ECF No. 349, at 48-50.

In his rebuttal reports, Ross "review[ed] and evaluate[d]" Hendershott's and Pearson's analyses. ECF No. 244-7, ¶ 9; ECF No. 244-8, ¶ 9. Specifically, he examined the criteria used by Hendershott and Pearson to identify potentially manipulative trading activity and purported to identify weaknesses in those criteria. *E.g.*, ECF No. 244-7, ¶¶ 17, 20-22; ECF No. 244-8, ¶¶ 10, 12-18; *see also* ECF No. 349, at 13-16, 32-34. Ross proceeded to opine that Hendershott's and Pearson's analyses were "fundamentally flawed" and that they failed to establish that Avalon was engaged in either manipulative trading strategy. *E.g.*, ECF No. 244-7, ¶ 17; ECF No. 244-8, ¶ 10. In forming these opinions, Ross also conducted his own analyses of Avalon's trading data.

As for Grigoletto, he purported to "[p]rovide relevant information concerning the background and functioning of the equities and options markets," to evaluate whether Avalon's trading was consistent with either layering or the cross-market strategy, and to assess the conclusions drawn by Hendershott and Pearson. ECF No. 254-1, at 2-3.

On June 22, 2018, the SEC served the Lek Defendants with Hendershott's and Pearson's replies to Ross and Grigoletto.[6] ECF Nos. 244-9, 244-10, 254-2, 254-3. These replies were necessarily tailored to the opinions and analyses set forth in Ross's and Grigoletto's rebuttal reports and involved significant work on the part of both Hendershott and Pearson.

---

[6] In addition, the SEC submitted the reply of expert witness Lawrence Pines in response to Grigoletto, but not Ross. ECF No. 254-4.

Hendershott, Pearson, Begelman, Ross, and Grigoletto were all deposed in July and August 2018, Hendershott for the second time.

## II.    THE COURT'S *DAUBERT* RULINGS

On August 24, 2018, the Lek Defendants moved for summary judgment.  *See* ECF No. 214, 218.  Much of their motion was based upon the proffered opinions of Ross, Grigoletto, and Begelman.  They also filed *Daubert* motions to exclude Hendershott and Pearson.  ECF Nos. 208, 211.

On October 5, 2018, the SEC filed an opposition to the Lek Defendants' summary judgment motion as well as *Daubert* motions to exclude Ross, Grigoletto, and Begelman.  ECF Nos. 241, 247, 250, 252.

On March 14, 2019, the Court denied the Lek Defendants' motions to exclude Hendershott and Pearson.  The Court also granted in part the SEC's motions to exclude Ross and Grigoletto.  ECF No. 349.  In a detailed opinion, the Court reviewed Ross's analyses and qualifications and found him "unqualified to give an opinion about the phenomena of layering and cross-market manipulation or about high-frequency trading practices more generally," because his "generic expertise" as an expert witness did not "enable him to offer an informed and reliable expert opinion relevant to this action."  *Id.* at 48-50.  The Court further found that Ross's opinions "rest on false assumptions, display faulty logic, depend on mischaracterizations, and would lead the jury astray if admitted."  *Id.* at 52.  The Court concluded that Ross could testify about a limited number of calculations, but only "to the extent they are tethered to other relevant and admissible expert testimony."  *Id.* at 57.  The Court specifically precluded Ross from testifying on the "significance of these calculations."  *Id.*

As for Grigoletto, the Court found that while he was qualified to testify about the functioning of the U.S. securities markets and about options trading, his opinions were nevertheless largely "naked" and "conclusory statements" without "any supporting analysis." *Id.* at 64.  While the Court found many of Grigoletto's opinions to be "just flat wrong," the Court did identify three limited areas in which Grigoletto's opinions – while "shaky" and "weak" – were admissible.  *Id.* at 65-67.  The Court also permitted Grigoletto to testify about "general market functioning."  *Id.* at 80.  The Court subsequently granted in part the Lek Defendants' motion for reconsideration, permitting limited additional testimony from Ross concerning three other calculations.  ECF No. 374.

On April 8, 2019, the Court granted the SEC's motion to exclude Begelman.  ECF No. 355.  The Court concluded that Begelman was "unqualified to give an opinion about the adequacy of a broker-dealer's systems and procedures to detect and prevent manipulative layering."  *Id.* at 8.  The Court further noted that Begelman's opinions were "not grounded in data or statistics," "not supported by citations to peer-reviewed literature," and "not based on a comparative study of other broker-dealers' compliance practices," and that his opinions were in any event largely inadmissible narrative.  *Id.* at 11-12.  The Lek Defendants moved for reconsideration of the Court's ruling, which was denied.  ECF No. 375.

In neither of their motions seeking reconsideration did the Lek Defendants raise the possibility of identifying new expert witnesses.  *See* ECF Nos. 353, 363, 366, 369.  Nor did they request in the alternative that they be permitted to identify and disclose new expert witnesses to replace Begelman and Ross.

