UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE
COMMISSION,

                    Plaintiff,

          v.                                    CASE NO. 17-CV-1789 (DLC)

LEK SECURITIES CORPORATION et al.,

                    Defendants.

---

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS AND VERDICT FORM

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits the

following proposed jury instructions and verdict form for the trial against defendants Avalon FA

Ltd, Nathan Fayyer, and Sergey Pustelnik ("Avalon Defendants") scheduled to start on October

21, 2019.  The SEC requests that it be permitted to submit amended instructions and to propose

additional instructions, as may be appropriate, based upon the evidence adduced at trial and any

instructions proposed by the Avalon Defendants.

Dated:  September 13, 2019                 Respectfully submitted,

                                           /s/  Olivia S. Choe
                                           David J. Gottesman
                                           Olivia S. Choe
                                           Sarah S. Nilson
                                           U.S. Securities and Exchange Commission
                                           100 F Street N.E.
                                           Washington, D.C. 20549
                                           Tel.: (202) 551-4881 (Choe)
                                           Fax: (202) 772-9292
                                           Email:  choeo@sec.gov

                                           *Counsel for Plaintiff*

## General Instructions

### Duty of the Court and Jury

I will now instruct you as to the law.  It is your duty to accept these instructions of law and apply them to the facts as you determine them.  If an attorney or a witness has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.  You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate.

You, the members of the jury, are the sole and exclusive judges of the facts.  You must weigh and consider the evidence without regard to sympathy, prejudice, or passion for or against any party.  You decide upon the weight of the evidence that has been presented to you; you determine the credibility of the witnesses; you resolve such conflicts as there may be in the testimony; and you draw whatever reasonable inferences you decide to draw from the facts as you determine them.

What has been said by the lawyers in the opening statements, closing arguments, objections, or questions is not evidence.  The evidence before you consists of the answers given by witnesses, the exhibits that were received in evidence, and any stipulations of the parties that were received in evidence.  Evidence also includes admissions and answers to what are called "interrogatories," which I will explain to you later.  You may not consider any testimony that I have told you to disregard or that was stricken from the record.  Nor may you consider anything you heard about the contents of any exhibit that was not received in evidence.

What I say is not evidence.  The rulings I have made during the trial are not any indication of my views of what your decision should be.[1]

---

[1] *Pesce v. City of N.Y.*, Case No. 12-cv-8663(DLC), Docket No. 81, at 2 (S.D.N.Y. May 4, 2016); *SEC v. Payton*, Case No. 14-cv-4644(JSR), Docket No. 133, at 4 (S.D.N.Y. March 1, 2016); 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 71.01, Instructions 71-2, 71-3 (2019); 3 Kevin F. O'Malley *et al*., FED. JURY PRAC. & INSTR. §§ 103:01, 103:30 (6th ed. 2019).

Duty of Impartiality / The Parties

The plaintiff in this case is the Securities and Exchange Commission, or the SEC.  The SEC is an independent agency of the federal government that regulates the securities industry and enforces the federal securities laws.  The SEC has the authority to file lawsuits alleging violations of those laws.  It also has the authority to issue rules that have the force of law and must be followed.

There are three defendants in this case.  The first defendant is Avalon FA Ltd, which I will call Avalon.  Avalon is a foreign trading firm headquartered in Ukraine that traded securities through an account at Lek Securities.  Lek Securities is a broker-dealer located in New York, and Avalon was a customer of Lek Securities.  The second defendant is Nathan Fayyer, whom I will refer to as "Fayyer," who is an owner of Avalon.  The third defendant is Sergey Pustelnik, whom I will refer to as "Pustelnik," who was a registered representative of Lek Securities, and who handled the Avalon account at Lek Securities.  The SEC has alleged that Pustelnik is also an owner of Avalon.  Pustelnik denies this.

All of these litigants are equal under the law, and each of them is entitled to a just verdict.  An individual, a corporation, and a government agency are equally entitled to a fair trial.  It would be improper for you to allow any personal feelings you might have about the plaintiff, any of the defendants, or the nature of the claims to influence you in any way.[2]

---

[2] *Pesce v. City of N.Y.*, Case No. 12-cv-8663(DLC), Docket No. 81, at 3 (S.D.N.Y. May 4, 2016); *SEC v. Tourre*, Case No. 10-cv-3229(KBF), Docket No. 465, at 5 (S.D.N.Y. July 31, 2013) (transcript of jury trial at 2770); *Wilson v. Vermont Castings, Inc.*, 977 F. Supp. 691, 699 (M.D. Pa. 1997), *aff'd*, 170 F.3d 391 (3rd Cir. 1999); 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 72.01, Instruction 72-1 (2019); 3 Kevin F. O'Malley *et al.*, FED. JURY PRAC. & INSTR. §§ 103:01, 103:12 (6th ed. 2019).

4

## Burden of Proof: Preponderance of the Evidence

In a civil case like this one, a party who is making a claim against another party has the "burden of proof," which is the burden of establishing each of the essential elements of its claim as to each party against whom it is making the claim.  In this case, the party making claims is the plaintiff, the SEC.  For the SEC to prevail on a particular claim against a given defendant, it must prove as to that defendant each of the essential elements of the claim by a preponderance of the evidence. In a moment, I will instruct you on the essential elements of each of the SEC's claims.

[On certain issues, called affirmative defenses, defendants have the burden of proving the essential elements of the defense by a preponderance of the evidence.  I will also instruct you on the elements of any affirmative defense that any defendant raises.]

To prove something by a preponderance of the evidence means to prove that it is more likely so than not so.  In other words, a preponderance of the evidence means that the evidence of the party that has the burden of proof is more convincing and persuasive to you than the evidence opposed to it.  The difference in persuasiveness need not be great:  you need only find that the scales tip, however slightly, in favor of the party with the burden of proof.  This standard does not require proof to an absolutely certainty.  In determining whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses and all of the exhibits, regardless of who may have introduced them.

Simply because I have permitted certain evidence to be introduced does not mean that I have decided on its importance or significance.  That is for you to decide.

Some of you may have heard of proof "beyond a reasonable doubt," which is the standard of proof for a criminal trial. This is a civil case, not a criminal trial, and parties in a civil case do not have to satisfy that standard.  You should put that term out of your minds.[3]

---

[3] *Pesce v. City of N.Y.*, Case No. 12-cv-8663(DLC), Docket No. 81, at 3 (S.D.N.Y. May 4, 2016); *SEC v. Payton*, Case No. 14-cv-4644(JSR), Docket No. 133, at 4 (S.D.N.Y. March 1, 2016); *SEC v. Wyly*, Case No. 10-cv-5760(SAS), Docket No. 377, at 117 (S.D.N.Y. May 7, 2014) (transcript of jury trial at 3225); 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 73.01, Instruction 73-2 (2019); 3 Kevin F. O'Malley *et al*., FED. JURY PRAC. & INSTR. §§ 104:01, 104:03 (6th ed. 2019).

Direct and Circumstantial Evidence

There are two types of evidence that you may properly use in reaching your verdict.  One type of evidence is direct evidence.  An example of direct evidence is a witness's testimony about something she knows by virtue of her own senses – something the witness has seen, felt, touched, or heard.  Direct evidence may also be in the form of an exhibit, such as a document.

The other type of evidence is circumstantial evidence.  Circumstantial evidence is evidence that tends to prove one fact by proof of other facts or circumstances.  There is a simple example of circumstantial evidence that is often used in this courthouse.  Assume that when you came into the courthouse this morning, the sun was shining and it was a nice day.  Assume that the courtroom blinds are drawn and you cannot look outside.  As you are sitting here, someone walks in with an umbrella that is dripping wet.  Somebody else walks in with a raincoat that is also dripping wet.

Now, you cannot look outside the courtroom and you cannot see whether or not it is raining.  So you have no direct evidence of that fact.  But on the combination of facts that I have given you, it would be reasonable and logical for you to conclude that between the time you arrived at the courthouse and the time these people walked in, it had started to rain.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from an established fact the existence or the nonexistence of some other fact.  Many facts, such as a person's state of mind, can only rarely be proved by direct evidence.

