UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,
                              Plaintiff,

                v.

LEK SECURITIES CORPORATION et al.,
                              Defendants.

CASE NO. 17-CV-1789 (DLC)

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* TO PRECLUDE STRICKEN AFFIRMATIVE DEFENSES AND EVIDENCE AND ARGUMENTS RELATED THERETO

Plaintiff Securities and Exchange Commission (the "SEC") submits this motion *in limine* for an order precluding defendants Vali Management Partners dba Avalon FA Ltd. ("Avalon"), Nathan Fayyer ("Fayyer"), and Sergey Pustelnik ("Pustelnik") (collectively, the "Avalon Defendants") from: (i) arguing or implying, in the presence of the jury, that evidence related to their fourth, fifth, sixth, and seventh affirmative defenses, which have been stricken, serve as defenses to or lessen their liability for the manipulation and other charges at issue in this case; and (ii) presenting, referring to, or mentioning in front of the jury evidence or arguments related to these affirmative defenses.  Any such evidence or argument would be irrelevant to the jury's determination as to the Avalon Defendants' liability and would tend to unfairly prejudice or confuse the jury.

## BACKGROUND

On March 10, 2017, the SEC filed a Complaint alleging that the Avalon Defendants engaged in two manipulative trading schemes known as "layering" and "cross-market

manipulation." ECF No. 1.  On June 2, 2017, the Avalon Defendants filed an Answer.  ECF No.

65.  The Answer contained eight affirmative defenses, including:

- Fourth Affirmative Defense: "Plaintiff's claims are barred by its lack of diligence."

- Fifth Affirmative Defense: "To the extent Plaintiff failed to mitigate, minimize, or avoid any damages, any recovery must be reduced in whole or in part."

- Sixth Affirmative Defense: "Plaintiff's claims are barred by the doctrines of ratification, waiver and estoppel."

- Seventh Affirmative Defense: "Plaintiff's claims are barred by the doctrine of unclean hands."

*Id*.

On October 17, 2017, the SEC filed a letter asking the Court to address interrogatories

concerning affirmative defenses raised by the Avalon Defendants.  ECF No. 104.  The Court

held a telephonic conference on October 27, 2017.  ECF No. 111.  During the conference, the

Court struck Avalon's affirmative defenses, noting that these were not affirmative defenses that

could be asserted in response to a claim of manipulation.  *Id.* at 5:5-7, 5:25-6:2, 7:17-20.  The

Court, however, invited the Avalon Defendants to file any authority supporting these affirmative

defenses.  *Id.* at 6:6-10, 7:20-21.  The Avalon Defendants declined to do so, and on November

20, 2017, the Court entered an order striking Avalon's fourth, fifth, sixth, and seventh

affirmative defenses on the grounds that they "fail as a matter of law."  ECF No. 117.

## ARGUMENT

### I.  Legal Standards for Motions in Limine

"The purpose of an in limine motion is to aid the trial process by enabling the Court to

rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are

2

definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation marks and citation omitted); *Hart v. RCI Hospitality Holdings, Inc.*, 90 F. Supp. 3d 250, 257 (S.D.N.Y. 2015) (same).

This Court has informed the parties that issues concerning admissibility should be raised with the Court outside of the trial proceedings in front of the jury.  Accordingly, a motion in limine is the proper means of raising the present issue.

"Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001).  As shown below, any evidence or arguments related to the defendants' stricken affirmative defenses are clearly inadmissible on all potential grounds.

## II. Defendants Should Be Precluded From Introducing Evidence or Making Arguments Related to the Stricken Affirmative Defenses

### A. The Affirmative Defenses Were Stricken, and Therefore Cannot Be Raised Now

The Avalon Defendants' fourth, fifth, sixth, and seventh affirmative defenses were stricken in November 2017 because they "fail as a matter of law."  ECF. No. 117.  Now, almost two years later, it is far too late for the Avalon Defendants to raise such arguments.

Accordingly, the Avalon Defendants should be precluded from arguing or implying that the stricken defenses—and evidence related thereto—serve as defenses to or lessen their liability for the manipulation and other charges at issue in this case.

### B. Evidence or Argument Related to the SEC's Purported "Lack of Diligence," "Undue Delay," or "Ratification" Are Irrelevant and Would Prejudice, Confuse, and Mislead the Jury.

