UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

Plaintiff,

v.

LEK SECURITIES CORPORATION et al.,

Defendants.

CASE NO. 17-CV-1789 (DLC)

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE*
TO ADMIT AN AVALON SERVER AND DOCUMENTS THEREFROM**

David J. Gottesman (*pro hac vice*)
Olivia S. Choe (*pro hac vice*)
Sarah S. Nilson (*pro hac vice*)

Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street N.E.
Washington, D.C. 20549
Tel.: (202) 551-6109 (Nilson)
Fax: (202) 772-9292
Email: NilsonS@sec.gov

# TABLE OF CONTENTS

BACKGROUND ............................................................................................................ 1

1.   The Avalon Server ............................................................................................... 1

2.   Avalon's Belated Production of the Avalon Server ............................................. 2

3.   The SEC Forensically Images the Avalon Server ............................................... 3

4.   The SEC Accesses the Avalon Databases on the Server ..................................... 4

5.   The SEC Produces Copies of the Avalon Server RAID to the Defendants ......... 4

6.   The Avalon Records on the Avalon Server ......................................................... 5

7.   The Avalon Defendants Refuse to Stipulate to the Authenticity of the Avalon Server and

     Avalon Server Exhibits ...................................................................................... 6

LEGAL STANDARDS FOR MOTIONS IN LIMINE .................................................... 6

ARGUMENT ............................................................................................................... 7

1.   Overview of Authenticity and Relevance ........................................................... 7

2.   The Avalon Server Hard Drives Are Self-AuthenticatingUnder Fed. R. of Evid. 902(14) .. 8

3.   The Copy of the Avalon Server Produced as Z-007024702 Is Authentic Under Fed. R. of

     Evid. 901(b)(1), 901(b)(9), and 902(14) ............................................................ 9

4.   The Avalon Server Exhibits are Authentic

     Under Fed. R. of Evid. 902(13), 902(14), and 901(b)(9) .................................... 10

5.   Record Evidence Also Establishes the Authenticity of the Avalon Server ......... 11

6.   The Avalon Server and Avalon Server Exhibits are Relevant

     Under Fed. R. Evid. 401 and 402 ..................................................................... 12

CONCLUSION ........................................................................................................... 13

i

# TABLE OF AUTHORITIES

## Cases

*Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171 (2d Cir. 2004)............................ 10

*Hart v. RCI Hospitality Holdings, Inc.*, 90 F. Supp. 3d 250 (S.D.N.Y. 2015) .............................. 7

*Palmieri v. Defaria*, 88 F.3d 136 (2d Cir. 1996) ........................................................................... 7

*United States v. Gagliardi*, 506 F.3d 140 (2d Cir. 2007)............................................................... 8

*United States v. Komasa*, 767 F3d 151 (2d Cir 2014) ................................................................... 9

*United States v. Bout*, 651 Fed. Appx. 62 (2d Cir. 2016) .............................................................. 8

*United States v. Maldonado-Rivera*, 922 F.2d 934 (2d Cir. 1990).............................................. 11

*United States v. Natale*, 526 F.2d 1160 (2d Cir. 1975)................................................................. 11

*United States v. Rigas*, 490 F.3d 208 (2d Cir. 2007) ................................................................... 10

*United States v. Tin Yat Chin*, 371 F.3d 31 (2d Cir. 2004)............................................................ 8

## Rules

Fed. R. Evid. 401 ........................................................................................................................... 12

Fed. R. Evid. 402 ........................................................................................................................... 12

Fed. R. Evid. 803(6)......................................................................................................................... 8

Fed. R. Evid. 901(a)................................................................................................................... 1, 8, 9

Fed. R. Evid. 901(b)............................................................................................................... 1, 7, 9, 11

Fed. R. Evid. 902(11)................................................................................................................... 1, 9

Fed. R. Evid. 902(13)................................................................................................................... 1, 7

Fed. R. Evid. 902(14)............................................................................................................... 1, 7, 8, 9

## Other Authorities

Advisory Comm. Notes, 2017 Amendments to Fed. R. Evid. 902.......................................... 9, 10

Plaintiff Securities and Exchange Commission (the "SEC") submits this motion *in limine* to admit into evidence for trial a computer server and printouts from the server pursuant to Federal Rules of Evidence 901(a) and (b) and 902(11), (13), and (14).  As shown below, the server and printouts are genuine and authentic, and are relevant to the issues in this case.  The Avalon Defendants have refused to stipulate to the admissibility of these materials.

