**UNITED STATES DISTRICT COURT**
**THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | **Case No. 17-CV-1789 (DLC)** |
| v. | |
| LEK SECURITIES CORPORATION, et al., | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO SEC'S MOTION IN LIMINE TO PRECLUDE DEFENDANTS FROM OFFERING EVIDENCE OF, OR REFERRING TO, RELIANCE ON COUNSEL, OR PRESENCE OR <u>INVOLVEMENT OF COUNSEL</u>**

James M Wines
**Law Office of James M Wines**
1802 Stirrup Lane
Alexandria, VA 22308
202.297.6768
winesj@wineslegal.com

Steven Barentzen
**Law Office of Steven Barentzen**
17 State Street, Suite 400
New York, NY 10004
Phone: (917) 476-0953
Fax:    (202) 888-6268
Steven@barentzenlaw.com

Attorneys for Defendants Sergey Pustelnik, Nathan Fayyer and Avalon FA LTD

## **Table of Contents**

Background ................................................................................................................. 2

Argument ................................................................................................................... 6

Conclusion ................................................................................................................. 9

## Table of Authorities

**Cases**

*Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 172 (1988) ............................................................ 9

*Bomarko Inc. v. Hemodynamics*, 848 F. Supp. 1335, 1340-41 (W.D. Mich. 1993) ...................... 7

*Donohoe v. Consolidated Operating & Production Corp.*, 833 F. Supp. 719, 726 (N.D. Ill. 1993)

............................................................................................................................................................ 7

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 206 (1976) ................................................................ 6

*Hollinger v. Titan Capital Grp.*, 914 F.2d 1564, 1573, 1575 (9th Cir. 1990) .............................. 7

*Howard v. SEC*, 376 F.3d 1136, 1146-49 (D.C. Cir. 2004) ........................................................... 6

*Mader v. Armel,* 461 F.2d 1123, 1126 (6th Cir. 1972) .................................................................. 7

*Marbury Mgmt., Inc. v. Kohn*, 629 F.2d 705, 716 (2d Cir. 1980) .................................................. 7

*Phoenix Associates III v. Stone,* 60 F.3d 95, 102 (2d Cir. 1995) ................................................... 8

*SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1473 (2d Cir. 1996) .............................................. 6

*U.S. v. Crosby*, 294 F.2d 928, 942 (2d Cir. 1961) ......................................................................... 8

*U.S. v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982) .............................................................................. 8

*U.S. v. Southland Corp.*, 760 F.2d 1366, 1378 (2d Cir. 1985) ....................................................... 8

*United States v. Sayakhom*, 186 F.3d 928, 940 (9th Cir. 1999) ..................................................... 6

*Van Aalten v. Hurley*, 176 F. Supp. 851, 857 (S.D.N.Y. 1959) ..................................................... 7

**Statutes**

15 U.S.C. § 78t(a) ........................................................................................................................... 6

Exchange Act Section 10(b) ....................................................................................................... 1, 6

Exchange Act Section 20(a) ........................................................................................ 1, 6, 7

Securities Act Section 17(a)(1) ...................................................................................... 1, 6

**Other Authorities**

J. Wigmore, Evidence in Trials at Common Law § 2113, at 653 (1978) ....................................... 9

Sand, Modern Federal Jury Instructions (Civil) § 82-8 (2011) ...................................................... 6

**Rules**

FRE Rule 106 .................................................................................................................. 8, 9

**Regulations**

17 C.F.R. § 240.15c3-5 ..................................................................................................... 1

iii

UNITED STATES DISTRICT COURT
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| | Case No. 17-CV-1789 (DLC) |
| Plaintiff, | |
| v. | |
| LEK SECURITIES CORPORATION, et al., | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO SEC'S MOTION IN LIMINE TO PRECLUDE DEFENDANTS FROM OFFERING EVIDENCE OF, OR REFERRING TO, RELIANCE ON COUNSEL, OR PRESENCE OR INVOLVEMENT OF COUNSEL**

Defendants have not asserted a reliance on counsel defense. Rather, Defendants have a defense to a number of the SEC's claims, including those under Sections 10(b) and 20(a) of the Exchange Act, Section 17(a)(1) of the Securities Act, that they acted in good faith. The SEC improperly attempts to conflate these two separate defenses to deny the Defendants the latter because they have not asserted the former.

