# Exhibit C

                                                                    398

1                  UNITED STATES DISTRICT COURT

2                  SOUTHERN DISTRICT OF NEW YORK

3

4     - - - - - - - - - - - - - - - - - - -

5     SECURITIES AND EXCHANGE              )

6     COMMISSION,                          )

7                 Plaintiff,                )  CASE NO.

8     V.                                    )  17-CV-1789(DLC)

9     LEK SECURITIES CORPORATION,          )

10    SAMUEL LEK, VALI MANAGEMENT          )

11    PARTNERS d/b/a AVALON FA LTD.,       )

12    NATHAN FAYYER, and SERGEY            )

13    PUSTELNIK,                           )

14                Defendants.               )

15    - - - - - - - - - - - - - - - - - - -

16

17       VIDEOTAPED DEPOSITION OF SERGEY PUSTELNIK

18              WEDNESDAY, MARCH 21, 2018

19              PAGES 398 - 728; VOLUME 2

20

21            BEHMKE REPORTING AND VIDEO SERVICES, INC.

22                   BY:  LESLIE A. TODD, CSR NO. 5129

23                      160 SPEAR STREET, SUITE 300

24                    SAN FRANCISCO, CALIFORNIA 94105

25                                    (415) 597-5600

399

         Videotaped deposition of SERGEY PUSTELNIK,
    VOLUME 2, taken on behalf of Plaintiff, at the
    Securities  and Exchange Commission, 100 F Street,
    NW, Washington, DC, commencing at 9:44 A.M., on
    WEDNESDAY, MARCH 21, 2018, before Leslie Anne Todd,
    Court Reporter and Notary Public in and for the
    District of Columbia, pursuant to Notice.

1    liquidity in options on large order sizes.
2              So he thought that I -- excuse me, I
3    don't know what Sam thought, but I know that Sam
4    communicated to me that he did think the strategy
5    was a good strategy.
6              And secondly, Sam Lek has commune- --
7    communicated to me that not only did he feel --
8    excuse me, that he could -- not feel.  I don't
9    think he used those words.  I think that he
10   thought that this strategy was completely
11   compliant with any regulation, and it was a
12   completely legitimate strategy.
13             And, moreover, while he was an
14   experienced options trader and a former FINRA
15   judge, he still said that he reached out to his
16   attorneys, and that later he had shown me a
17   letter, an opinion letter that he has received on
18   it.  And I'm not sure whether or not I can discuss
19   what the substance of that letter was.  But that
20   letter made it extremely clear to me that not only
21   has Sam Lek, who is the -- as the CEO and chief
22   compliance officer and an experienced options
23   trader who has run a primarily options trading
24   broker/dealer for I think more than 10 or 20
25   years, that he also reached out to very reputable

1   counsel to ensure that everything that he has
2   thought in his experience was also correct.
3           And without getting to the details of
4   that letter, because I'm not sure whether I can
5   discuss that letter because it's an attorney
6   communication, that letter made me very
7   comfortable in that these kinds of trades
8   cannot -- do not run afoul of any potential
9   regulatory concerns.
10  BY MS. CHOE:
11      Q    But in this memo you're saying you did
12  your own independent analysis, and you came to
13  form an opinion that the strategy was
14  nonmanipulative, correct?
15          MR. DOLLAR:  Objection.
16          THE WITNESS:  I wrote that I was doing
17  the independent analysis on my side -- and again,
18  I don't remember the chronological order of when
19  this -- when I wrote this versus when I read the
20  letter, so I'm not sure which came first or
21  second.  However, I specifically wrote that I did
22  some independent analysis, letting both Nicolas
23  and Sam know that this is my independent analysis
24  that is likely to be completely meaningless in
25  terms of its weight as far as what I thought the

657

1  not -- not the content of what they told you.
2      A    What --
3           MR. DOLLAR:  Objection.
4  BY MS. CHOE:
5      Q    Did anyone at Lek ever tell you about
6  opinions that Lek received from its attorney, yes
7  or no?  Not -- not the content of what they told
8  you, if they did.  Just --
9           MR. BARENTZEN:  Or "I don't know."
10 BY MS. CHOE:
11     Q    -- whether they did.
12          MR. DOLLAR:  Objection.
13          THE WITNESS:  I'm not sure.
14          MS. CHOE:  I'm going to just take one
15 minute.
16          (Pause in the proceedings.)
17 BY MS. CHOE:
18     Q    So sitting here today, you don't know
19 anything about any opinions that Lek got from its
20 outside counsel.
21          MR. DOLLAR:  Same objections.
22 BY MS. CHOE:
23     Q    Is that correct?
24          MR. DOLLAR:  Same objections.  Same --
25 and same instruction.

1             THE WITNESS:  No, that is not correct.
2     I formed -- as I sit here today, I remember having
3     formed a -- an opinion that Lek has -- has engaged
4     with various law firms about the topics, and that
5     it was my understanding based upon the events that
6     have happened then to make a belief that such
7     trading has been indeed looked at very thoroughly
8     by Lek's attorneys.  And that I also know that
9     because the relationship between -- as far as I
10    understand, between Lek and its attorneys for this
11    matter has been an ongoing and very active
12    relationship while under that -- while under
13    counsel of these firms, Sam Lek has maintained his
14    position that all of the trades were fine, and he
15    was the final arbiter of whether to decide whether
16    or not traders could trade or not.
17            Which means that if he has thought that
18    the trading was in some way in violation of
19    applicable rules and regulations, that he would
20    stop the trading, and a part of that belief is
21    based upon the fact that my compensation has been
22    seriously decreased because of the expenses for
23    such law firms have been taken out of my
24    commission in very considerable sums.
25    BY MS. CHOE: