UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 17-CV-1789(DLC) |
| | : | |
| LEK SECURITIES CORPORATION, SAMUEL LEK, VALI MANAGEMENT PARTNERS dba AVALON FA LTD, NATHAN FAYYER, and SERGEY PUSTELNIK, | : | |
| | : | |
| Defendants. | : | |

---

**PLAINTIFF SEC'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO "PROHIBIT THE SEC FROM EQUATING SO CALLED 'LAYERING' WITH MANIPULATION"**

David J. Gottesman
Olivia S. Choe
Sarah S. Nilson
U.S. Securities and Exchange
Commission
100 F Street N.E.
Washington, D.C. 20549
Tel: (202) 551-4470 (Gottesman)
Fax: (202) 772-9282
GottesmanD@sec.gov
*Attorneys for Plaintiff*

September 27, 2019

## Table of Contents

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 1

I.   During the Relevant Time Period, the Term "Layering" Was Well Known to Refer to a
     Form of Market Manipulation ................................................................................... 1

II.  Layering Is Manipulative Under the Federal Securities Laws ................................... 5

III. The Court Has Already Ruled That Professor Terrence Hendershott's Expert Analysis Is
     Valid ......................................................................................................................... 7

IV.  The Defendants Show No Basis to Preclude Regulator Witnesses From Testifying That
     Layering Is Manipulative ......................................................................................... 9

Conclusion ........................................................................................................................ 10

# <u>Table of Authorities</u>

**Cases**

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976)..........................................................6

*Gurary v. Winehouse*, 190 F.3d 37 (2d Cir. 1999) ........................................................6

*In re Processed Egg Prods. Antitrust Litig.*, 81 F. Supp. 3d 412 (E.D. Pa. 2015) ........8

*Santa Fe Indus., Inc. v. Green*, 430 U.S. 462 (1977)......................................................6

*SEC v. Lek*, 370 F. Supp. 3d 384 (S.D.N.Y. 2019)........................................................7

*SEC v. Martino*, 255 F. Supp. 2d 268 (S.D.N.Y. 2003)................................................6

*SEC v. Masri*, 523 F. Supp. 2d 361 (S.D.N.Y. 2007) ...................................................6

*SEC v. U.S. Envtl., Inc.*, 155 F.3d 107 (2d Cir. 1998) ...................................................6

*Tanvir v. Tanzen*, 894 F.3d 449 (2d Cir. 2018)..............................................................4

*United States v. Bilzerian*, 926 F.2d 1285 (2d. Cir. 1991)............................................8

*Wilson v. Merrill Lynch & Co.*, 671 F.3d 120 (2d Cir. 2011)........................................6

**PLAINTIFF SEC'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO "PROHIBIT THE SEC FROM
EQUATING SO CALLED "LAYERING" WITH MANIPULATION"**

Plaintiff U.S. Securities and Exchange Commission ("SEC") responds as follows to the motion and supporting memorandum ("Mem.") of Defendants Avalon FA Ltd ("Avalon"), Nathan Fayyer ("Fayyer") and Serge Pustelnik ("Pustelnik") (collectively, "Defendants") to "prohibit the SEC from equating so called 'layering' with manipulation."[1]

## INTRODUCTION

The SEC and other securities regulators during the relevant time period recognized that the term "layering" referred to a form of market manipulation that involved the injection of false information about supply and demand into the market.  The SEC and other regulators made this definition known to securities industry participants.  And the Defendants had actual knowledge that the term "layering" referred to a manipulative strategy.  In the present motion, the Defendants ask the Court to rewrite history and pretend that none of those things ever happened, and that no one is aware that layering is a type of market manipulation.

## ARGUMENT

**I.      During the Relevant Time Period, the Term "Layering" Was
Well Known to Refer to a Form of Market Manipulation**

During the relevant time period,[2] the term "layering" was well known in the securities field to refer to a particular form of market manipulation.  First, the SEC brought a number of settled disciplinary actions in which the SEC described the type of trading activity involved in

---

[1] Filed with this memorandum is the Declaration of David J. Gottesman, dated September 27, 2019, to which are attached the exhibits referred to herein as "Exhibit __."

