UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　　　　v.<br><br>LEK SECURITIES CORPORATION,<br>SAMUEL LEK,<br>VALI MANAGEMENT PARTNERS dba<br>　　AVALON FA LTD,<br>NATHAN FAYYER, and<br>SERGEY PUSTELNIK a/k/a<br>　　SERGE PUSTELNIK,<br>　　　　　　　　　　Defendants. | CASE NO. 17-CV-1789 (DLC) |

**PLAINTIFF SEC'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO "PRECLUDE THE SEC OR THE COURT FROM USING OF THE PHRASE 'AVALON DEFENDANTS'"**

　　　　　　　　　　　　　　　　　　　　David J. Gottesman
　　　　　　　　　　　　　　　　　　　　Olivia S. Choe
　　　　　　　　　　　　　　　　　　　　Sarah S. Nilson
　　　　　　　　　　　　　　　　　　　　U.S. Securities and Exchange
　　　　　　　　　　　　　　　　　　　　Commission
　　　　　　　　　　　　　　　　　　　　100 F Street N.E.
　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20549
　　　　　　　　　　　　　　　　　　　　Tel.: (202) 551-4470 (Gottesman)
　　　　　　　　　　　　　　　　　　　　Fax: (202) 772-9292
　　　　　　　　　　　　　　　　　　　　Email:  gottesmand@sec.gov
September 27, 2019　　　　　　　　　　 Attorneys for Plaintiff

Plaintiff U.S. Securities and Exchange Commission ("SEC") responds as follows to the motion of Defendants Avalon FA Ltd ("Avalon"), Nathan Fayyer ("Fayyer") and Serge Pustelnik ("Pustelnik") (collectively "Defendants") to "preclude the SEC or the Court from using of the phrase 'Avalon Defendants.'"

## INTRODUCTION

Defendants ask the Court to prohibit the use of the term "Avalon Defendants," and they go so far as to ask that the SEC not even be allowed to use the term in its arguments to the jury. In effect, the Fayyer and Pustelnik are trying to cover up their deep ties to and involvement in Avalon, and they are misusing the motion in limine process to accomplish that.

There is nothing misleading or unfairly prejudicial about the term "Avalon Defendants." The term is a plain and simple descriptor, not an argument. Even if the term were deemed to be an argument implying a connection between and among Avalon, Fayyer and Pustelnik, the implication is a fair one: The undisputed evidence shows that Fayyer and Pustelnik were deeply involved in running and controlling Avalon. Thus, the term "Avalon Defendants" fairly connotes their involvement with their company, Avalon. In any event, prohibiting the use of the term would be impractical and unnecessary.

## BACKGROUND

This case involves market manipulation, including two schemes known as "layering" and "cross-market scheme." The trading orders were entered by Avalon's trade groups. Avalon, Fayyer and Pustelnik – who filed a joint Answer to the SEC's Complaint – admitted in their Answer that Fayyer was a principal of Avalon and handled its day-to-day operations, and that Fayyer oversaw Avalon's trade groups. The SEC's Complaint alleges that Avalon, Fayyer and Pustelnik directly violated the applicable federal securities laws, that Fayyer and Pustelnik aided

and abetted Avalon's and each other's violations. The Complaint also alleges that Pustelnik is liable under section 20(a) of the Securities Exchange Act because he controlled Avalon and was culpable in its violations. ECF No. 1, Complaint, at 54-55. The defendants deny the allegations against them. Trial is set to begin on October 21, 2019.

## ARGUMENT

I. **Because Fayyer and Pustelnik Indisputably Were Affiliated With Avalon, Use of the Term "Avalon Defendants" Fairly Describes Them**

   A. **Fayyer Was the President of Avalon and He Ran Avalon**

Fayyer has admitted that he was a principal of Avalon, the president of Avalon, and he was the head of the company. ECF No. 65 (Answer of defendants Avalon FA Ltd., Nathan Fayyer and Sergey Pustelnik ("Answer")) ¶¶ 5, 29; ECF No. 32 (Fayyer Decl.) ¶ 1 (stating he is the President of Avalon). Avalon's corporate documents stated he was its sole owner and director. Answer ¶¶ 19, 21. Fayyer handled Avalon's day-to-day and back-office operations. Answer ¶¶ 21, 29. Avalon traders were formed into trade groups, with Fayyer overseeing those trade groups. Answer ¶ 29. Fayyer specifically invited traders to do layering through Avalon. Exhibit 1 (SEC Trial Exhibit 1 (1/18/2013 email)) (Fayyer inviting trader to do layering))[1].

These are only some of the facts showing Fayyer ran Avalon. In light of these facts, there can be no dispute that Fayyer is so closely tied to Avalon that it is appropriate to refer to him as an "Avalon Defendant."

   B. **Pustelnik Was Closely Affiliated With Avalon**

Pustelnik also was closely affiliated with and involved in operations of Avalon. Pustelnik introduced Avalon to Lek Securities. Exhibit 2 (Avalon/Fayyer Response to SEC Requests for

---

[1] Exhibits to the Gottesman Declaration, which is being submitted simultaneously herewith, are denoted "Exhibit __" throughout.

Admission), ¶ 16.  When Avalon opened its account at Lek in 2010, Pustelnik lent $100,000 to open the account.  Exhibit 3 (1/30/14 Fayyer Test.) at 146:21-147:5; Exhibit 4 (1/31/14 Fayyer Test.) at 448:23-449:8; Exhibit 5 (2/11/14 Pustelnik Test.) at 192:2-192:4.  Pustelnik then became a registered representative at Lek Securities (until 2015), assigned to the Avalon account.  Answer ¶¶ 6, 8, 20, 34.  Avalon was Pustelnik's largest client at Lek Securities. Answer ¶ 80.

