UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>       Plaintiff,<br><br>    v.<br><br>LEK SECURITIES CORPORATION,<br>SAMUEL LEK,<br>VALI MANAGEMENT PARTNERS dba<br>  AVALON FA LTD,<br>NATHAN FAYYER, and<br>SERGEY PUSTELNIK a/k/a<br>  SERGE PUSTELNIK,<br><br>       Defendants. | CASE NO. 17-CV-1789 (DLC) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS AVALON FA LTD'S,
NATHAN FAYYER'S, AND SERGEY PUSTELNIK'S MOTIONS *IN LIMINE*
TO PRECLUDE TESTIMONY BY JEFFREY CLARK AND JEROME LAGUILLES**

              David J. Gottesman
              Olivia S. Choe
              Sarah S. Nilson
              U.S. Securities and Exchange Commission
              100 F Street N.E.
              Washington, D.C. 20549
              Tel.: (202) 551-4881 (Choe)
              Fax: (202) 772-9292
              Email:  choeo@sec.gov

              *Counsel for Plaintiff*

Dated:  September 27, 2019

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ...................................................................................1

II. BACKGROUND ............................................................................................................2

    A. Avalon and Avalon Fund Aktiv ...........................................................................2

    B. The SEC's Subpoenas............................................................................................2

    C. The Defendants' Failure to Produce Layering Emails...........................................3

    D. The Defendants' Failure to Produce Credit Card Records ....................................4

    E. The Defendants' Sworn Testimony ......................................................................5

    F. Clark's and Laguilles's Expected Trial Testimony ................................................7

III. ARGUMENT..................................................................................................................8

IV. CONCLUSION.............................................................................................................11

# **TABLE OF AUTHORITIES**

**CASES**

*United States v. Bein*,
   728 F.2d 107 (2d Cir. 1984)............................................................................................8

*United States v. Diaz,*
   176 F.3d 52 (2d Cir. 1999)............................................................................................10

*United States v. Mastropieri*,
   685 F.2d 776 (2d Cir. 1982)............................................................................................8

*United States v. Pyle*,
   47 F. App'x 43 (2d Cir. 2002) ........................................................................................8

**FEDERAL STATUTES AND REGULATIONS**

15 U.S.C. § 78x(c) ...............................................................................................................4

17 U.S.C. § 240.24c-1..........................................................................................................4

Fed. R. Evid. 403 .................................................................................................................9

Fed. R. Evid. 404(b).............................................................................................................8

I.      PRELIMINARY STATEMENT

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this opposition to two motions *in limine* filed by defendants Avalon FA Ltd ("Avalon"), Nathan Fayyer ("Fayyer"), and Sergey Pustelnik ("Pustelnik") (collectively, "Defendants"), seeking to exclude testimony by FBI Special Agent Jeffrey Clark (ECF Nos. 424-425) and SEC employee Jerome Laguilles (ECF Nos. 428-429).

The testimony that the Defendants seek to exclude is highly probative of their state of mind.  First, Clark and Laguilles's testimony will show that in response to subpoenas from the SEC, the Defendants failed to produce severely damaging emails that Fayyer exchanged with Avalon's traders.  In these emails, Fayyer openly recruited traders to engage in layering – one of the two manipulative strategies at issue in this case – through Avalon's account at Lek Securities.

Second, Clark and Laguilles's testimony will show that the Defendants also failed to produce records for a credit card account in the name of an Avalon affiliate.  That account was used by both Fayyer and Pustelnik, and the records are thus probative of Pustelnik's financial ties to, interest in, and control over Avalon.  Pustelnik's use of the credit card account also directly contradicts sworn testimony provided by both Fayyer and Pustelnik, who unequivocally denied that any financial relationship between Pustelnik and Avalon existed.

The Court should permit both Clark and Laguilles to testify.  Their testimony tends to show that the Defendants failed to produce inculpatory evidence to the SEC and that they lied under oath about Pustelnik's relationship to Avalon.  These facts tend to show consciousness of guilt on the Defendants' part, which is relevant to their state of mind.  Any potential prejudice does not "substantially outweigh[]" the significant probative value of this testimony and may be cured by an appropriate limiting instruction.  The Motions should be denied.

