UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

Plaintiff,

v.

LEK SECURITIES CORPORATION,
SAMUEL LEK,
VALI MANAGEMENT PARTNERS dba
    AVALON FA LTD,
NATHAN FAYYER, and
SERGEY PUSTELNIK a/k/a
    SERGE PUSTELNIK,

Defendants.

CASE NO. 17-CV-1789 (DLC)

**PLAINTIFF'S OPPOSITION TO DEFENDANTS PUSTELNIK, FAYYER AND
AVALON'S MOTION *IN LIMINE* TO PRECLUDE THE SEC FROM
INTRODUCING EVIDENCE CONCERNING PURPORTED PAYMENTS
TO PURPORTED ASSOCIATES OF PUSTELNIK**

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this

opposition to the Motion *in Limine* filed by defendants Sergey Pustelnik, Nathan Fayyer, and

Avalon FA Ltd (collectively, "Defendants") seeking to preclude the SEC from introducing

evidence of payments to associates of Pustelnik.  ECF Nos. 432-433.

The evidence at issue reflects Pustelnik's multi-faceted financial ties to Avalon.  It is

highly probative of his involvement in Avalon.  The Defendants have not identified any unfair

prejudice that would result from its introduction.  Nor does the evidence present any real risk of

confusing the jury.  On the contrary, the relationship between Pustelnik and his associates will

not be difficult for the jury understand, nor will it be difficult for the jury to infer why payments were made to these associates – which is precisely what the Defendants fear.  The Court should reject their attempt to exclude persuasive evidence revealing Pustelnik's involvement in Avalon.

## I.   PAYMENTS FROM PUSTELNIK TO LUBETSKY AND PERSHINOVA

The Defendants ask the Court to preclude the SEC from introducing evidence, including testimony from the former CFO of Lek Securities, Daniel Hanuka, of compensation that two individuals associated with Pustelnik received.  ECF No. 433, at 1.

The evidence at issue concerns Alexander Lubetsky and Svetlana Pershinova, both of whom worked at Lek Securities during the relevant period.  Both Lubetsky and Pershinova were hired by Lek Securities at Pustelnik's request.  *See* Ex. 1,[1] at 119-120; ECF No. 65 (Defs.' Answer), ¶ 33.[2]  Before working at Lek, both Lubetsky and Pershinova were associated with Avalon or its domestic affiliate, Avalon Fund Aktiv LLC ("Avalon Fund Aktiv").  Ex. 2, at 259 (Pershinova "has done some work for Avalon, yes").  Indeed, Lubetsky was the previous owner of Avalon Fund Aktiv.  Ex. 1, at 143; Ex. 2, at 59.[3]

At Lek Securities, both Lubetsky and Pershinova serviced the Avalon account.  Lubetsky was a registered representative who, along with Pustelnik, was assigned to the Avalon account,

---

[1] Exhibits to the Declaration of Olivia S. Choe, dated September 27, 2019, which is being simultaneously submitted in support of this opposition, are referred to as "Ex. __" throughout.

[2] The Defendants complain that the "SEC does not identify who the alleged affiliates or associates of Avalon are."  ECF No. 433, at 2.  But the identity of these two individuals is hardly a mystery.  Pustelnik himself has admitted that both Pershinova and Lubetsky were hired by Lek at his request.  Ex. 1, at 119-120; ECF No. 65 (Defs.' Answer), ¶ 33.  He has also testified about their compensation.  Ex. 2, at 259-260; Ex. 3, at 139-140, 184-185.

[3] Avalon Fund Aktiv is a New Jersey-incorporated limited liability company.  It is owned by Fayyer and his wife.  ECF No. 65 (Defs.' Answer), ¶¶ 21-22.  Fayyer's wife is listed on Avalon Fund Aktiv's paperwork only because he was required to list two people on the corporate paperwork.  Avalon Fund Aktiv has no operations.  According to Fayyer, its purpose is to pay the U.S. expenses (for example, Fayyer's salary) of Defendant Avalon, the foreign entity.  Ex. 4, at 37-41.

while Pershinova served as Pustelnik's administrative assistant.  ECF No. 65 (Defs.' Answer), ¶¶ 32-33; Ex. 5, ¶ 26; Ex. 6, at 104.

