UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE
COMMISSION,

                      Plaintiff,

                v.                     CASE NO. 17-CV-1789 (DLC)

LEK SECURITIES CORPORATION,
et al.,

                      Defendants.

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS AVALON FA LTD'S,
NATHAN FAYYER'S, AND SERGEY PUSTELNIK'S MOTION *IN LIMINE*
TO PROHIBIT TESTIMONY FROM GENE DEMAIO AND
<u>USE OF THE PHRASE "CROSS MARKET MANIPULATION"</u>**

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this opposition to a motion *in limine* filed by defendants Avalon FA Ltd ("Avalon"), Nathan Fayyer ("Fayyer"), and Sergey Pustelnik ("Pustelnik") (collectively, "Defendants"), seeking to prohibit the testimony of Gene DeMaio and the use of the phrases "cross-market manipulation," "mini-manipulation," and "cross-market cross-product manipulation." ECF Nos. 426-427. That trading activity will be referred to herein as "Cross-Market Trading."

The Defendants offer no authority to support their request, instead complaining that the terms used to describe the conduct at issue in this case are legal conclusions, confusing and misleading, and unnecessary. ECF No. 427, at 2. The defendants further complain that Mr. DeMaio is not an expert and should not be permitted to render "a legal conclusion." *Id.*

The Defendants seek to preclude highly relevant factual testimony concerning Avalon's trading. Mr. DeMaio, an official from the Financial Industry Regulatory Authority ("FINRA"), will provide background on the options markets, explain how the Cross-Market Trading works, and explain why, in FINRA's view, the Cross-Market Trading is deceptive, harmful, and manipulative. He will also testify about FINRA's review of Avalon's trading, communications with Lek Securities about Avalon's trading, and notice to the market about FINRA's view that the Cross-Market Trading is manipulative. Mr. DeMaio will testify about these things because—during the relevant period—his job was to oversee the group that conducted an investigation into Avalon's trading, which FINRA viewed as manipulative and highly problematic. Mr. DeMaio will not offer "legal conclusions," but will testify as a percipient witness about events that he participated in and his view of the trading as it occurred.

The terms that the Defendants seek to preclude are essential to providing the factual underpinnings of the conduct in this case. Throughout the events at issue, Mr. DeMaio and other FINRA personnel referred to the strategy as "mini-manipulation" or "cross-market cross-product manipulation." Those terms were used in publications that FINRA distributed to securities industry members, notifying them of the wrongful nature of the conduct. Restricting Mr. DeMaio's testimony, or his use of the very terms that he used to describe the strategy as it was occurring, would prevent him from providing complete and accurate testimony about the events in the case, alter the nature of his testimony, and require a significant editing of the record, including contemporaneous documents. The Defendants' motion should be denied.

**I.   BACKGROUND**

Mr. DeMaio is an official at FINRA who oversees FINRA's options regulation group. Mr. DeMaio will testify that in that role, he oversaw the development of surveillance to identify instances of the Cross-Market Trading, was involved in providing notice to the markets about the

2

trading and FINRA's views that the strategy was manipulative, and oversaw FINRA's investigations of Cross-Market Trading. Mr. DeMaio supervised the FINRA team that investigated Avalon's Cross-Market Trading through Lek Securities and personally communicated with personnel from Lek Securities Corporation about the trading.

Mr. DeMaio has known and often referred to the conduct at issue in this case, which involves trading in stocks to affect the prices of options, as "mini-manipulation." Ex. 1, at 46:11-15 (trading in options "is what traditionally is called mini-manipulation").[1] This term dates back to a 1998 SEC Report on Options. Ex. 2; *see also* Ex. 1 at 203:2-4. Mr. DeMaio will testify that he and other FINRA officials regularly used the terms "mini-manipulation," "cross-market, cross-production manipulation," and "cross-product manipulation."[2] These phrases were used when speaking at conferences (*see* Ex. 3), in FINRA's annual Regulation and Examination Priorities Letters (Exs. 4 at PX44-8, 5 at PX45-10, and 6 at PX46-14), and in settlement actions with other firms involving similar conduct (Ex. 7).

Mr. DeMaio and his team also used the terms "mini-manipulation" and "cross-market cross-production manipulation" to refer to Avalon's trading throughout the FINRA investigation of, and ultimately in its action against, Lek Securities Corporation. These terms are used in relevant evidence in the record, including in trial exhibits marked by both parties. Exs. 8-10. For example, in August 2012, after FINRA was first alerted to Avalon's trading, FINRA reached out to Lek Securities concerning the "potential mini-manipulation trading" by Avalon and requested information concerning the "instances of potential manipulation." Exs. 11-12. The term "mini-manipulation" was also used in internal FINRA documents, which are expected to be

---

[1] Exhibits to the Declaration of Sarah S. Nilson, dated September 27, 2019, which is being simultaneously submitted in support of this opposition, are referred to as "Ex. __" throughout.

