UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>LEK SECURITIES CORPORATION, et al,<br><br>Defendants. | CASE NO. 17-CV-1789 (DLC) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS PUSTELNIK, FAYYER AND AVALON'S MOTION *IN LIMINE* TO PRECLUDE THE SEC FROM INTRODUCING EVIDENCE CONCERNING TRADING <u>CONDUCTED THROUGH LIME BROKERAGE</u>**

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this opposition to the Motion *in Limine* filed by defendants Avalon FA Ltd ("Avalon"), Nathan Fayyer ("Fayyer"), and Sergey Pustelnik ("Pustelnik") (collectively, "Defendants") seeking to preclude the SEC from introducing evidence of trading through Lime Brokerage ("Lime").  ECF Nos. 430-431.  The evidence at issue involves Cross-Market Trading in which the Defendants—in particular Pustelnik—played central roles.  The evidence is highly probative of the Defendants' involvement in the Cross-Market Trading and the steps they took to carry out and facilitate the trading.  The Defendants identify no unfair prejudice that would result from the introduction of this evidence.  Nor does the evidence risk confusing the jury.  On the contrary, the straightforward evidence will show that when the Avalon traders executing the strategy grew dissatisfied with Lek Securities Corporation ("Lek Securities"), Pustelnik—using an entity owned by Fayyer—moved the Cross-Market Trading to another firm, Coastal Management

1

("Coastal"), where the traders conducted the trading through Coastal's account at Lime. The evidence will further show that once the traders began trading through Lime, personnel from the Financial Industry Regulatory Authority ("FINRA") contacted Lime and advised Lime officials of the potentially manipulative nature of the trading. Lime proceeded to shut off the trading, but Pustelnik, undeterred, brought the trading back to Lek Securities. This evidence is directly relevant to the Defendants' involvement in, and liability for, the Cross-Market Trading. The Motion should be denied.

## I. THE DEFENDANTS' INVOLVEMENT IN TRADING THROUGH LIME

Avalon began executing the Cross-Market Trading through Lek Securities in 2012.[1] *See* Ex. 1, at 222.[2] In March 2013, after Lek Securities was slow to implement technological advances requested by Pustelnik and Avalon, Pustelnik orchestrated the strategy's move to an account at Lime, a broker-dealer with superior technology. *See* Exs. 2-4; *see also* Ex. 1, at 283:12-14 and Ex. 5, at 475:13-17. The trading through Lime was executed through an account held by Coastal, a firm owned by a long-time associates of Pustelnik. Ex. 5, at 477:12-17.

Specifically, Defendant Pustelnik introduced Avalon's traders to Coastal (Ex. 5, at 475:13-17, 476:6-13) and acted as a liaison between the traders and Coastal, working closely with Coastal employees concerning the technical specifications needed for the strategy, as well as operational issues such as the amount of buying power to be provided for the strategy. *See* Exs. 6-12. It was no secret to Mr. Pustelnik that the Cross-Market Trading that he discussed in detail with Coastal was being executed through Coastal's account at Lime. *See* Exs. 2, 3, 10, 13; *see also* Ex. 14, at 152:15-20 and 161:4-17.

---

[1] In this opposition, the Cross-Market Manipulation, which involves trading in stocks to affect the prices of options, is referred to as Cross-Market Trading.

[2] Exhibits to the Declaration of Sarah S. Nilson, dated September 27, 2019, which is being simultaneously submitted in support of this opposition, are referred to as "Ex. __" throughout.

The traders executing the Cross-Market Trading through Coastal did so through Blaise Greys, another entity owned by Defendant Fayyer. Ex. 5, at 501:7-14; ECF No. 65, at ¶ 21.[3] The SEC's evidence shows that both Fayyer and Pustelnik were involved in the Coastal-Blaise Greys relationship: the Contact Information sheet for Blaise Greys provided to Coastal lists Fayyer as one of Blaise Greys' members and provides the phone numbers of both Pustelnik and Fayyer. Ex. 15; Ex. 5, at 501:21-23; Ex. 16, at 33:19-24.

Fayyer is the owner of a Blaise Greys' bank account held at the Turks and Caicos Banking Company ("Blaise Greys Turks and Caicos Account"), where Defendant Avalon also had a bank account. Ex. 17. The Blaise Greys Turks and Caicos Account was included on a list of bank accounts and other "assets" within Avalon's internal records, which were kept on an Avalon computer server that was maintained at Pustelnik's residence ("Avalon Server"). Ex. 18.[4] During the period when the Cross-Market Trading was executed through Coastal's account at Lime, Coastal transferred over $500,000 into the Blaise Greys Turks and Caicos Account controlled by Fayyer. Exs. 19, 20. Avalon tracked these proceeds on the internal "MoneyLedger" maintained on the Avalon Server. Ex. 21.

