## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

                             **Plaintiff,**

           **v.**

LEK SECURITIES CORPORATION,
et al,

                        **Defendants.**

17-CV-1789 (DLC)

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/1/2019
```

### CONSENT OF DEFENDANT LEK SECURITIES CORPORATION

1.    Defendant Lek Securities Corporation ("Defendant" or "Lek Securities") acknowledges having been served with the Complaint filed by the Securities and Exchange Commission ("SEC" or "Commission") in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.    Defendant Lek Securities hereby admits the facts contained in paragraph 5 below and consents to the entry of the final Judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

        (a)    permanently restrains and enjoins Defendant from violations of Section 17(a) of the Securities Act of 1933 [15 U.S.C. §77q(a)] and Sections 9(a)(2) [15 U.S.C. § 78i(a)(2)] and 10(b) [15 U.S.C. §78j(b)] of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

        (b)    restrains and enjoins Defendant, for a period three (3) years, from having

foreign customers that engage in intra-day trading pursuant to the
definitions and terms detailed in Appendix A (the "Foreign Intra-Day
Trading Injunction Provisions");

(c)     orders Defendant to pay disgorgement in the amount of $419,623, plus

prejudgment interest thereon in the amount of $106,269; and

(d)     orders Defendant to pay a civil penalty in the amount of $1,000,000 under

Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

3.      Defendant undertakes to:

(a)     retain an independent compliance monitor for a period of at least three (3)

years to perform a comprehensive and ongoing review of Lek Securities

pursuant to the terms and concerning the areas and subjects set forth in

Appendix B (the "Independent Compliance Monitor Provisions"); and

(b)     certify, in writing, compliance with the undertakings set forth above. The

certification shall identify the undertaking, provide written evidence of

compliance in the form of a narrative, and be supported by exhibits

sufficient to demonstrate compliance. The Commission staff may make

reasonable requests for further evidence of compliance, and Defendant

agrees to provide such evidence. Defendant shall submit the certification

and supporting material to Melissa Hodgman, with a copy to the Office of

Chief Counsel of the Enforcement Division, no later than sixty (60) days

from the date of the completion of the undertakings.

4.      Defendant agrees that it shall not seek or accept, directly or indirectly,

reimbursement or indemnification from any source, including but not limited to payment made

2

pursuant to any insurance policy, with regard to any civil penalty amounts that Defendant pays pursuant to the Final Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors. Defendant further agrees that it shall not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, or local tax for any penalty amounts that Defendant pays pursuant to the Final Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors.

5.     Defendant Lek Securities admits that Avalon FA Ltd's trading activity through Lek Securities as alleged in the Complaint occurred and constituted violations of the federal securities laws.

6.     Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

7.     Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

8.     Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

9.     Defendant agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

10.     Defendant will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

11.     Defendant waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions.  Defendant further agrees to provide counsel for the Commission, within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Final Judgment.

12.     Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims asserted against Defendant Lek Securities in this civil proceeding.  Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability.  Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein.  Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations.  Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding.  In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that it shall not be permitted to contest the factual allegations of the Complaint in this action.

13.     Defendant understands and agrees to comply with the terms of 17 C.F.R. § 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant

4

or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings." As part of Defendant's agreement to comply with the terms of Section 202.5(e), Defendant: (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; (ii) will not make or permit to be made any public statement to the effect that Defendant does not admit the allegations of the complaint, or that this Consent contains no admission of the allegations; and (iii) upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint. If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

14.      Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

15.      In connection with the ongoing litigation of this case, Lek Securities agrees to cooperate with the SEC fully and truthfully in the ongoing litigation of this matter, regardless of the time period in which the cooperation is required, including but not limited to: (i) providing

or authenticating documents as requested by the SEC; (ii) providing the SEC with information in Defendant's possession that is reasonably related to the litigation; and (iii) using best efforts to secure the full, truthful, and continuing cooperation of current and former directors, officers, employees and agents of Lek Securities, including making these persons available, when requested to do so by the SEC, for depositions, trial and other judicial proceedings in connection with the litigation. Defendant agrees not to require a subpoena for its officers, employees and agents, but if the SEC chooses to issue a subpoena, the Defendant agrees that its counsel of record in this litigation will accept service of such subpoenas.

