## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br>                              **Plaintiff,**<br><br>                    **v.**<br><br>**LEK SECURITIES CORPORATION,**<br>**SAMUEL LEK,**<br>**VALI MANAGEMENT PARTNERS**<br>    **dba AVALON FA LTD,**<br>**NATHAN FAYYER, and**<br>**SERGEY PUSTELNIK**<br>    **a/k/a SERGE PUSTELNIK,**<br>                              **Defendants.** | **Case No. 17-CV-1789 (DLC)** |

## <u>FIRST AMENDED JOINT PRETRIAL ORDER</u>

Plaintiff Securities and Exchange Commission ("SEC") and defendants Vali Management Partners dba Avalon FA Ltd ("Avalon"), Nathan Fayyer ("Fayyer"), and Sergey Pustelnik ("Pustelnik") (collectively, "Defendants") jointly submit this first amended joint pretrial order pursuant to Paragraph 5(A) of the Individual Rules and Procedures of the Honorable Denise L. Cote and the Court's Order dated June 12, 2019.

   i.    *The full caption of the action*.

          The full caption appears above.

   ii.   *The names, law firms, addresses, telephone and fax numbers for trial counsel*:

          *Attorneys for Plaintiff Securities and Exchange Commission:*

              David J. Gottesman
              Olivia S. Choe
              U.S. Securities and Exchange Commission
              100 F Street NE
              Washington, D.C. 20549-4010

Tel.: (202) 551-4470 (Gottesman)
Tel.: (202) 551-4881 (Choe)
Fax: (202) 772-9245

Sarah S. Nilson
U.S. Securities and Exchange Commission
444 South Flower Street, Suite 900
Los Angeles, CA 90071
Tel.: (323) 965-3871
Fax: (213) 443-1905

*Attorneys for Defendants Avalon, Fayyer, and Pustelnik:*

James M. Wines
Law Office of James M Wines
1802 Stirrup Lane
Alexandria, VA 22308
Tel.: (202) 297-6768
Fax: (202) 289-8450

Steven Karl Barentzen
The Law Office of Steven Barentzen
17 State Street, Suite 400
New York, NY 10004
Tel.: (917) 476-0953
Fax: (202) 289-8450

iii.   *A brief statement by plaintiff as to the basis of subject matter jurisdiction, and a brief statement by each other party as to the presence or absence of subject matter jurisdiction. Such statements shall include citations to all statutes relied on and relevant facts as to citizenship and jurisdictional amount.*

a.   Plaintiff's statement.  The SEC has asserted claims against the defendants pursuant to Sections 15(b), 20(b), and 20(d) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77o(b), 77t(b) and (d)] and Sections 20(a), 20(e), 21(d)(1), 21(d)(3) and 21(d)(5) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78t(a), 78t(e), 78u(d)(1), 78u(d)(3), and 78u(d)(5)].  The Court has subject matter over these claims pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa].

b.   Defendants' statement. Defendants do not challenge this Court's subject matter jurisdiction.

iv.   *A brief summary by each party of the claims and defenses that the party asserts remain to be tried, including citations to any statutes on which the party relies. Such summaries shall also identify all claims and defenses previously asserted which are not to be tried. The summaries should not recite any evidentiary matter.*

a.   Plaintiff's statement.

1.   Claims 1 and 2:  The SEC claims that defendants Avalon, Fayyer, Pustelnik, as well as Avalon's traders, engaged in a scheme to manipulate the U.S. securities markets through two trading strategies – spoofing or layering (collectively referred to as "layering") and "cross-market manipulation" – in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(a) and (c) thereunder [17 C.F.R. § 240.10b-5(a) and (c)] and Sections 17(a)(1) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) and (3)].

2.   Claim 3:  The SEC further claims that defendants Avalon and Fayyer violated Section 9(a)(2) of the Exchange Act [15 U.S.C. § 78i(a)(2)] by engaging in two manipulative trading strategies, as described above, which each involved a series of transactions in securities creating actual or apparent active trading in such securities, or raising or depressing the prices of such securities, for the purpose of inducing the purchase or sale of such securities by others.

