UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>       Plaintiff,<br><br>    v.<br><br>LEK SECURITIES CORPORATION,<br>SAMUEL LEK,<br>VALI MANAGEMENT PARTNERS dba<br>  AVALON FA LTD,<br>NATHAN FAYYER, and<br>SERGEY PUSTELNIK a/k/a<br>  SERGE PUSTELNIK,<br>       Defendants. | CASE NO. 17-CV-1789 (DLC) |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* TO ADMIT CERTAIN EMAILS SENT AND/OR RECEIVED BY DEFENDANT PUSTELNIK

David J. Gottesman
Olivia S. Choe
Sarah S. Nilson
U.S. Securities and Exchange Commission
100 F Street N.E.
Washington, D.C. 20549
Tel.: (202) 551-4881 (Choe)
Fax: (202) 772-9292
Email:  choeo@sec.gov

*Counsel for Plaintiff*

Dated:  September 13, 2019

# **TABLE OF CONTENTS**

BACKGROUND .............................................................................................................................. 1

    I.    The September 13 Forward:  September 13, 2012 Email from Defendant Pustelnik to Jane Pustelnik (SEC Trial Exhibit 230) .......................................................................... 1

    II.   The AvalonBackOffice Email Chain:  September 1, 2011 Email Chain Among Defendant Pustelnik and Jane Pustelnik and Others (SEC Trial Exhibits 204A and 204B) ............................................................................................................................. 3

GOVERNING LAW ....................................................................................................................... 6

ARGUMENT .................................................................................................................................. 7

    I.    THE COURT SHOULD ADMIT THE SEPTEMBER 13 FORWARD ............................ 7

        A.   The September 13 Forward is authentic and relevant. ............................................ 7

        B.   The September 13 Forward is not privileged. ......................................................... 8

        C.   Even if the September 13 Forward is privileged, Pustelnik has waived privilege. ................................................................................................... 9

    II.   THE COURT SHOULD ADMIT THE AVALONBACKOFFICE EMAIL CHAIN ....... 10

        A.   The AvalonBackOffice Email Chain is authentic and relevant. ........................... 10

        B.   The AvalonBackOffice Email Chain is not privileged. ........................................ 11

        C.   Even if the AvalonBackOffice Email Chain is privileged, Pustelnik has waived privilege over all except two emails in the chain. ............................. 13

        D.   The Court should permit the introduction of a redacted version of the AvalonBackOffice Email Chain. ............................................................................ 14

CONCLUSION ............................................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Cases**

*Engelmann v. Nat'l Broadcasting Co.*, No. 94 Civ.5616(MBM)(AJP),
 1995 WL 214500 (S.D.N.Y. April 10, 1995) .................................................................. passim

*Hart v. RCI Hospitality Holdings, Inc.*, 90 F. Supp. 3d 250 (S.D.N.Y. 2015) ............................... 6

*In re Asia Global Crossing*, 322 B.R. 247 (S.D.N.Y. Mar. 21, 2005) .......................................... 13

*In re Reserve Fund*, 275 F.R.D. 151 (S.D.N.Y. 2011) .................................................................... 7

*Koumolis v. Independent Fin. Mktg. Gr.*, 295 F.R.D. 28 (E.D.N.Y. 2013) .................................... 8

*Palmieri v. Defaria*, 88 F.3d 136 (2d Cir. 1996) ............................................................................ 6

*United States v. Acker*, 52 F.3d 509 (4th Cir.1995) ....................................................................... 7

*United States v. Dien*, 609 F.2d 1038 (2d Cir. 1979) .......................................................... 7, 10, 14

*United States v. Etkin*, No. 07–CR–913 (KMK), 2008 WL 482281
 (S.D.N.Y. Feb. 20, 2008) ........................................................................................................ 7, 13

*United States v. Premises Known as 281 Syosset Woodbury Road, Woodbury, N.Y.*,
 71 F.3d 1067 (2d Cir. 1995) .................................................................................................. 10, 14

*United States v. Pugh*, 162 F. Supp. 3d 97 (E.D.N.Y. 2016) ..................................................... 6, 9

*United States v. Taylor*, 92 F.3d 1313 (2d Cir.1996) .................................................................... 7

*United States v. Termini*, 267 F.2d 18 (2d Cir. 1959) ................................................................... 6

**Rules**

Fed. R. Evid. 401 .................................................................................................................... 8, 11

Fed. R. Evid. 501 ......................................................................................................................... 6

Fed. R. Evid. 901(b)(1) ........................................................................................................ 8, 11

Fed. R. Evid. 901(b)(4) ............................................................................................................. 11

Plaintiff Securities and Exchange Commission ("SEC") respectfully requests that the Court enter an order admitting into evidence two emails that were sent and/or received by defendant Pustelnik, as well as a certified translation of one of those emails. The SEC further respectfully requests that the Court approve the SEC's proposed redactions to one of those emails (and its certified translation).