### III.     THE JUNE 2019 SCHEDULING CONFERENCE

On April 10, 2019, the Court entered a scheduling order placing this case on the July 22, 2019 trial-ready calendar.  ECF No. 356.  On May 10, 2019, the SEC filed a letter requesting that trial be moved to November 2019 because of multiple witness scheduling conflicts.  ECF No. 376.  That same day, the Lek Defendants filed a letter stating that they were "ready to try this case beginning July 22."  ECF No. 378.

On June 3, 2019, new counsel for the Lek Defendants entered their appearances.  *See* ECF Nos. 381-383.

On June 10, 2019, the Court held a scheduling conference, at which all parties appeared. During the conference, the Court recessed in order to allow the counsel for the parties to discuss a mutually agreeable trial date.  ECF No. 387, at 4.  New counsel for the Lek Defendants and original counsel participated in those discussions.  At no point during the discussions did any counsel for the Lek Defendants notify the SEC that they planned to identify, or were even considering identifying, new expert witnesses.  Based on those discussions, the parties agreed to a trial date of October 21, 2019, and advised the Court accordingly.  *Id.* at 5-6.

As the conference proceeded, the Court referred specifically to the expected testimony of the Lek Defendants' experts.  *Id.* at 7, 17.  The Court also asked the parties how many witnesses they planned to call at trial.  *Id.* at 12-13.  Again, counsel for the Lek Defendants failed to advise either the Court or the SEC that they might seek to call additional expert witnesses.  The Court and the parties also discussed scheduling of pre-trial depositions of witnesses not yet deposed. *Id.* at 10-13.  Neither set of attorneys for the Lek Defendants chose to alert the Court to the possibility that depositions of new expert witnesses might be required.

On June 12, 2019, the Court entered a scheduling order setting trial for October 21, 2019. ECF No. 384.  Under that order, the Joint Pretrial Order and any motions *in limine* are due on September 13, 2019.  Depositions of trial witnesses not yet deposed are to be completed by October 18, 2019.  On July 11, 2019, the Court entered an order requiring the parties to exchange summary charts no later than August 30, 2019.

## IV.    THE LEK DEFENDANTS' MOTION

On July 16, 2019, over one month after the scheduling conference, the Lek Defendants filed a motion asking the Court to reopen expert discovery.  The Lek Defendants do not merely seek to submit a supplemental report or analysis from one of their original experts, nor are they requesting additional documentation or even deposition testimony from one of the SEC's expert witnesses.  Instead, they seek something far more consequential, which is to introduce two entirely new experts.  The Lek Defendants did not advise the SEC of their intent to file this motion or their plan to identify and disclose additional expert witnesses until July 15, 2019.

The Lek Defendants have asked the Court to permit them to disclose two additional expert witnesses:  Professor Chester Spatt and James Cangiano.  Although the new experts appear to opine on topics similar to those addressed by Ross and Begelman, their actual proposed opinions appear to plow new ground.  For example, according to the Lek Defendants, Spatt – like Ross before him – will "examine the criteria identified by Professor Hendershott and offer his assessment of the strengths and weaknesses of those criteria in identifying manipulative trading."  But Spatt will also "conduct his *own* analysis of the Avalon trading data."  Lek Br. 6 (emphasis added).  The Lek Defendants also seek to have Spatt "assess the criteria identified by Professor Pearson" and testify about his own "assessment of the Avalon trading data focused on the cross-market strategy."  *Id.*

As for Cangiano, the Lek Defendants assert that he will testify on topics similar to those addressed by Begelman (*i.e.*, "the industry standard in developing programs aimed at detecting and controlling for market manipulation"), but they also specify that he will testify about his own "*independent* analysis of LSC's compliance programs." *Id.* at 8-9 (emphasis added).

## GOVERNING LAW

Under Rule 16(b)(4) of the Federal Rules of Civil Procedure, a scheduling order "may be modified only for good cause and with the judge's consent." A finding of "good cause" depends on the "diligence of the moving party." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *see also Kassner v. 2nd Ave. Delicatessen*, 496 F.3d 229, 244 (2d Cir. 2007).

"To satisfy the good cause standard the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 536 (E.D.N.Y. 2010) (internal quotation marks and citation omitted). A party cannot demonstrate diligence – and thus cannot demonstrate good cause – if the proposed amendment rests on information that the party knew or should have known in advance of the deadline. *See Fid. Info. Servs., Inc. v. Debtdomain GLMS Pte Ltd.*, No. 09 Civ. 7589, 2011 WL 3665138, at *2 (S.D.N.Y. Aug. 11, 2011). The burden of demonstrating good cause rests with the movant. *See Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009) (citation omitted).