Circumstantial evidence has the same value as direct evidence; the law makes no distinction between direct and circumstantial evidence, but simply requires that you, the jury,

decide the facts in accordance with the preponderance of all of the evidence, both direct and

circumstantial.[4]

---

[4] *Pesce v. City of N.Y.*, Case No. 12-cv-8663(DLC), Docket No. 81, at 19-20 (S.D.N.Y. May 4, 2016); *SEC v. Payton*, Case No. 14-cv-4644(JSR), Docket No. 133, at 7 (S.D.N.Y. March 1, 2016); 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 74.01, Instruction 74-2 (2010); 3 Kevin F. O'Malley *et al.*, FED. JURY PRAC. & INSTR. § 104:05 (6th ed. 2019).

Witness Credibility / Interest in Outcome

Now for the important subject of evaluating testimony.  How do you evaluate the credibility or believability of the witnesses?  The answer is that you use your plain common sense.  Common sense is your greatest asset as a juror.  You should ask yourselves, did the witness impress you as honest, open, and candid?  Or did the witness appear evasive or as though the witness was trying to hide something?  How responsive was the witness to the questions asked on direct examination and on cross-examination?

If you find that a witness is intentionally telling a falsehood, that is always a matter of importance that you should weigh carefully.  If you find that any witness has lied under oath at this trial, you should view the testimony of such a witness cautiously and weigh it with great care.  It is, however, for you to decide how much of the witness's testimony, if any, you wish to believe.  Few people recall every detail of every event precisely the same way.  A witness may be inaccurate, contradictory, or even untruthful in some respects and yet entirely believable and truthful in other respects.  It is for you to determine whether such inconsistencies are significant or inconsequential, and whether to accept or reject all, or to accept some and reject the balance, of any witness's testimony.

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit or suffer in some way from the outcome of the case.  Such interest in the outcome creates a motive to testify falsely and may sway a witness to testify in a way that advances his or her own interests.  Therefore, if you find that any witness whose testimony you are considering has an interest in the outcome of this trial, you should bear that factor in mind when evaluating the witness's credibility, and weigh it with great care.

There is no magic formula by which you can evaluate testimony.  You bring to this courtroom all your experience in life.  You determine for yourselves in many circumstances the reliability of statements that are made by others to you and upon which you are asked to rely and act.  You may use the same tests here that you use in your everyday lives. Among the factors you may consider are the witness's intelligence; the ability and opportunity the witness had to see, hear, or know about the things that the witness testified about; the witness's memory; any interest, bias, or prejudice the witness may have; the manner or demeanor of the witness while testifying; and the reasonableness of the witness's testimony in light of all the evidence in the case.[5]

---

[5] *Pesce v. City of N.Y.*, Case No. 12-cv-8663(DLC), Docket No. 81, at 21-23 (S.D.N.Y. May 4, 2016); 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 76.01, Instruction 76-3 (2019).

<u>Prior Statements of Defendants</u>

You have heard evidence of statements made by the defendants or their agents before trial, including statements made by the defendants or their agents during the SEC's investigation, or during depositions, or in documents, such as emails.  You may consider the prior statements of the defendants or their agents to be admissions, which means that such statements are affirmative evidence of the truth of what the defendants or their agents said before the trial.[6]

---

[6] *SEC v. Wyly*, Case No. 10-cv-5760(SAS), Docket No. 377, at 123-125 (S.D.N.Y. May 7, 2014) (transcript of jury trial at 3231-3233).

Prior Inconsistent Statements

On some occasions during this trial, witnesses were asked to explain an apparent inconsistency between testimony offered at this trial and previous statements made by the witness. It is for you to determine whether a prior statement was inconsistent, and if so, how much (if any) weight to give to an inconsistent statement in assessing the witness's credibility at trial.

In making this determination, you may consider whether there was, in fact, any inconsistency, whether the witness purposely made a false statement or whether it was an innocent mistake, whether the inconsistency concerns an important fact or whether it had to do with a small detail, whether the witness had an explanation for the inconsistency and whether that explanation appeals to your common sense. You should keep in mind that simple mistakes by a witness do not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether it was simply an innocent lapse of memory or an intentional falsehood. The significance of that may depend on whether the misstatement has to do with an important matter or only an unimportant detail. It is your duty, based upon all the evidence and your own good judgment, to decide how much weight to give to the inconsistency.

A prior inconsistent statement of a witness who is not a party in this case, or is not an agent of a party to this case, is not evidence you should consider in determining whether the SEC has proven its case. The prior inconsistent statement was placed before you solely for the purpose of attacking the credibility of the witness.

But the rule is different for parties.  A prior inconsistent statement of a defendant is evidence if that statement was offered by the SEC.  You may consider such statements for any purpose, including assessing the credibility of that defendant as a witness.  In addition, as I will explain later, in some situations, the statements of an agent of a defendant may be attributed to that defendant.  In such situations, a prior inconsistent statement of an agent of a defendant is evidence if offered by the SEC, and you may consider such statements for any purpose.[7]

---

[7] *SEC v. Wyly*, Case No. 10-cv-5760(SAS), Docket No. 377, at 123-125 (S.D.N.Y. May 7, 2014) (transcript of jury trial at 3231-3233); 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 76.01, Instruction 76-5 (2019).

## Deposition Testimony

Some of the testimony here has been presented in the form of depositions that have been received in evidence.  In a deposition, a witness provides sworn, recorded answers to questions that are asked in advance of trial by attorneys for the parties in the case.  This is part of pretrial discovery, and each side is entitled to take depositions. You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony a witness gave at trial.  As with other prior statements, you may also consider the prior statements of a witness that are inconsistent with their trial testimony in deciding what weight, if any, to give to their trial testimony.[8]

---

[8] *SEC v. Wyly*, Case No. 10-cv-5760(SAS), Docket No. 377, at 123, 127  (S.D.N.Y. May 7, 2014) (transcript of jury trial at 3231, 3237); 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 74.07, Instruction 74-14 (2019); 3 Kevin F. O'Malley *et al.*, FED. JURY PRAC. & INSTR. § 105:02 (6th ed. 2019).

Expert Testimony

You have heard from certain expert witnesses in this matter. An expert is allowed to express an opinion on those matters about which he has special knowledge and training.  Expert testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing an expert's testimony, you may consider the expert's qualifications, opinions, reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  You may give the expert testimony whatever weight, if any, you find it deserves in light of all of the evidence in this case. You should not, however, accept a witness's testimony merely because he is an expert.  Nor should you substitute it for your own reason, judgment, and common sense.  The determination of facts in this case rests solely with you.[9]

---

[9] *Pesce v. City of N.Y.*, Case No. 12-cv-8663(DLC), Docket No. 81, at 24 (S.D.N.Y. May 4, 2016); 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 76.01, Instruction 76-9 (2019).

Summary Evidence

Some of the evidence in this case has been presented to you through the testimony of summary witnesses and through certain exhibits in the form of charts and summaries.

The charts and summaries have been admitted into evidence and have been shown to you during the trial for the purpose of explaining facts that are allegedly contained in books, records, or other documents, which are also in evidence in the case but may not be conveniently examined in court.  You may consider the charts and summaries as you would any other evidence admitted during the trial and give them such weight and importance, if any, as you feel they deserve.[10]

The testimony of summary witnesses has also been presented to you for the purpose of explaining evidence and information contained in voluminous documents and other complex records that cannot be conveniently examined in court.[11]  A summary witness is different from an expert witness.  A summary witness does not offer an opinion, but rather synthesizes and summarizes information in documents and records that are already in evidence.[12]  In weighing the testimony of a summary witness, you may consider all of the considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  You may give the summary witness's testimony whatever weight, if any, you find it deserves in light of all of the evidence in this case.[13]

---

[10] 3 Kevin F. O'Malley *et al*., 1A FED. JURY PRAC. & INSTR. § 14:02 (6th ed. Feb. 2019 update); Seventh Circuit Pattern Civ. Jury Instr. 1.23; Eighth Circuit Civil Jury Instr. 2.12.

[11] *United States v. Lemire*, 720 F.2d 1327, 1348 (D.C. Cir. 1983); *see also United States v. McElroy*, 587 F.3d 73, 80-81 (1st Cir. 2009); Fed. R. Evid. 1006.