Counsel for the Avalon Defendants argued that their stricken affirmative defenses related to lack of diligence (fourth affirmative defense), failure to mitigate (fifth affirmative defense),

and ratification (sixth affirmative defense) were designed to show that the SEC and other self-regulatory organizations ("SROs") "allowed" the manipulative trading to continue, "had the ability to shut down th[e] trading at any time and chose not to," and in doing so, ratified the behavior.  ECF No. 111 at 3:25-4:4; 5:12-14; 6:20-22.[1]

Such evidence and arguments are irrelevant.  The issue to be tried is whether the Avalon Defendants violated the securities laws.  Evidence and argument concerning a purported lack of diligence, undue delay, failure to mitigate, or ratification by the SEC have nothing to do with that issue, and are just an effort to blame the SEC for the Avalon Defendants' own misconduct.  Further, even if a plausible argument could be made that the evidence is relevant, it should be excluded because any "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [and] misleading the jury." Fed. R. Evid. 403.  Introducing evidence or making arguments related to the stricken affirmative defenses would be an improper attempt to distract the jury from the SEC's case against the Avalon Defendants, and might confuse the jury into thinking that these arguments serve as affirmative defenses to a claim of manipulation.  As the Court has clearly stated, they do not.  Id. at 5:5-7, 5:25-6:2, 7:17-20.

The jury must decide whether or not the SEC proves its case at trial, not whether the SEC should have brought the case sooner, or whether actions could have been taken by the SEC to stop the defendants' trading.  See, e.g., SEC v. Tiffany Indus., Inc., 535 F. Supp. 1167, 1167 (D. Mo. 1982) ("[A]gencies engaged in prosecutorial or enforcement activities are provided a wide discretion on when to file charges and against whom the charges should be instituted."); United States v. Cheung Kin Ping, 555 F.2d 1069, 1073 (2d Cir. 1977) (approving a jury instruction that

---

[1] See also ECF No. 111 at 3:12-15 ("a lot of these affirmative defenses relate to the fact that there were so many trades over such a long period of time and investigations going on for a long time, and no one actually took any actions to stop them."); 5:21-24 (arguing that damages would have been nominal if the SEC had shut the trading down).

"law enforcement policy [i]s not [the jury's] concern," and that the jury should "focus its attention on the real issue, namely, whether the government had proved the facts alleged").

Allowing the jury to hear such information might encourage the jurors to speculate about irrelevant facts, or jump to unwarranted conclusions that would unfairly prejudice the SEC.  *See, e.g., SEC v. KPMG LLP*, No. 03 Civ. 671(DLC), 2003 WL 21976733, *1, 3 (S.D.N.Y. Aug. 20, 2003) (striking defendants' affirmative defenses that were centered on introducing evidence that the SEC did not advise defendants of its improper accounting methodology and caused defendants to issue an inaccurate audit report, and noting the prejudicial nature of that evidence). Any evidence that the Avalon Defendants might introduce concerning delay, lack of diligence, failure to mitigate, or ratification of the trading has no probative value, creates a significant danger of unfair prejudice, and would confuse and mislead the jury.

## C.   Evidence or Argument Related to "Unclean Hands" Is Irrelevant and Would Cause Unfair Prejudice and Confuse And Mislead The Jury.

The Avalon Defendants apparently asserted that the SEC has "unclean hands" because it "profited" and "generated income," in the form of fees it supposedly collected on the manipulative trades.  *See* ECF 111 at 7:7-16.[2]   The argument is irrelevant, has no factual support, and would be unfairly prejudicial to the SEC.

First, the doctrine of unclean hands generally cannot be asserted against a government agency that is acting in the public interest.  *See SEC v. KPMG LLP*, 2003 WL 21976733, *3 (*citing SEC v. Rosenfeld,* No. 97 Civ. 1467(RPP), 1997 WL 400131, at *2 (S.D.N.Y. Jul. 16, 1997)); *see also SEC v. Gulf & Western Ind., Inc.,* 502 F. Supp. 343, 348 (D.D.C. 1980) (in SEC enforcement actions "the doctrine of unclean hands is clearly without merit because it may not

---

[2] The Avalon Defendants also indicated such arguments might relate to the SEC's lack of diligence because the SEC and FINRA "collected revenue" on the trades without shutting them down.  ECF No. 111 at 3:25-10.

be invoked against a governmental agency which is attempting to enforce a congressional mandate in the public interest.").  Therefore, whatever the Avalon Defendants contend constitutes "unclean hands" by the SEC has no place in this trial.