The server is comprised of databases containing financial and other internal records of defendant Avalon FA LTD ("Avalon") that were maintained by defendant Sergey Pustelnik at his residence in New Jersey (hereafter, "Avalon Server").  The Avalon Server contains critical evidence of a key issue in this trial:  defendant Pustelnik's role as a control person of Avalon.  The records on the Avalon Server are internal, "back office" financial records of Avalon that were maintained by Pustelnik at his residence.  These records show Pustelnik's intimate involvement in running Avalon, which he denies.

In the interest of streamlining trial, and to avoid substantial time and resources, the SEC seeks a ruling *in limine* admitting the server and printouts therefrom into evidence on the grounds that (1) the copy of the Avalon Server Bates-labeled Z-007024702 and produced to the defendants in litigation is a genuine, authentic, and accurate copy of the Avalon Server, (2) exhibits containing printouts of tables from the Avalon Server are genuine, authentic, and accurate copies of data from the Avalon Server, and (3) the server and the printouts are relevant.

## BACKGROUND

1. **The Avalon Server**

From at least 2012 through March 2014, Avalon maintained a server containing its internal records at Pustelnik's residence.  Nilson Decl. Ex. 1 at 358:7-18; Ex. 2 at 28:8-29:6; Ex.

3 at 111:25-112:13.[1]  The Avalon Server maintained at Pustelnik's residence was a mirror image of a server that Avalon kept at its offices in Ukraine.  Nilson Decl. Ex. 2 at 29:9-25, 32:14-33:1; Ex. 4 at 203:21-204:16.  It contains "back office information" for Avalon, including operational materials and internal data on the activities of the company, expenses, bills, invoices, trader information, and trade data.  Nilson Decl. Ex. 1 at 16:7-19, 49:25-50:7, 480:12-481:11; Ex. 2 at 34:20-35:4; Ex. 4 at 198:1-199:3.

### 2.  Avalon's Belated Production of the Avalon Server

In September 2013, the SEC issued subpoenas to Avalon and Fayyer requiring the production of financial and other documents pertaining to Avalon.  Nilson Decl. Exs. 5 & 6.  Avalon and Fayyer did not produce the Avalon Server in response to those subpoenas.

In December 2013, the SEC issued a subpoena to Pustelnik requiring the production of documents and materials related to Avalon.  Nilson Decl. Ex. 7.  In or around February 2014, Pustelnik's counsel – James Wines – informed the SEC of the existence of the Avalon Server.  *See* Nilson Decl. Ex. 2 at 28:8-21.  At the time, Mr. Wines represented only Pustelnik.

Upon learning of the existence of the Avalon Server, the SEC issued subpoenas to Avalon and Fayyer, who were at the time represented by Buckley Sandler, seeking materials from the Avalon Server.  Nilson Decl. Exs. 8 & 9.  Pustelnik subsequently transferred the Avalon Server to Buckley Sandler.  *See* Nilson Decl. Ex. 12; Bond Decl. Att. 3.

Shortly after the transfer of the Avalon Server from Pustelnik to Buckley Sandler, Avalon and Fayyer retained new counsel, Fox Rothschild.  The SEC again issued subpoenas to Avalon and Fayyer, this time via Fox Rothschild, seeking materials from the Avalon Server.  Nilson

---

[1] The Declarations of Sarah S. Nilson ("Nilson Declaration") and Douglas Bond ("Bond Declaration") are attached hereto.  Exhibits cited herein are denoted as exhibits to the Nilson Declaration ("Nilson Decl. Ex.") or attachments to the Bond Declaration ("Bond Decl. Att.").