Defendants are entitled to show their reasonable reliance on Lek Securities and Sam Lek, among others, for the Defendants' honest and good faith belief that the trading at issue did not violate the federal securities laws. Lek Securities is a U.S. registered broker dealer with a regulatory mandate to ensure that all of Avalon's orders complied with all securities laws and regulations *prior* to transmitting those orders to the market. *See* 17 C.F.R. § 240.15c3-5 (the "Market Access Rule"). Mr. Lek, who has decades of experience in the securities industry, was

1

Lek Securities' Chief Compliance Officer and oversaw Lek Securities' robust compliance procedures. The SEC intends to introduce as evidence at trial correspondence from FINRA and other regulators in an attempt to establish that Lek Securities and Mr. Lek were on notice that the trading at issue was problematic. It would be highly prejudicial and confusing to the jury if Defendants were precluded from also entering the responses from Mr. Lek, his employees, and counsel that refute the issues raised in that correspondence and demonstrate Lek Securities' and Mr. Lek's steadfast conclusions that the trading at issue did not violate the federal securities laws. Those documents constitute contemporaneous written evidence of the honest and informed beliefs held by Lek Securities and Mr. Lek regarding the legality of the trading, which Defendants will testify Mr. Lek shared with them. There is no basis to deny Defendants the ability to introduce this evidence which is relevant to their good faith defenses, and thus, the SEC's motion in limine should be denied.

## Background

The SEC is correct that Defendants have not asserted a reliance on counsel defense. Defendants have not sought to introduce any evidence regarding any communications with their counsel or that they relied on their counsel in any way with regard to the claims alleged in this case. The SEC's attempt to back door preclusion of relevant evidence on that basis is a strawman that should be ignored by the Court.

The Defendants are nonetheless entitled to present evidence in support of a *separate* defense of good faith. Plaintiffs initial interrogatories in this case asked: "With regard to any allegations in the Complaint that you acted with scienter or negligence, state whether you contend that you may avoid such allegation on the grounds that you relied on any attorney, other

professional, or process." Ex. A, Defendant's Response to SEC Interrogatories at 4. In response,

Defendants replied:

> In response to the remainder of the interrogatory, Defendants state that they relied on Lek's Chief Compliance Officer Samuel Lek, who under Lek's written supervisory procedures and relevant securities laws, rules and regulations had responsibility for insuring that all orders and trades processed through Lek complied with all relevant laws, rules and regulations. Defendants also relied on numerous representations by Mr. Lek that he reviewed Avalon's orders and trades and found that they complied with all relevant laws, rules and regulations. Defendants also relied on Lek's Q6 automated compliance process, which Lek stated would prevent any orders or trades that would violate any laws, rules and regulations. Defendants were also generally aware that both Mr. Lek's opinions as to the legality of the trades, and the Q6 automated compliance process, had been thoroughly reviewed, vetted and approved by experienced and competent independent outside counsel. Defendants were also generally aware that Mr. Lek and Lek's outside counsel had expressed their views and opinions to Exchange and Finra representatives that Avalon's trading complied with all relevant laws, rules and regulations. Defendants also relied on NASDAQ Certified Trading Platforms that have the gatekeeper responsibility of performing pre-trade compliance, including platforms provided by Sterling Financial Technologies, Singularity Trading Solutions and Rox Systems.

*Id.* at 5.