[2] The SEC seeks to hold Defendants liable for trading activity primarily between 2012 and 2016, although the conduct began in late 2010.

"layering" and found that it was manipulative.  *See* Exhibit 1 (SEC Trial Ex. 192) at 5 (*In re Hold Brothers*, Exchange Act Rel. No. 30-2013, No. 3-15046 (Sept. 25, 2012) (SEC finding that "certain [] traders ***repeatedly manipulated the markets*** of U.S. listed and over-the-counter stocks by engaging ***in the practice of layering***.") (emphasis added);[3] Exhibit 2 (SEC Trial Ex. 193) at 2 (*In re Biremis*, Exchange Act Rel. No. 68456, No. 3-15136 (Dec, 18, 2012) (SEC finding that certain traders "engage[] in a ***manipulative trading practice known as "layering"*** on U.S. securities markets.") (emphasis added).[4]  This Court has noted the SEC's long history of treating spoofing and layering as manipulative activities.  ECF No. 101 (8/25/2017 order denying motion to dismiss) at 17.

Second, FINRA, the securities industry's largest self-regulatory organization, also widely publicized its determination that layering was an abusive, illegal and manipulative practice.  FINRA issued annual "priorities" letters to its members (primarily broker-dealers, including defendant Lek) in which beginning by 2012, it described "layering" and stated it was manipulative and a trading violation.  For example, FINRA's priorities letter in January 2012 described layering,[5] and identified it as an example of a strategy that "can be used for

---

[3] *Hold Brothers* described layering as "the use of non-bona fide orders, or orders that the trader does not intend to have executed, to induce others to buy or sell the security at a price not representative of actual supply and demand. More specifically, a trader places a buy (or sell) order that is intended to be executed, and then immediately enters numerous non-bona fide sell (or buy) orders for the purpose of attracting interest to the bona fide order. These non-bona fide orders are not intended to be executed. The nature of these orders is to induce, or trick, other market participants to execute against the initial, bona fide order. Immediately after the execution against the bona fide order, the trader cancels the open, non-bona fide orders."  Exhibit 1, at 5.

[4] *Biremis* described the layering that occurred in that case as follows: "In general, layering occurs when a trader creates a false appearance of market activity by entering multiple non-bona fide orders on one side of the market, at generally increasing (or decreasing) prices, in order to move that stock's price in a direction where the trader intends to induce others to buy (or sell) at a price altered by the non-bona fide orders."

[5] The January 2012 FINRA priorities letter described layering as occurring:

*manipulative* purposes."  Exhibit 3 (SEC Trial Ex. 43 (FINRA January 2012 letter)) at 12-13 (emphasis added).  FINRA issued similar priorities letters in 2013 and 2014.[6]  In 2015, FINRA's priorities letter stated, "FINRA will continue to pursue firms whose traders or customers use algorithms to *manipulate the markets*, including through *layering*, spoofing, wash sales and marking the close, among other means."  Exhibit 6 (SEC Trial Ex. 46 (FINRA January 6, 2015 letter)) at 14 (emphasis added).  In January 2016, FINRA's annual priorities letter referred to "layering" as part of FINRA's "manipulation surveillance program."   Exhibit 7 (SEC Trial Ex. 47 (FINRA January 5, 2016 letter)) at 11.

The Defendants were aware that layering was manipulation.  Pustelnik knew this from his work at Lek as a registered representative.  On February 8, 2012, Lek's President forwarded Pustelnik an excerpt of the precise language from FINRA's 2012 priority letter addressing layering.  Exhibit 8 (SEC Trial Ex. 227).  In January 2013, Lek issued a memorandum to its personnel (which at that time included Pustelnik) in which Lek stated that regulators had become "more stringent over market manipulation" and that the SEC had charged some brokerage firms "with 'layering' or 'spoofing.'"[7]  Exhibit 9 (SEC Trial Ex. 231).  On October 11, 2013, Pustelnik testified before FINRA that he understood "layering" to mean:  "when a trader places multiple

---

where a market participant places a bona fide order on one side of the market and simultaneously "layers" non-bona fide orders on the other side of the market (typically above the offer or below the bid) in an attempt to bait other market participants to react to the non-bona fide orders and trade with the bona fide order on the other side of the market.  FINRA has observed several variations of this strategy in terms of the number, price and size of the non-bona fide orders, but the essential purpose behind these orders remains the same, to bait others to trade at higher or lower prices.