Pustelnik helped find traders to do layering through Avalon.  For example, on January 18, 2013, Fayyer sent an email to "Reggy," who later became a trade group leader at Avalon. Exhibit 1.  Fayyer stated, "[m]y name is Nathan and I received your contact from Serge. . . .  He told me that you had a group of traders and were interested in setting up some accounts for layering and other different strategies."

Pustelnik kept an Avalon server, containing Avalon's business records, at Pustelnik's residence.  Exhibit 4, at 358:7-358:18 (server produced to SEC was purchased by Avalon in 2012, and owned by Avalon); Exhibit 6 (2/15/18 Fayyer Tr.) at 261:10-261:16 (server housed at Pustelnik's residence).  Exhibit 7 (3/20/18 Pustelnik Depo.) at 111:25-112:8 ("I don't remember who owned the actual machine itself, it's been a long time ago, but it has been in my residence, yes.")]  Pustelnik did not maintain any other clients' servers in his residence.  Exhibit 5 (2/11/14 Pustelnik Test.) at 43:14-43:15.

Pustelnik held a credit card in the name of "Avalon Fund Aktiv," which was an affiliate of Avalon that paid Fayyer a salary and "other expenses associated with Avalon's operations." Answer ¶¶ 22, 30.  Between 2010 and 2016, Pustelnik provided various technology services to Avalon's back-office operations.  Answer ¶ 30.

3

The SEC will present evidence at trial showing that Pustelnik and his affiliates received millions of dollars in payments from Avalon or its affiliates.

This is just part of the evidence showing Pustelnik close involvement in Avalon. In light of his connections to Avalon, there is nothing improper about referring to Pustelnik as an "Avalon Defendant."

**II.       The Use of the Term "Avalon Defendants"
            Is Relevant and Not Unfairly Prejudicial**

The Defendants argue that the term "Avalon Defendants" is irrelevant and unfairly prejudicial. They are mistaken on both counts. The term is relevant. It is simply a descriptor that fairly conveys the idea that Avalon, Fayyer and Pustelnik have some connection to Avalon. As shown above, that is an indisputable fact supported by evidence.

The defendants erroneously argue that the term "Avalon Defendants" is unfairly prejudicial because "it automatically connects and implicates Mr. Fayyer and Mr. Pustelnik, without any evidence, to the alleged misdeeds of Avalon." Mem., at 2. First, the term does no such thing. The mere words "Avalon Defendants" are not argument, they are just a descriptor of who these defendants are. The term implies only that Fayyer and Pustelnik have a connection to Avalon.

The SEC's Complaint names five defendants. From the very beginning of the case, there was clear and logical dichotomy between, on the one hand, Avalon, Fayyer and Pustelnik, and on the other hand, Lek Securities and Sam Lek. For example, Avalon, Fayyer and Pustelnik filed a single Answer to the Complaint, they are represented by the same counsel, and they have acted in virtual lockstep throughout this case. It therefore has been logical to label that group as the "Avalon Defendants," and to name the remaining defendants as the "Lek Defendants."

Second, even if the term "Avalon Defendants" conveyed some implication of culpability, that could be cured by an instruction to the jury that mere use of the term by itself does not prove liability, and that liability has to be established by evidence.

Third, even if the use of term "Avalon Defendants" were deemed an argument, it would be a permissible one. As discussed above, there is ample evidence to support the notion that Fayyer and Pustelnik were intimately involved in Avalon's activities, including the violations at issue in this case. This is the purpose of having a trial – to present the evidence and for the parties to argue for the inferences they believe should be drawn. The SEC must be free to present its evidence and argue for the inferences *it* believes should be drawn. This includes the inference that Avalon, Fayyer and Pustelnik acted as one to commit the violations. Therefore, even if use of the term "Avalon Defendants" were deemed an argument (which it is not; it is only a descriptor) that they acted together, there would be nothing wrong with that argument.

### III. Prohibiting the Term "Avalon Defendants" Would Be Impractical and Unnecessary

Finally, the suggestion that the term "Avalon Defendants" should be banned completely from the trial is not practical. The term has been used in numerous filings and discovery papers in this case, many of which might be presented to the jury. It is not practical to expect that the phrase somehow could be expunged from every paper in which it ever was used, nor is it practical to expect that no one would ever mention it.

Although the SEC opposes any prohibition on the use of the term "Avalon Defendants," we note that there is likely to be less use of the term at trial. In light of the prospective settlement between the SEC and the Lek Defendants, it appears that the trial will be against Avalon, Fayyer and Pustelnik only. Therefore, the SEC will have less of a need to distinguish those three defendants from the Lek Defendants, and likely will not use the term as often as if the

5

Lek Defendants were on trial as well. Nonetheless, as discussed above, the term might come up from time to time, and the SEC should be free to use the term.

## **CONCLUSION**

For the foregoing reasons, the Defendants' motion should be denied.

Dated:  September 27, 2019                                         Respectfully submitted,

                                                               /s/ David J. Gottesman
                                         David J. Gottesman
                                         Olivia S. Choe
                                         Sarah S. Nilson
                                         U.S. Securities and Exchange Commission
                                         100 F Street N.E.
                                         Washington, D.C. 20549
                                         Tel.: (202) 551-4470 (Gottesman)
                                         Fax: (202) 772-9292
                                         Email:  gottesmand@sec.gov

                                         *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed via CM/ECF and thereby served on all counsel of record.


Dated:  September 27, 2019                                              /s/ David J. Gottesman