## II. BACKGROUND

### A. Avalon and Avalon Fund Aktiv

Defendant Avalon is a Seychelles-incorporated entity based in Kiev, Ukraine. Fayyer is Avalon's sole disclosed owner. ECF No. 65 (Defendants' Answer), ¶ 19. During the relevant period, Avalon had a Google email account with the email address avalonfaltd@gmail.com (the "Avalon Google Account") that was used to conduct Avalon's corporate business. Exhibit 1 to Declaration of Olivia S. Choe, dated September 27, 2019, at 13-14.[1]

Avalon Fund Aktiv LLC ("Avalon Fund Aktiv") is a New Jersey-incorporated limited liability company. It is owned by Fayyer and his wife. ECF No. 65 (Defendants' Answer), ¶¶ 21-22.[2] Avalon Fund Aktiv has no operations. According to Fayyer, its purpose is to pay the U.S. expenses (for example, Fayyer's salary) of Avalon, the foreign entity. Ex. 1, at 37-41.

Avalon and Avalon Fund Aktiv are under the common control of Fayyer.

### B. The SEC's Subpoenas

On September 24, 2013, the SEC issued an investigative subpoena to Avalon requesting, among other things: (1) "Documents Concerning any … credit card … account in which Avalon [defined to include any entities under "common control" with Avalon] has or had any legal, beneficial, or other interest … or over which Avalon exercises or exercised any control"; (2) "[F]or each current and former Avalon Trader …all [c]ommunications [c]oncerning Avalon and Lek"; and (3) "Documents discussing or [c]oncerning trading strategies employed by Avalon and Avalon Traders."[3] Ex. 2, at PX150-7 (Definition 1), PX150-12 (¶ 15.g), PX150-13 (¶ 16).

---

[1] Exhibits to the Choe Declaration, which is being submitted simultaneously herewith, are denoted "Ex. __" throughout.

[2] Fayyer's wife is listed on Avalon Fund Aktiv's paperwork only because he was required to list two people on the corporate paperwork. Ex. 1, at 37-41.

[3] Much of the relevant factual background is also set forth in the SEC's memorandum of law in opposition to the Avalon Defendants' Motion to Disqualify Counsel for the SEC. ECF No. 134, at 3-14; *see also* ECF

2

The SEC simultaneously issued a subpoena to Fayyer requesting "all documents …[c]oncerning Avalon and Lek" and directing him to secure and retain materials responsive to the subpoena. Ex. 3, at PX149-12.

On December 31, 2013, the SEC issued another subpoena to Fayyer, requiring him to produce "All Documents concerning Avalon Fund Aktiv." Ex. 4, at PX151-11. The SEC also issued a subpoena to Pustelnik in December 2013, requiring him to produce documents "sufficient to establish Your relationship with Avalon"; documents "sufficient to establish any Compensation to, from, or Concerning Avalon"; documents "sufficient to establish [Your] relationship (both business and personal) with" Nathan Fayyer and Avalon Fund Aktiv; and "All Documents regarding … layering." Ex. 5, at PX215-12 (¶¶ 2.d, 2.e), PX215-13 (¶¶ 11.c, 11.g), PX215-14 (¶ 15).

C.    The Defendants' Failure to Produce Layering Emails

In response to the SEC's subpoenas, all of the Defendants produced certain records, including emails. None of the Defendants, however, produced certain, highly damaging emails in which Fayyer – using the Avalon Google Account – openly discussed layering with various Avalon trade group leaders. In these emails, Fayyer expressly invited traders to engage in layering through Avalon's account at Lek Securities, explained that Avalon charged higher fees for layering than for "normal" trading because of the legal risks associated with layering, and boasted about Avalon's deep knowledge of layering. *See, e.g.*, Ex. 6 (stating that Pustelnik "told me that you had a group of traders and were interested in setting up some accounts for layering" and "this is definitely something I can help you with"); Ex. 7, at PX2-3 ("For layering it is a bit more costly as we pay very big legal bills every month to be protected"); Ex. 8, at PX3-1

---

No. 148, at 12 (denying motion and noting that "among the documents are items that the SEC finds highly relevant to its claims in this litigation, but that Avalon and Fayyer failed to produce when required to do so pursuant to administrative subpoenas, and for which Avalon makes no claim of privilege").

3

("[C]osts to protect layering are very high these days from our legal team.  Also, there are almost no places that allow this."); Ex. 9, at PX4-1 ("I have included both payout schedules for layering and normal trading."); Ex 10, at PX7-1 ("[Y]our people cannot do layering/spoofing and regular trading in one account.").[4]

In August 2015, the FBI obtained records from the Avalon Google Account pursuant to a federal search warrant.  In connection with a routine access request, the U.S. Attorney's Office for the District of New Jersey ("USAO") subsequently provided some of those records to the SEC.  See 15 U.S.C. § 78x(c); 17 C.F.R. § 240.24c-1.  These records included multiple emails between Fayyer and various Avalon trade group leaders discussing layering, including all of the emails cited above and several others.  See ECF No. 425-1 (Defs.' Ex. A) (SEC summary chart showing emails between Avalon Google Account and Avalon trade group leaders that refer to layering but were not produced by Avalon or Fayyer).