At trial, the SEC's evidence, including Hanuka's testimony, will show that Pustelnik contributed to Lubetsky's and Pershinova's compensation at Lek Securities.  Specifically, Pustelnik directed that a portion of the commissions generated by Avalon be paid to Lubetsky. Ex. 3, at 139-140, 184-185; Ex. 6, at 104, 111-112.  The compensation that Lubetsky received from Lek Securities was at Pustelnik's discretion.  Ex. 6, at 112-114 ("It was more a matter of Serge sort of carving out how much he kept himself and how much he was willing to divert to Alex Lubetsky for servicing Avalon.").  Pustelnik also paid for a portion of Pershinova's salary. ECF No. 65 (Defs.' Answer), ¶ 33; Ex. 2, at 260; Ex. 3, at 75; Ex. 5, ¶ 38.

Records from an Avalon server that Pustelnik maintained at his residence indicate that Avalon reimbursed Pustelnik for the payments he made toward Pershinova's salary.[4]

The evidence relating to Lubetsky's and Pershinova's compensation is relevant in several ways.  First, the SEC has alleged that Pustelnik facilitated and participated in Avalon's market manipulation schemes.  One of the ways that Pustelnik facilitated Avalon's market manipulation was through his position at Lek Securities, where he became the registered representative overseeing the Avalon account.  Securing that position allowed Pustelnik to ensure that Avalon was able to carry out its manipulative trading.  And by persuading Lek to hire Pershinova and Lubetsky (both of whom had prior associations with Avalon), Pustelnik further ensured that Avalon's interests would be served at Lek Securities.  Evidence that Pustelnik was willing to contribute to Lubetsky's and Pershinova's compensation is plainly relevant to his intent:

---

[4] A "Master" table on the Avalon server refers to "S.A.P." as an "EXEC" who was assigned account ID "!000."  Ex. 7.  Other records indicate that account ID !000 was associated with Pustelnik.  *See* ECF No. 438, at 12.  Another table on the server, titled "CashActivity," contains multiple entries for the same account ID labeled "reimburse for Sveta salary" or "Sveta salary reimburse," indicating that Avalon reimbursed Pustelnik for the amounts he contributed to Pershinova's salary.  *See* Ex. 8, at 2, 4-12.

Pustelnik was willing to pay in order to make sure that Avalon's account at Lek was handled by himself and individuals he selected.

This evidence is thus highly probative to a central issue in the SEC's case against the Defendants.  It presents no risk of unfair prejudice or confusion.  It is one of many strands of evidence that, taken together, form a picture of Pustelnik's involvement in Avalon and the actions he took to facilitate its schemes.  The Court should reject the Defendants' efforts to preclude the SEC from presenting the jury with a comprehensive picture of Pustelnik's conduct.

## II.     PAYMENTS FROM AVALON FUND AKTIV TO PUSTELNIK'S AFFILIATES

The Defendants ask the Court to preclude the SEC from introducing evidence that money was transferred from Avalon Fund Aktiv's bank accounts to Pustelnik and his affiliates.  ECF No. 433, at 1.

The SEC plans to introduce evidence showing that in 2015 and 2016 alone, millions of dollars were transferred from Avalon Fund Aktiv's domestic bank accounts to Pustelnik as well as (1) Pustelnik's father, Aleksandr Pustelnik; (2) one of Pustelnik's companies, Algo Design; and (3) Harvard University, where Pustelnik was, at the time, a law student.  Exs. 9-11.[5]  The evidence will further show that most of the money in Avalon Fund Aktiv's domestic bank accounts came from Defendant Avalon's overseas bank accounts.  Ex. 12.[6]

The challenged evidence is highly probative of Pustelnik's involvement in Avalon.  The movement of funds from Avalon – through its domestic arm, Avalon Fund Aktiv – and ultimately to Pustelnik's father, Pustelnik's law school, and an entity that Pustelnik owned all tend to show that Avalon's money was used for Pustelnik's benefit.  Such evidence is relevant to

---

[5] At trial, Exhibits 9-12 will be authenticated by SEC summary witness Patrick McCluskey.

[6] Again, the Defendants' complaint that "[t]he SEC does not identify who the alleged affiliates or associates of Pustelnik are" is inaccurate.  ECF No. 433, at 2.  On August 30, 2019, the SEC provided the Defendants with the summary exhibits attached here as Exhibits 9-11.