[2] Unlike the SEC, FINRA has not utilized the term Cross-Market Trading.

introduced as exhibits at trial. *See e.g.,* Ex. 10 (11/27/12 FINRA call notes concerning "what appears to be continued mini-manipulation activity by Lek customer Avalon"); Ex. 8 ("Mini-Manipulation Complaint Timeline" discussing FINRA actions taken in August 2012 concerning Avalon's trading). Ultimately, FINRA filed actions against Lek Securities and Samuel Lek for aiding and abetting the "Cross-Market Cross-Product Manipulation" conducted by Avalon. Ex. 13.

As a fact witness, Mr. DeMaio will provide background concerning the options markets, and will testify about his personal observations of Avalon's trading, FINRA's surveillance of the market for mini-manipulation activity, his involvement in the investigation of Avalon's trading through Lek Securities, and notice to the market that FINRA viewed the Cross-Market Trading as potentially manipulative.

## II. ARGUMENT

The Court should deny the Defendants' motion *in limine*, which seeks to prohibit Mr. DeMaio's highly relevant testimony and prevent the use of terms that are necessary to provide an accurate depiction of the events surrounding Avalon's trading.

### A. Mr. DeMaio Is A Fact Witness Testifying About His Personal Knowledge

Defendants argue that Mr. DeMaio's testimony should be excluded because he is not an expert, and thus should not be permitted to make legal conclusions. The SEC is not calling Mr. DeMaio as an expert witness, and he is not offering expert opinions.[3] Rather, he is testifying as a fact witness concerning his observations of the trading, FINRA's actions in response to the

---

[3] The Avalon Defendants erroneously compare Mr. DeMaio to the expert witnesses who were excluded in this case, such as Professor Ronald Filler. ECF No. 427. They are not comparable. Filler had no percipient knowledge of any trading activity or other facts in this case. Moreover, as this Court held, Filler improperly opined on what the law should be, and he failed to employ a reliable or adequate methodology to analyze any facts or data. ECF No. 350 (3/21/2019 order excluding Filler), at 9-12.

activity, and FINRA's views and communications with the market about the potentially manipulative nature of the strategy. Mr. DeMaio is not offering a "legal conclusion" about the Cross-Market Trading activity,[4] but will testify that—in his role as a FINRA official—he was familiar with the strategy. He will testify about the specific features of the trading that FINRA viewed as deceptive and harmful, and how the trading affected the market and other market participants.

The Defendants also seek to preclude Mr. DeMaio from "testifying about why the alleged Cross-Market Trading is manipulative." ECF No. 427, at 2. But it would be impossible for Mr. DeMaio to describe FINRA's actions, and when and why they took those actions, without explaining that FINRA viewed the conduct to be manipulative. While this view may be prejudicial to the Defendants, it is the truth, and it certainly is not "unfair." *See Costantino v. Herzog*, 203 F.3d 164, 174 (2d Cir. 2000) ("all evidence is prejudicial to one party or another," but exclusion is not justified unless the prejudice is unfair). Evidence is not unfair merely because it tends to prove liability. *See United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980) (to warrant exclusion, there must be "some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence."). Defendants have identified no adverse effect that might result from the introduction of the evidence.

If necessary, any potential prejudice could be cured through a limiting instruction cautioning the jury that they should not supplant the views of Mr. DeMaio for the views of their own. *Cf. United States v. Diaz*, 176 F.3d 52, 104 (2d Cir. 1999) (limiting instruction "often will

---

[4] Even if Mr. DeMaio were offering legal conclusions, such opinions are not automatically excluded. *See* Fed. R. Evid. 704. Rather, lay witnesses are permitted to testify concerning ultimate opinions where such testimony would be helpful to the jury. *Id.* Here, the views of Mr. DeMaio about why—based on his years of experience in the options industry—he viewed the trading as manipulative would be helpful to the jury in understanding how to evaluate the conduct.

suffice to cure any risk of prejudice," even "when the risk of prejudice is high" (internal quotation marks omitted)).