Shortly after the traders started executing the Cross-Market Trading through Coastal's account at Lime, FINRA contacted Lime and advised the firm that the trading was potentially manipulative. Ex. 22, at 258:16-259:2; Ex. 24. Lime thereafter terminated the trading, and subsequently entered into a settlement with FINRA concerning the activity. Ex. 22, at 259:13-16, 263:12-25; Ex. 23. The trading then moved back to Lek Securities. *See* Ex. 14, at 161:4-17.

---

[3] The Defendants complain that the trading through Lime was conducted "by some other entity not identified by the SEC – but definitely not Avalon." ECF No. 431, at 1. The Defendants are fully aware of the identity of this entity; it was an entity owned by Fayyer himself.

[4] This same document also noted that a "Blaise Greys" account "held at" "Coastal" would be used to "Msk trade Activ w Zhabo [sic]." *Id.*; *see also* Ex. 1, at 285:3-6 (noting Szabo is a principal of Coastal).

## II. THE TRADING THROUGH LIME IS DIRECTLY RELEVANT TO THE CLAIMS AT ISSUE IN THIS CASE

The Defendants complain that "there is no allegation, much less evidence, that any of the remaining Defendant's [sic] participated in, knew of, or most importantly profited from any of the trading performed by the unidentified entity through Lime Brokerage." ECF No. 431, at 2. But as set forth above, the SEC's evidence shows that both Defendants Pustelnik and Fayyer were intimately involved in the efforts to move the Cross-Market Trading to Coastal's account at Lime, and that profits from the trading were deposited into an account held by a Fayyer-owned entity, and tracked in Avalon's internal records.[5]

The Defendants also contend that the conduct is irrelevant. ECF No. 431, at 2-3. Evidence is relevant under Fed. R. Evid. 401 if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."

Here, the Defendants' involvement in the Cross-Trading Trading through Coastal/Lime—in particular Pustelnik's personal involvement in moving the strategy from Lek Securities to Coastal, his knowledge of the details and technical specifications about the trading, and any awareness that FINRA viewed this specific trading through Lime as manipulative—are highly probative of his state of mind and intent, and thus have direct relevance to his liability for the manipulative trading. Avalon and Fayyer's receipt of proceeds from the trading are also relevant to motive. These are all pieces of evidence that have a tendency to make it more probable that the Defendants were directly involved in the Cross-Market Trading, that they understood the

---

[5] The SEC's Complaint alleges Pustelnik's involvement in these actions in detail. ECF No. 1, at ¶¶ 9, 110-116

4

trading, and that they understood it to be wrongful.

The Defendants also argue that evidence concerning the trading through Lime will "confuse the jury and is highly prejudicial to the Defendants." ECF No. 431, at 3. But they neglect to identify any confusion or prejudice that might result, and it is difficult to conceive of any beyond the fact that the evidence tends to prove the Defendants' liability for the trading. "Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be *unfair*." *Costantino v. Herzog*, 203 F.3d 164, 174 (2d Cir. 2000) (emphasis in original, citations omitted). The Defendants identify no "adverse effect" (beyond tending to show liability) that might make the introduction of the trading through Lime unfair. *See id.* at 174-175 (noting that evidence is unfair only if it involves "some adverse effect beyond tending to prove a fact or issue that justifies admission."). To the contrary, the evidence is highly probative of the Defendants' state of mind and motive, and even if some prejudice could be shown, it certainly does not "substantially outweigh[]" its probative value. Fed. R. Evid. 403.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion *in limine* should be denied.

Dated: September 27, 2019                                 Respectfully submitted,

/s/ Sarah S. Nilson
David J. Gottesman
Olivia S. Choe
Sarah S. Nilson
U.S. Securities and Exchange Commission
100 F Street N.E.
Washington, D.C. 20549
Tel.: (202) 551-6109 (Nilson)
Fax: (202) 772-9292
Email: NilsonS@sec.gov

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing document was filed via CM/ECF and thereby served on all counsel of record.

Dated: September 27, 2019                           /s/ Sarah S. Nilson
                                                                          Sarah S. Nilson