16. Defendant agrees to waive all objections, including but not limited to, constitutional, timeliness, and procedural objections, to the administrative proceeding that will be instituted when the judgment is entered.

17. Defendant agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

18. Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Final Judgment.

Dated: _September 23, 2019_

_____
Samuel Lek, on behalf of
Lek Securities Corporation

So ordered.

_Denise Cote_
10/1/19

On *SEPTEMBER 23*, 2019, Samuel Lek, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent with full authority to do so on behalf of Lek Securities Corporation as its Chief Executive Officer and Sole Director.

_____
Notary Public
Commission expires: 02.04.2023

RAFAEL GARCIA
STATE OF NEW YORK
NOTARY PUBLIC
Qualified in New York County
01GA6386866
MY COMMISSION EXPIRES 02/04/2023

Approved as to form:

_____
Kevin J. Harnisch
Norton Rose Fulbright US LLP
799 9th Street NW, Suite 1000
Washington DC 20001
Attorney for Defendant

7

# APPENDIX A

## FOREIGN INTRA-DAY TRADING INJUNCTION PROVISIONS

I.   **Definitions applicable to Foreign Intra-Day Trading Injunction.**

    A.   ***"Affiliates of Lek Securities."*** The term "Affiliates of Lek Securities" includes Lek Securities U.K. Limited ("Lek UK"), Lek Holdings Limited ("Lek Holdings"), and any parent, subsidiary, predecessor, successor, entity owned or controlled by, or under common control with, Lek Securities, Lek UK, or Lek Holdings.

    B.   ***"Customer."*** The term "Customer" shall mean any individual or entity holding an account at or trading through Lek Securities.

    C.   ***"Foreign Customer."*** The term "Foreign Customer" shall mean any Customer who is not a citizen, national, or resident of the United States or its territories, or is not incorporated or domiciled in the United States or its territories. Any Foreign Customers of Affiliates of Lek Securities shall be treated as Foreign Customers of Lek Securities.

    D.   ***"Intra-Day Trading."*** The term "Intra-Day Trading" shall mean executing, through an account at Lek Securities, more than five buy and more than five sell orders in the same security (equity or option), within a single day.

II.  **Foreign Intra-Day Trading Injunction.**

    A.   Lek Securities is enjoined for a period of three (3) years from the date of entry of the Final Judgment, from having Foreign Customers that engage in Intra-Day Trading. This shall be referred to as the "Foreign Intra-Day Trading Injunction."

    B.   The Foreign Intra-Day Trading Injunction does not apply where Lek Securities engages in the following limited non-executing prime brokerage functions:  (1) post-execution clearing services; (2) settlement of securities; (3) custody services, including

providing technical services necessary to the provision of such custody services; and (4) pre-execution credit checks conducted in connection with sections II.B(1)-(3).

C.   ***Exceptions to the Foreign Intra-Day Trading Injunction.***

<u>Trading Exceptions</u>.  Subject to the Time-Out Period described in section II.D. below, the Foreign Intra-Day Trading Injunction shall not apply to the following types of trading by Foreign Customers:

(1)      instances where the Monitor determines that the Intra-Day Trading was solely to unwind specific positions in a single day due to news events, unique changes in market conditions, or to correct a bona-fide error; provided, however, that if Lek Securities or the customer does not or cannot provide the Monitor with requested information to determine if the trading falls under this exception, then this exception shall not apply;

(2)      instances where the Monitor determines that the Intra-Day Trading was related to hedging that is not part of a manipulative or illegal strategy; provided, however, that if Lek Securities or the customer does not or cannot provide the Monitor with requested information to determine if the trading falls under this exception, then this exception shall not apply;

(3)      instances where the Monitor determines that the Intra-Day Trading was related to stop loss orders that are not part of a manipulative or illegal strategy; provided, however, that if Lek Securities or the customer does not or cannot provide the Monitor with requested information to determine if the trading falls under this exception, then this exception shall not apply;

<u>Foreign Customer Exceptions</u>. The Foreign Intra-Day Trading Injunction shall not apply to Foreign Customers in the following categories:

(4)    institutional Customers with assets under management in excess of $50 million; or

(5)    pension funds, broker-dealers subject to comprehensive regulation in their local jurisdiction, licensed banks, and entities that meet the definition of foreign financial institutions under 26 U.S.C. §§ 1471(d)(4) and (d)(5) and that are subject to comprehensive regulation in their local jurisdiction by a regulatory body applicable to that type of entity.