3.   Claims 5 and 9: The SEC further claims that defendants Fayyer and Pustelnik aided and abetted defendant Avalon's violations, as described above, of Sections 9(a)(2) and 10(b) of the Exchange Act, in violation of

Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)].  The SEC also claims that defendant Pustelnik aided and abetted defendant Fayyer's violations, as described above, of Sections 9(a)(2) and 10(b) of the Exchange Act, in violation of Section 20(e) of the Exchange Act.  The SEC also claims that defendant Fayyer aided and abetted defendant Pustelnik's violations, as described above, of Section 10(b) of the Exchange Act, in violation of Section 20(e) of the Exchange Act.

4. Claim 7: The SEC further claims that defendants Fayyer and Pustelnik aided and abetted defendant Avalon's and each other's violations of Section 17(a)(1) and (a)(3) of the Securities Act, in violation of Section 15(b) of the Securities Act [15 U.S.C. § 77o(b)].

5. Claim 10: The SEC further claims that defendants Avalon and Fayyer are liable for Avalon's traders' violations of Sections 9(a)(2) and 10(b) of the Exchange Act and Rules 10b-5(a) and (c) thereunder, pursuant to Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)].

6. Claim 12: The SEC further claims that defendant Pustelnik is liable for Avalon's violations of Sections 9(a)(2) and 10(b) of the Exchange Act and Rules 10b-5(a) and (c) thereunder, pursuant to Section 20(a) of the Exchange Act.

7. The SEC'S Complaint also asserted other claims against defendants Samuel Lek and Lek Securities Corporation (the "Lek Defendants"). Because of a prospective settlement with the Lek Defendants currently

under review, the SEC anticipates that the claims against the Lek

Defendants will not be tried.

b.  Defendants' Statement.

1.  Claims 1 and 2:  The defendants Avalon, Fayyer, Pustelnik deny they

engaged in a scheme to manipulate the U.S. securities markets in violation

of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-

5(a) and (c) thereunder [17 C.F.R. § 240.10b-5(a) and (c)] and Sections

17(a)(1) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) and (3)]

because the SEC cannot prove the elements necessary to state such a

claim.

2.  Claim 3:  The defendants Avalon and Fayyer deny they violated Section

9(a)(2) of the Exchange Act [15 U.S.C. § 78i(a)(2)] because the SEC

cannot prove the elements necessary to state such a claim.

3.  Claims 5 and 9: Defendants Fayyer and Pustelnik deny they aided and

abetted defendant Avalon's violations, if any, of Sections 9(a)(2) and

10(b) of the Exchange Act, in violation of Section 20(e) of the Exchange

Act [15 U.S.C. § 78t(e)].  The defendant Pustelnik also denies he aided

and abetted defendant Fayyer's violations, if any, of Sections 9(a)(2) and

10(b) of the Exchange Act, in violation of Section 20(e) of the Exchange

Act.  The defendant Fayyer also denies he aided and abetted defendant

Pustelnik's violations, if any, of Section 10(b) of the Exchange Act, in

violation of Section 20(e) of the Exchange Act because the SEC cannot

prove the elements necessary to state such a claim and because the

defendants acted at all times in good faith.

4. Claim 7: The defendants Fayyer and Pustelnik deny they aided and abetted

defendant Avalon's and each other's violations, if any, of Section 17(a)(1)

and (a)(3) of the Securities Act, in violation of Section 15(b) of the

Securities Act [15 U.S.C. § 77o(b)] because the SEC cannot prove the

elements necessary to state such a claim and because the defendants acted

at all times in good faith.

5. Claim 10: The defendants Avalon and Fayyer deny they are liable for

Avalon's traders' violations of Sections 9(a)(2) and 10(b) of the Exchange

Act and Rules 10b-5(a) and (c) thereunder, if any, pursuant to Section

20(a) of the Exchange Act [15 U.S.C. § 78t(a)] because the SEC cannot

prove the elements necessary to state such a claim and because the

defendants acted at all times in good faith.

6. Claim 12: The defendant Pustelnik denies liability for Avalon's violations

of Sections 9(a)(2) and 10(b) of the Exchange Act and Rules 10b-5(a) and

(c) thereunder, if any, pursuant to Section 20(a) of the Exchange Act

because the SEC cannot prove the elements necessary to state such a claim

and because the defendants acted at all times in good faith.

v.    *A statement as to the number of trial days needed and regarding whether the case is to be tried with or without a jury.*

a.   Plaintiff's statement.  The SEC has demanded a trial by jury and estimates that

approximately 16 trial days will be needed for the SEC to present its case-in-chief (as to liability

only).[1]  Pursuant to the Court's instruction at the June 10, 2019 scheduling conference, the SEC

further proposes that each party have a time limit of 80 hours.