Both of the email chains at issue are relevant to the SEC's claims. One email shows that Pustelnik was aware of regulatory concern about layering – and about Avalon's trading in particular – as early as 2012. The other email shows that despite his testimony to the contrary, Pustelnik was the user of an email address (avalonbackoffice@gmail.com) that was used to conduct internal Avalon functions. This is relevant to Pustelnik's involvement as a principal of Avalon – something he has denied in this litigation. During the parties' exchange of pre-trial materials, the Avalon Defendants asserted that these email chains fall under the marital communication privilege. But as set forth in greater detail below, neither email is privileged, and further, any possible privilege that might apply has been waived. The Court should admit these emails into evidence and should approve the SEC's proposed redactions, which are intended to avoid the unnecessary disclosure of medical information relating to Pustelnik.

## BACKGROUND

I.  **The September 13 Forward: September 13, 2012 Email from Defendant Pustelnik to Jane Pustelnik (SEC Trial Exhibit 230)**

On September 13, 2012, defendant Pustelnik received an email at his Lek Securities email address from Samuel Lek, forwarding an inquiry letter dated September 11, 2012, that Lek Securities had received from FINRA. See Exhibit 1 to Declaration of Olivia S. Choe, dated

September 13, 2019.[1]  At the time, Pustelnik was a registered representative at Lek Securities. FINRA's inquiry letter notified Lek Securities that FINRA had identified trading through Lek Securities that "appears consistent with a manipulative practice called layering."  Ex. 1, at PX230-2.  The trading identified by FINRA in that letter and in attachments to the letter was trading activity conducted by defendant Avalon FA Ltd, Pustelnik's client.  Several of the instances of trading identified in FINRA's letter fall within Layering Loops identified by the SEC's expert witness, Professor Terrence Hendershott.

The FINRA letter, among other things, placed Pustelnik on notice that regulators considered layering to be manipulative and that Avalon was suspected of engaging in layering. *See* ECF No. 1, ¶ 83.

On the same day that Pustelnik received the email from Sam Lek attaching the FINRA letter, Pustelnik forwarded the email to his wife, Jane Pustelnik (the "September 13 Forward"). Pustelnik sent the email to his wife from his Lek Securities email address.  Pustelnik's message to his wife did not contain any text; it simply forwarded Sam Lek's message and the attached FINRA letter.  *See* Ex. 1.[2]

On October 11, 2013, Pustelnik provided sworn testimony in an investigation being conducted by FINRA.  Pustelnik was asked about the September 13 Forward he had sent to his wife.  *See* Ex. 2.[3]  Pustelnik first stated that he did not remember the email.  Ex. 2, at 561:11-561:34.  After reviewing the message further, Pustelnik reiterated that he did not remember it, stated that he likely forwarded the email to his wife to print for him, and stated that he did not

---

[1] Exhibits attached to the Declaration of Olivia S. Choe, dated September 13, 2019, which is being submitted simultaneously herewith, are denoted "Ex. __" throughout.

[2] The email was produced to the SEC by Lek Securities.

[3] The September 13, 2012 email was marked as FINRA Exhibit 50, and is referred to as Exhibit 50 in Pustelnik's FINRA testimony.

2

forward the email to his wife for any purpose other than printing, since she would not have understood anything in the email he was forwarding. *Id.* at 562:21-563:6. He continued to insist that the only reason that he would have forwarded the attachment to his wife was for her to print it. *Id.* at 565:22-566:1. At no time did Pustelnik or his counsel assert that the September 13 Forward, or any part of it, was privileged, nor did Pustelnik at any point refuse to answer questions about the email based on privilege.

The SEC has marked the September 13 Forward as SEC Trial Exhibit 230. Ex. 1. During the parties' exchange of pretrial materials, the Avalon Defendants indicated that they intend to claim that this email is privileged.