Under Rule 26(a)(2), parties are required to disclose the identity of any person who "may be used at trial" to present expert testimony "at the times and in the sequence directed by the court." Fed. R. Civ. P. 26(a)(2)(a), (c). A party who fails to identify a witness as required by Rule 26 is not allowed to present that witness at trial unless the failure "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

"[W]hen a court issues a clearly articulated order requiring specified discovery and a party fails to comply with that order, the court has the authority to impose Rule 37(b) sanctions," including preclusion. *Rodriguez v. Ortiz*, No. 92 Civ. 1385, 1995 WL 728438, at *1 (S.D.N.Y. Dec. 8, 1995) (citing *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991)). In deciding whether to preclude an expert witness due to a Rule 26 violation, courts consider "(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Softel, Inc. v. Dragon Med. & Sci. Comms., Inc.*, 118 F.3d 955, 961 (2d Cir. 1997). Whether to preclude the testimony of an expert witness untimely disclosed falls within the Court's broad discretion. *Id.*

## ARGUMENT

### I.   NO GOOD CAUSE EXISTS FOR REOPENING EXPERT DISCOVERY

The Lek Defendants have not demonstrated good cause justifying the designation of new experts or the reopening of expert discovery. They offer no sufficient reason – let alone any compelling reason – why the Court should permit the disclosure of new expert testimony a year after the close of discovery. *See, e.g.*, *Auscape Int'l v. Nat'l Geographic Soc'y*, No. 02 Civ. 6441(LAK), 2003 WL 2004463, at *1 (S.D.N.Y. April 28, 2003) (where "scheduling order unambiguously required completion of *all* discovery, including experts," by a certain date, plaintiffs would not be allowed to untimely designate expert).

The Lek Defendants had a year between the filing of the Complaint (in March 2017) and the deadline for initial expert disclosures (in March 2018) to identify and disclose an appropriate compliance expert. They had more than a year after the filing of the Complaint (and over a year

after the disclosure of the bulk of Hendershott's analyses and opinions) to identify and disclose

an appropriate rebuttal expert regarding the manipulative layering and cross-market strategies.

They offer no reason why the deadlines established by the Court "could not have been

reasonably met." *Enzymotec Ltd.*, 754 F. Supp. 2d at 536.  Nor do they point to any facts or

information they did not have during the original discovery period, which might have prevented

them from timely identifying appropriate experts. *Cf. Bakalar v. Vavra*, 851 F. Supp. 2d 489,

493-494 (S.D.N.Y. 2011**)** (motion to reopen discovery denied where defendants sought

additional expert discovery to interpret documents that had been in their possession before end of

fact discovery and in order to rebut a defense that was known at the outset of the action).[7]

 Indeed, the record makes clear that the Lek Defendants knew precisely what sorts of

experts they should identify during the original discovery period and that they actually attempted

to identify such experts.  They and their counsel made the tactical decision to select Ross and

Begelman.  That the experts they chose were unqualified is not good cause for reopening

discovery.  "[A]s with all litigants, [the Lek Defendants are] bound by the concessions of freely

retained counsel, including tactical discovery decisions."  *Pierre v. Hilton Rose Hall & Spa*, No.

14 Civ. 3790, 2016 WL 2745821, at *4 (E.D.N.Y. May 11, 2016) (citing *Jackson v. Fed.

Express*, 766 F.3d 189, 198 (2d Cir. 2014)) (internal quotation marks omitted); *see also Scott v.

N.Y. Dep't of Corr.*, 445 F. App'x 389, 391 (2d Cir. 2011) (citing *Link v. Wabash R.R. Co.*, 370

U.S. 626, 633-34 (1962), for the proposition that a party who voluntarily chooses her attorney

---

[7] This case is thus plainly distinguishable from *Rubik's Brand Ltd. v. Flambeau, Inc.*, 329 F.R.D. 55 (S.D.N.Y. 2019), upon which the Lek Defendants repeatedly rely.  *See* Lek Br. 9, 10, 12.  In that case, the plaintiff filed its motion within a few weeks after a deposition at which it received new information and a week after receiving documents from the defendant.  *Id.* at 59.  And in that case, the plaintiff sought permission to serve an additional expert report *before* the close of expert discovery, where no trial date had yet been set.  *Id.* at 57, 59, 60.  By contrast, the Lek Defendants point to no new facts, evidence, expert opinions, or theories of the case that might justify reopening expert discovery a year after it closed, and just two months before trial. Indeed, even in *Rubik's*, the court noted that whether good cause existed was a "close call."  *Id.*

generally cannot avoid the consequences of the acts or omissions of this freely selected agent);

*Gotlin v. Lederman*, No. 04-CV-3736(ILG), 2007 WL 1429431, at *3 (E.D.N.Y. May 7, 2007)

("[A]n application to reopen discovery should be denied where the moving party has not

persuaded the Court that it was impossible to complete the discovery by the established

deadline." (internal quotation marks and brackets omitted)).

 The Lek Defendants contend that they have shown diligence because they complied with

all of the Court's deadlines during the original discovery period.  Lek Br. 10-11.  But the fact

that the Lek Defendants timely disclosed their *original* experts does not in any way establish that

they were diligent in identifying or disclosing their *new* proposed experts.  Indeed, the Lek

Defendants admit they took no steps to identify either Spatt or Cangiano until well after the close

of expert discovery.  *See id.* at 11.