[12] *United States v. Stierhoff*, 500 F. Supp. 2d 55, 67-68 (D.R.I. 2007).

[13] *Adapted* from 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 76.01, Instruction 76-9 (2019).

<u>Persons Not on Trial</u>

Some of the people whose names you have heard or from whom you have heard in connection with these events are not on trial.  You may not draw any inference, favorable or unfavorable, to the SEC or to the defendants, from the fact that any person is not on trial before you at the present time.  I instruct you not to speculate why those people or any entities are not part of this action.[14]

---

[14] *SEC v. Tourre*, Case No. 10-cv-3229(KBF), Docket No. 465, at 12 (S.D.N.Y. July 31, 2013) (transcript of jury trial at 2777); *SEC v. Wyly*, Case No. 10-cv-5760(SAS), Docket No. 377, at 125 (S.D.N.Y. May 7, 2014) (transcript of jury trial at 3233).

<u>Absence of Evidence</u>[15]

You have also heard about individuals or entities who have not appeared at this trial as witnesses. In some instances, each party had equal access to that witness. In others, one party may have had easier access. I instruct you again not to speculate as to why certain witness did or did not appear.  The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

---

[15] *SEC v. Tourre*, Case No. 10-cv-3229(KBF), Docket No. 465, at 12 (S.D.N.Y. July 31, 2013) (transcript of jury trial at 2777); *SEC v. Wyly*, Case No. 10-cv-5760(SAS), Docket No. 377, at 127 (S.D.N.Y. May 7, 2014) (transcript of jury trial at 3235); 3 Kevin F. O'Malley *et al.*, FED. JURY PRAC. & INSTR. § 105:11 (6th ed. 2019).

Redactions

During the course of this trial, you have seen among the exhibits received in evidence some documents that are redacted.  "Redacted" means that part of the document has been removed or crossed out at my direction for reasons that are not your concern.  You are to concern yourself only with the part of the document that has been admitted into evidence.  You should not consider any possible reason why the other part of the document has been redacted.[16]

---

[16] *SEC v. Wyly*, Case No. 10-cv-5760(SAS), Docket No. 377, at 128 (S.D.N.Y. May 7, 2014) (transcript of jury trial at 3236).

<u>Transcripts and Translations</u>

The parties have shown you typed transcripts of certain audio recordings.  The recordings themselves were received in evidence.  The transcripts are not evidence; they were provided to you as an aid or a guide to assist you in listening to the recordings. As you may recall, when the recordings were played, I advised you to listen very carefully to the recordings themselves.  You alone should make your own interpretation of what you heard on the recordings.  If you think you heard something different from what was typed on the transcript, then what you heard is controlling.

Documents in Russian and/or Ukrainian were introduced during this trial, and English language translations of those documents were also introduced.  If a translation was introduced, you are to consider only that evidence provided through the translation.  Although some of you may know the language used, it is important that all jurors consider the same evidence. Therefore, you must base your decision on the evidence presented in the English translation and disregard any different meaning of the non-English words.[17]

---

[17] *SEC v. Tourre*, Case No. 10-cv-3229(KBF), Docket No. 465, at 10-11 (S.D.N.Y. July 31, 2013) (transcript of jury trial at 2775-2776); 3 Kevin F. O'Malley *et al*., FED. JURY PRAC. & INSTR. § 103:35 (6th ed. 2019).

<u>Requests for Admission</u>

You have heard evidence in the form of certain admissions in response to requests for admission made by the SEC.  Requests for admission are written statements of fact submitted by one party prior to trial to the opposing party.  Any matters that the responding party admits to are binding and conclusive on that party for the purposes of this trial.[18]

---

[18] 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 74.08, Instruction 74-15 (2019); *see also* Fed. R. Civ. P. 36.

Stipulations

You have heard that the parties have stipulated to certain facts.  A stipulation of facts is an agreement among the parties that a certain fact is true.  You must regard such agreed facts as true.[19]

---

[19] 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 74.02, Instruction 74-4 (2019).

## Liability

### Liability in General

We now turn to the specific claims brought by the SEC against the defendants.  In assessing these claims, you must determine, in accordance with my instructions, whether the SEC has proved each of the essential elements of each claim against each defendant by a preponderance of the credible evidence, in other words that it is more likely true than not true. This is known as establishing liability.  Although this is a case brought by an agency of the United States government, it is a civil case and not a criminal case.

The SEC has asserted multiple claims against multiple defendants in this case.  You must give separate and fair consideration to each of the SEC's claims and to each defendant.  It does not follow, for example, that if one defendant is liable, another defendant is automatically also liable on the same claim, or vice versa.  Similarly, the fact that you find a defendant liable on one claim does not necessarily mean that you should find the defendant liable on another claim.

If you find any defendant liable on any claim, then I will determine what the appropriate remedies should be, and you should not consider or speculate about what kind of remedy I might impose.[20]

---

[20] *SEC v. Payton*, Case No. 14-cv-4644(JSR), Docket No. 133, at 10 (S.D.N.Y. March 1, 2016); *SEC v. Tourre*, Case No. 10-cv-3229(KBF), Docket No. 465, at 5 (S.D.N.Y. July 31, 2013) (transcript of jury trial at 2770); *SEC v. Wyly*, Case No. 10-cv-5760(SAS), Docket No. 377, at 166 (S.D.N.Y. May 7, 2014) (transcript of jury trial at 3274); 3 Kevin F. O'Malley *et al.*, FED. JURY PRAC. & INSTR. § 103:14 (6th ed. 2019).

## Overview of the Violations Charged

The SEC alleges that the defendants violated various parts of two federal statutes:  the Securities Act of 1933, which I will call the Securities Act, and the Securities Exchange Act of 1934, which I will call the Exchange Act.  The stock market crash of 1929 led to the enactment of both of these statutes, as well as the creation of the SEC.  These laws – and related SEC rules – prohibit people from engaging in manipulative practices that tend to distort the fair and just price of a stock.  The laws are designed to enforce investor expectations that the securities markets are free from fraud and to prevent any deceptive or manipulative practice that undermines the function and purpose of a free market.[21]

In this case, the SEC alleges that the defendants engaged in market manipulation.  The prices of stocks and other securities are supposed to reflect legitimate trading activity in the market, meaning that the natural interplay of supply and demand for a security by investors determines the price of that security.  Market manipulation is the use of deceptive and manipulative practices that are intended to mislead other investors by artificially distorting market activity and sending false pricing signals to the market.[22]

For purposes of these instructions, the term "investors" means anyone who buys or sells securities, or who considers buying or selling securities.  The term "securities" includes stock and options.

---

[21] 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 82.01, Instruction 82-2 (2019); *SEC v. Wyly*, Case No. 10-cv-5760(SAS), Docket No. 377, at 129-32  (S.D.N.Y. May 7, 2014) (transcript of jury trial at 3237-3241).

[22] *Santa Fe Indus, Inc. v. Green*, 430 U.S. 462, 476-77 (1977); *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 124, 130 (2d Cir. 2011); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 100-101 (2d Cir. 2007); *Gurary v. Winehouse*, 190 F.3d 37, 45 (2d Cir.1999); *SEC v. Lek Sec. Corp.*, 276 F. Supp. 3d 49, 59 (S.D.N.Y. 2017).

The SEC has brought multiple claims against each of the three defendants.  These claims fall into three broad categories.  In a moment, I will give you detailed instructions about the claims, but first I will provide you with a general summary of these three categories.

First: The SEC has brought multiple claims alleging the defendants engaged in market manipulation.  Specifically, the SEC alleges that the defendants engaged in two manipulative trading strategies – the layering strategy and the cross-market strategy – that were intended to artificially affect market activity, or to send false pricing signals to the market and thereby mislead investors as to how other market participants valued a security.  I will call these the market manipulation claims.

Second:  The SEC has brought multiple claims alleging that defendants Fayyer and Pustelnik also aided and abetted market manipulation by certain other defendants.  In these claims, the SEC alleges that the defendants knowingly or recklessly provided substantial assistance to another defendant's violation of a securities law.  I will call these the aiding- and-abetting claims.