Second, the Avalon Defendants' argument also has no support in the record.  The SEC did not "profit" from the defendants' manipulative trades.  While some exchanges assess what they call "SEC fees," the SEC does not directly assess, or collect, fees tied to individual trades. Rather, Section 31 of the Securities Exchange Act of 1934 directs the SEC to collect fees from self-regulatory organizations ("SROs") based on the aggregate dollar amount of sales of certain securities transacted by or through SROs.  17 C.F.R. § 240.31.  Section 31 is silent on the manner in which SROs may obtain funds to make such payments.[3]  Section 31 fee obligations apply only to SROs, and it is solely within the discretion of the SROs how they want to obtain the funds to pay the fees.  *Id.*  The decision by SROs to assess trade-based fees and use those amounts to fulfill their Section 31 obligations is irrelevant to this case, and certainly not an indication of "unclean hands" on the part of the SEC.

Third, even if the SEC did collect any purported "SEC fees," that would be irrelevant under Fed. R. Evid. 401 as it has no tendency to make any fact at issue in this case more or less probable, and is of no consequence to determining the liability of the defendants.  *See* Fed. R. Evid. 401.  *See SEC v. KPMG LLP*, 2003 WL 21976733, *3 (dismissing defendants' affirmative defense of unclean hands and noting that evidence related to the defense would be prejudicial to the SEC); *Highland Capital Management, L.P. v. Schneider*, 551 F. Supp. 2d 173, 177 (S.D.N.Y. 2008) (Under Rule 403, evidence is unfairly prejudicial when it has "an undue tendency to

---

[3] Section 31 Fees – Basic Information for Firms, available at
https://www.sec.gov/divisions/marketreg/sec31feesbasicinfo.htm (last visited September 10, 2019).

suggest decision on an improper basis").  On balance, this evidence should be excluded as it has

no probative value, and would only serve to mislead and confuse the jury and unfairly prejudice

the SEC.

### III.   The Court Should Also Preclude the Defendants from Introducing Evidence or Presenting Argument Related to These Affirmative Defenses with FINRA and SRO Witnesses

The Avalon Defendants have also asserted arguments and attempted to present evidence

concerning undue delay, failure to mitigate, ratification, and unclean hands on the part of the

Financial Industry Regulatory Authority ("FINRA") and exchanges.  *See* ECF No. 111, at 3:25-

4:2 ("the government, along with FINRA, had the ability to shut down this trading at any time.");

4:4-10 ("Both FINRA and the SEC collected fees on those trades, allowed all of those trades to

occur over that long period of time, and then at the end of that period of time came back to us

and said, These trades that we've known have been going on all along, we've now decided that

you should have known from the beginning that they were improper.").

The SEC will present testimony from officials from FINRA and exchanges during its

case-in-chief.  The Avalon Defendants should not be permitted to elicit testimony about, present,

refer to, or mention in front of the jury any evidence or argument concerning any delay, lack of

diligence, ratification, or failure to mitigate on the part of FINRA or the exchanges.  Such

arguments are completely irrelevant to the facts at issue in this case, and would only distract

from the actual issue in this case, which is whether the Avalon Defendants violated the federal

securities laws.  These harms substantially outweigh any probative value by confusing and

misleading the jury to the unfair prejudice of the SEC.  Accordingly, the SEC requests that any

ruling extend to any evidence or argument of these issues related to FINRA or any other SRO.

## <u>Conclusion</u>

For the reasons set forth above, the SEC respectfully requests that this court grant its

motions *in limine*.

Dated:  September 13, 2019                              Respectfully submitted,


                                                       /s/  Sarah S. Nilson
                                                       David J. Gottesman
                                                       Olivia S. Choe
                                                       Sarah S. Nilson
                                                       U.S. Securities and Exchange Commission
                                                       100 F Street N.E.
                                                       Washington, D.C. 20549
                                                       Tel.: (202) 551-6109 (Nilson)
                                                       Fax: (202) 772-9292
                                                       Email: NilsonS@sec.gov

                                                       *Counsel for Plaintiff*

8