Decl. Exs. 10 & 11.  Following extensive negotiations between the SEC and counsel for Avalon

and Fayyer, the parties agreed in April 2014 that the SEC would collect the Avalon Server from

Buckley Sandler, forensically image the server, and return the originals to Fox Rothschild.  *Id.*

Ex. 12.

### 3.   The SEC Forensically Images the Avalon Server

On April 29, 2014, Erin Hernandez, a Forensic Analyst working for the SEC's

Information Technology Forensic Lab ("SEC Forensic Lab"), collected the Avalon Server from

Buckley Sandler.  Bond Decl. Atts. 1-3.  The Avalon Server consisted of two hard drives.[2]  *Id.*

Att. 1 at ¶ 4; *see also id.* Atts. 2-3.  Ms. Hernandez forensically imaged those two hard drives.

She then compared the hash values of the original hard drives and the forensic images (the

"Avalon Server Hard Drives"), and verified that they were identical.  *Id.* Att. 1 at ¶¶ 3-5.  These

steps were conducted as part of Ms. Hernandez's role with the SEC, and documented in a

declaration as a part of her regular practice.  *Id.* Att. 1 at ¶ 2.  Ms. Hernandez's Declaration was

created and has been maintained by the SEC Forensics Lab in the course of its regularly

conducted activities.  Bond Decl. ¶ 6.

The original Avalon Server (*i.e.*, the two hard drives) were returned to Fox Rothschild,

Avalon and Fayyer's counsel at the time.  Fayyer has testified that upon receiving the hard drives

from his attorney, he placed them in storage, but at least as of February 2018 had not reviewed

the contents of the drives.  Nilson Decl. Ex. 4 at 101:9-102:8.  Fayyer has claimed that although

he did not use the Avalon Server after it was returned by the SEC, Avalon continued to keep

---

[2] The "Avalon Server" is not an actual server, but databases in sequel format.  *See, e.g.*, Nilson Decl. Ex. 3 at 111:25-112:8, 115:19-116:20, 126:5-8, 131:15-132:14.  The Avalon Server was produced to the SEC on two hard drives.  The term Avalon Server has been used by the parties throughout the investigation and litigation of this case, and thus will be used herein to collectively refer to the databases contained on the hard drives produced to and forensically imaged by the SEC.

records on a server in Ukraine, until that server was taken offline when Avalon stopped trading through Lek in October 2016.  *Id.* at 108:19-109:12.

Avalon and Fayyer did not produce a copy of the Avalon Server or any data from the Avalon Server during the litigation of this matter, nor did they produce a copy of Avalon's server in Ukraine or any data from that server.  At no time since collection of the Avalon Server in April 2014 have any of the Avalon Defendants produced updated versions of the back office information that had been stored on the Avalon Server until that date.

### 4.   The SEC Accesses the Avalon Databases on the Server

After Ms. Hernandez created forensic copies of the Avalon Server Hard Drives, Doug Bond, a Senior Computer Forensic Examiner in the SEC Forensic Lab, determined that the Avalon Server Hard Drives were configured as a Redundant Array of Independent Disks ("RAID").  Bond Decl. ¶ 12.  A RAID is a standard method of using multiple hard drives to store data.  *Id.*  Mr. Bond configured the Avalon Server Hard Drives, which were in a simple RAID format, using a standard RAID reconstruction technique.  *Id.* ¶ 13-14, 16.  The Avalon Server Hard Drives configured in RAID format ("Avalon Server RAID") generated a new hash value. *Id.* ¶ 17.  Mr. Bond confirmed, however, that the hash values of the individual Avalon Server Hard Drives used to configure the Avalon Server RAID matched the hash values in the Hernandez Declaration (*i.e.*, the hash values of the two hard drives comprising the original Avalon Server and the forensic images that Ms. Hernandez created of that server).  *Id.* ¶ 15.