In their depositions, the SEC asked the witnesses about their reliance on Mr. Lek's responses to these regulatory inquires. For example, the SEC asked Mr. Fayyer: "So you understood that regulators were concerned about this activity called 'layering'?" Ex. B, Fayyer Tr. at 181. Mr. Fayyer responded: "I understood that it was being looked at. But I – I had numerous conversations with Sam Lek, and Sam said just because there's inquiries, you know, into certain things, it doesn't make it – doesn't make something bad." *Id.* at 182. In response to another SEC question, Mr. Fayyer testified: "[S]peaking with Sam, Sam Lek, for example, while you know he knew that the regulators were looking at certain strategies, not only this – what you guys call layering, [Lek] didn't agree with that. [Lek] didn't, you know, believe that there is anything amiss here. And nobody told me otherwise, as far as I know." *Id.* at 155. The SEC

3

asked Mr. Fayyer: "Did Sam Lek ever convey to you that he did not agree with regulators' views

that layering was manipulative?" Mr. Fayyer responded: "Yes. Sam said that there were

inquiries, but based on his own knowledge and experience, he believes or believed that the

regulators do not really understand themselves what is going on, and he didn't agree with that,

that it was something manipulative, as you would call it." *Id.* at 377.

Similarly, Mr. Fayyer testified that he relied completely on Mr. Lek regarding the

regarding the so-called "cross market strategy,", which Mr. Fayyer was not qualified to

understand:

> [O]nce [the trader] started going into the strategy, he lost me completely, because I don't – I don't even know a lot of terms. He started using words: Puts, naked puts, calls. I mean, I don't – I don't even know if I can be quoted on that. I'm just kind of reciting some things I remember. . . . And if I recall correctly, either I went to talk to Sam or we either – or maybe I was in the office, we talked to Sam to kind of fill him in on the – what's going on. Because Sam, from what I knew, was an options trader from '70s or '90s, or something like that.

*Id. at 303.*

Mr. Fayyer was also asked: "[W]ere you aware that regulators started making inquiries

about the option strategy soon after it started trading through Avalon?" *Id.* at 314. Mr. Fayyer

responded:

> I was . . . aware that certain market makers, from what I understood, people that were accepting these orders started, I don't know, I guess crying to Sam or to whomever that there was something they didn't like. . . . [T]he only thing I did was I spoke to – to Mr. Lek. One of my visits we spoke just briefly, and he actually said it was a very good strategy. It was pretty smart.

*Id.*

The SEC asked Mr. Fayyer: "Did [Mr. Lek] ever say that he didn't want you to trade the

options strategy through Lek?" *Id.* at 378. Mr. Fayyer responded:

> No. He actually thought it was – it was a smart strategy. It was well designed. You know he – as an options trader, he was – you know, he was – from what I recall, he was excited and he – he understood the strategy very well, and he liked

it and he thought it was – you know, he thought it was smart the way it was done, and he thought that, you know it wasn't anything that the traders were doing that was counterproductive, but the people who were accepting – accepting the executions, he believed that they were the ones that are manipulating the market or representing something that's out there which is not.

*Id.* at 378-79.

Regarding Lek's compliance systems, Mr. Fayyer testified that Mr. Lek told him "that the entire Q6 system was, I believe, designed by [Lek president] Nicolas [Louis] specifically to – to help alleviate any – any inquiries or any concerns that the regulators may have had. So he wanted controls in place." *Id.* at 375.

Similarly, when the SEC stated in Mr. Pustlenik's deposition: "So sitting here today, you don't know anything about any opinions that Lek got from its outside counsel," Mr. Pustelnik responded:

No, that is not correct. I formed – as I sit here today, I remember having formed a – an opinion that Lek has – has engaged with various law firms about the topics, and that it was my understanding based upon the events that have happened then to make a belief that such trading has been indeed looked at very thoroughly by Lek's attorneys. And that I also know that because the relationship between – as far as I understand, between Lek and its attorneys for this matter has been ongoing and very active relationship while under that – while under counsel of these firms, Sam Lek has maintained his position that all of the trades were fine, and he was the final arbiter of whether to decide whether or not traders could trade or not. Which means that if he has thought that the trading was in some way in violation of applicable rules and regulations, that he would stop the trading, and a part of that belief is based upon the fact that my compensation has been seriously decreased because of the expenses for such law firms have been taken out of my commission in very considerable sums.