Exhibit 3, at 13.

[6] *See* Exhibit 4 (SEC Trial Ex. 44 (FINRA Jan. 11, 2013 priorities letter)) at 7; Exhibit 5 (SEC Trial Ex. 45 (FINRA Jan. 2, 2014 priorities letter)) at 9-10.

[7] The Lek memorandum described layering as follows:  "In layering, the trader places orders with no intention of having them executed but rather to trick others into buying or selling the stock at an artificial, driven by the orders that the trader later cancels."  Exhibit 9.

non bona fide orders on one side and a large order on another side in order to try to **manipulate**
the market into executing against the large order.  And then subsequently canceling the non bona
fide orders."  Exhibit 10 (Oct. 11, 2013 Pustelnik FINRA testimony) at 547:7-16 (emphasis
added).  He further testified that he was aware that regulators viewed layering as a manipulative
practice.  *Id.*, at 548:19-22.

Avalon and Fayyer were also aware that the term "layering" referred to a manipulative
trading practice.  On November 25, 2013, Lek sent an email to Fayyer stating that one of the
exchanges, Edge Exchange, "expressed great concern" that "Avalon appears to be conducting
manipulative trading strategies such as wash sales and layering."  Exhibit 11 (SEC Trial Ex. 171
(11/25/2013 email from Lek to Avalon)).  On April 3, 2013, Fayyer sent a trade group leader an
email distinguishing between "layering/spoofing" and "regular trading," noting that "it costs a lot
of money for legal expenses to keep this going these days as no other firms allow this."  Exhibit
12 (SEC Trial Ex. 7 (4/13/2013 email)).

As shown above, there can be no real dispute that layering was well understood to be a
form of market manipulation.  The Defendants try to avoid the clear meaning of "layering" by
distorting the use of that word in an earlier SEC publication that referred to "layering the book"
in an entirely different context.  Mem. at 2.  In January 2010, an SEC publication discussed
passive market making, and noted that this can include "layering the book with multiple bids at
different prices and sizes."  *Id.*, quoting SEC Release No. 34-61358, 17 C.F.R. 24 at 48-49.

References from 2010 to "layering the book" are inapposite to this case.  Context matters,
and a word can have different meanings in different contexts.  *See Tanvir v. Tanzen*, 894 F.3d
449, 466 (2d Cir. 2018)("the meaning of 'appropriate' may well take on different meanings in
different settings").  The January 2010 document was merely referring to the placing of orders at

different prices as something that a passive market maker might do.  It had nothing to do with the sort of activity described in this case and that the SEC, other regulators and even Lek described as "layering" beginning at least by 2012.  *See* notes 2 through 5, above, describing layering.

And even if the word "layering" were used in 2010 just to describe an aspect of what market makers do, that plainly was not so by 2012.  The SEC cases from 2012 (*Hold Brothers* and *Biremis, supra.*) and FINRA's priorities letters beginning in January 2012 (cited above) all make clear that, at least beginning in early 2012, the word "layering" referred to a particular form of market manipulation.

The Defendants also note that Adam Nunes, a market participant whom the SEC identified as a trial witness, used the term "layering the book" in 2010, to refer to "sending multiple price levels."  Mem. at 2; Exhibit 13 (Nunes Dep. Tr.) at 62:8-13.  But what the Defendants fail to mention is that Nunes also testified that he ***stopped*** using the term in that way "in the early 2010s," (*id.* at 62:20-23), and that his subsequent understanding has been that "layering" was a subset of "spoofing" which involves "creating a false or misleading appearance in the market."  *Id.* at 59:3-9.  He also testified that 2010 was "at a time before the term 'layering' was generally used to describe a manipulative market activity."  *Id.* at 209:12-16.