In December 2015, the FBI obtained an additional search warrant for three other Google email accounts associated with two Avalon trade group leaders who used the names "Reggy" and "Peppy."  The USAO subsequently provided certain records produced by Google from those three Google accounts (the "Reggy Accounts") to the SEC.  These records contained communications between Pustelnik and Reggy, including a chat message in which Reggy asked Pustelnik "Do u know where I can trade lawyering [sic] strategy."  Ex. 11.

### D.  The Defendants' Failure to Produce Credit Card Records

On September 11, 2012, Fayyer opened a Capital One Visa Signature Business credit card account in the name of Avalon Fund Aktiv (the "Avalon Fund Aktiv Credit Card").  Ex. 12.

One week later, Fayyer added two authorized users to the Avalon Fund Aktiv Credit

---

[4] The Defendants also failed to produce any of these email communications during the litigation, even though they were plainly responsive to multiple requests for production.

4

Card:  Pustelnik and Alexander Lubetsky, Pustelnik's brother-in-law.  Ex. 13.

Between September 2012 and March 2014, Fayyer, Pustelnik, and Lubetsky all utilized the Avalon Fund Aktiv Credit Card.  A chart summarizing their respective transactions is attached as Exhibit 14.[5]

Fayyer, Pustelnik, and Lubetsky's credit card balances were paid in their entirety each month with funds from a Chase bank account owned by Avalon Fund Aktiv and controlled by Fayyer.  A chart summarizing these payments is attached hereto as Exhibit 15.[6]

Virtually all of the funds in that Chase Bank account came from Defendant Avalon's overseas bank accounts.  A chart showing what percentage of funds in the Chase Bank account came from defendant Avalon's accounts is attached hereto as Exhibit 16.[7]

In other words, Pustelnik's credit card charges on the Avalon Fund Aktiv Credit Card were being paid for primarily with money from Defendant Avalon.

Although they were plainly responsive to the SEC's subpoenas, none of the Defendants produced any records relating to the Avalon Fund Aktiv Credit Card.  Instead, the SEC subsequently obtained records relating to the account from Capital One.[8]  *See* ECF No. 425-3 (Defs.' Ex. C) (SEC summary chart summarizing which parties produced records relating to Avalon Fund Aktiv Credit Card).

E.   **The Defendants' Sworn Testimony**

On January 30, 2014, Fayyer provided sworn testimony to the SEC.  Fayyer testified under oath that Pustelnik had no financial relationship with Avalon, other than a $100,000 loan

---

[5] At trial, this chart will be authenticated by SEC summary witness Patrick McCluskey.

[6] At trial, this chart will be authenticated by SEC summary witness Patrick McCluskey.

[7] At trial, this chart will be authenticated by SEC summary witness Patrick McCluskey.

[8] Certain account statements were also found within the Avalon Google Account records provided to the SEC by the USAO.

Pustelnik had provided to initially fund Avalon's account at Lek Securities. Fayyer also denied that he personally had any financial relationship with Pustelnik. Ex. 1, at 164-165; *see also id.* at 145-147.

Also in January 2014, counsel for Pustelnik sent a letter to the SEC in response to the SEC's December 2013 subpoena to Pustelnik (the "January Letter").[9] In the January Letter, counsel stated that Pustelnik did not have any "current relationship or interaction with Avalon Fund Aktiv." Ex. 17, at PX216-9.

On February 11, 2014, Pustelnik provided sworn testimony to the SEC. Pustelnik testified under oath that, other than the $100,000 loan to fund Avalon's account at Lek Securities and a previous payment from one of Pustelnik's entities (Algo Design) to Fayyer, there was no financial relationship between Pustelnik and Avalon, between Pustelnik and Fayyer, or between Pustelnik and Avalon Fund Aktiv. Specifically, he stated:

> No. There is no other financial arrangements of any kind between myself and Nathan or Avalon or any companies that he owns or I own. The only other, which I already mentioned before, is the payment that Algo Design made directly to Nathan for what I talked about before. Other than that, there is nothing that I can remember.

Ex. 18, at 204-205.