Pustelnik's control of Avalon.  *Cf. United States v. DeMizio*, No. 08–CR–336 (JG), 2012 WL 1020045, at *10 (E.D.N.Y. Mar. 26, 2012) (reasonable jury could find that defendant benefitted from payments to close family members); *cf. also United States v. Harvey*, 532 F.3d 326, 335 (4th Cir. 2008) (corrupt intent could be inferred from payments from one co-defendant to the business of another co-defendant).  It will not be difficult or confusing for a jury to consider the possibility that payments made from Avalon Fund Aktiv's account to individuals and entities associated with Pustelnik were for Pustelnik's benefit.  At trial, Pustelnik is free to explain to the jury why these transfers do not reflect his involvement in Avalon.  But the Defendants have offered no basis for excluding this evidence.

## III.    USERS OF THE AVALON FUND AKTIV CREDIT CARD

The Defendants ask the Court to preclude the SEC from introducing evidence of the use of an Avalon Fund Aktiv credit card account by an individual affiliated with Pustelnik.  ECF No. 433, at 1-2.  That individual was Lubetsky.

The SEC's evidence shows that between September 2012 and March 2014, Pustelnik, Fayyer, and Lubetsky were all authorized users of a credit card account in the name of Avalon Fund Aktiv.  Ex. 13-14.  They were, in fact, the only authorized users on the account.  Their transactions on the credit card correspond to internal Avalon records indicating that all three were "EXECS" of Avalon.[7]

This evidence – including Lubetsky's use of the credit card – is relevant to Pustelnik's

---

[7] Specifically, the "Master" table from the Avalon server refers to three individuals – "S.A.P.," "N.K.F." and "A.P.L." – as "EXECS."  Ex. 7.  Those three individuals are associated with account IDs "!000," "!001," and "!002," respectively.  *Id.*  A "MoneyLedger" on the Avalon server largely tracks the credit card transactions for Pustelnik, Fayyer, and Lubetsky under those account IDs, respectively.  Ex. 15 (summary table comparing Pustelnik, Fayyer, and Lubetsky's credit card transactions with entries under those account IDs, to be authenticated at trial by SEC summary witness Patrick McCluskey).  In other words, Pustelnik, Fayyer, and Lubetsky's credit card transactions appear to have been tracked as transactions associated with Avalon's "EXECS" in Avalon's internal records.

role as a control person of Avalon.  The fact that Pustelnik, Fayyer, and Lubetsky were the three authorized users of the Avalon Fund Aktiv credit card reflects their joint role in managing Avalon.  The fact that Pustelnik shared use of this Avalon Fund Aktiv credit card with both Fayyer (Avalon's sole disclosed director and its public face) and Lubetsky (the former owner of Avalon Fund Aktiv and Avalon's other registered representative at Lek Securities) tends to show that Pustelnik, too, was one of the heads of Avalon.  The fact that Avalon's records indicate that all three users of the credit card were "EXECS" is likewise relevant to Pustelnik's role in managing Avalon.

The Defendants have identified nothing prejudicial about the evidence of Lubetsky's joint use of the Avalon Fund Aktiv credit card, other than that it – along with other evidence in the case – will reveal Pustelnik's involvement in, and financial ties to, Avalon.  Nor will its introduction be confusing.  Indeed, it would be more confusing, not to mention impracticable, for the SEC to present these credit card records without reference to Lubetsky, who is listed as an authorized user on the same record as Pustelnik (Ex. 14), and whose transactions appear on the same statements as Pustelnik's and Fayyer's transactions (s*ee, e.g.*, Ex. 16).  The Defendants' efforts to exclude this evidence should be rejected.

## IV.    CONCLUSION

The evidence that the Defendants seek to exclude all tends to show that Pustelnik was involved in and had control over Avalon.  It is the kind of evidence that, in a circumstantial case, a jury must rely upon in developing a complete understanding of the facts.  The Defendants seek to exclude this evidence for precisely that reason – because each of these pieces of evidence will contribute to the jury's understanding of Pustelnik's role in Avalon's schemes.  They have identified no unfair prejudice or confusion that will result from this evidence, and certainly none that would outweigh its significant probative value.  The Motion should be denied.


Dated:  September 27, 2019                    Respectfully submitted,


                                             /s/  Olivia S. Choe
                                             David J. Gottesman
                                             Olivia S. Choe
                                             Sarah S. Nilson
                                             U.S. Securities and Exchange Commission
                                             100 F Street N.E.
                                             Washington, D.C. 20549
                                             Tel.: (202) 551-4881 (Choe)
                                             Fax: (202) 772-9292
                                             ChoeO@sec.gov
                                             *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 27, 2019, I filed the foregoing document on

CM/ECF and thereby served all counsel of record.

<u>/s/  Olivia S. Choe</u>
Olivia S. Choe