### B. The Record Should Not Be Altered to Remove Commonly-Used Terms

Precluding the terms "mini-manipulation," "cross-market manipulation," and "cross-market cross-product" manipulation would require a significant editing of contemporaneous documents and the facts of this case. The term "mini-manipulation" was used by regulators as early as 1998 to provide notice to the market of the manipulative nature of the trading at issue. These terms were regularly used in communications with Lek Securities about Avalon's trading, many of which have been marked as exhibits and will be at issue at the trial. Precluding the use of these terms would require significant redaction of relevant documents and alteration of testimony that would alter the nature of true events.

For example, FINRA's initial communications with Lek Securities about Avalon's trading refer to the trading as "potential mini-manipulation." Ex. 9, 11, and 12. Redacting this phrase would distort the nature of the communications, making them appear as generic requests for trade data seemingly unrelated to the Cross-Market Trading.[5] Moreover, the very use of the term "potential mini-manipulation" in these documents, as well as in FINRA's priority letters, was a critical way in which FINRA conveyed its view that the trading was potentially manipulative to Lek Securities and other market participants.

The terms are also essential to Mr. DeMaio's testimony of his personal involvement in this case: he used these terms in speaking at conferences (Ex. 3), in communications with Lek

---

[5] Numerous documents marked as trial exhibits contain the terms "mini-manipulation" or "cross-market cross-product manipulation," including communications between FINRA and Lek Securities, internal FINRA communications about Avalon's trading, and communications in which FINRA gave notice to the market about the manipulative nature of the strategy. These include SEC Trial Exhibits 262-265, 267, 275 and 284 and Defense Trial Exhibits 526 and 551. The record contains numerous other exhibits that refer to the Cross-Market Trading as "potentially manipulative activity."

Securities about the trading (Exs. 9, 11, and 12), in FINRA priority letters (Exs. 4-6), and in describing his understanding of the trading (*see* Ex. 1, at 46:11-15 and 203:2-6).  These terms are also relevant to the Defendants knowledge and state of mind, as communications using these terms put the market on notice that the strategy was manipulative.  Limiting Mr. DeMaio's testimony or restricting the use of terms that he used in real-time would result in a censored and unreal version of the events surrounding this case.  *See A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, No. 97 Civ. 4978(LMM), 2002 WL 31655287 (S.D.N.Y. Nov. 21, 2002) (permitting witness to use the term "'rat trading' since that is how he himself refers to such activities.").  It would hamstring Mr. DeMaio and prevent him from providing a complete and accurate picture of the events at issue.

Nor is the use of these terms an "evidentiary shortcut" as the Defendants suggest.  ECF No. 427 at 2.  Using the term "mini-manipulation" to refer to a trading strategy does not automatically lead one to conclude that Avalon's trading was manipulative.  The jury will be free to make their own determination of whether Avalon's trading matched the pattern of mini-manipulation described, whether mini-manipulation trading is indeed manipulative, and whether Avalon should be liable for the trading.  Any risk that the jury would conclude that the Cross-Market Trading is manipulative simply because it was referred to as "mini-manipulation" or "cross-market cross-product strategy" at the time it was detected could be eliminated through an instruction to the jury that they should not automatically conclude that a trading strategy is manipulative based on its name.

### C. Defendants Cannot Preclude Evidence of Manipulation

The Defendants' attempt to preclude Mr. DeMaio's testimony and the use of these terms is merely an attempt to exclude evidence of the manipulative nature of Avalon's trading.  But this is a case about manipulation, and the Defendants should not be permitted to censor evidence

7

of manipulation from the trial. Just as the Defendants have every right to argue that they did not engage in manipulation, the SEC has every right to advocate its view that the Defendants did engage in manipulation. *See U.S. v. Gasperini*, 16-CR-441 (NGG), 2017 WL 3140366, *7 (E.D.N.Y. July 21, 2017) (denying defendant's request to exclude the terms "victim" and "victimized" and noting that "[t]he Government is within its rights to take and advocate for a different view of the evidence."). This is particularly so here, where the terms are central to an understanding of the facts of the case.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion *in limine* should be denied.

Dated:  September 27, 2019                                    Respectfully submitted,


                                                              /s/  Sarah S. Nilson
                                                              David J. Gottesman
                                                              Olivia S. Choe
                                                              Sarah S. Nilson
                                                              U.S. Securities and Exchange Commission
                                                              100 F Street N.E.
                                                              Washington, D.C. 20549
                                                              Tel.: (202) 551-6109 (Nilson)
                                                              Fax: (202) 772-9292
                                                              Email:  NilsonS@sec.gov

                                                              *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

      I hereby certify that the foregoing document was filed via CM/ECF and thereby served on all counsel of record.


Dated:  September 27, 2019    /s/  Sarah S. Nilson
                                                                    Sarah S. Nilson