D.    *Applicability of Exceptions.*

(1)    **Existing Foreign Customers.** From the date of entry of the Final Judgment until the later of (i) one-hundred twenty (120) days, or (ii) three (3) days after the Monitor's first report ("Time Out Period"), the Exceptions to the Foreign Intra-Day Trading Injunction set forth in section II.C(2)-(5) above shall be available only to existing Foreign Customers of Lek Securities. Attachment 1 hereto [filed under seal] is a list of existing Foreign Customers of Lek Securities.

(2)    **New Foreign Customers.** At the end of the Time Out Period, subject to review and approval by the Monitor, Lek Securities may begin excepting new Foreign Customers from the Foreign Intra-Day Trading Injunction pursuant to section II.C(2)-(5).

III.    **Requirement to Terminate Certain Foreign Customers.**

A.    Foreign Customers of Lek Securities may be deemed Significant Compliance Risks and must be terminated as following:

3

(1)     **Significant Compliance Risk Designation.** Lek Securities shall designate a Foreign Customer as a "Significant Compliance Risk" if:

    (a)     A Foreign Customer that does not fall within the exceptions in section II.C(4)-(5) engages in Intra-Day Trading twice in a 30-day period; or

    (b)     A Foreign Customer, regardless of whether subject to any exception set forth in section II.C., engages in potential manipulative trading or other market manipulation that is flagged by the Monitor, the SEC, Financial Industry Regulatory Authority, or another Self-Regulatory Organization ("SRO").

(2)     **Significant Compliance Risk Review.** Lek Securities must cause the Monitor to conduct a review of a Foreign Customer that has been deemed a Significant Compliance Risk within 30 days of the Foreign Customer being so designated, as set forth in section X of Appendix B ("Significant Compliance Risk Review").

(3)     **Account Suspension.** Lek Securities must suspend all trading by the Foreign Customer that is deemed a Significant Compliance Risk during the Significant Compliance Risk Review if the Monitor so recommends, as set forth in section X of Appendix B.

(4)     **Termination.**

    (a)     Lek Securities must terminate a Foreign Customer that is deemed a Significant Compliance Risk if, after the Significant Compliance Risk

Review, the Monitor determines that the Foreign Customer should be terminated, as set forth in section X of Appendix B.

(b)      If Lek Securities or the Foreign Customer cannot or does not provide information requested by the Monitor to conduct the Significant Compliance Risk Review as set forth in section X of Appendix B, Lek Securities must terminate that Foreign Customer.

# APPENDIX B

## INDEPENDENT COMPLIANCE MONITOR PROVISIONS

I.   **Definitions Applicable to Independent Compliance Monitor Provisions.** The definitions in Appendix A (Foreign Intra-Day Trading Injunction Provisions) shall apply herein.

II.  **Retention and Tasks.** No later than thirty (30) days after entry of the Final Judgment, Lek Securities shall retain an independent compliance monitor ("Monitor") not unacceptable to SEC staff to perform a comprehensive and ongoing review of Lek Securities concerning the areas and subjects set forth below, and to carry out the tasks set forth herein. Lek Securities may apply to SEC staff for an extension of that deadline before it arrives, and upon a showing of good cause by Lek Securities, SEC staff in its sole and reasonable discretion may grant such extension for whatever period of time it deems appropriate.

III. **Term and Payment of Monitor.** Lek Securities shall retain the monitor for a period of three (3) years from the date of retention, provided, however, that if Lek Securities fails to implement the Monitor's recommendations and obtain the Monitor's certification of such implementation within that period, Lek Securities shall retain the Monitor until Lek Securities complies with all recommendations and the Monitor certifies that such recommendations have been implemented. Lek Securities shall be solely responsible for payment of the Monitor's fees and expenses.

IV.  **Independence of Monitor.** Lek Securities shall require the Monitor to enter into an agreement that provides that for the period of engagement and for a period of two (2) years from completion of the engagement, the Monitor shall not enter into any employment, consultant, attorney-client, auditing or other professional relationship with Lek Securities or any of its present or former affiliates, directors, officers, employees, or agents acting in those

1

capacities. The agreement will also provide that the Monitor will require that any firm with which he/she is affiliated or of which he/she is a member, and any person engaged to assist the Monitor in performance of his/her duties under this Order shall not, without prior written consent of SEC staff, enter into any employment, consultant, attorney-client, auditing or other professional relationship with Lek Securities, or any of its present or former affiliates, directors, officers, employees, or agents acting in those capacities for the period of the engagement and for a period of two years after the engagement.