   b. Defendant's statement. Defendants anticipate that approximately 10 trial days

will be needed for the Defendants to present their defense as to liability.

 vi. *A statement as to whether or not all parties have consented to trial by a magistrate judge,
without identifying which parties do or do not consent.*

   a. Not all parties have consented to trial by a magistrate judge.

 vii. *Any stipulations or agreed statements of fact or law to which all parties consent.*

   a. The parties agree to the following stipulations:

     1. This Court has subject matter jurisdiction.

     2. Venue is proper in this Court.

     3. Avalon's orders and executions at issue in this case occurred on national
securities exchanges.

     4. A stock is a security.

     5. A stock option is a security.

     6. Between at least 2010 and 2016, Fayyer's cell phone number was 732-
266-7888.

     7. Lek Securities Corporation ("Lek Securities") is a registered broker-dealer
based in New York, New York.

     8. In October 2010, Avalon opened a brokerage account at Lek Securities
("Avalon Account").

---

[1] If any defendant is found liable on any claim, the SEC anticipates that the Court will conduct a separate, non-jury proceeding to determine appropriate remedies.

9.   Avalon entered into agreements with individual traders and with trade group leaders, who oversaw groups of traders.

10.  Avalon's traders traded in U.S. securities markets.

11. Pustelnik was a registered representative at Lek Securities between March 2011 and January 2015.

12.  Pustelnik's cell phone number has been 212-961-6751 since at least 2003.

13.  Svetlana Pershinova ("Pershinova") was an independent contractor at Lek Securities who handled administrative functions related to the Avalon Account.

14. From September 2012 through March 2014, Pustelnik held an Avalon Fund Aktiv credit card.

15.  Pustelnik provided technology services and support for Avalon's back-office operations.

16.  Pustelnik maintained a server containing financial and other internal records of Avalon at his residence in New Jersey (hereafter "Avalon Server").

17. In April 2014, the Avalon Server was produced to the SEC by Buckley Sandler, Avalon's and Fayyer's former counsel.

18. The hard drive Bates-labeled Z-007024702 contains a genuine, authentic, and accurate copy of the Avalon Server.

19.  SEC Trial Exhibits 21A, 21B, 22A, 22B, 23A, 23B, 24A, 24B, 25A, 25B, 26A, 26B, 27A, 27B, 28, 29, 30, and 31 are genuine, authentic, and accurate copies of information contained on the Avalon Server.

viii.     *A list of all trial witnesses, indicating whether such witnesses will testify in person or by deposition, and a brief summary of the substance of each witness's testimony*.

        a.   Plaintiff's trial witnesses.[2]   The SEC does not anticipate presenting any testimony by deposition in its case-in-chief.[3]

            1.   **Sherilynn Belcher**.  Ms. Belcher is a FINRA official who oversaw FINRA's investigation of potential layering activity occurring through Lek Securities Corporation during the relevant time period.  She will provide background testimony regarding the securities markets and trading in the markets, the role of the SEC, FINRA, and self-regulatory organizations, and FINRA rules applicable to FINRA members and their associated persons, including registered representatives.  She will explain how layering works and why layering is manipulative and harmful to the markets, and will testify about ways in which FINRA or other regulators communicated that layering was a prohibited manipulative practice.  She will describe FINRA's investigation of, and actions taken, with regard to numerous instances of potential layering through Lek Securities that involved orders placed by Avalon traders.  She will explain that FINRA repeatedly notified Lek Securities about this potential layering activity and that on multiple occasions, Lek Securities notified FINRA that the customer engaged in the trading activity was defendant Avalon.  She will

---

[2] The SEC may call any of the witnesses it discloses herein or any additional witnesses in rebuttal if the defendants' present witnesses not disclosed herein or testimony not described herein.

[3] The SEC's Trial Exhibits do include excerpts of certain investigative testimony and deposition testimony provided by defendants Fayyer and Pustelnik, upon which summary witness Patrick McCluskey relies.  But the SEC does not anticipate playing this deposition testimony for the jury.

also testify about events surrounding the investigation, such as Pustelnik's agreement to be barred from associating with any FINRA member.  She will also authenticate certain documents relating to FINRA's investigation into layering through Lek Securities.