## II. The AvalonBackOffice Email Chain: September 1, 2011 Email Chain Among Defendant Pustelnik and Jane Pustelnik and Others (SEC Trial Exhibits 204A and 204B)

The SEC has alleged that defendant Pustelnik is a control person of Avalon and that he was involved in its inception and management. *See, e.g.*, ECF No. 1, ¶¶ 6, 8, 9, 26, 30, 59, 80-82, 165-168. Throughout the investigation and litigation of this case, Pustelnik has denied that he was a control person of Avalon or was involved in its management.

On the first day of his two-day deposition, Pustelnik was asked whether he was familiar with the email address avalonbackoffice@gmail.com and if he had ever used it. He testified that he did not remember the email address and did not think he had ever used it. Ex. 3, at 171-172.

The avalonbackoffice@gmail.com account was used to conduct internal Avalon functions. *See, e.g.*, Ex. 4.

On the second day of his deposition, Pustelnik was again asked about the avalonbackoffice@gmail.com email address and again stated that he did not think he had ever used that account. Ex. 5, at 411-412.

3

Pustelnik was then shown an email chain that included emails sent and received by Pustelnik himself (using the email address serge.pustelnik@gmail.com), his wife, his wife's mother, and the user of the avalonbackoffice@gmail.com address. The original version of this email, which contains Cyrillic characters, has been marked as SEC Trial Exhibit 204A and is attached hereto as Ex. 6A. A certified translation has been marked as SEC Trial Exhibit 204B and is attached hereto as Ex. 6B.[4] For ease of reference, the SEC refers throughout to the certified translation of this email (the "AvalonBackOffice Email Chain").

The AvalonBackOffice Email Chain shows that Pustelnik was the user of the avalonbackoffice@gmail.com email address. Specifically, the email chain – which is in reverse chronological order – includes the following:

- On August 22, 2011, at 19:40, the individual using the email account avalonbackoffice@gmail.com sent an email message from that account and signed it "Sergey." Ex. 6B, at CSSU-E-026700.

- In several subsequent messages, an individual using the email address finance@avalonfundaktiv.com appears to respond to avalonbackoffice@gmail.com and addresses each of the messages to "Serge."[5] Ex. 6B, at CSSU-E-026699- CSSU-E-026700.

- On August 26, 2011, the individual using the avalonbackoffice@gmail.com address then forwards the email chain to janekisa@gmail.com, an email address used by Pustelnik's wife. *See* Ex. 2 at 561-562, Ex. 5, at 428.

- On August 29, 2011, at 10:12 p.m., Pustelnik's wife forwards the email chain to another individual, with a new subject line, "abreviations info from seriy." Ex. 6B, at CSSU-E-026699. "Seriy" is a short, familiar version of "Serge." Ex. 5, at 430-431.

---

[4] During Pustelnik's deposition, these two emails were marked as SEC Deposition Exhibits 475A (original) and 475B (translation), and they are referred to as such in Pustelnik's deposition testimony. During the deposition, Pustelnik objected to certain aspects of the translation marked as SEC Deposition Exhibit 475B. Ex. 5, at 422-424. The translation was revised, and the revised version – which has been provided to defendants along with a certification – has been marked as SEC Trial Exhibit 204B.

[5] The email message was produced in this format to the SEC by FINRA, which obtained the message from Credit Suisse.

- At some point thereafter, Pustelnik's wife – who worked at Credit Suisse at the time – began using her Credit Suisse email account, and the entire email chain was forwarded using that account. Ex. 6B, at CSSU-E-026698.

When the AvalonBackOffice Email Chain was first introduced at Pustelnik's deposition, counsel for the Avalon Defendants raised the issue of "spousal communication privilege." Ex. 5, at 413-414. He then stated that emails that were dated earlier than September 1, 2011 had been "shared with the witness's mother-in-law, which I assume would then obviate the spousal communication privilege as to those prior communications." *Id.* at 415. He asserted, however, that the first two communications on the first page of the email chain – *i.e.*, those on September 1, 2011 at 9:37 a.m. and 9:34 a.m. were subject to the "spousal communication privilege." *Id.* Counsel further noted that the emails concerned medical information. *Id.* at 415-416. Before proceeding with questioning, the SEC asked for confirmation that the assertion of privilege concerned only the first two emails on the first page of the email chain, which counsel for the Avalon Defendants confirmed. *Id.* at 416.