 The Lek Defendants also argue that they have been diligent because they "acted swiftly

to seek court approval for reopening expert discovery after the Court ruled on the Lek

Defendants' motions for reconsideration and adjourned the trial date."  *Id.* at 11.  As an initial

matter, the Court's *Daubert* rulings do not provide grounds for the Lek Defendants to reopen

discovery or designate new experts.  The fact that the Lek Defendants have recently discovered

they could retain Spatt and Cangiano – and presumably wish they had retained them instead of

Ross and Begelman – is "not good cause for the failure to comply with the Court's scheduling

deadlines."  *Paulus v. Holimont, Inc.*, 315 F.R.D. 13, 15 (W.D.N.Y. 2016) ("While Mr. Puckett's

opinion may be more persuasive, the fact of the matter is that Plaintiffs already retained and

disclosed an expert to opine on this subject."); *Venite v. St. Luke's/Roosevelt Hosp.*, No. 01 Civ.

4067(SAS), 2002 WL 1461493, at *2 (S.D.N.Y. July 3, 2002) (refusing to permit defendants to

disclose expert witness two months after close of expert discovery where defendants argued that

they had "lost" their original expert witness and only recently secured another expert witness).

Nor does the SEC's request to continue the trial due to witness availability provide a basis for

reopening expert discovery.

In any event, the Lek Defendants did not "act[] swiftly" in notifying either the Court or

the SEC of their plans to identify new experts.  The Court issued its *Daubert* rulings excluding

Ross and Begelman four and five months ago, respectively.  ECF Nos. 349, 355.  The Lek

Defendants provided no indication at that time that they might seek to identify new experts.  The

Lek Defendants then moved for reconsideration of those rulings, but nowhere in their motions

for reconsideration did they suggest that they might seek to have two new expert witnesses

testify at trial should the Court deny those motions.  Nor did either motion include a request in

the alternative for permission to reopen expert discovery and permit them to identify and disclose

new experts.  *See* ECF Nos. 353, 363, 366, 369.  The Lek Defendants again failed to provide any

notice of their intent to call two new experts at trial when the Court issued its decisions rejecting

the motions for reconsideration in early May 2019.  ECF Nos. 374, 375.  Indeed, on May 10,

2019, the Lek Defendants sent a letter to the Court emphasizing:  "To be clear, the Lek

Defendants are ready to try this case beginning July 22."  ECF No. 378.

At the June 10, 2019 scheduling conference before the Court, the Lek Defendants

remained silent regarding their intent to disclose new expert witnesses.  "[N]o issues were raised

… about the need for any additional expert discovery."  *Paulus*, 315 F.R.D. at 15 (no good cause

existed to reopen expert discovery and allow plaintiff to disclose expert witness two months

before trial given, inter alia, plaintiff's silence at scheduling conference setting trial date).  The

Lek Defendants said nothing about their plans to either the SEC or the Court, even when the

Court expressly raised the topic of expected testimony of the Lek Defendants' expert witnesses, and when the Court discussed how many trial witnesses would be called.

Instead, they waited over one month after the conference and after the trial date had been set – until July 16 – to raise the issue with the Court. Such delay is hardly diligence. *See Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 80 (S.D.N.Y. 2012) (no good cause existed where counsel failed to mention "to their adversaries or the Court" that "additional discovery might be necessary" and "instead did the opposite, communicating with Defendants and the Court in such a manner as to imply that the expert discovery deadline would be met"); *see also Glowczenski v. Taser Int'l Inc.*, 594 F. App'x 723 (2d Cir. 2014) (affirming denial of motion to reopen discovery where appellants "waited nearly six months after learning that [their expert] would be excluded, until well after Defendants had been put to the burden of preparing motions for summary judgment, to seek leave to reopen discovery and present a new expert").

The Lek Defendants have failed to establish anything close to good cause for identifying new experts and reopening expert discovery, and their motion should therefore denied.

## II.     THE LEK DEFENDANTS' PROPOSED EXPERTS SHOULD BE PRECLUDED UNDER RULE 37

The SEC respectfully submits that preclusion of Spatt and Cangiano is appropriate under Rule 37(b), given the Lek Defendants' failure to comply with the Court's "clearly articulated" scheduling orders. *Rodriguez*, 1995 WL 728438, at *1-2. The Lek Defendants' failure to timely identify Spatt and Cangiano is neither substantially justified nor harmless, Fed. R. Civ. P. 37(c)(1), and each of the factors set forth by the Second Circuit in *Softel* supports preclusion.

A.     **The Lek Defendants Offer No Explanation for Their Failure to Timely Disclose Their Proposed Expert Witnesses**

First, as explained above, the Lek Defendants have offered no explanation, and certainly no persuasive explanation, for their failure to timely disclose Spatt or Cangiano.  The fact that the Lek Defendants recently hired new trial counsel does not justify their failure to timely disclose Spatt and Cangiano.  *See King v. Friend of Farmer, Inc.*, No. 97CIV.9264 BSJ RLE, 2000 WL 290355, at *1 (S.D.N.Y. Mar. 21, 2000) ("[T]he fact that [the defendant's attorney] is the third counsel of the case does [not] [sic] entitle the defendant to more discovery."); *cf. Softel*, 118 F.3d at 962 (the fact that party "decided to change experts late in the period" was not a sufficient explanation for failing to comply with discovery order).