Third:  The SEC has brought multiple claims alleging that the defendants are also liable because they exercised control over other persons who engaged in violations of the securities laws.  I will call these the control person claims.

In a few moments, I will instruct you on the law that you are to apply to determine whether the SEC has met its burden of proof on each of these claims.  First, I will discuss certain principles for you to keep in mind as you make your decision on whether the SEC has proven its case.

Corporate Responsibility

One of the defendants in this case – Avalon – is a corporate entity.  In general, there are three ways in which a corporation may be held liable for violating the securities laws.  First, a corporate defendant may be held directly responsible for its own actions.  For example, in this case, the SEC has alleged that Avalon entered into manipulative trades through its account at Lek Securities and seeks to hold Avalon liable for that conduct.

Second, as I will explain in a moment, you may find a corporate defendant liable as a control person.  As I previously noted, the SEC has alleged that Avalon is liable because it was a control person of others who violated the laws.[23]

Third, because a corporate entity can only act through its agents, a corporation may be held liable if an agent of the corporation violated the law.  This rule is known as the doctrine of *respondeat superior*.[24]

In order to find a corporate defendant liable under the doctrine of *respondeat superior*, you must find the following by a preponderance of the evidence:

First, you must find that an agent of the entity violated the law.  An agent can be an employee, independent contractor, or officer of the corporation.  In this case, the SEC has alleged that Fayyer, Pustelnik, and Avalon's traders were agents of Avalon.  I will instruct you in a moment on the law you must follow in determining whether any of these persons violated the law.

---

[23] *Marbury Mgmt, Inc. v. Kohn*, 629 F.2d 705, 716 (2d Cir. 1980); *SEC v. AIC, Inc.*, No. 3:11-cv-00176, Docket No. 221, at 246-49 (E.D. Tenn. Oct. 9-10, 2013) (transcript of jury trial at 8203-8206).

[24] 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 72.01, Instruction 72-2 (2019); *United States v. Thomas*, 377 F.3d 232, 238 (2d Cir. 2004); Restatement (Second) of Agency § 14N (1958).

Second, you must find that the agent had the authority to act in the manner in which he is alleged to have acted.

The authority given to an agent may be express, apparent, or implied.  Express authority is created by the direct verbal or written giving of authority by the corporation to its agent.  For example, a corporation might give its agent express authority in a written agreement.

Apparent authority exists where a corporate entity, by its acts and conduct, leads a third party to reasonably believe that the agent possesses authority.  To other people dealing with the agent, knowing of his position, the agent appears to have authority to do all of those things ordinarily done by someone in that position, regardless of any unknown limitations that may be imposed on the particular agent.

Implied authority arises when a corporation designates someone as the kind of agent who ordinarily possesses certain powers.  An agent designated to carry out an act is deemed authorized to do it in the manner in which the act entrusted to him is usually done.  An agent may have implied authority to engage in acts that are against the law, provided those acts are within the scope of the agent's employment.  An act is within the scope of employment (1) if it is sufficiently related to the kind of acts the agent was employed to perform, (2) if it was done substantially within the time and space limits of the job, and (3) if it was carried out, at least in part, by a purpose to serve the corporate entity.[25]

There is an exception to the doctrine of *respondeat superior*, which is known as the adverse interest exception.  Under this exception, a corporate defendant cannot be held liable for

---

[25] 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 72.01, Instruction 72-2 (2019); *Hidden Brook Air, Inc. v. Thabet Aviation Intern. Inc.*, 241 F. Supp. 2d 246, 260-61 (S.D.N.Y. 2002); *In re Parmalat Secs. Litig.*, 594 F. Supp. 2d 444, 451-52 (S.D.N.Y. 2009); *Cromer Fin. Ltd. v. Berger*, Nos. 00 Civ. 2284, 2498(DLC), 2002 WL 826847, at *4 & n.5 (S.D.N.Y. May 2, 2002); *SEC v. AIC, Inc.*, No. 3:11-cv-00176, Docket No. 221, at 246-49 (E.D. Tenn. Oct. 9-10, 2013) (transcript of jury trial at 8203-8206)

an agent's misconduct if the agent has totally abandoned the interests of the corporation and is working entirely for his own purposes.  In order for this exception to apply, you must find that the agent was acting solely for his own purposes or those of a third party, that the agent's conduct benefitted only the agent, and that the agent's misconduct was committed against the corporation, rather than on its behalf.  The exception does not apply if the agent sought to benefit his own interests as well as those of the corporation.[26]

---

[26] *In re PetroChina Co. Ltd. Secs. Litig.*, 120 F. Supp. 3d 340, 361-62 (S.D.N.Y. 2015); *In re Refco Sec. Litig.*, 779 F. Supp. 2d 372, 375 (S.D.N.Y. 2011); *In re Investors Funding Corp. of N.Y. Secs. Litig.*, 523 F. Supp. 533, 540-41 (S.D.N.Y. 1980); *Wight v. Bank of Am. Corp.*, 219 F.3d 79, 87 (2d Cir. 2000); *Buckley v. Deloitte & Touche USA LLP*, No. 06-cv-329, 2007 WL 1491403, at *7 (S.D.N.Y. May 22, 2007); Model Civ. Jury Instr. 9th Cir. 4.13 (2018).

<u>SEC Not Required to Prove Reliance, Harm, or Loss Causation</u>

You have heard testimony from some witnesses about economic harm that the SEC alleges was the result of the defendants' conduct.  But the SEC does not need to prove that any person actually relied upon or suffered harm as a result of a defendant's conduct, and you do not need to find such reliance or harm in order to find a defendant liable.[27]

---

[27] *SEC v. Simpson Capital Mgm't, Inc.*, 586 F. Supp. 2d 196 (S.D.N.Y. 2008).

<u>The Market Manipulation Claims</u>

<u>Section 10(b) and Rule 10b-5 of the Exchange Act</u>

The first market manipulation claim involves Section 10(b) of the Exchange Act and subparts (a) and (c) of its accompanying rule, Rule 10b-5.  Federal statutes and rules have the force of law and must be obeyed.   Section 10(b) and Rule 10b-5 prohibit (1) using any device, scheme, or artifice to defraud in connection with the purchase or sale of securities; and (2) engaging in any act, practice, or course of business that operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of securities.[28]  The SEC has alleged that the defendants violated Section 10(b) and Rule 10b-5.

In order to meet its burden of proof on this claim against a defendant, the SEC must establish by a preponderance of the evidence each of the following elements.

First, the SEC must prove that the defendant, either directly or indirectly, committed a manipulative act in furtherance of a scheme to defraud,[29] or assisted in its perpetration.[30]  A scheme to defraud is a plan for the accomplishment of a fraudulent objective.  Fraud is a general term that covers various efforts that individuals may devise to take advantage of others by deception.[31]  Manipulative acts are those that are intended to mislead investors by injecting inaccurate information into the market to deceive investors as to how other market participants

---

[28] 15 U.S.C. § 78j(b); 17 C.F.R. 240.10b-5(a), (c); *CompuDyne Corp. v. Shane*, 453 F. Supp. 2d 807, 821 (S.D.N.Y. 2006).

[29] *CompuDyne Corp. v. Shane*, 453 F. Supp. 2d 807, 821 (S.D.N.Y. 2006); *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 491-92 (S.D.N.Y. 2005); *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 336 (S.D.N.Y. 2004).

[30] *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1471 (2d Cir. 1996).