### 5.   The SEC Produces Copies of the Avalon Server RAID to the Defendants

In August 2017, Bond made forensic copies of the Avalon Server RAID, which were Bates-labeled Z-007024702 and produced to the defendants in discovery ("Avalon Server Produced as Z-007024702").  Bond Decl. ¶ 19-20; Nilson Decl. Ex. 13.  To date, none of the

defendants have raised any objections to the contents or authenticity of the Avalon Server Produced as Z-007024702. Nor did any of the defendants raise any challenges to any of the tables from the Avalon Server introduced as exhibits during deposition. On the contrary, Pustelnik acknowledged that the format and naming convention of the tables were consistent with his recollection of the server. Nilson Decl. Ex. 3 at 126:11-128:5, 148:16-152:5.

### 6. **The Avalon Records on the Avalon Server**

The Avalon Server contains five databases: AVA2, BackOffice ("Avalon BackOffice Database"), BarberShop, Cole, and History (collectively, "Avalon Server Databases"). Bond Decl. ¶ 18. Consistent with Pustelnik and Fayyer's descriptions of the Avalon Server, the databases are in sequel (SQL) format.[3] *Id.*; Nilson Decl. Ex. 1 at 125:3-6. The SQL databases contain "tables" of data that are "like giant spreadsheets." Nilson Decl. Ex. 2 at 35:8-18; Ex. 3 at 124:23-126:8. As explained by Fayyer, it is "very easy" to use SQL searches to pull data from the Avalon Server. Nilson Decl. Ex. 4 at 481:7-11; *see also id.* at 125:3-13. Some of the tables in the Avalon Server note that the data in the tables was "updated by" or "approved by" "Serge" or "SP." Bond Decl. Atts. 4 & 16. Most of the table names begin with a "t" after "dbo," which Pustelnik states is a naming convention that he normally uses. Bond Decl. at ¶ 18; Nilson Decl. Ex 3 at 151:6-152:5. For example, one of the tables is titled "dbo_tMaster" (hereafter, "Master Table"). Bond Decl. ¶ 18.

The SEC plans to introduce printouts of tables from the Avalon Server as exhibits at trial Bond Decl. Atts. 4-21 (hereafter, "Avalon Server Exhibits).[4] The Avalon Server Exhibits

---

[3] As Pustelnik explained, sequel is a programming language and the technological framework for the databases on the server. Nilson Decl. Ex. 3 at 131:8-132:14.

[4] The Bond Declaration details the process of accessing and printing tables from the Avalon Server. Bond Decl. ¶¶ 22-26.

contain information reflecting Pustelnik's involvement in and financial connection with Avalon. For example, the first entry in the Master Table lists "S.A.P." as an "EXEC."  Bond Decl. Att. 4. The entry for S.A.P. denotes an account number of !000.  *Id.*  Other tables from the Avalon Server containing entries for account number !000 include multiple transactions that appear to be associated with Pustelnik, including (1) charges that Pustelnik made on a Visa Signature Business credit card in the name of Avalon's sister entity, Avalon Fund Aktiv; and (2) entries that appear to be reimbursements to Pustelnik for Avalon-related expenses.  *See* Bond Decl. Att. 6 at PX22A-3; Nilson Decl. Ex. 14 at PX34-3.  Additional tables on the Avalon server include references to various assets and accounts held by Avalon that are relevant to Fayyer and Pustelnik's involvement in the transfer of funds to and from Avalon and its account at Lek Securities, as well as the execution of one of the manipulative strategies at issue in this case through another broker-dealer.  *See* Bond Decl. Atts. 19, 21; ECF No. 1 at ¶¶ 111-115.

### 7. <u>The Avalon Defendants Refuse to Stipulate to the Authenticity of the Avalon Server and Avalon Server Exhibits</u>

On September 6, 2019, the SEC requested that the Avalon Defendants stipulate to the authenticity of the Avalon Server Bates-labeled Z-007024702 and the Avalon Server Exhibits. Nilson Decl. Ex. 15.  The Avalon Defendants declined to agree to these stipulations.  The Avalon Defendants did, however, indicate that they are using information from the Master Table from the Avalon Server (Bond Decl. Atts. 4 & 5) in connection with a summary chart that they plan to present at trial.  *See* Nilson Decl. Ex. 16.