Ex. C, Pustelnik Deposition Tr. at 658.

When the SEC asked Mr. Pustelnik about the so-called "cross-market strategy," Mr. Pustelnik testified:

I know that Sam [Lek] communicated to me that he did think the strategy was a good strategy. . . . Sam Lek has communicated to me that . . . he thought that this strategy was completely compliant with any regulation, and it was a completely

> legitimate strategy. And, moreover, while he was an experienced options trader
> and a former FINRA judge, he still said that he reached out to his attorneys, and
> that later he had shown me a letter, an opinion letter that he has received on it. . . .
> That letter made it extremely clear to me that not only has Sam Lek, who is the –
> as CEO and chief compliance officer and an experienced option trading
> broker/dealer for I think more than 10 or 20 years, that he also reached out to very
> reputable counsel to ensure that every that he has thorough in his experience and
> was also correct. . . . That letter made me very comfortable in that these kinds of
> trades cannot – do no run afoul of any potential regulatory concerns.

*Id.* at 578-79.

## Argument

Good faith is an absolute defense to Section 10(b) and Section 17(a)(1) claims. Even

manipulative acts do not amount to liability unless they are made with fraudulent intent. One

who acts on an opinion honestly believed to be true is not chargeable with fraudulent intent, even

though his opinion is erroneous or his belief is mistaken. If the Defendants believed in good faith

that they acting properly, even if they were mistaken in that belief, and even if others were

injured by the conduct, there would be no violation of Section 10(B). *See, e.g.,* Sand, MODERN

FEDERAL JURY INSTRUCTIONS (Civil) § 82-8 (2011) ("Since an essential element of plaintiff's

case is intent to defraud or recklessness, it follows that good faith on the part of the defendant is

a complete defense to a charge of securities fraud. A defendant, however, has no burden to

establish a defense of good faith. The burden is on the plaintiff to prove fraudulent intent and a

consequent lack of good faith by a preponderance of the evidence."); *Ernst & Ernst v.*

*Hochfelder*, 425 U.S. 185, 206 (1976); Howard v. SEC, 376 F.3d 1136, 1146-49 (D.C. Cir.

2004); *United States v. Sayakhom*, 186 F.3d 928, 940 (9th Cir. 1999).

Section 20(a) of the Exchange Act also provides a statutory defense to control person

liability where a defendant proves that they acted in good faith. 15 U.S.C. § 78t(a); *SEC v. First*

*Jersey Sec., Inc.*, 101 F.3d 1450, 1473 (2d Cir. 1996). In its Proposed Jury Instructions, the SEC

has recognized the Defendants' right to a good faith defense to its Section 20(a) claims. *See* SEC Proposed Jury Instructions and Verdict at 46-47. In order to satisfy its burden and show that it acted in good faith, a Defendant must show that it was not negligent, meaning that it exercised due care. *Marbury Mgmt., Inc. v. Kohn*, 629 F.2d 705, 716 (2d Cir. 1980); *Hollinger v. Titan Capital Grp.*, 914 F.2d 1564, 1573, 1575 (9th Cir. 1990).

The good faith defense afforded under the federal securities laws negates the usual presumption of a defendants' knowledge of the law. *Van Aalten v. Hurley*, 176 F. Supp. 851, 857 (S.D.N.Y. 1959) ("By enacting a good faith exculpatory provision . . . Congress, whose function it is to declare the public policy, declined to foist liability upon [the] fiction [of defendants presumed knowledge of the law].") At trial, Defendants will establish that they acted in good faith in, among other things, reasonably relying on the expertise and obligations of Lek Securities and Mr. Lek to prevent any orders from reaching the market that violated the federal securities laws. *Mader v. Armel,* 461 F.2d 1123, 1126 (6th Cir. 1972) (affirming dismissal of control person claim against defendant that relied on other qualified professionals); *Donohoe v. Consolidated Operating & Production Corp.*, 833 F. Supp. 719, 726 (N.D. Ill. 1993) (denying control person liability under Section 20(a) because of good faith where defendants "lacked the necessary expertise to perform meaningful independent review and they were entirely justified in depending on the opinion of others."); *Bomarko Inc. v. Hemodynamics*, 848 F. Supp. 1335, 1340-41 (W.D. Mich. 1993) (granting summary judgment on control person claim were defendants "relied on the expertise of others with respect to matters of . . . legal correctness."). This defense includes the fact that Defendants were aware that Lek Securities was represented by reputable counsel who had repeatedly opined on the legality of the trading and the adequacy of Lek Securities' compliance systems to detect and prevent violative orders from reaching the