In short, the fact that the phrase "layering the book" was used in a different context in 2010 does not overcome the fact that during the time period relevant to this case, the word "layering" was repeatedly and clearly used to refer to a particular method of manipulating the market – and the Defendants were well aware of this.

## II.     Layering Is Manipulative Under the Federal Securities Laws

The Defendants erroneously argue that layering is not prohibited by the federal securities laws.  Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) thereunder proscribe

manipulative practices "intended to mislead investors by artificially affecting market activity." *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977).[8]  "The gravamen of manipulation is deception of investors into believing that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators." *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 130 (2d Cir. 2011) (quoting *Gurary v. Winehouse*, 190 F.3d 37, 45 (2d Cir. 1999)).

Manipulative acts are those "outside the natural interplay of supply and demand," which "send[] a false pricing signal to the market." *ATSI*, 493 F.3d 87, 100 (2d Cir. 2007) (internal quotation marks omitted); *see also SEC v. Martino*, 255 F. Supp. 2d 268, 286 (S.D.N.Y. 2003). In market manipulation cases, the question is whether the defendant "intended to deceive investors by artificially affecting the market price of securities." *ATSI*, 493 F.3d at 102; *see also SEC v. Masri*, 523 F. Supp. 2d 361, 372 (S.D.N.Y. 2007).[9]

This Court already has held that layering – as alleged by the SEC in this case – easily fits within these parameters.  The Court so ruled in denying the Lek Defendants' motion to dismiss the complaint.  ECF No. 101, at 18 (holding that the layering alleged by the SEC in this case "if proven at trial would violate [Exchange Act] § 10(b).").  And in denying the Lek Defendants' motion for summary judgment, the Court stated, "the record contains evidence from which a jury could conclude that the Defendants engaged in layering and the Cross-Market Strategy with the

---

[8] The Defendants erroneously cite *Santa Fe Indus., Inc.* for the proposition that "manipulation" means only practices such as "wash sales, matched orders, or rigged prices."  Mem. at 2, quoting *Santa Fe*, 430 U.S. at 476.  Nothing in *Santa Fe* indicates that those are the only practices that could constitute manipulation.  As this Court already held, "[w]hile market manipulation has traditionally encompassed practices such as wash sales, matched orders, or rigged prices, manipulation is not limited to these practices."  ECF No. 101 (8/25/2017 order denying motion to dismiss) at 15.

[9] Scienter is the mental state of intending to deceive, manipulate, or defraud.  *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976).  Knowing or reckless conduct suffices.  *See SEC v. U.S. Envtl., Inc.*, 155 F.3d 107, 111 (2d Cir. 1998).

intent to manipulate the market.  Either of these strategies would constitute a violation of § 10(b) of the Exchange Act if proven at trial."  ECF No. 351, at 7.

The SEC's proof does not consist of merely labelling Avalon's trading as layering. Rather, the SEC will prove that layering refers to a strategy that involves the injection of false information into the market, and that Avalon's trading activity (whether called layering, spoofing, or something else) involved the injection of false information about supply and demand into the market.

The Defendants observe that FINRA in 2016 enacted a rule that "lowered the threshold" and made certain trading actionable by FINRA if the trading was "disruptive."  Mem. at 3.  The Defendants argue that this shows that layering is only "disruptive,' not manipulative.  The argument fails.  As discussed above, during that same year, 2016, FINRA made clear in its annual priorities letter that layering is manipulative.  Exhibit 7.  The fact that FINRA chose to make some similar trading activity also actionable as being disruptive to the market does not render layering any less manipulative.

## III.    The Court Has Already Ruled That Professor Terrence Hendershott's Expert Analysis Is Valid

The Avalon Defendant challenge the analysis and opinions of the SEC's expert witness, Professor Terrence Hendershott.  Mem. at 4-9.  But the Court already reviewed the analysis and report of Professor Hendershott in connection with the Lek Defendants' *Daubert* motion to exclude him.  The Court denied the motion, finding that Hendershott's analysis met the *Daubert* standards for expert witnesses.  *SEC v. Lek*, 370 F. Supp. 3d 384, 405 (S.D.N.Y. 2019).  The Defendants challenge the criteria used by Hendershott, but the Court specifically found that those criteria were appropriate and valid.  *Id.* (denying Lek Defendants' motion to exclude Hendershott, holding that the "steps [followed by Hendershott] and the criteria implied in them,

are reasonably related to the academic and regulatory definitions of layering cited by the parties.").