At the time, Pustelnik and Fayyer were both users of the Avalon Fund Aktiv Credit Card. Pustelnik's charges on that card were being paid for with a bank account owned by Avalon Fund Aktiv and controlled by Fayyer. The funds in that bank account were almost entirely from Defendant Avalon's overseas bank accounts.

Approximately one month later, on March 27, 2014, Pustelnik and Lubetsky were removed as authorized users of the Avalon Fund Aktiv credit card account. Ex. 13.

---

[9] At the time, counsel for the Defendants – James Wines – represented only Pustelnik. Fayyer and Avalon were at the time represented by separate counsel.

6

The following day, on March 28, 2014, counsel for Pustelnik sent a letter to the SEC stating that "Recently, reason has arisen to question the accuracy of one or more of the statements made in the [January] Letter." Counsel accordingly stated that he was "withdrawing" his signature on the January Letter and that statements in the January Letter should not be relied upon. Ex. 19.

### F. Clark's and Laguilles's Expected Trial Testimony

At trial, the SEC intends to call Special Agent Jeffrey Clark of the FBI and anticipates eliciting the following limited testimony:

- Agent Clark is an FBI agent with the Complex Financial Crimes Squad. Part of his job includes obtaining search warrants.

- In approximately July 2015, Agent Clark obtained a search warrant for the Avalon Google Account.

- In approximately December 2015, Agent Clark obtained a search warrant for the Reggy Google Accounts.

- Agent Clark obtained these search warrants in connection with an FBI investigation. He did not obtain them at the request of the SEC.

- Agent Clark is not aware of any current or past federal criminal prosecution of the Defendants.

- Agent Clark provided records produced by Google in response to these two search warrants to the U.S. Attorney's Office for the District of New Jersey.

- Agent Clark has searched for approximately 49 documents – including the layering emails described above – within the records produced by Google.[10] He has confirmed that all of those documents are contained within the records produced by Google in response to these two search warrants.

In the Joint Pretrial Order, the Defendants objected to many of these 48 documents. *See, e.g.*, ECF No. 441-1, at 1-2 (SEC Trial Ex. 1-14), 8 (SEC Trial Ex. 80, 84), 9 (SEC Trial Ex. 90).

---

[10] Those documents include SEC Trial Exhibits 1-14, 80, 84, 90, 114-118, the final page of 119, 121-124, 126-129, 145-148, 155-158, 160-161, 164-167, 219, 221-223, and 226A.

The SEC further intends to call SEC employee Jerome Laguilles and anticipates eliciting the following testimony:

- Laguilles is an SEC employee who oversees and handles the processing of documents produced to the SEC.

- Laguilles is familiar with the SEC's document management system.

- The SEC's document management system tracks the producing parties for documents that are produced to the SEC.

- Laguilles conducted searches for SEC Trial Exhibits 1-14 and 32-37 and determined whether certain parties did or did not produce those documents.

- The results of his searches are reflected in certain summary charts. *See* ECF Nos. 425-1 – 425-4 (Defs.' Exs. A-D). As reflected in these charts, Laguilles's searches revealed that none of the Defendants produced any of the layering emails or Avalon Fund Aktiv Credit Card records described above or identified in the charts.

### III.   ARGUMENT

The Court should deny the Defendants' motions *in limine*, which seek to exclude this highly relevant – and highly damaging – evidence. Testimony from Clark and Laguilles will, in conjunction with each other and with other evidence in the case, show that the Defendants failed to produce inculpatory emails reflecting Avalon's involvement in a layering scheme.

The fact that the Defendants failed to produce these emails, which were plainly responsive to the SEC's subpoenas, is highly probative of their state of mind. *See, e.g.*, *United States v. Mastropieri*, 685 F.2d 776, 790 (2d Cir. 1982) ("There can be no doubt that an attempt to suppress material records permits an inference of consciousness of guilt and therefore of guilt itself."); *see also United States v. Bein*, 728 F.2d 107, 114-15 (2d Cir. 1984) (evidence of consciousness of guilt admissible under Fed. R. Evid. 404(b) if more probative than prejudicial); *United States v. Pyle*, 47 F. App'x 43, 44-45 (2d Cir. 2002) (evidence that defendant had failed to comply with subpoena to provide handwriting exemplars properly admitted as evidence of

consciousness of guilt where "[k]nowledge was an element of the charged crime that the government had the burden of proving at trial").