V.      **Confirmation.**  Within three (3) business days after retaining the Monitor pursuant to section II above, Lek Securities must provide to SEC staff a copy of the engagement letter detailing the Monitor's responsibilities.

VI.     **Cooperation.**   Lek Securities shall cooperate fully with the Monitor, including providing the Monitor with access to its files, books, records, and personnel (and the files, books, records, and personnel of Affiliates of Lek Securities), as reasonably requested for the tasks set forth herein, and Lek Securities shall obtain the cooperation of its employees or other persons under its supervision or control.

VII.    **Account Information to Provide to Monitor.**  In order to facilitate the Monitor's reviews and assessments that are to be performed hereunder, and in addition to any information required by section VIII.B. below, Lek Securities shall provide the Monitor with the following information and documents, within such time as the Monitor reasonably requires and on an ongoing basis if and as required by the Monitor:

    A.  The identity and full legal name of every Customer, including the account holder and every person authorized by Lek Securities to trade in the account.

B. For each individual identified in subparagraph (A) above, a statement of whether the person is a citizen, national, or resident of the United States or its territories, and if so, identification of the location from which the individual does business, and a copy of the driver's license or U.S. passport of such individual.

C. If the individual identified in subparagraph (A) above is not a citizen, national, or resident of the United States or its territories, a statement of the nationality, the location from which the individual does business, and a copy of government-issued identification.

D. For each entity identified in subparagraph (A) above, identification of the names of the entity's principals, and a statement of whether it is incorporated or domiciled in the United States or its territories, and if so, the state in which it is incorporated, and the state in which it has its principal place of business.

E. If the entity identified in subparagraph (A) above is not incorporated or domiciled in the United States or its territories, identification of the country in which it is incorporated, and the country in which it has its principal place of business.

F. Such other information as the Monitor requests.

**VIII.** **Monitor's Review, Assessment and Recommendations of Lek Securities' Compliance With Foreign Intra-Day Trading Injunction.**

A. Lek Securities shall require the Monitor to review and assess on an ongoing basis whether Lek Securities is complying with the Foreign Intra-Day Trading Injunction as set forth in Appendix A. This shall include but not be limited to requiring the Monitor to: (i) review and assess all Intra-Day Trading by Foreign Customers who are not excepted from such injunction under sections II.C(4)-(5) and II.D of Appendix A; (ii) review and assess the sufficiency and reasonableness of Lek

3

Securities' systems, policies, and procedures related to Intra-Day Trading by Foreign

Customers; (iii) review and assess Lek Securities' compliance with the Foreign

Intra-Day Trading Injunction; and (iv) conduct reviews and make recommendations

pursuant to the Significant Compliance Risk provisions below.

B. In order to facilitate the Monitor's review required by this section and the Significant

Compliance Risk provisions below, Lek Securities shall provide the Monitor with

the following information for all Intra-Day Trading by Foreign Customers who are

not excepted from such injunction under sections II.C(4)-(5) and II.D of Appendix

A:

(1)     The date and time, security, quantity, price, and other details requested by

the Monitor concerning orders placed and trades executed;

(2)     For orders and trades identified under subparagraph (1) above, the identity

and location of the Customer, sub-account, or trader who entered each order and

trade; and

(3)     Such other information as the Monitor requests, including but not limited to

the information described in section VII above.

C. Lek Securities shall make the information required by this section VIII available to

the Monitor beginning no later than thirty (30) days after the date of entry of the

Final Judgment, and then every thirty (30) days thereafter, or at such other intervals

as the Monitor may require.

D. Lek Securities shall require the Monitor to perform and complete the review,

assessment and making of recommendations required by this section within one

hundred twenty (120) days of the date of the Monitor's appointment, and again by

the end of each one hundred twenty (120) day period thereafter, for so long as the Monitor is engaged.