2.  **Jeffrey Clark**.  Mr. Clark is a Special Agent with the Federal Bureau of Investigation.  He will testify that in 2015, he obtained federal search warrants for the contents of four Google email accounts:  avalonfaltd, reg.xia, zchxia, and laviensmile.  He will further testify that he provided a copy of the search warrant returns that he received from Google to the U.S. Attorney's Office for the District of New Jersey.  He will also authenticate a number of emails and documents that he searched for and located within the Google search warrant returns.

3.  **Gene DeMaio**.  Mr. DeMaio is a FINRA official who oversaw FINRA's investigation of potential cross-market manipulation (also known as "mini-manipulation," or "cross-market cross-product manipulation") occurring through Lek Securities Corporation beginning in 2012.  Mr. DeMaio will provide background information regarding stock options, the options markets, options market makers, and the trading of options.  He will also explain how the cross-market manipulation strategy works and why it is manipulative and harmful to the markets, and will testify about ways in which FINRA or other regulators communicated that such activity was a prohibited manipulative practice.  He will describe FINRA's learning of, investigation into, and actions taken with regard to numerous

10

instances of such trading activity occurring through Lek Securities by Avalon traders.  He will also testify about communications that FINRA had with market participants who were harmed by this trading activity. He will also testify that FINRA observed that the strategy occurred through another broker-dealer, Lime Brokerage, for a limited period of time.

4. **Nathan Fayyer**.  Mr. Fayyer is a named defendant and the disclosed owner of defendant Avalon.  He will testify about Avalon; his role at Avalon; its trading activities; its account at Lek Securities; its relationship with its traders, including agreements between Avalon and its traders; and Avalon's bank and credit card accounts.  He will also testify about other entities he owns, their relationship to Avalon, and their financial accounts. He will also testify about Mr. Pustelnik's involvement in and relationship to Avalon, including an Avalon computer server that Mr. Pustelnik maintained at his residence and financial ties between Mr. Pustelnik, Mr. Fayyer, and Avalon.  He will also testify about Avalon's corporate Gmail account.  He will also testify about his response and Avalon's response to subpoenas that they received from the SEC during its investigation and during the litigation.  He will also testify about a number of communications between and among Avalon, Lek Securities, Mr. Fayyer, Mr. Pustelnik, and Avalon's traders.

5. **Andrew Gordon**.  During the time period of most of the trading at issue, Andrew Gordon was an official at Bats, which owned a number of

exchanges on which the trading occurred.  Bats was acquired by Cboe in 2017, and Mr. Gordon now is an official at Cboe.  Mr. Gordon will provide background testimony concerning the Bats exchanges and their role as self-regulatory organizations, the nature of layering and why it is deceptive and harmful to the markets.  He will also testify about Bats's learning of, investigation into, and actions taken with regard to potential layering activity that it observed occurring through Lek Securities during the relevant time period.  Mr. Gordon will explain that Bats repeatedly provided notice to Lek regarding this activity and that on multiple occasions, Lek Securities notified Bats that the customer engaged in the trading activity was defendant Avalon.

6. **Daniel Hanuka**.  Mr. Hanuka was the Chief Financial Officer of Lek Securities between 2010 and 2016.  Mr. Hanuka will testify about compensation that defendant Pustelnik received from Lek Securities between 2010 and 2015 and expenses deducted from that compensation. He will also testify about compensation that two other individuals associated with defendant Pustelnik received.

7. **Terrence Hendershott, Ph.D.**  Professor Hendershott is an expert in market microstructure.  He will testify about the nature of the U.S. securities markets and other general background information about trading and markets, including limit orders, the limit order book, and market-making.  He will also describe the manipulative strategy known as layering from the perspective of market microstructure, identify certain

key characteristics of layering, and the harm to the markets that can be caused by layering.  He will testify about the forensic analysis that he conducted of Avalon's order and trade activity, in which he identified over 675,000 instances in which Avalon engaged in activity consistent with layering, as well as further econometric analyses that he conducted that confirmed that such activity was indicative of layering and not likely to have occurred unintentionally or as part of a non-manipulative trading strategy such as market making.  He will also describe certain instances that he identified and explain how they exhibit features that are consistent with a layering strategy.  He will also testify that the revenue generated by this trading activity exceeded $21 million.  Professor Hendershott's expected testimony is further set forth in his reports dated April 3, 2017, June 23, 2017, March 16, 2018, and June 22, 2018.