When questioned about the email, Pustelnik admitted that emails addressed to "Serge" "seemed" to be addressed to him, that he did not have any reason to think the emails were not addressed to him, and that his wife seemed to be referring to him in the email chain, but denied remembering the email and denied that it refreshed his recollection about whether he had ever used the avalonbackoffice@gmail.com account. *Id.* at 419-420, 425, 429.

During the parties' exchange of pretrial materials, the SEC offered to redact the emails on the first page of the AvalonBackOffice Email Chain as to which counsel for the Avalon Defendants asserted privilege during Pustelnik's deposition (*i.e.*, the emails on September 1, 2011, at 9:34 a.m. and 9:37 a.m.). The SEC also offered to redact other portions of the email chain referring to medical information. The SEC's proposed redactions are set forth in Ex. 6C.

5

Counsel for the Avalon Defendants has advised that the SEC's proposed redactions do not resolve his objections to the email and that his clients continue to assert privilege over this email chain.

## GOVERNING LAW

"The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation marks and citation omitted); *Hart v. RCI Hospitality Holdings, Inc.*, 90 F. Supp. 3d 250, 257 (S.D.N.Y. 2015) (same).

Under Federal Rule of Evidence 501, federal common law governs the scope and applicability of marital privilege. *See* Fed. R. Evid. 501; *Engelmann v. Nat'l Broadcasting Co.*, No. 94 Civ.5616(MBM)(AJP), 1995 WL 214500, at *1-2 (S.D.N.Y. April 10, 1995); *United States v. Pugh*, 162 F. Supp. 3d 97, 101 (E.D.N.Y. 2016). Federal common law recognizes two spousal privileges: the adverse spousal testimony privilege, which is limited to criminal cases, and the marital communications privilege, which "may be asserted by either spouse to bar the testimony of the other regarding marital communications made in confidence." *Engelmann*, 1995 WL 214500, at *2. "There are three prerequisites to the assertion of the communications privilege: (1) at the time of the communication, there must have been a marriage recognized as valid by state law; (2) there must have been a communication with respect to which the privilege is asserted; and (3) the communication must have been made in confidence." *Id.* (internal quotation marks and brackets omitted). The marital communications privilege is "authoritatively limited to utterances to one's spouse intended to be kept confidential." *United States v. Termini*, 267 F.2d 18, 20 (2d Cir. 1959).

"Because the marital privilege deprives fact-finders of potentially useful information," *United States v. Etkin*, No. 07–CR–913 (KMK), 2008 WL 482281, at *2 (S.D.N.Y. Feb. 20, 2008), "[t]he party asserting ... the marital communications privilege, bears the burden of establishing all of the essential elements involved," *In re Reserve Fund*, 275 F.R.D. 151, 158 (S.D.N.Y. 2011) (quoting *United States v. Acker*, 52 F.3d 509, 514–15 (4th Cir.1995)). However, "[c]onversations between spouses are presumed confidential," and therefore, the party opposing the applicability of the marital communication privilege bears "the burden of defeating this presumption by showing that the communication was not made privately." *United States v. Taylor*, 92 F.3d 1313, 1332 (2d Cir.1996).

The marital communications privilege may be waived by disclosure of the communication to a third party. *Engelmann*, 1995 WL 214500, at *3. It may also be waived "by some act of testimony which in fairness places the person in a position not to object to further disclosure." *Id.* (internal quotation marks omitted) (refusing to permit party claiming privilege to selectively assert marital communications privilege where party had testified in deposition regarding some marital communications). The marital communications privilege may also be waived by a failure to invoke the privilege in a timely manner. *United States v. Dien*, 609 F.2d 1038, 1043-1044 (2d Cir. 1979).

## ARGUMENT

I.   **THE COURT SHOULD ADMIT THE SEPTEMBER 13 FORWARD**

   A.   **The September 13 Forward is authentic and relevant.**

The September 13 Forward is both authentic and relevant and should be admitted into evidence by the Court. The September 13 Forward was produced to the SEC by Lek Securities during the SEC's investigation that preceded the filing of case. If necessary, a Lek custodian

7

will testify that the September 13 Forward is a genuine and authentic copy of an email chain consisting of emails that were sent and received on Lek Securities' email system. The emails in the chain are sent to and from email addresses as to which there is no dispute (SamL@leksecurities.com, Serge@Leksecurities.com, and janekisa@gmail.com). Under Federal Rule of Evidence 901(b)(1), the Court should find the email to be authentic.