Nor does the fact that the Court has excluded Begelman's testimony and significantly limited Ross's and Grigoletto's testimony provide "substantial justification" for the Lek Defendants' untimely disclosure.  *See Paulus*, 315 F.R.D. at 15 (no legitimate explanation where "record demonstrates that it was simply newly discovered by Plaintiffs' counsel that he could retain an expert such as Mr. Puckett" who might be more persuasive than originally retained expert); *see also Bastys v. Rothschild*, 154 F. App'x 260, 263 (2d Cir. 2005) (affirming preclusion of experts whom party sought to identify after close of expert discovery "where the court had emphatically ordered that *all* discovery, including expert discovery, was to conclude by a specified date; where the court had extended that date on several occasions" and where the party "failed to articulate a reasonable explanation for its negligence in the district court").

B.     **The Proposed Expert Testimony Covers the Same Topics as the Expert Testimony the Lek Defendants Previously Disclosed**

Under *Softel*, the Court should also consider "the importance of the testimony of the precluded witness."  118 F.3d at 962.  The Lek Defendants contend that both Spatt and Cangiano

will testify on topics that are "crucially important to advancing the Lek Defendants' case at trial." Lek Br. 11.

The problem, however, is that the topics on which the Lek Defendants seek to have Spatt and Cangiano testify are the same topics on which they sought to have Ross, Grigoletto, and Begelman testify, although Spatt and Cangiano apparently will be conducting their own analyses and offering new opinions on those subjects. They seek to have Spatt review and analyze the criteria that Hendershott and Pearson employed to identify potentially manipulative trading activity and to conduct his own analysis of Avalon's trading activity (Lek Br. 6) – which is precisely what Ross (and to some extent Grigoletto) attempted to do. *See* ECF No. 244-7, ¶¶ 9, 17, 20-22; ECF No. 244-8, ¶¶ 9-10, 12-19; *see also* ECF No. 349, at 13-16, 32-34. They seek to have Cangiano testify about "the industry standard in developing programs aimed at detecting and controlling for market manipulation" and his own "independent analysis of LSC's compliance programs" (Lek Br. 8-9), which is strikingly similar to the testimony Begelman attempted to offer. *See* ECF No. 251-1, at 3 (purporting to opine on Lek Securities' compliance, surveillance, and risk controls in the context of industry standards); *see also* ECF No. 355, at 3-7 (noting that Begelman described "what are, in his view, some of the difficulties that broker-dealers face when trying to surveil for manipulative layering in the equities markets").

Even assuming the importance of such proposed testimony,[8] this factor does not weigh in the Lek Defendants' favor where they had ample opportunity to secure appropriate expert

---

[8] The Lek Defendants themselves seem uncertain of the importance of the proposed testimony of Spatt and Cangiano, citing multiple cases for the proposition that they need only show that the testimony has "possible relevance." Lek Br. 11-12 (internal quotation marks omitted). Tellingly, the cases they cite are plainly distinguishable from the case at bar. *See Young v. Sw. Airlines Co.*, No. 14-CV-1940(LDH), 2016 WL 3257008, at *3-4 (E.D.N.Y. May 4, 2016) (plaintiff who had diligently attempted to find an attorney and who had proceeded *pro se* through much of discovery was permitted to designate expert witness where trial was not imminent and defendant had expended only minimal resources on discovery to date); *Jung v. Neschis*, No. 01-CV-6993, 2007 WL 5256966, at *12, 16 (S.D.N.Y. Oct. 23, 2007) (in a case presenting a "rather bizarre set of

testimony on those subjects, but failed to do so.  *See Softel*, 118 F.3d at 962 ("While it is of course important to have an expert in a technical trial such as this, Softel did have another expert it could, and did, use."); *Paulus*, 315 F.R.D. at 17 (where proposed testimony of untimely disclosed expert was "certainly relevant to a central issue in the case," preclusion was still appropriate where party had previously "timely retain[ed] and disclose[d] another expert," even though new expert "may be more persuasive").

If the Lek Defendants currently lack experts to their liking, that is a problem entirely of their own making.  The Court should not provide the Lek Defendants with a second "bite at the apple."  *Glowczenski*, 594 F. App'x at 725 (affirming preclusion of expert where appellants "waited nearly six months after learning that [their original expert] would be excluded, until well after … motions for summary judgment, to seek leave to reopen discovery and present a new expert"); *Pierre*, 2016 WL 2745821, at *4 ("[A]lthough the discovery Plaintiff intends to pursue if discovery is reopened is relevant, he essentially seeks to redo discovery that should have been, but was not, previously sought and/or duplicate expert discovery already completed, but in hopes of more success this time.").