[31] *SEC v. Wyly*, Case No. 10-cv-5760(SAS), Docket No. 377, at 134-35 (S.D.N.Y. May 7, 2014) (transcript of jury trial at 3242-43); *SEC v. Tourre*, Case No. 10-cv-3229(KBF), Docket No. 465, at 17 (S.D.N.Y. July 31, 2013) (transcript of jury trial at 2782).

have valued a security.[32]  Manipulative acts create a false impression of market activity.[33]  A manipulative act may be wrongful even if it is conducted in the open market and it results in a real transaction where a security is bought or sold by an uninvolved third party.[34]  A manipulative act need not be successful in order to violate the securities laws.[35]  And a wrongful manipulative act may involve bids to buy, or offers to sell, a security, whether or not those bids and offers result in an actual purchase or sale, if they are intended to artificially affect market activity or engineered to stimulate demand.[36]

Second, the SEC must prove that the defendant's manipulative act or acts occurred in connection with the purchase or sale of a security.  "In connection with" means that the defendant's conduct coincided with, or touched, any person's purchase or sale of a security.[37]  A stock is a security.  A stock option is also a security.[38]

---

[32] *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 100 (2d Cir. 2007); *CP Stone Fort Holdings, LLC v. Doe*, Case No. 16 C 4991, 2017 WL 1093166, at *3-4 (N.D. Ill. Mar. 22, 2017).

[33] *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 100-101 (2d Cir. 2007); *CP Stone Fort Holdings, LLC v. Doe*, Case No. 16 C 4991, 2017 WL 1093166, at *3-4 (N.D. Ill. Mar. 22, 2017).

[34] *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007); *Markowski v. SEC*, 274 F.3d 525, 528 (D.C. Cir. 2001); *SEC v. Lek Sec. Corp.*, 276 F. Supp. 3d  49, 64 (S.D.N.Y. 2017); *SEC v. Masri*, 523 F. Supp. 2d 361, 367 (S.D.N.Y. 2007); *SEC v. Martino*, 255 F. Supp. 2d 268, 286 (S.D.N.Y. 2003); *SEC v. Kwak*, 2008 WL 410427, at *4 (D. Conn. Feb. 12, 2008).

[35] *Koch v. SEC*, 793 F.3d 147, 153-154 (D.C. Cir. 2015); *see also United States v. Weaver*, 860 F.3d 90, 97 (2d Cir. 2017); *SEC v. Lek Sec. Corp.*, 276 F. Supp. 3d 49, 60 (S.D.N.Y. 2017).

[36] *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007); *CP Stone Fort Holdings, LLC v. Doe*, Case No. 16 C 4991, 2017 WL 1093166, at *3-4 (N.D. Ill. Mar. 22, 2017).

[37] *SEC v. Zandford*, 535 U.S. 813, 822-23 (2002); *Superintendent of Ins. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12-13 (1971); *SEC v. Wyly*, Case No. 10-cv-5760(SAS), Docket No. 377, at 134 (S.D.N.Y. May 7, 2014) (transcript of jury trial at 3242).

[38] 15 U.S.C. § 77b(1).

Third, the SEC must prove that the defendant knowingly used, or caused to be used, the means or instrumentalities of interstate commerce or the mails, or of any facility of any national securities exchange, in furtherance of the alleged fraud.  This element may be satisfied, for example, by any mailing, fax, email, telephone call, or other electronic transmission of documents, or wiring or electronically transferring funds in connection with the purchase or sale of a security.  This element can also be satisfied if the facilities of a national securities exchange were used in connection with the purchase or sale of a security.

It is not necessary that a defendant be directly or personally involved in any mailing or use of interstate wires, or in the use of a facility of a national securities exchange.  If the defendant was an active participant in the scheme and took steps or engaged in conduct which he knew, or could reasonably foresee, would naturally and probably result in the use of the mails, interstate wires, or a facility of a national securities exchange, then you may find that he caused the mails to be used.[39]

If, as to a given defendant, the SEC proves each of these elements by a preponderance of the evidence, you should then consider the final element – whether the defendant acted with a certain state of mind.  I will discuss the state of mind requirement next.  However, if you find that the SEC has failed to prove any of the elements I have just discussed, you should find that defendant not liable on this claim.

---

[39] *SEC v. Solucopr Indus. Inc.*, 274 F. Supp. 2d 379, 419 (S.D.N.Y. 2003); *SEC v. Obus*, Case No. 06-cv-3150(GBD), Docket No. 179, at 178-79 (S.D.N.Y. June 17, 2014) (transcript of jury trial at 1734-35); 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 82.02, Instruction 82-10 (2019).

<u>Section 10(b) and Rule 10b-5 of the Exchange Act – State of Mind</u>

As I noted, to prevail on its claim under Section 10(b) and Rule 10b-5, the SEC must – in addition to the two elements I have just discussed – also establish by a preponderance of the evidence that the defendant acted with a certain state of mind.  There are two different ways that the SEC may satisfy the state-of-mind requirement for a Section 10(b) claim; the SEC satisfies its burden if it proves either.  It does not have to prove both.

First, the SEC may prove that the defendant acted with the intent to deceive, manipulate, or defraud.[40]  In other words, the defendant acted knowingly, intentionally, and deliberately, and not mistakenly or inadvertently.[41]  In the context of market manipulation, this means that the defendant intended to artificially affect market activity in order to deceive investors as to how other market participants valued a security.[42]  In other words, the SEC must show that the defendant intended to create a false impression of supply or demand for a security, in order to mislead investors into believing that there was more interest in buying the security, or in selling security, than there really was.[43]  Intent to defraud may be established by circumstantial evidence, including a person's words, acts, or conduct, and all the surrounding circumstances and the reasonable inferences that may be drawn from them.[44]

---

[40] *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976); *Sharette v. Credit Suisse Int'l*, 127 F. Supp. 3d 60, 79 (S.D.N.Y. 2015).

[41] *SEC v. Tourre*, Case No. 10-cv-3229(KBF), Docket No. 465, at 19 (S.D.N.Y. July 31, 2013) (transcript of jury trial at 2784).

[42] *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 100, 102 (2d Cir. 2007).

[43] *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 100, 101 (2d Cir. 2007).

[44] *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 n.30 (1983); *SEC v. Masri*, 523 F. Supp. 2d 361, 367 (S.D.N.Y. 2007).

The second way in which the SEC may satisfy the state-of-mind requirement is by showing that the defendant acted with a high degree of recklessness.  Recklessness is not mere ordinary negligence.  Recklessness is an extreme departure from the standards of ordinary care, which presents a danger of misleading other persons that is either known to the defendant or is so obvious that the defendant must have been aware of it.[45]  Evidence that a defendant failed to review or check information that he had a duty to monitor, or ignored obvious signs of fraud or manipulation, can be proof of recklessness.[46]  Evidence that a defendant ignored red flags or repeatedly turned a blind eye to them can be evidence that the defendant acted recklessly.[47]

When you consider whether the SEC has proved that a defendant possessed the necessary state of mind, you should keep in mind the following principles.

First, the question of whether a person acted with intent to defraud or with reckless disregard is a question of fact for you to determine, like any other fact question.  It is a question involving one's state of mind.  Direct proof of state of mind is almost never available, and is not required.  Circumstantial evidence, if believed, is of no less value than direct evidence.[48]

Second, as I explained above, Avalon is a corporate defendant.  With regard to Avalon's state of mind, if you find that an agent of Avalon (Fayyer or Pustelnik) acted knowingly and with

---

[45] *Kalnit v. Eichler,* 264 F.3d 131, 139 (2d Cir. 2001); *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000); *Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir. 2000).

[46] *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000).

[47] *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 649 (S.D.N.Y. 2007); *SEC v. Takeyasu*, No. 17-CV-4866-GHW, 2018 WL 2849777, at *19 (S.D.N.Y. June 11, 2018).

[48] 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 82.02, Instruction 82-8 (2019).

the intent to defraud or with reckless disregard for the truth, while acting within the scope of his authority, that state of mind can be attributed to Avalon.[49]

Third, the SEC is not required to establish that the defendants were successful in their alleged manipulative conduct.[50]  However, if you find that one or more of the defendants profited from the alleged fraud, you may consider that fact in relation to whether the defendant possessed the necessary state of mind.[51]

To conclude, if, as to a given defendant, the SEC proves each of the elements of a Section 10(b) claim by a preponderance of the evidence, you should find that defendant liable on this claim.  If the SEC fails to prove one or more of these elements as to a given defendant, you should find that defendant not liable.

---

[49] *In re PetroChina Co. Ltd. Secs. Litig.*, 120 F. Supp. 3d 340, 361 (S.D.N.Y. 2015); *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1089 n.3 (2d Cir. 1972); *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 381-82 (S.D.N.Y. 2007); *In re Investors Funding Corp. of N.Y. Sec. Litig.*, 523 F. Supp. 533, 540-41 (S.D.N.Y. 1980).