## <u>LEGAL STANDARDS FOR MOTIONS IN LIMINE</u>

"The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial."  *Palmieri v.*

*Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation marks and citation omitted); *Hart v. RCI Hospitality Holdings, Inc.*, 90 F. Supp. 3d 250, 257 (S.D.N.Y. 2015) (same).

This Court has informed the parties that issues concerning admissibility should be raised with the Court outside of the trial proceedings in front of the jury.  Accordingly, a motion in limine is the proper means of raising the present issue.

## ARGUMENT

### 1.  Overview of Authenticity and Relevance

Authenticity of the Avalon Server is established at every step.  First, the Avalon Server Hard Drives are self-authenticating under Fed. R. Evid. 902(14) because the originals and images were verified using an accepted process of digital identification (*i.e.*, hash value comparison). Second, the Avalon Server Produced as Z-007024702 is authentic under Fed. R. Evid. 901(b)(1), 901(b)(9), and 902(13) because, as detailed in the Bond Declaration, it is a copy, verified through a process of digital identification, of the configured Avalon Server RAID, which is a combination of the Avalon Server Hard Drives using a standard RAID technique.  Third, the Avalon Server Exhibits are self-authenticating under Fed. R. Evid. 902(14), and are authentic under 901(b), because they are exports and printouts of documents generated using standard systems and processes.

The SEC plans to introduce the Avalon Server and Avalon Server Exhibits at trial.  These exhibits will be critical to demonstrating Pustelnik's involvement with and financial interest in Avalon.  In the interest of streamlining trial, and to avoid substantial time and resources, the SEC seeks a ruling that the Avalon Server Bates-labeled Z-007024702 is authentic and relevant.  Such a ruling would eliminate the need to call Douglas Bond to testify concerning the imaging of the Avalon Server, as well as efforts to access and print information therefrom.

"The bar for authentication of evidence under Fed.R.Evid. 901(a) is 'not particularly high.'" *United States v. Bout*, 651 Fed. Appx. 62, 63 (2d Cir. 2016) (*quoting United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007)).   "It is met where 'sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." *Id.* at 63-64 (*quoting United States v. Tin Yat Chin*, 371 F.3d 31, 38 (2d Cir. 2004)).

### 2. The Avalon Server Hard Drives Are Self-Authenticating Under Fed. R. of Evid. 902(14)

Under Fed. R. Evid. 902(14), data is self-authenticating if it is "copied from an electronic device" and "authenticated by a process of digital identification."  Fed. R. Evid. 902(14).  This process must be shown by a certification pursuant to Fed. R. Evid. 803(6), which requires that the certification be (a) made at or near the time by someone with knowledge; (b) kept in the course of a regularly conducted activity of an organization; and (c) a regular practice of the activity.  Fed. R. Evid. 803(6).

The Avalon Server Hard Drives are self-authenticating under Fed. R. of Evid. 902(14) because they are data copied from an electronic device that has been authenticated by an accepted process of digital identification, namely the comparison of hash values confirming that the image is an exact duplicate of the original.[5]  The addition of Fed. R. Evid. 902(14) in 2017 specifically contemplated the self-authentication of data where, as here, a qualified person has certified that she checked and confirmed that the hash values of electronic data were identical to

---

[5] "A hash value is a number that is often represented as a sequence of characters and is produced by an algorithm based upon the digital contents of a drive, medium, or file. If the hash values for the original and copy are different, then the copy is not identical to the original. If the hash values for the original and copy are the same, it is highly improbable that the original and copy are not identical. Thus, identical hash values for the original and copy reliably attest to the fact that they are exact duplicates."  Advisory Comm. Notes, 2017 Amendments to Fed. R. Evid. 902, paragraph (14).

the original.  *See* Advisory Comm. Notes, 2017 Amendments to Fed. R. Evid. 902, paragraph (14).

The declaration of Ms. Hernandez, the forensic analyst who conducted the imaging process, details how the images were made and the process of verifying that the hash values of the originals match the hash values of the forensic images.  Bond Decl. Att 1 at ¶¶ 3-5.[6]  Since the image is self-authenticating under Fed. R. Evid. 902(14), it does not require the admission of extrinsic evidence of authenticity.  *United States v. Komasa*, 767 F3d 151, 154 (2d Cir. 2014).