market. *U.S. v. Crosby*, 294 F.2d 928, 942 (2d Cir. 1961) (affirming that defendants' reliance on the opinions expressed by counsel for others established good faith defense).

Moreover, the SEC cannot be allowed to mislead the jury by entering into evidence only one side of regulators' communications with Lek Securities and Mr. Lek. The SEC intends to introduce numerous letters sent by regulators to Lek Securities to demonstrate Lek Securities' and Mr. Lek's awareness that the trading at issue was problematic. The present motion seeks to preclude Defendants from introducing the contemporaneous responses to those communications from Mr. Lek and others acting on his behalf. This would be prejudicial and misleading to the jury as to Mr. Lek's true state of mind by excluding contemporary written evidence of his honest and reasonable belief that the trading did not violate securities laws – well founded beliefs that were shared and reasonably relied upon in good faith by the Defendants.

Excluding such relevant evidence would violate the rule of completeness expressed, in part, in FRE Rule 106: "If a party introduces all or part of a writing . . . , an adverse party may require the introduction, at that time, of any other part – or any other writing or recorded statement – that in fairness ought to be considered at the same time." The Second Circuit has interpreted this Rule "to require that a document be admitted when it is essential to explain an already admitted document, to place the admitted document in context, or to avoid misleading the trier of fact." *Phoenix Associates III v. Stone,* 60 F.3d 95, 102 (2d Cir. 1995); *see also, U.S. v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982). The entirety of communications must also be admitted when needed to ensure a "fair and impartial understanding" of the admitted portion. FRE Rule 106, Advisory Committee Note.

"This is a principal of simple fairness, long antedating the Federal Rules of Evidence." *U.S. v. Southland Corp.*, 760 F.2d 1366, 1378 (2d Cir. 1985). Indeed, the common law doctrine

of completeness, on which Rule 106 is based, likewise requires that a full document or set of

documents be introduced "when one party has made use of a portion of a document [or set of

documents], such that misunderstanding or distortion can be averted only through presentation of

another portion, the material required for completeness is *ipso facto* relevant and therefore

admissible." *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 172 (1988); *See also,* 7 J. Wigmore,

Evidence in Trials at Common Law § 2113, at 653 (1978) ("[T]he opponent, against whom a part

of an utterance has been put in, may in his turn complement it by putting in the remainder, in

order to secure for the tribunal a complete understanding of the total tenor and effect of the

utterance."). The Advisory Committee stressed that Rule 106 "does not in any way circumscribe

the right of the adversary to develop the matter on cross-examination or as part of his own case."

*Id.* (*quoting* Rule 106 Advisory Committee Notes).

## Conclusion

The SEC cannot have it both ways. It cannot introduce one side of communications to

mislead the jury as to Mr. Lek's state of mind, while excluding introduction of the

contemporaneous responses that prove the opposite. This would be unfairly prejudicial to the

Defendants good faith defense and thus the SEC's motion in limine should be denied.


Dated: September 27, 2019

Respectfully submitted,


_____

James M Wines
**Law Office of James M Wines**

9

1802 Stirrup Lane
Alexandria, VA 22308
202.297.6768
winesj@wineslegal.com

Steven Barentzen
**Law Office of Steven Barentzen**
17 State Street, Suite 400
New York, NY 10004
Phone: (917) 476-0953
Fax:     (202) 888-6268
Steven@barentzenlaw.com

Attorneys for Defendants Sergey Pustelnik,
Nathan Fayyer and Avalon FA LTD

10