The Defendants mischaracterize Hendershott's work.  They overlook the fact that Hendershott did not merely rely on criteria to *identify* Layering Loops, he also performed a series of additional analyses that established that those loops were consistent with manipulation. *See, e.g.,* Defendants' Ex. A (Hendershott Report dated Apr. 3, 2017) at 10 (Hendershott performed "additional analyses to evaluate [] whether the Layering Loops . . . have characteristics indicative of a layering strategy *that misleads market participants* to achieve more favorable executions") (emphasis added).  He also opined how layering is harmful to other traders and the market as a whole.  *Id.* at 21-23.

The Defendants' other challenges to Hendershott's work are baseless.  For example, they criticize Hendershott for not opining that the layering loops "constitute a violation of any of the securities laws," and instead opining that the trading activity was "consistent" with layering. Mem. at 8.  But the law is clear that expert witnesses are not allowed to opine on whether the law has been violated.  *See United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d. Cir. 1991) (expert testimony was admissible only as to industry practice, but not the legality of conduct); *In re Processed Egg Prods. Antitrust Litig.*, 81 F. Supp. 3d 412, 424 (E.D. Pa. 2015) ("An economic expert may permissibly testify as to whether certain conduct is consistent with collusion or … self-interest").  Defendants argue over the significance to attach to the sequence in which certain orders were entered in some layering loops identified by Hendershott.  Mem. at 6-7.  Defendants have no expert who supports their criticism.  In any event, that type of issue is for argument at trial, and furnishes no basis for an *in limine* motion to exclude.

**IV.     The Defendants Show No Basis to Preclude Regulator
         <u>Witnesses From Testifying That Layering Is Manipulative</u>**

The SEC plans to call at trial two percipient fact witnesses who work for self-regulatory organizations.  Sherilynn Belcher is a FINRA official, and Andrew Gordon is with CBOE (formerly Bats), which operates and regulates several securities exchanges.  Belcher and Gordon were involved in their respective organizations' programs for detecting market manipulation such as layering.  These witnesses will describe how layering works, and that during the relevant time period, they and their organizations considered layering to be a prohibited activity because it was deceptive, harmful and manipulative, and they will testify as to the reasons for that.  They also will testify about their respective organizations' detection of potential layering at Lek, that Lek was notified of this, and that the trading was traced to Avalon.

Belcher and Gordon are not offering legal opinions about manipulation.  That, at the time of the relevant events, a securities regulator considered a certain type of behavior (layering) to be manipulative within the market it regulates, and so notified market participants, is not a legal conclusion.

The Defendants erroneously compare these witnesses to the expert witnesses who were excluded in this case, such as Professor Ronald Filler.  Mem. at 9.  They are not comparable.  Filler had no percipient knowledge of any trading activity or other facts in this case.  Moreover, as this Court held, Filler improperly opined on what the law should be, and he failed to employ a reliable or adequate methodology to analyze any facts or data.  ECF No. 350 (3/21/2019 order excluding Filler) at 9-12.

## **<u>Conclusion</u>**

For the foregoing reasons, Defendants' motion should be denied.

Dated:  September 27, 2019                    Respectfully submitted,


                                      _____/s/ David J. Gottesman_____
                                      David J. Gottesman
                                      Olivia S. Choe
                                      Sarah S. Nilson
                                      U.S. Securities and Exchange Commission
                                      100 F Street N.E.
                                      Washington, D.C. 20549
                                      Tel: (202) 551-4470 (Gottesman)
                                      Fax: (202) 772-9282
                                      GottesmanD@sec.gov
                                      *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was filed via CM/ECF and thereby served on all counsel of record.


Dated:  September 27, 2019                              /s/ David J. Gottesman