Laguilles's testimony will also – in conjunction with other evidence in the case – show that (1) the Defendants failed to produce records relating to Pustelnik's use of the Avalon Fund Aktiv Credit Card, and (2) Fayyer and Pustelnik both testified falsely under oath regarding Pustelnik's financial relationship to Fayyer, Avalon, and Avalon Fund Aktiv. Again, the Defendants' failure to produce records relating to the Avalon Fund Aktiv Credit Card is evidence of consciousness of guilt and is therefore relevant to their state of mind. In addition, evidence that tends to show that the Defendants lied under oath – on the central topic of Pustelnik's financial relationship to Avalon – is relevant to the jury's assessment of their credibility.

The high probative value of this testimony far outweighs any potential prejudice. Rule 403 does not require the exclusion of all evidence that might have prejudicial effect, but only evidence resulting in "unfair prejudice" that would "substantially outweigh[]" any probative value. Fed. R. Evid. 403. Here, the Defendants have failed to identify any "unfair prejudice" that might arise from Laguilles's testimony. Instead, the Defendants complain that it would be unfair to allow Laguilles to testify because they were never notified that the "SEC believed that Defendants failed to produce documents," and that they "must be provided with an opportunity to reply to whatever false allegations the SEC intends to make to defend and explain their productions." ECF No. 429, at 1-2.

The SEC filed a brief setting forth the Defendants' failure to produce the layering emails in December 2017 – nearly two years ago, and months before the close of fact discovery. ECF No. 134. The SEC also questioned Fayyer extensively about his failure to produce certain layering emails at his February 2018 deposition – again, well before the close of fact discovery,

and over 18 months ago.  Neither of these events resulted in any effort on the Defendants' part to supplement their productions.  Indeed, to this date, the Defendants have not produced a single one of the layering emails nor any records from the Avalon Fund Aktiv Credit Card reflected on Laguilles's summary charts.  *See* ECF Nos. 425-1, 425-3 (Defs.' Exs. A, C).  The Defendants will have an opportunity at trial to explain to the jury, under oath, why they failed to produce this damaging evidence, but they cannot be heard to complain that they have somehow been unaware of their production failures until now.

As for Agent Clark, any potential prejudice that might arise from the fact that he is a criminal investigator does not "substantially outweigh[]" the high probative value of his testimony.  First, Agent Clark's testimony will be circumscribed to the topics set forth above.  Agent Clark will not testify about the investigation that he was conducting at the time that he obtained the search warrants.[11]  Second, Agent Clark will testify that he is unaware of any current or past federal criminal prosecution of the Defendants.  Any potential prejudice that might result from his testimony can be cured by an appropriate limiting instruction from the Court.  *Cf. United States v. Diaz*, 176 F.3d 52, 104 (2d Cir. 1999) (limiting instructions "often will suffice to cure any risk of prejudice," even "when the risk of prejudice is high" (internal quotation marks omitted)).[12]

---

[11] Indeed, the FBI has limited the scope of the testimony that Agent Clark is authorized to provide.  *See* Ex. 20.  It will be unnecessary for him to testify about – and the SEC would object to any attempt to question him on – the FBI's underlying investigation or any other investigative matters.

[12] The Defendants complain that it would be "completely unfair" to allow Clark to testify "having refused to provide Defendants any discovery into this purported investigation."  ECF No. 425, at 3.  In January 2018, the Defendants sought to compel the production of an alleged cooperation agreement involving an individual named Aleksandr Milrud.  ECF No. 154.  As the SEC explained in response, the SEC was unable to produce a copy of a document that it had (and has) never possessed.  *See* ECF No. 155.  Despite reserving their rights to seek other discovery, *see* ECF No. 154, at 2, the Defendants at no time sought to compel any other discovery relating to Milrud or any other criminal investigation or prosecution.  The Defendants never sought to depose Agent Clark, who was listed on the SEC's initial disclosures as early as January 2018.

## IIV.   CONCLUSION

For the foregoing reasons, the Defendants' Motions *in Limine* to Preclude Testimony by Jeffrey Clark and Jerome Laguilles should be denied.

Dated:  September 27, 2019                                        Respectfully submitted,

/s/  Olivia S. Choe
David J. Gottesman
Olivia S. Choe
Sarah S. Nilson
U.S. Securities and Exchange Commission
100 F Street N.E.
Washington, D.C. 20549
Tel.: (202) 551-4881 (Choe)
Fax: (202) 772-9292
ChoeO@sec.gov
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 27, 2019, I filed the foregoing document on CM/ECF and thereby served all counsel of record.

/s/  Olivia S. Choe
Olivia S. Choe