E. Lek Securities shall require the Monitor to submit a report to Lek Securities and SEC staff on the review, assessment and recommendations required by this section within one hundred twenty (120) days of the date of the Monitor's appointment, and again by the end of each one hundred twenty (120) day period thereafter, for so long as the Monitor is engaged. The report shall include information concerning review and recommendations regarding Intra-Day Trading by Foreign Customers.

IX. **Monitor's Review, Assessment and Recommendations Regarding Manipulative Trading and Market Manipulation.**

A. Lek Securities shall require the Monitor to review and assess the sufficiency and reasonableness of Lek Securities' controls and procedures for preventing manipulative trading and other market manipulation (not limited to Foreign Customers), and to recommend actions, if any, to be taken by Lek Securities to make its controls and procedures more effective at detecting and preventing manipulative trading and other market manipulation.

B. Lek Securities shall require the Monitor to conduct reviews and make recommendations regarding Foreign Customers engaged in potential manipulative trading or other market manipulation pursuant to the Significant Compliance Risk provisions set forth below in section X.

C. Lek Securities shall require the Monitor to perform and complete this review, assessment and making of recommendations within one hundred twenty (120) days of the date of the Monitor's appointment, and again by the end of each one hundred twenty (120) day period thereafter, for so long as the Monitor is engaged.

    D.   Lek Securities shall require the Monitor to submit a report to Lek Securities and SEC staff on the review, assessment, and recommendations required by this section within one hundred twenty (120) days of the date of the Monitor's appointment, and again by the end of each one hundred twenty (120) day period thereafter, for so long as the Monitor is engaged.  The report shall include information concerning the Monitor's review and recommendations regarding manipulative trading and other market manipulation.

## X.  Monitor's Review and Recommendations Concerning Significant Compliance Risks and Termination.

    A.   Lek Securities shall require the Monitor to review, assess, and make recommendations on an ongoing basis concerning Lek Securities' compliance with the Requirement to Terminate Certain Foreign Customers provisions in section III of Appendix A.  This shall include but not be limited to requiring the Monitor to: (i) review and assess the sufficiency and reasonableness of Lek Securities' systems, policies, and procedures for identifying Foreign Customers as Significant Compliance Risks; (ii) review and assess Lek Securities' compliance with the Requirement to Terminate Certain Foreign Customer provisions in section III of Appendix A; and (iv) conduct reviews and make recommendations where a Foreign Customer has been designated a Significant Compliance Risk.

    B.   Where a Foreign Customer has been designated a Significant Compliance Risk, Lek Securities shall require the Monitor to undertake reviews and recommendations as follows:

    (1)   Conduct a review within thirty (30) days of the Foreign Customer being designated a Significant Compliance Risk ("Significant Compliance Risk Review")

to determine whether the Foreign Customer has engaged in Intra-Day Trading not subject to the exceptions set forth in sections II.C and D. of Appendix A, or has engaged in manipulative trading or other market manipulation;

(2)     Recommend whether Lek Securities should suspend all trading by the Foreign Customer during the period of the Significant Compliance Risk Review;

(3)     Determine whether Lek Securities and the Foreign Customer have provided all information requested to conduct the Significant Compliance Risk Review;

(4)     Determine whether the Foreign Customer has engaged in Intra-Day Trading not subject to the exceptions set forth in sections II.C and D. of Appendix A, or has engaged in manipulative trading or other market manipulation; and

(5)     Make a recommendation regarding termination of the Foreign Customer based upon the Monitor's determinations under sections X.B(3) and (4) and the Requirement to Terminate Certain Foreign Customer provisions under section III of Appendix A.

C. Lek Securities shall require the Monitor to perform this review, assessment, and making of recommendations on an ongoing basis for so long as the Monitor is engaged.

D. Lek Securities shall require the Monitor to submit a report to Lek Securities and SEC staff on the review and recommendations required by this section within one hundred twenty (120) days of the date of the Monitor's appointment, and again by the end of each one hundred twenty (120) day period thereafter, for so long as the Monitor is engaged.  The report shall include information concerning the Monitor's

review and recommendations regarding any Foreign Customers designated as Significant Compliance Risks.

XI. **Monitor's Review and Assessment of Whether Sam Lek Has Any Interest or Role in Lek Securities.**

A. Lek Securities shall require that the Monitor review and assess Lek Securities' corporate governance structure, ownership, and management, so as to determine whether Sam Lek has any legal or beneficial interest or role in Lek Securities.