8.  **Jerome Laguilles.**  Mr. Laguilles is an SEC employee.  He will testify about which parties or other persons produced various documents to the SEC, and whether certain documents in this case were included in the Avalon Defendants' productions to the SEC.  In connection with that testimony, Mr. Laguilles will describe relevant aspects of the document management system utilized by the SEC's Division of Enforcement and about the SEC's procedures for receiving, storing, and managing documents produced to the SEC during investigations and litigation.  He will also testify about searches that he conducted for certain documents to determine which parties or other persons produced them to the SEC.  He

will also authenticate certain documents that were produced to the SEC by
the defendants.

9.   **Samuel Lek.**  Mr. Lek is the Chief Executive Officer and Chief
Compliance Officer of Lek Securities.   He will testify that between 2010
and 2016, Avalon was a customer of Lek Securities and conducted trading
in stock and options through its account at the firm.  He will also
authenticate certain Lek records, such as order and trade data reflecting
Avalon's trading activity during this period, which Lek Securities
produced to the SEC.  Mr. Lek may also testify about layering, cross-
market, and other market manipulation, communications about the
foregoing, communications with Fayyer and Pustelnik, Avalon's account
and Avalon's trading activity at Lek Securities, the activities and roles of
Pustelnik and others who worked on the Avalon account, Lek Securities'
and Mr. Lek's interactions with regulators, the SEC's allegations against
the defendants, and the resolution of the SEC's charges against Mr. Lek
and Lek Securities.

10.  **Nicolas Louis.**  Mr. Louis is the former president of Lek Securities.  If
Mr. Lek is not called, then Mr. Louis will offer the testimony described
above with regard to Mr. Lek.

11. **Patrick McCluskey.**  Mr. McCluskey is an SEC employee.  He will be a
summary witness.  He will testify that he was provided with a number of
financial and other records relating to defendants Avalon, Pustelnik, and
Fayyer, and to Avalon Fund Aktiv (an affiliate of Avalon owned by

Fayyer), which he was asked to summarize.  He will summarize records relating to (1) the initial funding of Avalon's account at Lek Securities by defendants Fayyer and Pustelnik; (2) transfers of funds from Avalon's account at Lek Securities to two overseas bank accounts, as well as transfers from those overseas bank accounts to domestic bank accounts held by Avalon Fund Aktiv; (3) transfers of funds from Avalon Fund Aktiv's bank accounts to defendant Pustelnik and his affiliates; and (4) the use of an Avalon Fund Aktiv credit card by Fayyer, Pustelnik, and another individual affiliated with Pustelnik and Avalon, as well as payment of those credit card expenses by Avalon Fund Aktiv.  He will also summarize his comparison of various tables extracted from the Avalon computer server stored in Pustelnik's residence with financial records and other documents.  He will also summarize information relating to certain Avalon trade groups and instances of activity consistent with layering identified by Professor Hendershott.

12. **Marin Nitzov.**  Mr. Nitzov is an employee of Citadel Securities, who worked on Citadel's options market making desk during the relevant period.  He will provide information regarding the options markets, options market-makers, and trading in options.  He will also testify that he observed multiple instances of potential manipulation involving trading in options that occurred through Lek Securities during the relevant time period.  He will describe the activity that Citadel observed and explain

why it is harmful to the options markets.  He will also authenticate certain Citadel documentation of the activity that he observed.

13. **Adam Nunes.**  Mr. Nunes is an employee of Hudson River Trading.  He will testify that during the relevant time period, he observed multiple instances of potential layering.  He will also explain why layering is harmful to the stock market.  He will also testify about communications that he had with regulators regarding the activity that he observed.

14. **Neil Pearson, Ph.D.**  Professor Pearson is an expert in options and derivatives.  He will testify about stock options and the nature of the U.S. options markets.  He will also describe the manipulative strategy known as cross-market manipulation (also known as "mini-manipulation," or "cross-market cross-product manipulation") and will explain how this form of manipulation is harmful to the markets.  He will testify about the forensic analysis that he conducted of Avalon's order and trade activity through Lek Securities, as well as order and trade activity through another broker-dealer, in which he identified several hundred instances in which Avalon engaged in activity consistent with cross-market manipulation.  He will also testify about further econometric analyses that he conducted that confirmed that such activity was manipulative and unlikely to have been the result of a legitimate trading strategy.  He will also testify that the revenue generated by this trading activity exceeded $7 million in trading through Lek Securities, and over $450,000 in trading through another

firm.  Professor Pearson's expected testimony is further set forth in his reports dated March 16, 2018, and June 22, 2018.