The September 13 Forward is also relevant. Pustelnik has been charged with violating Sections 10(b) and 9(a)(2) of the Exchange Act and Section 17(a)(1) and (a)(3) of the Securities Act; the SEC must therefore establish that he possessed the requisite state of mind, *i.e.*, intent or recklessness. He has also been charged with control-person liability under Section 20(a) of the Exchange Act; the SEC must therefore establish culpable participation on his part. The September 13 Forward is relevant to these claims because it shows that as early as September 2012, defendant Pustelnik was aware not only that regulators viewed layering as a manipulative practice, but also that regulators had raised concerns about Avalon's trading specifically. *See* Fed. R. Evid. 401.

      **B.**      **The September 13 Forward is not privileged.**

Pustelnik has asserted that the September 13 Forward is privileged. The only possible privilege that could apply is the marital communications privilege. But that privilege does not apply because the September 13 Forward was not a communication made in confidence.

First, Pustelnik's message to his wife contained no text or content at all. He simply forwarded a message he had received from a third party. The act of forwarding the email to his wife did not render it privileged. *Cf. Koumolis v. Independent Fin. Mktg. Gr.*, 295 F.R.D. 28, 47 (E.D.N.Y. 2013) (forwarding documents to counsel did not "confer any privilege" on those documents).

8

Second, the September 13 Forward does not constitute a communication made in confidence.  Pustelnik testified – repeatedly – that he forwarded the message from Sam Lek to his wife for the sole purpose of having her print the email.  He testified that she would not have understood the contents of the email he was forwarding.  In other words, he denied that he was communicating anything of substance to her.  Instead, the September 13 Forward was simply the transfer of a document to Pustelnik's wife that he wanted her to print.  Ex. 2, at 563. "Tautologically, in order for a letter to receive marital communications protection, it must be communicative." *Pugh*, 162 F. Supp. 3d at 106.  "[I]n order to invoke the privilege, there must be, at minimum, a manifested intent to communicate." *Id*.  Pustelnik has testified to the opposite – that he only wanted his wife to print the document but that he did not expect her to understand it and had no other purpose in sending the document to her.  Pustelnik thus cannot satisfy his burden of establishing that the September 13 Forward is subject to the marital communications privilege. *Englemann*, 1995 WL 214500, at *3 (internal quotation marks omitted) (privilege "applies only to utterances or expressions intended by one spouse to convey a message to the other").

    **C.**    **Even if the September 13 Forward is privileged, Pustelnik has waived privilege.**

Even if the Court were to assume that the September 13 Forward was a privileged document, any privilege was waived at least as of the time of Pustelnik's October 11, 2013 testimony before FINRA.

First, at no time during that testimony (nor at anytime thereafter) did Pustelnik or his counsel assert privilege as to the September 13 Forward.  On the contrary, Pustelnik proceeded to answer questions about the email and about his general practice of forwarding documents to

9

his wife to print. Pustelnik thus waived any applicable privilege by failing to timely invoke it. *See Dien*, 609 F.2d at 1043-1044.

Second, although Pustelnik initially stated that he did not recall the September 13 Forward, he proceeded to provide testimony about the email and about his typical communications with his wife regarding documents to print. Ex. 2, at 562-563. He also testified that she would not have understood the contents of the document. *Id.* at 563. Pustelnik's testimony regarding this document and regarding his usual practice of sending his wife documents to print waived any privilege he might claim over this communication. *See United States v. Premises Known as 281 Syosset Woodbury Road, Woodbury, N.Y.*, 71 F.3d 1067, 1072 (2d Cir. 1995) ("When a witness who has previously testified voluntarily about the contents of certain confidential marital communications seeks, later, to invoke the privilege to protect other communications, the court is confronted with a significant danger of distortion…. In such a situation, this privilege, no less than the Fifth Amendment, can be deemed to have been waived." (internal quotation marks omitted)); *Engelmann*, 1995 WL 214500, at *3 (where party claiming privilege answered several questions concerning private marital conversations without asserting any privilege, party would not be allowed to selectively assert privilege over communications in future depositions).