Indeed, the Lek Defendants' claim that the proposed testimony is "crucially important to advancing the Lek Defendants' case at trial" (Lek Br. 11) rings hollow given their own emphatic insistence, as recently as May 10, 2019, that "[t]o be clear, the Lek Defendants are ready to try this case beginning July 22."  ECF No. 378.  If the Lek Defendants were ready to proceed to trial one month *before* the date on which they now seek to disclose entirely new expert reports, that

circumstances," permitting reopening of expert discovery to allow plaintiffs to substitute new experts where original expert suffered from Alzheimer's and became unable to testify or be deposed, and where court found that plaintiffs were "not principally at fault for [original expert's] inability to be deposed and testify"); *see also* note 7, *supra* (distinguishing *Rubik's Brand Ltd.*).

expert testimony cannot have been "crucially important" to their case.  *See Pierre*, 2016 WL

2745821, at *3 (where trial was previously scheduled to commence nearly one month before date

upon which plaintiff first sought to reopen discovery, and trial was adjourned only because

defendants sought to move for summary judgment, and thus where trial would have concluded

before the date on which plaintiff sought to reopen discovery, that factor weighed against

reopening discovery).

### C.   Permitting New Expert Disclosures at This Late Date Will Severely Prejudice the SEC

The third *Softel* factor – prejudice to the SEC – weighs heavily in favor of preclusion.

The Lek Defendants seek to blindside the SEC with entirely new experts (along with those

experts' new analyses, opinions and reports) just two months before trial is scheduled to begin.

That is precisely what Rule 26 is intended to prevent.  *Paulus*, 315 F.R.D. at 18 ("Rule 37(c)(1)

is designed to prevent the practice of sandbagging an adversary with new evidence.  Yet,

allowing for Plaintiffs to present this eleventh hour expert witness would be exactly that—

sandbagging." (internal citations omitted)).

The Lek Defendants provided no indication to the SEC (or the Court) that they intended

to seek to reopen expert discovery and to proffer new expert testimony until July 15.[9]  The SEC

has thus diligently prepared for trial – and is far along in that process – with the expectation that

the Lek Defendants would present precisely those expert witnesses they had previously

disclosed, as limited by the Court's *Daubert* rulings.  That trial preparation has included

developing much of the SEC's trial witnesses' testimony (including both fact and expert

witnesses), trial materials, arguments, case theories, and jury addresses based upon the current

---

[9] It is thus disingenuous for the Lek Defendants to argue that the SEC "cannot claim any unfair surprise." Lek Br. 12.

slate of expert witnesses. This expectation was apparently shared by the Court. *See* ECF No. 387, at 7, 17 (discussing expected testimony of Grigoletto and Ross). To permit the Lek Defendants to disclose new expert reports, containing new opinions and new analyses, just two months before trial would be severely prejudicial to the SEC in multiple ways.

First, the Lek Defendants seek to have Cangiano testify as an affirmative expert on an issue as to which they bear the burden of proof – *i.e.*, Lek Securities' good faith affirmative defense to control person liability. The SEC should have the opportunity to offer a rebuttal expert on this topic. Requiring the SEC to identify, develop, and disclose a rebuttal expert witness during the last eight weeks of trial preparation would be highly prejudicial. *See Hananburgh v. Metro-North Commuter RR*, No. 13-CV-2799 (JMF), 2015 WL 1267145, at *8 (S.D.N.Y. Mar. 18, 2015) (where defendant had already designated two experts, allowing defendant to introduce "two altogether new witnesses as experts" would "prejudice Plaintiff" who "might also need to retain rebuttal experts of his own"); *Millenium Expressions, Inc. v. Chauss Mktg., Ltd.*, No. 02 Civ. 7545 (RMB), 2006 WL 288353, at *2 (S.D.N.Y. Feb. 6, 2006) (prejudice where party would "likely find it necessary to retain their own expert to rebut the plaintiff's evidence"); *Paulus*, 315 F.R.D. at 17-18 ("Defendant would not have sufficient time to prepare for … retention of … own expert witness to counter Mr. Puckett's methodology."); *cf. Bastys*, 154 F. App'x at 263 ("[B]elated disclosure would prejudice the defendants who had, as a consequence of plaintiff's failure to identify experts, not retained any of their own.").[10]

Second, reviewing, digesting, and analyzing Spatt's and Cangiano's proposed opinions and analyses would require a significant amount time and effort on the part of the SEC and its

---

[10] The fact that the SEC did not offer a rebuttal expert in response to Begelman, who was manifestly unqualified, should not prevent the SEC from offering rebuttal testimony in response to an entirely different affirmative expert.

expert witnesses.  Hendershott's and Pearson's statistical analyses of Avalon's trading data are highly technical and complex; Spatt's counter-analyses of the same voluminous trading data would presumably be highly technical and complex as well.  During the original expert discovery period, the SEC's expert witnesses required six full weeks to absorb, analyze, and respond to Ross's and Grigoletto's critiques and counter-analyses.  The SEC anticipates that at least an equivalent period of time would be required to respond to any new reports filed by Spatt and Cangiano.  *See* ECF No. 178, at 3-4 (providing opportunity for SEC to file replies in response to defense rebuttal reports).  It would be highly prejudicial to the SEC to have to engage in such intensive work during the eight weeks immediately preceding trial.  *See Paulus*, 315 F.R.D at 18 ("[I]t would be prejudicial to require Defendant to scramble to prepare for this witness by allowing discovery at this late stage, which the Court doubts would even be practical.").