[50] *SEC v. Martino*, 255 F. Supp. 2d 268, 287 (S.D.N.Y. 2003); *Koch v. SEC*, 793 F.3d 147, 153-54 (D.C. Cir. 2015), cert. denied, 136 S. Ct. 1492, 194 L. Ed. 2d 586 (2016); *Markowski v. SEC*, 274 F.3d 525, 529-30 (D.C. Cir. 2001).

[51] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 325 (2007).

<u>Section 17(a)(1)</u>

The second market manipulation claim against the defendants involves Section 17(a)(1) of the Securities Act.  Section 17(a)(1) prohibits the use of any device, scheme, or artifice to defraud in the offer or sale of a security.[52]

In order to meet its burden of proof on this claim against a defendant, the SEC must establish by a preponderance of the evidence each of the following elements:

First, the SEC must prove that the defendant either directly or indirectly committed a manipulative act in furtherance of a scheme to defraud, or substantially participated in or assisted in its perpetration.[53]  I have previously instructed you on the definition of a scheme to defraud and manipulative acts, and you should apply those definitions here.

Second, the SEC must prove that the defendant engaged in a manipulative act in the offer or sale of a security.  An "offer" is any attempt or offer to dispose of or sell a security.[54]

Third, the SEC must prove that the defendant acted with a certain state of mind – either with intent to defraud or with reckless disregard for the truth.  I have previously instructed you on these terms, and you should apply the same definitions here.  As I explained already, if you find that an agent of Avalon (for example, Fayyer or Pustelnik) acted with the intent to defraud or with reckless disregard for the truth, within the scope of his authority to act for Avalon, that state of mind can be attributed to Avalon.

---

[52] 15 U.S.C. § 77q(a)(1).

[53] *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996); *SEC v. Lek Sec. Corp.*, 276 F. Supp. 3d 49, 61 (S.D.N.Y. 2017); *SEC v. Curshen*, 888 F. Supp. 2d 1299, 1307 (S.D. Fla. 2012); *SEC v. Lee*, 720 F. Supp. 2d 305, 334 (S.D.N.Y. 2010).

[54] 15 U.S.C. § 77b(3).

Fourth, the SEC must prove that the defendant knowingly used, or caused to be used, the means or instrumentalities of interstate commerce or the mails.  I have previously instructed you on what it means to use or cause to be used the means or instrumentalities of interstate commerce or the mails, and you should apply the same instruction here.

If, as to a given defendant, the SEC proves each of these elements by a preponderance of the evidence, you should find that defendant liable on this claim.  If the SEC fails to prove one or more of these elements as to a given defendant, you should find that defendant not liable.

<u>Section 17(a)(3)</u>

The third set of market manipulation claim against the defendants involves Section 17(a)(3) of the Securities Act.  Section 17(a)(3) prohibits engaging in any transaction, practice, or course of business in the offer or sale of security, which operates or would operate as a fraud or deceit upon the purchaser.[55]

In order to meet its burden of proof on these claims against a defendant, the SEC must establish by a preponderance of the credible evidence each of the following elements a:

First, the SEC must prove that the defendant either directly or indirectly committed a manipulative or deceptive act in furtherance of a scheme to defraud, or substantially participated in or assisted in its perpetration.[56]  I have previously instructed you on the definitions of a scheme to defraud and manipulative acts, and you should apply those definitions here.

Second, the SEC must prove that the defendant engaged in a manipulative act in the offer or sale of a security.  I have previously instructed you on the definition of an "offer," and you should apply that definition here.

Third, the SEC must prove that the defendant acted with a certain state of mind.  The state of mind requirement is a bit different for this claim.  The SEC must prove that the defendant acted either with intent to defraud, or with reckless disregard for the truth, or with negligence.  I have previously instructed you on the meaning of intent to defraud and the meaning of reckless disregard for the truth, and you should apply those definitions here.

---

[55] 15 U.S.C. § 77q(a)(3).

[56] *SEC v. Lek Sec. Corp.*, 276 F. Supp. 3d 49, 61 (S.D.N.Y. 2017); *SEC v. Curshen*, 888 F. Supp. 2d 1299, 1307 (S.D. Fla. 2012); *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996); *SEC v. Lee*, 720 F. Supp. 2d 305, 334 (S.D.N.Y. 2010); *SEC v. Lek Sec. Corp.*, No. 17-cv-1789, 2019 WL 1375656, at *4 (S.D.N.Y. Mar. 26, 2019).

However, a claim under Section 17(a)(3) is different from the claims I have described earlier, because in order to satisfy the state-of-mind requirement, it is sufficient if the defendant acted only negligently.  In other words, under Section 17(a)(3), the SEC may also prevail even if it does not show that the defendant acted with intent to defraud or recklessly, so long as the SEC shows that the defendant acted negligently.[57]  Negligence is different from the states of mind that I previously instructed you about.  Negligence is the failure to use ordinary care under the circumstances.  "Ordinary care" is the care that reasonably prudent people in the defendant's position would use in the management of their own affairs in order to avoid injury to themselves or their own property, or to avoid injury to other people or their property.  In other words, negligence is doing something that a reasonably prudent person in the defendant's position would not do, or not doing something that a reasonably prudent person in the defendant's position would do, given the circumstances.[58]

Remember that, as I explained above, Avalon is a corporate defendant.  If you find that an agent of Avalon acted with the necessary state of mind, and within the scope of the agent's authority, that state of mind can be attributed to Avalon.[59]

Fourth, the SEC must prove that the defendant knowingly used, or caused to be used, the means or instrumentalities of interstate commerce or the mails.  I have previously instructed you

---

[57] *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996) (citing *Aaron v. SEC*, 446 U.S. 680, 701-02 (1980)).

[58] *SEC v. Tourre*, Case No. 10-cv-3229(KBF), Docket No. 465, at 27-28 (S.D.N.Y. July 31, 2013) (transcript of jury trial at 2792-93); *SEC v. Wey*, 246 F. Supp. 3d 894, 913 (S.D.N.Y. 2017); *SEC v. Stoker*, No. 11-cv-7388(JSR), Docket No. 89, at 13 (S.D.N.Y. July 31, 2012).

[59] *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1089 n.3 (2d Cir. 1972); *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 381-82 (S.D.N.Y. 2007); *Cromer Fin. Ltd. v. Berger*, Nos. 00 Civ. 2284(DLC), 00 Civ. 2498(DLC), 2002 WL 826847, at *4 (S.D.N.Y. May 2, 2002).

on what it means to use or cause to be used the means or instrumentalities of interstate commerce or the mails, and you should apply the same instruction here.

If, as to a given defendant, the SEC proves each of these elements by a preponderance of the evidence, you should find that defendant liable on this claim.  If the SEC fails to prove one or more of these elements as to a given defendant, you should find that defendant not liable.

Section 9(a)(2)

The fourth market manipulation claim against involves Section 9(a)(2) of the Exchange Act.  The SEC has alleged that defendants Avalon and Fayyer violated Section 9(a)(2).  Under Section 9(a)(2), it is illegal to effect, alone or with others, a series of transactions in a security that creates actual or apparent active trading in the security, or that raises or depresses the price of the security, for the purpose of inducing others to purchase or sell the security.[60]

To "effect" means to bring about or to make happen.[61]  A "series of transactions" means three or more transactions.[62]  To effect a series of transactions in a security means to place a series of orders to buy or sell the security, or to execute a series of purchases or sales of the security.[63]

Creating actual trading in a security means creating actual purchases and sales (sales volume) in that security.[64]  Creating apparent trading in a security means creating the appearance that the market for that security is active.[65]

---

[60] 15 U.S.C. § 78i(a)(2).

[61] Black's Law Dictionary (7th ed.).

[62] *In re Kidder, Peabody & Co.*, 1945 SEC LEXIS 285, at *23-24 (1945).