### 3.   The Copy of the Avalon Server Produced as Z-007024702 Is Authentic Under Fed. R. of Evid. 901(b)(1), 901(b)(9), and 902(14)

Record evidence, along with the Hernandez and Bond Declarations, establish that the Avalon Server Produced as Z-007024702 is an authentic copy of the Avalon Server maintained in Pustelnik's residence.  "To satisfy the requirement of authenticating or identifying an item of evidence [under Fed. R. Evid. 901(a)], the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  A proponent is able to satisfy this authentication requirement by the "testimony of a witness with knowledge of what the item is claimed to be" or "evidence describing a process or system and showing that it produces an accurate result."  Fed R. Evid. 901(b)(1); 901(b)(9).

As detailed in the Bond Declaration, the Avalon Server Produced as Z-007024702 is a copy of the Avalon Server RAID, *i.e.*, the combination of the Avalon Server Hard Drives using a standard RAID technique.  Bond Decl. ¶¶ 12-17, 19-21.  In accordance with Fed. R. Evid.

---

[6] The Hernandez Declaration meets the requirements of Fed. R. Evid. 902(11) and 803(6)(A)-(C) as it was made as a part of Ms. Hernandez's duties and as a regular practice of the SEC Forensic Lab and has been kept in the course of the regularly conducted activities of the SEC Forensic Lab.  Bond Decl. Att. 1 at ¶¶ 2-3; Bond Decl. ¶ 6.  The SEC also provided the Avalon Defendants with "reasonable written notice of the intent to offer" the Hernandez and Bond Declarations and gave them the opportunity to inspect and object to the Avalon Server materials.  Nilson Decl. Ex. 15.

902(14), it was "copied from an electronic device," the Avalon Server RAID, and "authenticated by a process of digital identification" through a hash value comparison by verifying that the hash values of the databases in the Avalon Server RAID and the Avalon Server Produced as Z-007024702 matched.  *Id*. ¶¶ 19-21.  This is detailed in the Bond Declaration, which certifies that the forensic image was made by him (someone with knowledge), conducted in the course of a regularly conducted activity of the SEC Forensics Lab, and was a regular practice of the SEC Forensic Lab.[7]  *Id.*

### 4.   The Avalon Server Exhibits are Authentic Under Fed. R. of Evid. 902(13), 902(14), and 901(b)(9)

The Avalon Server Exhibits were generated using standard systems and processes to export and print tables from the Avalon Server Databases.  Mr. Bond extracted and accessed the Avalon Server Databases using Microsoft SQL Server and a Microsoft Database front-end, which are standard programs and processes commonly used to access, retrieve, and organize electronic data.  Bond Decl. ¶¶ 22, 24.  Before generating the Avalon Server Exhibits, Mr. Bond verified the databases from which the exhibits were generated by using a process of digital identification pursuant to Fed. R. Evid. 902(14).  *Id.* ¶ 23.  Consistent with Fed. R. Evid. 902(13), the Avalon Server Exhibits were then created using an electronic process of exporting to Excel and printing to Adobe Portable Document Format (PDF).[8]  *Id.*  ¶¶ 25-26.  Data and

---

[7] Mr. Bond has personal knowledge of the actions taken with respect to the Avalon Server based on the work that he conducted in the investigation and litigation of this matter.  The fact that a witness also has specialized knowledge "does not render his testimony 'expert' as long as it was based on his 'investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise….'"  *United States v. Rigas*, 490 F.3d 208, 224 (2d Cir. 2007) (*citing Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171, 181 (2d Cir. 2004)).

[8] *See* Advisory Comm. Notes, 2017 Amendments to Fed. R. Evid. 902, paragraph 13 (discussing self-authentication of various documents generated by system or process such as retrieval of a webage or computer output, such as a spreadsheet).

documents generated from these standard methods are self-authenticating pursuant to Fed. R. Evid. 902(13) and (14).[9]

**5. <u>Record Evidence Also Establishes the Authenticity of the Avalon Server</u>**

Evidence authenticating a document under Fed. R. Evid. 901(b) "may be direct or circumstantial . . . , and the latter category may include distinctive characteristics of the document itself, such as its '[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with other circumstances.'" *United States v. Maldonado-Rivera*, 922 F.2d 934, 957 (2d Cir. 1990) (*citing United States v. Natale*, 526 F.2d 1160, 1173 (2d Cir. 1975)).