B. Lek Securities shall require the Monitor to perform and complete this review and assessment within one hundred twenty (120) days of the date of the Monitor's appointment, and again by the end of each one hundred twenty (120) day period thereafter, for so long as the Monitor is engaged.

C. Lek Securities shall require the Monitor to submit a report to Lek Securities and SEC staff on the review, assessment, and recommendations required by this section within one hundred twenty (120) days of the date of the Monitor's appointment, and again by the end of each one hundred twenty (120) day period thereafter, for so long as the Monitor is engaged.

XII. **Implementation of Recommendations.**

A. Except as set forth in section XII.B-G below, Lek Securities shall have ninety (90) days from the date of receiving any recommendations from the Monitor to adopt and implement such recommendations. Lek Securities shall notify the Monitor and SEC staff in writing when each such recommendation has been implemented.

B. Any recommendations that the Monitor makes regarding suspending all trading by the Foreign Customer during a period of Significant Compliance Risk Review must be implemented within one (1) business day of the Monitor's recommendation.

C.  Any recommendations that the Monitor makes regarding termination of a Foreign

Customer must be implemented within two (2) business days of the Monitor's

recommendation.

D.  If Lek Securities considers any recommendation unduly burdensome, impractical,

or costly, or inconsistent with applicable law or regulation, Lek Securities need

not adopt that recommendation at that time, but may submit in writing to the

Monitor and SEC staff within fifteen (15) days of receiving the recommendation,

an alternative policy, procedure, or system designed to achieve the same objective

or purpose.  This provision shall not apply, however, to recommendations that the

Monitor makes regarding (i) suspending all trading by the Foreign Customer

during a period of Significant Compliance Risk Review, or (ii) termination of a

Foreign Customer.

E.  If Lek Securities considers any recommendation relating to (i) suspending all

trading by the Foreign Customer during a period of Significant Compliance Risk

Review, or (ii) termination of a Foreign Customer, to be unduly burdensome,

impractical, or costly, or inconsistent with applicable law or regulation, Lek

Securities shall adopt the recommendation at that time, but may submit in writing

to the Monitor within fifteen (15) days of receiving the recommendation, an

alternative policy, procedure, or system designed to achieve the same objective or

purpose.

F.  In the event that Lek Securities and the Monitor are unable to agree on an

acceptable alternative proposal under sections XII.D-E above, Lek Securities shall

promptly consult with SEC staff. Any disputes between Lek Securities and the

9

Monitor with respect to any recommendation shall be decided by SEC staff in its sole discretion. Pending such determination, Lek Securities shall not be required to implement any contested recommendation(s), except as set forth above recommendations regarding (i) suspending all trading by the Foreign Customer during a period of Significant Compliance Risk Review, or (ii) termination of a Foreign Customer.

G.  With respect to any recommendation that the Monitor determines cannot reasonably be implemented within ninety (90) days after receiving it, the Monitor may extend the time period for implementation, so long as SEC staff does not object.

XIII.   **Providing Information to the SEC.**  For the period of the Monitor's engagement, Lek Securities shall provide SEC staff with any information reasonably requested by the SEC pertaining to the subject matter of this Judgment.  Lek Securities shall require that the Monitor provide the SEC with any information that SEC staff requests regarding such matters, including but not limited to the Monitor's review, assessments, recommendations, and any communications and interactions between the Monitor and Lek Securities.

XIV.   **Requirements Hereunder Do Not Supplant Other Legal Requirements.**  The prohibitions and obligations set forth herein do not supplant any obligations that Lek Securities has under the law or under the rules of any self-regulatory organization or exchange of which Lek Securities is a member.   No determinations by the Monitor, and no provisions herein, shall preclude the SEC, any other law enforcement agency or authority, or any self-regulatory organization from bringing actions against the Lek Defendants.

XV.     **Certification by Lek Securities.**  Within thirty (30) days after the date of implementation of any recommendation herein, Lek Securities shall certify to the Monitor and SEC staff, in writing, compliance with the undertakings set forth above.  The certification shall identify the undertakings, provide written evidence of compliance in the form of a narrative, and be supported by exhibits sufficient to demonstrate compliance.  SEC staff may make reasonable requests for further evidence of compliance, and Lek Securities agrees to provide such evidence.