15. **Sergey Pustelnik.**  Mr. Pustelnik is a named defendant in this case.  Mr. Pustelnik will testify about his relationship with Mr. Fayyer and Avalon, his role in introducing Avalon to Lek Securities, his role as a registered representative at Lek Securities, the compensation he received from Lek Securities, and his acceptance of a bar from being a registered representative.  He will also testify about his involvement in Avalon, including his maintenance of Avalon's computer server at his residence and his financial ties to Avalon, Fayyer, and other entities owned by Fayyer.  He will also testify about certain tables extracted from the Avalon computer server as well as his communications with defendant Fayyer, various Avalon traders, and officials at Lek Securities, including communications regarding regulatory concerns about layering and Lek Securities' Q6 system. He will also testify about his role in introducing the traders engaged in the cross-market strategy to another trading firm and broker-dealer.

16. **Peter Solano.**  Mr. Solano is an employee of Lek Securities.  He will authenticate certain emails and other documents.

b.  Defendants' trial witnesses.

1. **Nathan Fayyer.** Mr. Fayyer is a defendant in this case. He will testify that he did not execute any of the trades challenged by the SEC and its witnesses. He will testify regarding Avalon's formation and organization,

its account with Lek. He will testify regarding Avalon's relationship with the independent contractors who executed the trades at issue in this case, and his role or lack thereof with regard to those trades. He will testify regarding Avalon's and Mr. Fayyer's reliance on Lek to monitor and ensure the legality of the trading in Lek's Avalon account. He will testify regarding his understanding of the term "layering" during the relevant time period. He will testify that he did not know and reasonably did not believe that any of the trading in Lek's Avalon account constituted a violation of the federal securities laws. He will testify regarding his interactions with Lek personnel, including Samuel Lek. He will testify regarding his relationship with Sergey Pustelnik and that Mr. Pustelnik was never a control person of Avalon. Mr. Fayyer will testify regarding the gains that Avalon made on the transactions at issue. He will testify that he did not knowingly provide substantial assistance to Mr. Pustelnik, Avalon or Avalon's traders with respect to the trades at issue. Mr. Fayyer will testify that at all times he acted in good faith, including good faith reliance on the compliance capabilities of Lek and assurances by Lek and its counsel that the trading at issue was not illegal. Mr. Fayyer may authenticate certain documents and testify whether certain documents sought to be admitted by the SEC constitute business records of Avalon. Additionally, Mr. Fayyer will provide rebuttal testimony regarding the testimony elicited and evidence admitted in the SEC's case in chief.

2. **Sergey Pustelnik.** Mr. Pustelnik is a defendant in this case. He will testify that he did not execute any of the trades at issue in this case. He will testify regarding his role at Lek, including his lack of any compliance or supervisory function at Lek. He will testify regarding his relationship with Mr. Fayyer and his relationship with Avalon, including that Mr. Pustelnik was never a control person of Avalon. Mr. Pustelnik will testify that he did not knowingly provide substantial assistance to Mr. Fayyer, Avalon or its traders related to the trades at issue. Mr. Pustelnik will testify regarding his communications with Mr. Lek and other Lek personnel or agents regarding the trading in the Avalon account. Mr. Pustelnik will testify regarding gifts, payments or loans that he received from Mr. Fayyer's U.S. entity. He will testify that he did not know and reasonably did not believe that any of the trading in Lek's Avalon account constituted a violation of the federal securities laws. He will testify regarding the compensation that he received from Lek related to the trading at issue. Mr. Pustelnik may testify regarding his understanding of the so-called "cross market strategy" at issue in this case. Mr. Pustelnik may authenticate certain documents. Additionally, Mr. Pustelnik will provide rebuttal testimony regarding the testimony elicited and evidence admitted in the SEC's case in chief.

3. **Samuel Lek.** Mr. Lek is a former defendant in this case and the owner, principal, and chief compliance officer of Lek. It is believed that Mr. Lek will testify regarding equities and options trading generally and as it pertains to the allegations by the SEC. Mr. Lek will testify regarding the

compensation paid by Lek to Mr. Pustelnik. Mr. Lek will testify regarding

the obligations broker dealers providing market access to its clients,

including Avalon, to ensure that orders comply with the federal securities

laws. Mr. Lek will testify regarding Lek's compliance process, including

the pre-screening and subsequent review of Avalon's orders to ensure that

they complied with the federal securities laws. He will testify regarding

his communications with Avalon, Mr. Fayyer and Mr. Pustelnik regarding

whether Avalon's orders or trades complied with federal securities laws.