## II.   THE COURT SHOULD ADMIT THE AVALONBACKOFFICE EMAIL CHAIN

### A.   The AvalonBackOffice Email Chain is authentic and relevant.

The AvalonBackOffice Email Chain is both authentic and relevant and should be admitted into evidence by the Court. The document was produced to FINRA by Credit Suisse, where Pustelnik's wife worked. If necessary, a FINRA official will testify that FINRA obtained the email from Credit Suisse after Pustelnik refused to produce communications from his Gmail

account (serge.pustelnik@gmail.com) to FINRA.  *See* Fed. R. Evid. 901(b)(1)**Error! Bookmark not defined.**.

The chain includes emails to and from email addresses (serge.pustelnik@gmail.com and janekisa@gmail.com) that Pustelnik has admitted are used by him and his wife.  In one email, Pustelnik's wife refers to questions from a person named Luda Lubetsky as "moms question." Pustelnik's mother-in-law has the surname Lubetsky.  In other emails, Pustelnik's wife refers to information "for Seriy," which Pustelnik has admitted is an affectionate form of his first name, "Serge."  He has also admitted that the emails in this chain that are sent to avalonbackoffice@gmail.com and addressed to "Serge" appear to be emails sent to him.  Under Fed. R. Evid. 901(b)(4), there is an ample basis for the Court to find the email chain authentic.

The AvalonBackOffice Email Chain is also relevant.  Pustelnik has denied that he was involved in the management of Avalon or was a control person of Avalon.  He has also testified under oath that he does not "think" he used the avalonbackoffice@gmail.com email address. The AvalonBackOffice Email Chain indicates, however, that Pustelnik did in fact use that email address.  It therefore tends to show that Pustelnik has sought to hide his involvement in Avalon and is thus relevant to his state of mind.  Further, other emails sent to and/or received from the avalonbackofffice@gmail.com account show that the user of that account was involved in internal Avalon functions.  *See, e.g.*, Ex. 4.  The AvalonBackOffice Email Chain – in conjunction with these other emails – tends to show that Pustelnik was in fact involved in running Avalon.  The document is relevant under Federal Rule of Evidence 401.

   B.   **The AvalonBackOffice Email Chain is not privileged.**

Much of the AvalonBackOffice Email Chain consists of communications not between Pustelnik and his wife, but between each of them and third parties.  The first several emails in the

chain chronologically (*i.e.*, those on August 22 and August 25, 2011) are between finance@avalonfundaktiv.com and avalonbackoffice@gmail.com.  Ex. 6B, at CSSU-E-026699-CSSU-E-026700.  Pustelnik cannot claim privilege over those emails because they are not communications between Pustelnik and his wife.

On August 26, 2011, avalonbackoffice@gmail.com forwarded those earlier emails to Pustelnik's wife.  This email is not a privileged communication for multiple reasons.  First, Pustelnik cannot claim that this is a marital communication made in confidence after having testified under oath that he did not remember sending or receiving these emails and further testified that he did not "think" that he used the avalonbackoffice@gmail.com address.  Second, this email contains no content or text; it is simply an email forwarding earlier emails.  As set forth above, a transmittal that contains no communication cannot be a privileged communication.

In any event, the entire email chain is then forwarded by Pustelnik's wife to a third person (her mother).  The emails on August 29, August 30, and September 1, 2011, at 9:24 a.m. do not involve Pustelnik at all.  Rather, they are communications between Pustelnik's wife and a third party.  CSSU-E-026698- CSSU-E-026699.  Those three communications are not privileged communications.  And disclosure of the earlier communications in the chain to a third party waived any privilege that might have existed over those earlier communications.  *See Engelmann*, 1995 WL 214500, at *3.

Indeed, counsel for the Avalon Defendants expressly recognized that all of these emails prior to September 1, 2011 were not privileged.  Counsel noted that the emails prior to September 1, 2011, "were shared with the witness's mother-in-law, which I assume would then obviate the spousal communication privilege as to those prior communications."  Ex. 5, at 414-

415.  When asked, counsel for the Avalon Defendants confirmed that he was only asserting privilege over the September 1, 2011 emails, and not over any of the earlier emails.  *Id.* at 416.

The remaining emails in the chain on September 1, 2011 do appear to be communications between Pustelnik and his wife.  But in these communications, Pustelnik's wife is using her Credit Suisse email account (jane.pustelnik@credit-suisse.com).  Credit Suisse – a regulated entity in a highly regulated industry – doubtless advised its employees that emails sent or received over the Credit Suisse email system could be reviewed by Credit Suisse.  By using her employer's email system, Pustelnik's wife gave up any reasonable expectation that the email chain would remain confidential and thereby waived any privilege.  *See United States v. Etkin*, No. 07-CR-913 (KMK), 2008 WL 482281, at *3-5 (S.D.N.Y. Feb. 20, 2008); *see also In re Asia Global Crossing*, 322 B.R. 247, 257-258 (S.D.N.Y. Mar. 21, 2005).