The Court has already ordered that the parties disclose their trial witnesses by September 3, 2019, and depose any witnesses not yet deposed by October 18, 2019.  The parties have estimated that approximately a dozen such depositions may be necessary.  *See* ECF No. 387, at 12-13.  Conducting those depositions, when combined with the rest of trial preparation, will be difficult enough, but would create an enormous burden for the SEC if it were simultaneously trying to conduct the intensive work necessary to respond to two new experts.  The SEC's expert witnesses, both of whom have full-time positions as tenured professors, also have other commitments during the two months before trial, and have scheduled those commitments and prepared for trial in reliance on the disclosures of the Lek Defendants' original experts and the Court's Daubert rulings.  It would be unfair and impracticable to expect the SEC's expert witnesses to also analyze and prepare replies to entirely new expert reports.

Third, to the extent that Spatt and Cangiano seek to offer new theories in defense of the Lek Defendants, the SEC would be severely prejudiced by having to adjust at the last minute to those theories and to alter within a matter of weeks the presentation of its own case in response. *See Softel*, 118 F.3d at 962 (since "parameters … in a highly technical case … are largely defined by expert testimony," new testimony that "would have redrawn the boundaries of the case" would "almost certainly have prejudiced Dragon's ability to meet Softel's attack" and would have forced Dragon, "at a very late in the discovery process, to accommodate potentially significant shifts in the theories being offered against it"); *Every v. Makita U.S.A., Inc.*, No. 02 CIV. 8545 (GEL), 2005 WL 2757952, at *6 (S.D.N.Y. Oct. 24, 2005) (precluding expert where defense motion, "addressed in good faith to the theories and evidence that had been disclosed, an expensive waste of effort"); *see also Venite*, 2002 WL 1461493, at *3 ("The absence of expert testimony may weaken defendants' case but, after the deadline for disclosure had passed, plaintiff had a right to assume that defendants would adduce evidence … primarily through testimony other than that of an expert." (internal brackets omitted)).

Fourth, depositions of Spatt and Cangiano would need to follow the submission of all rebuttals and replies.  Conducting such depositions during the last few weeks before trial – in the midst of final trial preparations – would, even if possible, further significantly prejudice the SEC. *Wolak v. Spucci*, 217 F.3d 157, 161 (2d Cir. 2000) ("Because the disclosure came so late, defendants would have been hard pressed to depose Wolak's expert and to find one of their own."); *Hananburgh*, 2015 WL 1267145, at *8 (finding prejudice weighed in favor of preclusion where permitting defendant to designate two new expert witnesses would require plaintiff to conduct additional depositions); *Every*, 2005 WL 2757952, at *6 ("Every's new expert theory cannot be presented without giving Makita an opportunity to depose his experts"); *Paulus*, 315

F.R.D. at 17-18 ("Defendant would not have sufficient time to prepare for cross-examination of the witness" or to "conduct discovery to counter Mr. Puckett's report.").

Even if possible, there would be virtually no time following such depositions for the SEC to draft and file any appropriate *Daubert* motions relating to Spatt and Cangiano, for those motions to be briefed, for the Court to rule on them, and for the SEC to adjust its trial strategy in response to such rulings. *See Millenium Expressions, Inc.*, 2006 WL 288353, at *2 (defendants would be prejudiced if they had to incur trouble and expense of taking new expert's deposition and "potentially moving to exclude his testimony on the basis of *Daubert*").

The Lek Defendants argue that the SEC "will have a lengthy time period to consider the expert testimony during trial preparation." Lek Br. 12. Eight weeks – let alone the final eight weeks of trial preparation in such a highly complex case – is not a "lengthy time period" in which to (1) review, absorb, digest, analyze, and develop responses to newly proffered expert testimony, (2) identify any appropriate rebuttal experts, (3) conduct depositions of two new expert witnesses, and (4) file any appropriate *Daubert* motions. It is certainly not enough time for the SEC to respond to and alter its case to meet any new theories the Lek Defendants may seek to offer through their new proposed experts.[11]

---

[11] The Lek Defendants argue that the Court previously modified the discovery schedule to allow the SEC to serve reply expert reports "nearly 100 days after the deadline for close of expert discovery had passed." Lek Br. 13. They misrepresent the record. On April 10, 2018, months *before* the close of expert discovery, and a month before the deadline for filing of rebuttal expert reports, the SEC asked the Court to modify the discovery schedule. ECF No. 169. The Court ultimately granted that request, entering a schedule agreed upon by the SEC *and* the Lek Defendants, which expressly contemplated the disclosure of reply reports. ECF No. 177, at 2. Under that schedule, as subsequently modified, the SEC timely disclosed its reply expert reports on June 22, 2018 – well before the close of expert discovery. ECF No. 186, at 1-2. The SEC's timely disclosure of reply expert Lawrence Pines, on the date set forth in the Court's scheduling order for reply disclosures and over a month *before* the close of expert discovery, is in no way analogous to the Lek Defendants' effort to disclose two new experts, including an affirmative expert, over a year *after* the close of expert discovery.