[63] *SEC v. Lek Sec. Corp.*, 276 F. Supp. 3d 49, 62 (S.D.N.Y. 2017); *SEC v. Resch-Cassin & Co.*, 362 F. Supp. 964, 975-76 (S.D.N.Y. 1973); *SEC v. Malenfant*, 784 F. Supp. 141, 145 (S.D.N.Y. 1992); *Spicer v. Chi. Bd. Options Exch., Inc.*, No. 88 C 2139, 1990 U.S. Dist. LEXIS 14469, *8 (N.D. Ill. Oct. 30, 1990); *In re Kidder, Peabody & Co.*, Exchange Act Release No. 3673, 1945 SEC LEXIS 285, at *23-24 (Apr. 2, 1945); *In re Halsey, Stuart & Co.*, 1949 SEC LEXIS 162, at *29-33 (1949).

[64] *SEC v. Schiffer*, 97 Civ. 5853(RO), 1998 U.S. Dist. LEXIS 8579, at *29 (S.D.N.Y. June 11, 1998).

[65] *SEC v. Resch-Cassin & Co.*, 362 F. Supp. 964, 975-76 (S.D.N.Y. 1973).

The intent that the SEC must prove to establish a violation of Section 9(a)(2) is different from the state of mind required to prove a violation of Section 10(b), which I described earlier.[66] Under Section 9(a)(2), the SEC must prove that the defendant engaged in this conduct for the purpose of inducing others to purchase or sell the security.[67]

With respect to Avalon, if you find that an agent of Avalon acted with the purpose of inducing others to buy or sell the security, within the scope of his authority to act for Avalon, that purpose can be attributed to Avalon.

Finally, the SEC must prove that the defendant knowingly used, or caused to be used, the means or instrumentalities of interstate commerce or the mails, or of any facility of any national securities exchange, in furtherance of the alleged fraud.  I have previously instructed you on this element, and you should apply that instruction here.

If, as to a given defendant, the SEC proves each of these elements by a preponderance of the evidence, you should find that defendant liable on this claim.  If the SEC fails to prove one or more of these elements as to a given defendant, you should find that defendant not liable.

---

[66] *Rockies Fund, Inc. v. SEC*, 428 F.3d 1088, 1093 (D.C. Cir. 2005).

[67] *Crane Co. v. Westinghouse Air Brake Co.*, 419 F.2d 787, 794 (2d Cir. 1969).

<u>The Aiding and Abetting Claims</u>

As I previously mentioned, the SEC has also brought a number of claims alleging that each of the defendants aided and abetted another defendant's violations of the law.  "Aiding and abetting" means knowingly or recklessly providing substantial assistance to another person who violates the securities laws.  Under Section 20(e) of the Exchange Act and Section 15(b) of the Securities Act, anyone who aids and abets someone else who violates the securities laws is deemed to have violated the law to the same extent.  Aiding and abetting someone else's violation of the securities laws is, itself, a separate violation of the law.

Specifically, the SEC has alleged that:

(1)     Fayyer and Pustelnik aided and abetted Avalon's violations of Sections 10(b) and 9(a)(2) of the Exchange Act and Sections 17(a)(1) and 17(a)(3) of the Securities Act

(2)     Fayyer aided and abetted Pustelnik's violations of Section 10(b) of the Exchange Act and Sections 17(a)(1) and 17(a)(3) of the Securities Act

(3)     Pustelnik aided and abetted Fayyer's violations of Section 10(b) of the Exchange Act and Sections 17(a)(1) and 17(a)(3) of the Securities Act

In order to meet its burden of proof on this claim against a defendant, the SEC must establish by a preponderance of the credible evidence each of the following elements:

First, the SEC must prove that another person engaged in a securities law violation.  For example, as to the SEC's claim that Pustelnik aided and abetted Avalon's violation of Section 10(b), the SEC must first prove that Avalon actually violated Section 10(b).  If you do not find that a securities law violation occurred, you cannot find another party liable for aiding and abetting a violation.

Second, the SEC must prove that the defendant provided substantial assistance to that other person.  For example, as to the SEC's claim that Pustelnik aided and abetted Avalon's violation of Section 10(b), the SEC must prove that Pustelnik provided substantial assistance to Avalon.[68]  "Substantial assistance" means that the defendant in some way associated himself with the venture, that he participated in it as something that he wished to bring about, and that he sought by his action to make it succeed.[69]

Third, the SEC must prove that the defendant acted knowingly or recklessly.[70]  For example, as to the SEC's claim that Pustelnik aided and abetted Avalon's violation of Section 10(b), the SEC must prove that Pustelnik knew, or was reckless in not knowing, that Avalon was engaged in a violation of the law.  I have previously instructed you on the terms knowingly and recklessly, and you should apply those definitions here.

If, as to a given defendant, the SEC proves each of these elements by a preponderance of the evidence, you should find that defendant liable on this claim.  If the SEC fails to prove one or more of these elements as to a given defendant, you should find that defendant not liable.

---

[68] 15 U.S.C. § 78t(e); 15 U.S.C. § 77o(b).

[69] *SEC v. Apuzzo*, 689 F.3d 204, 206 (2d Cir. 2012).

[70] 15 U.S.C. § 78t(e); 15 U.S.C. § 77o(b).

<u>The Control Person Claims</u>

The final set of claims in this case are the control person claims.  Under Section 20(a) of the Exchange Act, a defendant may be held liable for the violations of other persons over whom the defendant exercises actual power and control.

The SEC has alleged that Avalon, Fayyer, and Pustelnik were control persons of other persons or entities who violated the securities laws and that, as control persons, they are liable for those violations.  Specifically, the SEC has alleged that:

(1) Avalon and Fayyer were control persons of Avalon's traders and are liable for their violations of Sections 9(a)(2) and 10(b) of the Exchange Act and Rule 10b-5.

(2) Pustelnik was a control person of Avalon and is liable for its violations of Sections 9(a)(2) and 10(b) of the Exchange Act and Rule 10b-5.

In order to prevail on this claim against a defendant, the SEC must establish by a preponderance of the credible evidence each of the following elements:

First, the SEC must prove that the controlled person or entity engaged in the alleged securities law violation.[71]  For example, on its claim that Pustelnik is liable as a control person of Avalon, the SEC must first establish that Avalon violated Section 9(a)(2) of the Exchange Act or that Avalon violated Section 10(b) of the Exchange Act and Rule 10b-5.

Second, the SEC must prove that the defendant – the alleged control person – had direct or indirect control of the violator.[72]  Control over the alleged violator may be established by showing that the defendant had the power to direct or cause the direction of the management and

---

[71] 15 U.S.C. § 78t(a); *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998).

[72] 15 U.S.C. § 78t(a); *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998).

policies of the violator.[73]  Control may also be established by showing that the defendant had some indirect means of disciplining or influencing the alleged violator, short of actually directing the violator.[74]  The SEC does not need to establish that the defendant had control over each violation of the alleged violator.[75]

Third, the SEC must prove that the defendant was, in some meaningful sense, a culpable participant in the violation.[76]

If the SEC proves these three elements, the burden shifts to the defendant to show by a preponderance of the evidence that the defendant (1) acted in good faith, and (2) did not directly or indirectly induce the act or acts constituting the violation.[77]

In order to satisfy its burden and show that it acted in good faith, a defendant must show that it was not negligent, meaning that it exercised due care in its supervision of the violator's activities and that it maintained and enforced a reasonable and proper system of supervision and internal controls.[78]

---

[73] *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472-73 (2d Cir. 1996).

[74] *Drobbin v. Nicolet Instrument Com.*, 631 F. Supp. 860, 884-85 (S.D.N.Y. 1986).

[75] *In re Parmalat Sec. Litig.*, 474 F. Supp. 2d 547, 551-52 (S.D.N.Y. 2007); *CompuDyne Corp. v. Shane*, 453 F. Supp. 2d 807, 829 (S.D.N.Y. 2006).

[76] Although other circuits have rejected the need for proof of culpable participation, *see, e.g.*, *In re Harman Int'l Indus., Inc. Sec. Litig.*, 791 F.3d 90, 111-12 (D.C. Cir. 2015) and cases cited therein, the Second Circuit has cited as an element of control person liability "that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) (citing *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1473 (2d Cir. 1996).