The record evidence in this case provides substantial indicia of the authenticity of the Avalon Server. There is no dispute that the SEC forensically imaged the Avalon Server that was maintained in Pustelnik's residence, and returned the server to Avalon's counsel. Defendant Pustelnik, who maintained the server and represented that he was "very familiar" with it, identified numerous characteristics that exist in the Avalon Server. For example, he represented that the Avalon Server contains data in SQL format, that it contained databases with the names "Back Office" and "AVA2," and that tables had the naming convention beginning with a "t." Nilson Decl. Ex. 3 at 126:17-127:3, 128:23-129:7. All of these features exist within the Avalon Server. Bond Decl. ¶ 18.

These indicia of authenticity are further corroborated by the Hernandez and Bond Declarations, which detail the process of imaging the Avalon Server Hard Drives, verifying the hash values of the original and image, configuring the imaged hard drives to create the Avalon

---

[9] For the same reasons, the Avalon Server Exhibits are also authentic pursuant to 901(b)(9), which permits authentication based on evidence describing a process or system and showing that it produces an accurate result. Fed. R. Evid. 901(b)(9).

Server RAID, forensically imaging the Avalon Server RAID for production as Z-007024702, and authenticating this version using hash value comparison.  The integrity of the Avalon Server was maintained at every step, using hash value comparison where possible and standard systems and processes to generate the Avalon Server Exhibits.

The Avalon Defendants have possession of the original Avalon Server, as well as the version produced as Z-007024702.  They are fully able to verify and compare the contents of the original version to the version produced in litigation.  At no time have the Avalon Defendants challenged the authenticity of the Avalon Server Produced as Z-007024702 or the Avalon Server Exhibits that the SEC now seeks to authenticate.

### 6.  The Avalon Server and Avalon Server Exhibits are Relevant Under Fed. R. Evid. 401 and 402

The Avalon Server and Avalon Server Exhibits are relevant under Fed. R. Evid. 401 and 402.  These documents have "a tendency to make a fact more or less probable than it would be without the evidence," that is, the Avalon Server Exhibits detail Pustelnik's involvement in and control of Avalon.  *See* Fed. R. Evid. 401.  Among other things, the Avalon Server lists S.A.P. as an "EXEC"; shows that numerous entries in tables on the Avalon Server were "updated by" and "approved by" "Serge" and "SP"; contains entries categorized as "withdrawals" for the account number assigned to S.A.P. that exactly match charges that Pustelnik made on the Visa Signature Business Card held by Avalon's sister entity; and contains entries for the account number assigned to S.A.P. that appear to reflect reimbursements made to Pustelnik for Avalon-related expenses.  Pustelnik's involvement in and control of Avalon are "of consequence in determining the action" because such evidence will be relevant to the jury's determination of the SEC's claim that Pustelnik controlled Avalon, and his role and involvement in, and liability for, the manipulative trading schemes carried out by Avalon.  *See* Fed. R. Evid. 401.

12

## <u>CONCLUSION</u>

For the foregoing reasons, the SEC respectfully requests that the Court enter an order admitting the Avalon Server Bates-labeled Z-007024702 and the Avalon Server Exhibits into evidence.

Dated:  September 13, 2019                    Respectfully submitted,


                                             /s/ Sarah S. Nilson
                                             David J. Gottesman
                                             Olivia S. Choe
                                             Sarah S. Nilson
                                             U.S. Securities and Exchange Commission
                                             100 F Street N.E.
                                             Washington, D.C. 20549
                                             Tel.: (202) 551-6109 (Nilson)
                                             Fax: (202) 772-9292
                                             Email: NilsonS@sec.gov

                                             *Counsel for Plaintiff*

13