Mr. Lek will testify regarding whether he ever believed or ever convey to

Avalon, Mr. Fayyer or Mr. Pustelnik that Avalon's orders or trades ever

violated federal securities laws. Mr. Lek will testify regarding his and

Lek's settlement with the SEC. Mr. Lek may authenticate certain

documents and may testify whether certain documents are business

records of Lek. Additionally, Mr. Lek will provide rebuttal testimony

regarding the testimony elicited and evidence admitted in the SEC's case

in chief.[4] [5]

   ix.   *A designation by each party of deposition testimony to be offered in its case in chief and any counter-designations and objections by any other party.*

      a.  Plaintiff's designations.  The SEC does not designate any deposition testimony to

---

[4] Defendants reserve the right to call additional witnesses or to have the identified witnesses testify regarding additional topics in the event the SEC calls witnesses not herein identified in rebuttal or otherwise, or in the event that the identified SEC witnesses testify regarding topics not identified herein.

[5] The SEC objects to the defendants' calling any witnesses not disclosed herein whom they reasonably should anticipate calling based on the information available to them at this time.

be offered in its case in chief. [6]

      b. Defendants' designations. The Defendants do not designate any deposition testimony in their case in chief.

  x.   *A list by each party of exhibits to be offered in its case in chief, with one star indicating exhibits to which no party objects on grounds of authenticity, and two stars indicating exhibits to which no party objects on any ground.*

      a. Plaintiff's and Defendants' first amended list of exhibits is attached hereto as **Exhibit A.** Plaintiff's exhibits are numbered 1-370. Defendants' exhibits are numbered 400-574. Objections are noted with stars pursuant to the Court's Individual Practices in Civil Cases.

  xi.   *Proposed initial legal instruction.*

      a. Pursuant to the Court's instruction at the June 10, 2019 scheduling conference, the SEC's proposed initial legal instruction is attached hereto as **Exhibit B**. The SEC is also separately submitting its proposed jury instructions, and proposed verdict form pursuant to Paragraph 5.B of the Court's Individual Civil Practices (ECF No. 412).

      b. Defendants' proposed initial legal instruction is attached hereto as **Exhibit C**. The Defendants are also separately submitting their proposed jury instructions and proposed verdict form pursuant to Paragraph 5.B of the Court's Individual Civil Practices.

      c. Attached hereto as **Exhibit D** is a redline showing the differences between the Defendants' and the SEC's proposed initial legal instructions.

      d. The parties are jointly submitting *voir dire* questions hereto as **Exhibit E**. The parties jointly propose questions 1 through 53. The SEC additionally proposes questions 54 and 55. The defendants additionally propose questions 56 through 70.

---

[6] The SEC's Trial Exhibits do include excerpts of certain investigative testimony and deposition testimony provided by defendants Fayyer and Pustelnik, upon which summary witness Patrick McCluskey relies. But the SEC does not anticipate playing this deposition testimony for the jury.

Dated:  September 27, 2019                    Respectfully submitted,


                                              /s/  Sarah S. Nilson
                                              David J. Gottesman
                                              Olivia S. Choe
                                              Sarah S. Nilson
                                              U.S. Securities and Exchange Commission
                                              100 F Street N.E.
                                              Washington, D.C. 20549
                                              (202) 551-4470 (Gottesman)
                                              GottesmanD@sec.gov
                                              *Attorneys for Plaintiff*



Dated: September 27, 2019                     /s/  James M. Wines
                                              James M. Wines
                                              Law Office of James M Wines
                                              1802 Stirrup Lane
                                              Alexandria, VA 22308
                                              Tel: (202)297-6768

                                              Steven Karl Barentzen
                                              The Law Office of Steven Barentzen
                                              17 State Street, Suite 400
                                              New York, NY 10004
                                              Tel: (917) 476-0953
                                              Fax: (202) 289-8450
                                              *Attorneys for the Defendants Avalon,*
                                              *Fayyer, and Pustelnik*




SO ORDERED:                                   _____
                                              HONORABLE DENISE L. COTE
                                              UNITED STATES DISTRICT JUDGE

                                              Dated: _____, 2019.