      **C.**      **Even if the AvalonBackOffice Email Chain is privileged, Pustelnik has waived privilege over all except two emails in the chain.**

Even if the Court were to assume that the AvalonBackOffice Email Chain contains privileged communications, Pustelnik has waived any privilege over all of the emails in the chain except the first two emails on page 1 of the document.

First, Pustelnik's counsel invoked privilege only as to the first two emails on page 1 of the email chain (*i.e.*, the emails on September 1, 2011, at 9:34 a.m. and 9:37 a.m.  He confirmed not once, but twice, that he was only invoking privilege over that portion of the email chain.  Ex. 5, at 414-416.  He further stated that communication of the prior emails in the chain to Pustelnik's mother-in-law destroyed any privilege that might be asserted as to those emails.  The failure by Pustelnik and his counsel to timely invoke privilege over any emails in the chain other than the first two emails on page 1 constituted a waiver of any privilege.  *See Dien*, 609 F.2d at 1043-1044.

Second, during the deposition, Pustelnik answered questions regarding the remainder of the AvalonBackOffice Email Chain.  While he denied remembering or recognizing the email, he also admitted that emails in the chain appeared to be addressed to him, that his wife's use of the nickname "Seriy" appeared to refer to him, and that the email chain appeared to refer to prior medical events in his life.  Pustelnik's testimony – with counsel's permission – concerning the remainder of the email chain waived any privilege he might possibly assert as to those portions of the chain.  *See Premises Known as 281 Syosset Woodbury Road, Woodbury, N.Y.*, 71 F.3d at 1072; *Engelmann*, 1995 WL 214500, at *3.

       **D.**      **The Court should permit the introduction of a redacted version of the AvalonBackOffice Email Chain.**

As noted above, during the exchange of pretrial materials, the SEC advised counsel for the Avalon Defendants that the SEC was willing to redact from the AvalonBackOffice Email Chain (1) the emails between Pustelnik and his wife in September 1, 2011 (on page 1 of the document), and (2) phrases in the email chain referring to medical information.  The SEC's proposed redactions to the English language version of the email are attached hereto as Ex. 6C.  Counsel for the Avalon Defendants has advised the SEC that the redactions do not obviate his objections to the document on privilege grounds.

Nevertheless, the SEC respectfully requests that at trial, it be permitted to introduce redacted versions of the email.  With respect to the emails on September 1, 2011 between Pustelnik and his wife, while the SEC does not concede that those emails are privileged, the contents of the emails are not relevant to the case and the SEC does not plan to question any witness about the contents of the communications or to rely on the contents as part of its case.

With respect to the remaining phrases in the email chain that refer to medical information, these portions of the chain are not relevant to the case and refer to Pustelnik's

14

personal medical information.  The SEC respectfully submits that these portions of the chain should be redacted to avoid unnecessarily disclosing and possibly distracting the jury with potentially sensitive information regarding Pustelnik.

Should the Court grant the SEC's request to use redacted versions of the Avalon BackOffice Email Chain, the SEC will apply the parallel redactions to the original, foreign language version of the email (Ex. 6A) that the SEC has proposed making to the certified English translation (as reflected on Ex. 6C).

## CONCLUSION

For the foregoing reasons, the SEC respectfully requests that the Court enter an order:

(1) admitting into evidence SEC Trial Exhibit 230 (the September 13 Forward)

(2) admitting into evidence SEC Trial Exhibits 204A and 204B (the Avalon BackOffice Email Chain and certified translation), with the SEC's proposed redactions.

Dated:  September 13, 2019

Respectfully submitted,

/s/  Olivia S. Choe
David J. Gottesman
Olivia S. Choe
Sarah S. Nilson
U.S. Securities and Exchange Commission
100 F Street N.E.
Washington, D.C. 20549
Tel.: (202) 551-4881 (Choe)
Fax: (202) 772-9292
Email:  choeo@sec.gov

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on counsel for defendants Avalon, Fayyer, and Pustelnik via electronic mail.

Dated: September 13, 2019         /s/ Olivia S. Choe
                                  Olivia S. Choe