The Lek Defendants also argue that the SEC will not be prejudiced by their last-minute disclosure of expert witness testimony because Spatt and Cangiano will not "expand[]" the scope of discovery or the subject matter of testimony to be presented at trial," but will rather simply "supplement the extensive factual and expert testimony generated in this case."  Lek Br. 13-14. They cite *New York v. Solvent Chem. Co.*, 685 F. Supp. 2d 357 (W.D.N.Y. 2010), for the proposition that there is no prejudice when a defense expert's testimony covers topics "covered previously by the plaintiff's expert."  *Id*. at 13.  But in *Solvent*, the expert at issue had been *timely* disclosed by the defendant.  The plaintiff sought to strike only those opinions that were "different from those expressed in their pre-trial expert reports."  685 F. Supp. 2d at 413.  The question was therefore whether the rebuttal expert's testimony went "beyond the scope of the other party's expert testimony and introduce[d] new opinions not previously disclosed."  *Id.* at 414.  *Solvent* is not apposite here, where the Lek Defendants seek to offer two entirely new experts a year after the close of expert discovery.

Moreover, the fact that the proposed testimony of the Lek Defendants' proposed new experts will cover key issues in the case does not mean that the SEC can easily anticipate the nature of the new analyses they will perform, the particular opinions they will offer, or the new defense theories their testimony will support.  Just because the topics they will cover are "basic element[s] of this case, it does not follow that [the SEC] should have prepared [its] case based on assumptions about a non-existent expert report."  *Venite*, 2002 WL 1461493, at *3 (rejecting argument that "[b]ecause plaintiff knew the main issues in this case," she would be able to "surmise[] what the report and deposition testimony would be of defendants' expert and as a result," could not claim surprise).

**D.    Permitting New Expert Disclosures at This Late Date Is Impracticable Because Trial Is Imminent**

The fourth and final factor also weighs in favor of preclusion.  Trial is imminent.  It is scheduled to commence just two months after the Lek Defendants seek to disclose new expert reports.  Courts have repeatedly refused to permit the late identification and disclosure of expert witnesses even where no trial date has been set.  *See, e.g.*, *Softel*, 118 F.3d at 962 ("[E]xpeditious management of discovery schedules is especially important in cases of this nature because they require extensive expert involvement over lengthy periods of time.").  If the Court were to permit the Lek Defendants to identify two new experts at this late date, it would also need to grant additional time for the SEC to respond.  "When trial courts permit deadline slippage of this sort, trials cannot be scheduled when they ought to be, resulting in the backup of other cases and eventual scheduling chaos as a series of bottlenecks builds."  *Id.* at 962-63; *Wolak*, 217 F.3d at 161 ("Even if requested, however, a continuance would have come at the expense of trial efficiency."); *see also Millenium Expressions, Inc.*, 2006 WL 288353, at *3 (precluding expert even though "the case is not set for trial" and "it would theoretically be possible to reopen discovery to allow the development of expert evidence").

Nor would resetting the trial be an acceptable outcome.  The case has been on file for nearly two and a half years, and the SEC deserves to have the trial take place as scheduled, without the disruption and undue burdens that would result from the Lek Defendants' belated addition of two new expert witnesses.  The SEC's witnesses have also set their schedules, altered personal and professional commitments, and made preparations – all in expectation of an October 21 trial.  It would be unfair to disrupt their schedules and personal and professional lives by now resetting the trial to accommodate an untimely and unjustified expert disclosure by the Lek Defendants.

## <u>CONCLUSION</u>

If the Lek Defendants are dissatisfied with their current roster of expert witnesses, that is a problem entirely of their own making.  No one but the Lek Defendants should suffer the consequences.  The Lek Defendants' motion to reopen discovery should be denied and the proposed experts they seek to offer should be precluded from testifying at trial.


Dated:  July 29, 2019                                      Respectfully submitted,

                                                           /s/  Olivia S. Choe
                                                           David J. Gottesman
                                                           Olivia S. Choe
                                                           Sarah S. Nilson
                                                           U.S. Securities and Exchange Commission
                                                           100 F Street N.E.
                                                           Washington, D.C. 20549
                                                           Tel.: (202) 551-4881 (Choe)
                                                           Fax: (202) 772-9292
                                                           Email:  choeo@sec.gov

                                                           *Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was filed via CM/ECF and thereby served on all counsel of record.


Dated:  July 29, 2019                                    /s/  Olivia S. Choe
                                                                         Olivia S. Choe