[77] 15 U.S.C. § 78t(a); *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1473 (2d Cir. 1996).

[78] *Marbury Mgmt., Inc. v. Kohn*, 629 F.2d 705, 716 (2d Cir. 1980); *Hollinger v. Titan Capital Grp.*, 914 F.2d 1564, 1573, 1575 (9th Cir. 1990).

Defendants who are alleged to be control persons cannot establish their good faith simply by pointing to the fact that they had a compliance review system or supervisory procedures in place.[79]  Rather, they must demonstrate not only that they had reasonable policies and procedures for supervising their personnel, but also must show that those policies and procedures were implemented and enforced,[80] with the appropriate level of due care.[81]  To demonstrate good faith, the defendant must also prove that they did not directly or indirectly induce the act or acts constituting the underlying violation.[82]

If you find that a defendant has satisfied its burden of showing both good faith and that it did not directly or indirectly induce the act or acts constituting the violation, you must find the defendant not liable as a control person.  If, however, you find that the defendant fails to satisfy this burden, you must find him liable as a control person.

---

[79] *In re Parmalat Sec. Litig.*, 594 F. Supp. 2d 444, 457 (S.D.N.Y. 2009); *Hollinger v. Titan Capital Grp.*, 914 F.2d 1564, 1576 (9th Cir. 1990).

[80] *SEC v. First* Jersey *Sec., Inc.*, 101 F.3d 1450, 1473 (2d Cir. 1996); *In re Parmalat Sec. Litig.*, 594 F. Supp. 2d 444, 457 (S.D.N.Y. 2009).

[81] *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288DLC, 2005 WL 638268, at *15 (S.D.N.Y. Mar. 21, 2005).

[82] *SEC v. First* Jersey *Sec., Inc.*, 101 F.3d 1450, 1473 (2d Cir. 1996); *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288DLC, 2005 WL 638268, at *15 (S.D.N.Y. Mar. 21, 2005).

## **Closing Instructions**

## Selection of Foreperson

When you retire, you should elect one member of the jury as your foreperson. That

person will preside over the deliberations and speak for you here in open court.[83]

---

[83] 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 78.01, Instruction 78-5 (2019).

<u>Right to See Exhibits and Hear Testimony; Communications with the Court</u>

You are about to go into the jury room and begin your deliberations. If during those deliberations you want to see any of the exhibits, you may request that they be brought into the jury room. If you want any of the testimony read back to you, may also request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony.

Your requests for exhibits or testimony—in fact any communication with the court—should be made to me in writing, signed by your foreperson, and given to one of the marshals. In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.[84]

---

[84] 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 78.01, Instruction 78-1 (2019).

<u>Duty to Deliberate; Need for Unanimity</u>

You will now return to decide the case. In order to prevail, the plaintiff (or defendant) must sustain his or her burden of proof as I have explained to you with respect to each element of the complaint (or affirmative defense).  If you find that the SEC has succeeded, you should return a verdict in its favor on that claim. If you find that the plaintiff failed to sustain the burden on any element of the claim, you should return a verdict against the plaintiff.  (Similarly, if you find that the defendant has failed to sustain his or her burden with respect to any element of the defendant's affirmative defense, you must return a verdict against the defendant on that defense or claim.)

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Again, each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.[85]

---

[85]  4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 78.01, Instruction 78-3 (2019).

<u>Return of Verdict</u>

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it and advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that (if applicable: each of) you should be in agreement with the verdict which is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.[86]

---

[86] 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 78.01, Instruction 78-6 (2019)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

                    Plaintiff,

          v.                        CASE NO. 17-CV-1789 (DLC)

LEK SECURITIES CORPORATION,
SAMUEL LEK,
VALI MANAGEMENT PARTNERS dba
    AVALON FA LTD,
NATHAN FAYYER, and
SERGEY PUSTELNIK a/k/a
    SERGE PUSTELNIK,

                    Defendants.

## <u>**VERDICT**</u>

      We, the jury, unanimously find as follows as to each of the claims asserted by the

plaintiff:

### **Claim 1 – Section 10(b) and Rule 10b-5**

Question 1(a):  Did <u>Avalon</u> violate Section 10(b) and Rule 10b-5 of the Exchange Act?

              Yes _____                    No _____

Question 1(b):  Did <u>Nathan Fayyer</u> violate Section 10(b) and Rule 10b-5 of the Exchange Act?

              Yes _____                    No _____

Question 1(c):  Did <u>Sergey Pustelnik</u> violate Section 10(b) and Rule 10b-5 of the Exchange Act?

Yes _____                          No _____

**Claim 2 – Section 17(a)(1)**

Question 2(a):  Did <u>Avalon</u> violate Section 17(a)(1) of the Securities Act?

Yes _____                          No _____

Question 2(b):  Did <u>Nathan Fayyer</u> violate Section 17(a)(1) of the Securities Act?

Yes _____                          No _____

Question 2(c):  Did <u>Sergey Pustelnik</u> violate Section 17(a)(1) of the Securities Act?

Yes _____                          No _____

**Claim 3 – Section 17(a)(3)**

Question 3(a):  Did <u>Avalon</u> violate Section 17(a)(3) of the Securities Act?

Yes _____                          No _____

Question 3(b):  Did <u>Nathan Fayyer</u> violate Section 17(a)(3) of the Securities Act?

Yes _____                          No _____

Question 3(c):  Did <u>Sergey Pustelnik</u> violate Section 17(a)(3) of the Securities Act?

Yes _____                          No _____

**Claim 4 – Section 9(a)(2)**

Question 4(a):  Did <u>Avalon</u> violate Section 9(a)(2) of the Exchange Act?

           Yes _____                          No _____

Question 4(b):  Did <u>Nathan Fayyer</u> violate Section 9(a)(2) of the Exchange Act?

           Yes _____                          No _____

**Claim 5 – Aiding and Abetting**

Question 5(a):  Did <u>Nathan Fayyer</u> aid and abet **any** violation by Avalon of Section 10(b) and Rule 10b-5 of the Exchange Act, Section 9(a)(2) of the Exchange Act, Section 17(a)(1) of the Securities Act, or Section 17(a)(3) of the Securities Act?

           Yes _____                          No _____

Question 5(b):  Did <u>Nathan Fayyer</u> aid and abet **any** violation by Sergey Pustelnik of Section 10(b) and Rule 10b-5 of the Exchange Act, Section 17(a)(1) of the Securities Act, or Section 17(a)(3) of the Securities Act?

           Yes _____                          No _____

Question 5(c):  Did <u>Sergey Pustelnik</u> aid and abet **any** securities law violation by Avalon of Section 10(b) and Rule 10b-5 of the Exchange Act, Section 9(a)(2) of the Exchange Act, Section 17(a)(1) of the Securities Act, or Section 17(a)(3) of the Securities Act?

           Yes _____                          No _____

Question 5(d):  Did <u>Sergey Pustelnik</u> aid and abet **any** violation by Nathan Fayyer of Section 10(b) and Rule 10b-5 of the Exchange Act, Section 17(a)(1) of the Securities Act, or Section 17(a)(3) of the Securities Act?

           Yes _____                          No _____

**Claim 6 – Control Person**

Question 6(a):  Is <u>Avalon</u> liable as a control person of Avalon's traders for violations of Section 10(b) and Rule 10b-5 of the Exchange Act or for violations of Section 9(a)(2) of the Exchange Act?

Yes _____                      No _____

Question 6(b):  Is <u>Nathan Fayyer</u> liable as a control person of Avalon's traders for violations of Section 10(b) and Rule 10b-5 of the Exchange Act or for violations of Section 9(a)(2) of the Exchange Act?

Yes _____                      No _____

Question 6(c):  Is <u>Sergey Pustelnik</u> liable as a control person of Avalon for violations of Section 10(b) and Rule 10b-5 of the Exchange Act or for violations of Section 9(a)(2) of the Exchange Act?

Yes _____                      No _____

SO SAY WE ALL.

_____
FOREPERSON

_____
DATE

4

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 13, 2019, the foregoing document was filed on ECF and thereby served on all counsel of record.

/s/  Olivia S. Choe
Olivia S. Choe
U.S. Securities and Exchange Commission