### SEC v. Lek Securities Corp. et al.
**Case No. 17-cv-1789(DLC)**

**Defendants' Requests To Charge/Proposed Jury Instructions**

### General Instructions

Duty of the Court and Jury

I will now instruct you as to the law.  It is your duty to accept these instructions of law and apply them to the facts as you determine them.  If an attorney or a witness has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.  You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate.

You, the members of the jury, are the sole and exclusive judges of the facts.  You must weigh and consider the evidence without regard to sympathy, prejudice, or passion for or against any party.  You decide upon the weight of the evidence that has been presented to you; you determine the credibility of the witnesses; you resolve such conflicts as there may be in the testimony; and you draw whatever reasonable inferences you decide to draw from the facts as you determine them.

What has been said by the lawyers in the opening statements, closing arguments, objections, or questions is not evidence.  The evidence before you consists of the answers given by witnesses, the exhibits that were received in evidence, and any stipulations of the parties that were received in evidence.  Evidence also includes admissions and answers to what are called "interrogatories," which I will explain to you later.  You may not consider any testimony that I have told you to disregard or that was stricken from the record.  Nor may you consider anything you heard about the contents of any exhibit that was not received in evidence.

Case 1:17-cv-01789-DLC   Document 481   Filed 09/18/19   Page 2 of 591

In determining these issues, no one may invade your province or functions as jurors. In order for you to determine the facts, you must rely upon your own recollection of the evidence. Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the plaintiff has proven its case. You are expressly to understand that the court has no opinion as to the verdict you should render in this case. As to the facts, ladies and gentlemen, you are the exclusive judges. You are to perform the duty of finding the facts without bias or prejudice to any party.[1]

---

[1] *Pesce v. City of N.Y.*, Case No. 12-cv-8663(DLC), Docket No. 81, at 2 (S.D.N.Y. May 4, 2016); *SEC v. Payton*, Case No. 14-cv-4644(JSR), Docket No. 133, at 4 (S.D.N.Y. March 1, 2016); 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 71.01, Instructions 71-2, 71-3 (2019); 3 Kevin F. O'Malley *et al.*, FED. JURY PRAC. & INSTR. §§ 103:01, 103:30 (6th ed. 2019).

Case 1:17-cv-01789-DLC   Document 434   Filed 09/18/19   Page 3 of 591

<u>Common Counsel</u>

Although Avalon, Mr. Fayyer and Mr. Pustelnik are being represented by the same counsel, you are not to treat them as one person. Each defendant is entitled to your separate consideration. The question of whether liability has been proven is personal to each defendant and must be decided by you as to each defendant individually.[2]

---

[2] 4 Sand, et al., *MODERN FED. JURY INSTR. (Civil)*, Instr. 71-8 (2011)

Case 1:17-cv-01789-DLC   Document 481   Filed 09/18/19   Page 4 of 591

## Duty of Impartiality / The Parties

All of the parties in this case, the plaintiff and the defendants, are equal under the law, and each of them is entitled to a just verdict. An individual, a corporation, and a government agency are equally entitled to a fair trial.  It would be improper for you to allow any personal feelings you might have about the plaintiff, any of the defendants, or the nature of the claims to influence you in any way.[3]

---

[3] *Pesce v. City of N.Y.*, Case No. 12-cv-8663(DLC), Docket No. 81, at 3 (S.D.N.Y. May 4, 2016); *SEC v. Tourre*, Case No. 10-cv-3229(KBF), Docket No. 465, at 5 (S.D.N.Y. July 31, 2013) (transcript of jury trial at 2770); *Wilson v. Vermont Castings, Inc.*, 977 F. Supp. 691, 699 (M.D. Pa. 1997), *aff'd*, 170 F.3d 391 (3rd Cir. 1999); 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 72.01, Instruction 72-1 (2019); 3 Kevin F. O'Malley *et al.*, FED. JURY PRAC. & INSTR. §§ 103:01, 103:12 (6th ed. 2019).

Case 1:17-cv-01789-DLC   Document 484   Filed 10/18/19   Page 5 of 131

<u>Burden of Proof: Preponderance of the Evidence</u>

In a civil case like this one, a party who is making a claim against another party has the "burden of proof," which is the burden of establishing each of the essential elements of its claim as to each party against whom it is making the claim. In this case, the party making claims is the plaintiff, the SEC. For the SEC to prevail on a particular claim against a given defendant, it must prove as to that defendant each of the essential elements of the claim by a preponderance of the evidence. In a moment, I will instruct you on the essential elements of each of the SEC's claims.

[On certain issues, called affirmative defenses, defendants have the burden of proving the essential elements of the defense by a preponderance of the evidence. I will also instruct you on the elements of any affirmative defense that any defendant raises.]

To prove something by a preponderance of the evidence means to prove that it is more likely so than not so. In other words, a preponderance of the evidence means that the evidence of the party that has the burden of proof is more convincing and persuasive to you than the evidence opposed to it. The difference in persuasiveness need not be great: you need only find that the scales tip, however slightly, in favor of the party with the burden of proof. This standard does not require proof to an absolutely certainty. In determining whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses and all of the exhibits, regardless of who may have introduced them.

Simply because I have permitted certain evidence to be introduced does not mean that I have decided on its importance or significance. That is for you to decide.

Some of you may have heard of proof "beyond a reasonable doubt," which is the standard of proof for a criminal trial. This is a civil case, not a criminal trial, and parties in a civil case do not have to satisfy that standard.  You should put that term out of your minds.[4]

---

[4] *Pesce v. City of N.Y.*, Case No. 12-cv-8663(DLC), Docket No. 81, at 3 (S.D.N.Y. May 4, 2016); *SEC v. Payton*, Case No. 14-cv-4644(JSR), Docket No. 133, at 4 (S.D.N.Y. March 1, 2016); *SEC v. Wyly*, Case No. 10-cv-5760(SAS), Docket No. 377, at 117 (S.D.N.Y. May 7, 2014) (transcript of jury trial at 3225); 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 73.01, Instruction 73-2 (2019); 3 Kevin F. O'Malley *et al*., FED. JURY PRAC. & INSTR. §§ 104:01, 104:03 (6th ed. 2019).

Case 1:17-cv-01789-DLC   Document 484   Filed 10/10/19   Page 7 of 131

<u>Direct and Circumstantial Evidence</u>

There are two types of evidence that you may properly use in reaching your verdict.  One type of evidence is direct evidence.  An example of direct evidence is a witness's testimony about something she knows by virtue of her own senses – something the witness has seen, felt, touched, or heard.  Direct evidence may also be in the form of an exhibit, such as a document.

The other type of evidence is circumstantial evidence.  Circumstantial evidence is evidence that tends to prove one fact by proof of other facts or circumstances.  There is a simple example of circumstantial evidence that is often used in this courthouse.  Assume that when you came into the courthouse this morning, the sun was shining and it was a nice day.  Assume that the courtroom blinds are drawn and you cannot look outside.  As you are sitting here, someone walks in with an umbrella that is dripping wet.  Somebody else walks in with a raincoat that is also dripping wet.

Now, you cannot look outside the courtroom and you cannot see whether or not it is raining.  So you have no direct evidence of that fact.  But on the combination of facts that I have given you, it would be reasonable and logical for you to conclude that between the time you arrived at the courthouse and the time these people walked in, it had started to rain.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from an established fact the existence or the nonexistence of some other fact.  Many facts, such as a person's state of mind, can only rarely be proved by direct evidence.

Circumstantial evidence has the same value as direct evidence; the law makes no distinction between direct and circumstantial evidence, but simply requires that you, the jury,

decide the facts in accordance with the preponderance of all of the evidence, both direct and circumstantial.[5]

---

[5] *Pesce v. City of N.Y.*, Case No. 12-cv-8663(DLC), Docket No. 81, at 19-20 (S.D.N.Y. May 4, 2016); *SEC v. Payton*, Case No. 14-cv-4644(JSR), Docket No. 133, at 7 (S.D.N.Y. March 1, 2016); 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 74.01, Instruction 74-2 (2010); 3 Kevin F. O'Malley *et al*., FED. JURY PRAC. & INSTR. § 104:05 (6th ed. 2019).

Case 1:17-cv-01789-DLC   Document 484   Filed 10/18/19   Page 9 of 131

### Inference Defined

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact. An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist. There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The plaintiff asks you to draw one set of inferences, while the defense asks you to draw another. It is for you, and you alone, to decide what inferences you will draw. The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw -- but not required to draw -- from the facts which have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense. So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.[6]

---

[6] 4 Leonard B. Sand *et al., MODERN FED. JURY INSTR.* (Civil), Instruction 75-1 (2009)

Witness Credibility / Interest in Outcome

Now for the important subject of evaluating testimony.  How do you evaluate the credibility or believability of the witnesses?  The answer is that you use your plain common sense.  Common sense is your greatest asset as a juror.  You should ask yourselves, did the witness impress you as honest, open, and candid?  Or did the witness appear evasive or as though the witness was trying to hide something?  How responsive was the witness to the questions asked on direct examination and on cross-examination?

If you find that a witness is intentionally telling a falsehood, that is always a matter of importance that you should weigh carefully.  If you find that any witness has lied under oath at this trial, you should view the testimony of such a witness cautiously and weigh it with great care.  It is, however, for you to decide how much of the witness's testimony, if any, you wish to believe.  Few people recall every detail of every event precisely the same way.  A witness may be inaccurate, contradictory, or even untruthful in some respects and yet entirely believable and truthful in other respects.  It is for you to determine whether such inconsistencies are significant or inconsequential, and whether to accept or reject all, or to accept some and reject the balance, of any witness's testimony.

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit or suffer in some way from the outcome of the case.  Such interest in the outcome creates a motive to testify falsely and may sway a witness to testify in a way that advances his or her own interests.  Therefore, if you find that any witness whose testimony you are considering has an interest in the outcome of this trial, you should bear that factor in mind when evaluating the witness's credibility, and weigh it with great care.

There is no magic formula by which you can evaluate testimony.  You bring to this courtroom all your experience in life.  You determine for yourselves in many circumstances the reliability of statements that are made by others to you and upon which you are asked to rely and act.  You may use the same tests here that you use in your everyday lives. Among the factors you may consider are the witness's intelligence; the ability and opportunity the witness had to see, hear, or know about the things that the witness testified about; the witness's memory; any interest, bias, or prejudice the witness may have; the manner or demeanor of the witness while testifying; and the reasonableness of the witness's testimony in light of all the evidence in the case.[7]

---

[7] *Pesce v. City of N.Y.*, Case No. 12-cv-8663(DLC), Docket No. 81, at 21-23 (S.D.N.Y. May 4, 2016); 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 76.01, Instruction 76-3 (2019).

Case 1:17-cv-01789-DLC   Document 434   Filed 09/18/19   Page 12 of 99

<u>Discrepancies in Testimony</u>

You have heard evidence of discrepancies in the testimony of certain witnesses, and counsel have argued that such discrepancies are a reason for you to reject the testimony of those witnesses. You are instructed that evidence of discrepancies may be a basis to disbelieve a witness' testimony. On the other hand, discrepancies in a witness' testimony or between his testimony and that of others do not necessarily mean that the witness' entire testimony should be discredited. People sometimes forget things, and even a truthful witness may be nervous and contradict himself. It is also a fact that two people witnessing an event will see or hear it differently. Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance; but a willful falsehood always is a matter of importance and should be considered seriously. It is for you to decide, based on your total impression of the witness, how to weigh the discrepancies in his or her testimony. You should, as always, use common sense and your own good judgment.[8]

---

[8] 4 Leonard B. Sand *et al., MODERN FED. JURY INSTR.* (Civil), Instruction 76-4 (2009).

Prior Statements of Defendants

You have heard evidence of statements made by the defendants or their agents before trial, including statements made by the defendants or their agents during the SEC's investigation, or during depositions, or in documents, such as emails.  You may consider the prior statements of the defendants or their agents to be admissions, which means that such statements are affirmative evidence of the truth of what the defendants or their agents said before the trial.[9]

---

[9] *SEC v. Wyly*, Case No. 10-cv-5760(SAS), Docket No. 377, at 123-125 (S.D.N.Y. May 7, 2014) (transcript of jury trial at 3231-3233).

### Prior Inconsistent Statements

On some occasions during this trial, witnesses were asked to explain an apparent inconsistency between testimony offered at this trial and previous statements made by the witness.  It is for you to determine whether a prior statement was inconsistent, and if so, how much (if any) weight to give to an inconsistent statement in assessing the witness's credibility at trial.

In making this determination, you may consider whether there was, in fact, any inconsistency, whether the witness purposely made a false statement or whether it was an innocent mistake, whether the inconsistency concerns an important fact or whether it had to do with a small detail, whether the witness had an explanation for the inconsistency and whether that explanation appeals to your common sense.  You should keep in mind that simple mistakes by a witness do not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately.  So, if a witness has made a misstatement, you need to consider whether it was simply an innocent lapse of memory or an intentional falsehood.  The significance of that may depend on whether the misstatement has to do with an important matter or only an unimportant detail.  It is your duty, based upon all the evidence and your own good judgment, to decide how much weight to give to the inconsistency.

A prior inconsistent statement of a witness who is not a party in this case, or is not an agent of a party to this case, is not evidence you should consider in determining whether the SEC has proven its case.  The prior inconsistent statement was placed before you solely for the purpose of attacking the credibility of the witness.

But the rule is different for parties.  A prior inconsistent statement of a defendant is evidence if that statement was offered by the SEC.  You may consider such statements for any purpose, including assessing the credibility of that defendant as a witness.  In addition, as I will explain later, in some situations, the statements of an agent of a defendant may be attributed to that defendant.  In such situations, a prior inconsistent statement of an agent of a defendant is evidence if offered by the SEC, and you may consider such statements for any purpose.[10]

---

[10] *SEC v. Wyly*, Case No. 10-cv-5760(SAS), Docket No. 377, at 123-125 (S.D.N.Y. May 7, 2014) (transcript of jury trial at 3231-3233); 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 76.01, Instruction 76-5 (2019).

15

<u>Deposition Testimony</u>

Some of the testimony here has been presented in the form of depositions that have been received in evidence.  In a deposition, a witness provides sworn, recorded answers to questions that are asked in advance of trial by attorneys for the parties in the case.  This is part of pretrial discovery, and each side is entitled to take depositions. You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony a witness gave at trial.  As with other prior statements, you may also consider the prior statements of a witness that are inconsistent with their trial testimony in deciding what weight, if any, to give to their trial testimony.[11]

---

[11] *SEC v. Wyly*, Case No. 10-cv-5760(SAS), Docket No. 377, at 123, 127  (S.D.N.Y. May 7, 2014) (transcript of jury trial at 3231, 3237); 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 74.07, Instruction 74-14 (2019); 3 Kevin F. O'Malley *et al.*, FED. JURY PRAC. & INSTR. § 105:02 (6th ed. 2019).

Case 1:17-cv-01789-DLC   Document 434   Filed 09/13/19   Page 17 of 99

<u>Expert Testimony</u>

You have heard from certain expert witnesses in this matter. An expert is allowed to express an opinion on those matters about which he has special knowledge and training.  Expert testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

However, your role in judging credibility and assessing weight applies just as much to experts as to other witnesses. When you consider the expert opinions that were received in evidence in this case, you may give them as much or as little weight as you think they deserve. For example, an expert witness necessarily bases his or her opinion, in part or in whole, on what the expert learned from others, and you may conclude that the weight given the expert's opinions may be affected by how accurate or inaccurate that underlying information is. More generally, if you find that the opinions of an expert were not based on sufficient data, education, or experience, or if you should conclude that the trustworthiness or credibility of expert is questionable, or if the opinion of the expert is outweighed, in your judgment, by other evidence in the case, then you may, if you wish, disregard the opinions of the expert, either entirely or in part. On the other hand, if you find that an expert is credible, and that the expert's opinions are based on sufficient data, education, and experience, and that other evidence does not give you reason to doubt the expert's conclusions, you may, if you wish, rely on that expert's opinions and give them whatever weight you deem appropriate. You should not, however, accept a witness's

testimony merely because he is an expert.  Nor should you substitute it for your own reason,

judgment, and common sense.  The determination of facts in this case rests solely with you.[12]

---

[12] *Pesce v. City of N.Y.*, Case No. 12-cv-8663(DLC), Docket No. 81, at 24 (S.D.N.Y. May 4, 2016); 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 76.01, Instruction 76-9 (2019).

Case 1:17-cv-01789-DLC Document 484 Filed 09/13/19 Page 19 of 99

<u>Summary Evidence</u>

Some of the evidence in this case has been presented to you through the testimony of summary witnesses and through certain exhibits in the form of charts and summaries.

The charts and summaries have been admitted into evidence and have been shown to you during the trial for the purpose of explaining facts that are allegedly contained in books, records, or other documents, which are also in evidence in the case but may not be conveniently examined in court. You may consider the charts and summaries as you would any other evidence admitted during the trial and give them such weight and importance, if any, as you feel they deserve.[13]

The testimony of summary witnesses has also been presented to you for the purpose of explaining evidence and information contained in voluminous documents and other complex records that cannot be conveniently examined in court.[14] A summary witness is different from an expert witness. A summary witness does not offer an opinion, but rather synthesizes and summarizes information in documents and records that are already in evidence.[15] In weighing the testimony of a summary witness, you may consider all of the considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony. You may give the summary witness's testimony whatever weight, if any, you find it deserves in light of all of the evidence in this case.[16]

---

[13] 3 Kevin F. O'Malley *et al.*, 1A FED. JURY PRAC. & INSTR. § 14:02 (6th ed. Feb. 2019 update); Seventh Circuit Pattern Civ. Jury Instr. 1.23; Eighth Circuit Civil Jury Instr. 2.12.

[14] *United States v. Lemire*, 720 F.2d 1327, 1348 (D.C. Cir. 1983); *see also United States v. McElroy*, 587 F.3d 73, 80-81 (1st Cir. 2009); Fed. R. Evid. 1006.

[15] *United States v. Stierhoff*, 500 F. Supp. 2d 55, 67-68 (D.R.I. 2007).

[16] *Adapted* from 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 76.01, Instruction 76-9 (2019).

Persons Not on Trial

Some of the people whose names you have heard or from whom you have heard in connection with these events are not on trial.  You may not draw any inference, favorable or unfavorable, to the SEC or to the defendants, from the fact that any person is not on trial before you at the present time.  I instruct you not to speculate why those people or any entities are not part of this action.[17]

---

[17] *SEC v. Tourre*, Case No. 10-cv-3229(KBF), Docket No. 465, at 12 (S.D.N.Y. July 31, 2013) (transcript of jury trial at 2777); *SEC v. Wyly*, Case No. 10-cv-5760(SAS), Docket No. 377, at 125 (S.D.N.Y. May 7, 2014) (transcript of jury trial at 3233).

### Absence of Evidence[18]

You have also heard about individuals or entities who have not appeared at this trial as witnesses. In some instances, each party had equal access to that witness. In others, one party may have had easier access. I instruct you again not to speculate as to why certain witness did or did not appear.  The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

---

[18] *SEC v. Tourre*, Case No. 10-cv-3229(KBF), Docket No. 465, at 12 (S.D.N.Y. July 31, 2013) (transcript of jury trial at 2777); *SEC v. Wyly*, Case No. 10-cv-5760(SAS), Docket No. 377, at 127 (S.D.N.Y. May 7, 2014) (transcript of jury trial at 3235); 3 Kevin F. O'Malley *et al*., FED. JURY PRAC. & INSTR. § 105:11 (6th ed. 2019).

<u>Redactions</u>

During the course of this trial, you have seen among the exhibits received in evidence some documents that are redacted.  "Redacted" means that part of the document has been removed or crossed out at my direction for reasons that are not your concern.  You are to concern yourself only with the part of the document that has been admitted into evidence.  You should not consider any possible reason why the other part of the document has been redacted.[19]

---

[19] *SEC v. Wyly*, Case No. 10-cv-5760(SAS), Docket No. 377, at 128 (S.D.N.Y. May 7, 2014) (transcript of jury trial at 3236).

### Transcripts and Translations

The parties have shown you typed transcripts of certain audio recordings.  The recordings themselves were received in evidence.  The transcripts are not evidence; they were provided to you as an aid or a guide to assist you in listening to the recordings. As you may recall, when the recordings were played, I advised you to listen very carefully to the recordings themselves.  You alone should make your own interpretation of what you heard on the recordings.  If you think you heard something different from what was typed on the transcript, then what you heard is controlling.

Documents in Russian and/or Ukrainian were introduced during this trial, and English language translations of those documents were also introduced.  If a translation was introduced, you are to consider only that evidence provided through the translation.  Although some of you may know the language used, it is important that all jurors consider the same evidence.  Therefore, you must base your decision on the evidence presented in the English translation and disregard any different meaning of the non-English words.[20]

---

[20] *SEC v. Tourre*, Case No. 10-cv-3229(KBF), Docket No. 465, at 10-11 (S.D.N.Y. July 31, 2013) (transcript of jury trial at 2775-2776); 3 Kevin F. O'Malley *et al.*, FED. JURY PRAC. & INSTR. § 103:35 (6th ed. 2019).

Case 1:17-cv-01789-DLC   Document 484   Filed 09/13/19   Page 24 of 99

<u>Requests for Admission</u>

You have heard evidence in the form of certain admissions in response to requests for admission made by the SEC.  Requests for admission are written statements of fact submitted by one party prior to trial to the opposing party.  Any matters that the responding party admits to are binding and conclusive on that party for the purposes of this trial.[21]

---

[21] 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 74.08, Instruction 74-15 (2019); *see also* Fed. R. Civ. P. 36.

Case 1:17-cv-01789-DLC   Document 484   Filed 09/18/19   Page 25 of 99

## Stipulations

You have heard that the parties have stipulated to certain facts.  A stipulation of facts is an agreement among the parties that a certain fact is true.  You must regard such agreed facts as true.[22]

---

[22] 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 74.02, Instruction 74-4 (2019).

Evidence of Defendants' Compensation or Wealth

You have heard evidence about the compensation and wealth of certain defendants. This evidence and your opinion of other people's wealth must not enter your judgment of whether or not any of the defendants is liable in this case. You can consider this evidence only to the extent that it may relate to the parties' claims and defenses.[23]

---

[23] *United States v. Quattrone*, 441 F.3d 153, 187 (2d Cir. 2006); *United States v. Cassese*, 290 F. Supp. 2d 443, 457 (S.D.N.Y. 2003), *aff'd*, 428 F.3d 92 (2d Cir. 2005).

## Multiple Defendants

Although there is more than one defendant in this case, it does not follow from that fact that if you find that one defendant is liable or not liable, your verdict as to the other defendants should be the same. Each defendant is entitled to a fair consideration of the evidence. No defendant is to be prejudiced should you find against another defendant. Unless otherwise stated, all instructions I give you govern the case as to each defendant.[24]

---

[24] 3 O'Malley, et al., FED. JURY PRACTICE AND INSTR. § 103.14 (6th ed. 2011).

Case 1:17-cv-01789-DLC   Document 454   Filed 09/18/19   Page 28 of 55

## Separate Claims

The plaintiff's Complaint contains multiple separate claims. You must not draw any inference from the number of claims included in the Complaint. Each claim alleges a separate violation, and you must consider each claim separately as to each defendant. Your determination on one particular claim should not affect your decision on any other claim.[25]

---

[25] Sand, et al., *MODERN FED. JURY INSTR. (Criminal)*, Instr. No. 3-6 (2011).

## All Parties Equal Before The Law

The fact that a government agency, here, the SEC, is the plaintiff in this case must not affect your decision in any way and entitles the plaintiff to no greater consideration than that accorded to an individual or any other defendant. A government agency and all other persons stand equal before the law and must be dealt with as equals in a court of justice. Further, you should not give any weight whatsoever to the SEC's decision to file this lawsuit.[26]

---

[26] 11th Cir. Pattern Jury Instr. § 2.3 (2005); Charge to the Jury in *United States* v. Bergonzi, No. 00-0505 (N.D. Cal. Oct. 27, 2006), available at 2006 WL 5347401; Charge to the Jury in *SEC v. Koenig*, Civ. No. 02-2180 (N.D. Ill. June 29, 2006), available at 2006 WL 2127852.

Presumption of Regularity

Unless and until outweighed by evidence to the contrary, you may find that official duty has been regularly performed, that private transactions have been fair and regular, that the ordinary course of business or employment has been followed, that things have happened according to the ordinary course of nature and the ordinary habits of life, and that the law has been obeyed.[27]

---

[27] 3 O'Malley, et al., FED. JURY PRACTICE AND INSTR. § 104.21 (6th ed. 2011).

## Liability

### Liability in General

We now turn to the specific claims brought by the SEC against the defendants.  In assessing these claims, you must determine, in accordance with my instructions, whether the SEC has proved each of the essential elements of each claim against each defendant by a preponderance of the credible evidence, in other words that it is more likely true than not true. This is known as establishing liability.  Although this is a case brought by an agency of the United States government, it is a civil case and not a criminal case.

The SEC has asserted multiple claims against multiple defendants in this case.  You must give separate and fair consideration to each of the SEC's claims and to each defendant.  It does not follow, for example, that if one defendant is liable, another defendant is automatically also liable on the same claim, or vice versa.  Similarly, the fact that you find a defendant liable on one claim does not necessarily mean that you should find the defendant liable on another claim.

If you find any defendant liable on any claim, then I will determine what the appropriate remedies should be, and you should not consider or speculate about what kind of remedy I might impose.[28]

---

[28] *SEC v. Payton*, Case No. 14-cv-4644(JSR), Docket No. 133, at 10 (S.D.N.Y. March 1, 2016); *SEC v. Tourre*, Case No. 10-cv-3229(KBF), Docket No. 465, at 5 (S.D.N.Y. July 31, 2013) (transcript of jury trial at 2770); *SEC v. Wyly*, Case No. 10-cv-5760(SAS), Docket No. 377, at 166 (S.D.N.Y. May 7, 2014) (transcript of jury trial at 3274); 3 Kevin F. O'Malley *et al.*, FED. JURY PRAC. & INSTR. § 103:14 (6th ed. 2019).

## Overview of the Violations Charged

The SEC alleges that the defendants violated various parts of two federal statutes:  the Securities Act of 1933, which I will call the Securities Act, and the Securities Exchange Act of 1934, which I will call the Exchange Act.  The stock market crash of 1929 led to the enactment of both of these statutes, as well as the creation of the SEC.  These laws – and related SEC rules – prohibit people from engaging in manipulative practices that tend to distort the fair and just price of a stock.  The laws are designed to enforce investor expectations that the securities markets are free from fraud and to prevent any deceptive or manipulative practice that undermines the function and purpose of a free market.[29]

In this case, the SEC alleges that the defendants engaged in market manipulation.  The prices of stocks and other securities are supposed to reflect legitimate trading activity in the market, meaning that the natural interplay of supply and demand for a security by investors determines the price of that security.  Market manipulation is the use of deceptive and manipulative practices that are intended to mislead other investors by artificially distorting market activity and sending false pricing signals to the market.[30]

For purposes of these instructions, the term "investors" means anyone who buys or sells securities, or who considers buying or selling securities.  The term "securities" includes stock and options.

---

[29] 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 82.01, Instruction 82-2 (2019); *SEC v. Wyly*, Case No. 10-cv-5760(SAS), Docket No. 377, at 129-32  (S.D.N.Y. May 7, 2014) (transcript of jury trial at 3237-3241).

[30] *Santa Fe Indus, Inc. v. Green*, 430 U.S. 462, 476-77 (1977); *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 124, 130 (2d Cir. 2011); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 100-101 (2d Cir. 2007); *Gurary v. Winehouse*, 190 F.3d 37, 45 (2d Cir.1999); *SEC v. Lek Sec. Corp.*, 276 F. Supp. 3d 49, 59 (S.D.N.Y. 2017).

The SEC has brought multiple claims against each of the three defendants.  These claims fall into three broad categories.  In a moment, I will give you detailed instructions about the claims, but first I will provide you with a general summary of these three categories.

First: The SEC has brought multiple claims alleging the defendants engaged in market manipulation.  Specifically, the SEC alleges that the defendants engaged in two trading strategies that the SEC contends are manipulative – the so-called layering strategy and the cross-market strategy – that the SEC contends were intended to artificially affect market activity, or to send false pricing signals to the market and thereby mislead investors as to how other market participants valued a security.  I will call these the market manipulation claims. Importantly, the terms "layering strategy" and "cross-market strategy," as well as "layering loops," "loud side orders," "quite side orders," and "cross-market loops" are not terms that are defined by law are not among the elements necessary the SEC must prove to establish its claims for manipulation under the law. In other words, whether or not so-called layering or cross-market strategy did occur does not, in itself establish the liability of any of the defendants for manipulation under the law. The jury may believe that layering or cross-market strategy did occur, and yet also find that the SEC has failed to prove an essential element necessary to prove manipulation again some or all of the defendants. If the SEC fails to prove by a preponderance of the evidence one of those essential elements of manipulation that I will outline below as to any defendant, then the jury must find that defendant not liable for manipulation.

Second:  The SEC has brought multiple claims alleging that defendants Fayyer and Pustelnik also aided and abetted market manipulation by certain other defendants.  In these claims, the SEC alleges that the defendants knowingly or recklessly provided substantial

assistance to another defendant's violation of a securities law.  I will call these the aiding- and-abetting claims.

Third:  The SEC has brought multiple claims alleging that the defendants are also liable because they exercised control over other persons who engaged in violations of the securities laws.  I will call these the control person claims.

In a few moments, I will instruct you on the law that you are to apply to determine whether the SEC has met its burden of proof on each of these claims.  First, I will discuss certain principles for you to keep in mind as you make your decision on whether the SEC has proven its case.

Corporate Responsibility

One of the defendants in this case – Avalon – is a corporate entity.  In general, there are three ways in which a corporation may be held liable for violating the securities laws.  First, a corporate defendant may be held directly responsible for its own actions.  For example, in this case, the SEC has alleged that Avalon entered into manipulative trades through its account at Lek Securities and seeks to hold Avalon liable for that conduct.

Second, as I will explain in a moment, you may find a corporate defendant liable as a control person.  As I previously noted, the SEC has alleged that Avalon is liable because it was a control person of others who violated the laws.[31]

Third, because a corporate entity can only act through its agents, a corporation may be held liable if an agent of the corporation violated the law.  This rule is known as the doctrine of *respondeat superior*.[32]

In order to find a corporate defendant liable under the doctrine of *respondeat superior*, you must find the following by a preponderance of the evidence:

First, you must find that an agent of the entity violated the law.  An agent can be an employee, independent contractor, or officer of the corporation.  In this case, the SEC has alleged that Fayyer, Pustelnik, and Avalon's traders were agents of Avalon.  I will instruct you in a moment on the law you must follow in determining whether any of these persons violated the law.

---

[31] *Marbury Mgmt, Inc. v. Kohn*, 629 F.2d 705, 716 (2d Cir. 1980); *SEC v. AIC, Inc.*, No. 3:11-cv-00176, Docket No. 221, at 246-49 (E.D. Tenn. Oct. 9-10, 2013) (transcript of jury trial at 8203-8206).

[32] 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 72.01, Instruction 72-2 (2019); *United States v. Thomas*, 377 F.3d 232, 238 (2d Cir. 2004); Restatement (Second) of Agency § 14N (1958).

Second, you must find that the agent had the authority to act in the manner in which he is alleged to have acted.

The authority given to an agent may be express, apparent, or implied. Express authority is created by the direct verbal or written giving of authority by the corporation to its agent. For example, a corporation might give its agent express authority in a written agreement.

Apparent authority exists where a corporate entity, by its acts and conduct, leads a third party to reasonably believe that the agent possesses authority. To other people dealing with the agent, knowing of his position, the agent appears to have authority to do all of those things ordinarily done by someone in that position, regardless of any unknown limitations that may be imposed on the particular agent.

Implied authority arises when a corporation designates someone as the kind of agent who ordinarily possesses certain powers. An agent designated to carry out an act is deemed authorized to do it in the manner in which the act entrusted to him is usually done. An agent may have implied authority to engage in acts that are against the law, provided those acts are within the scope of the agent's employment. An act is within the scope of employment (1) if it is sufficiently related to the kind of acts the agent was employed to perform, (2) if it was done substantially within the time and space limits of the job, and (3) if it was carried out, at least in part, by a purpose to serve the corporate entity.[33]

An agent's acts and knowledge are not imputed to the corporation if the agent was not acting within the scope of their agency and for the benefit of the corporation. Thus, if the jury

---

[33] 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 72.01, Instruction 72-2 (2019); *Hidden Brook Air, Inc. v. Thabet Aviation Intern. Inc.*, 241 F. Supp. 2d 246, 260-61 (S.D.N.Y. 2002); *In re Parmalat Secs. Litig.*, 594 F. Supp. 2d 444, 451-52 (S.D.N.Y. 2009); *Cromer Fin. Ltd. v. Berger*, Nos. 00 Civ. 2284, 2498(DLC), 2002 WL 826847, at *4 & n.5 (S.D.N.Y. May 2, 2002); *SEC v. AIC, Inc.*, No. 3:11-cv-00176, Docket No. 221, at 246-49 (E.D. Tenn. Oct. 9-10, 2013) (transcript of jury trial at 8203-8206)

finds, for example, that an Avalon agent engaged in misconduct prohibited by the terms of that agency without Avalon's knowledge or consent, then that agent's misconduct should not be imputed to Avalon.[34]

Moreover, an agent's acts and knowledge are not imputed to the corporation when the agent was acting entirely in their own interest and not those of the corporation. In that case, it does not matter that the corporation also benefited from the agent's misconduct. Thus, if the jury finds, for example, that an Avalon agent engaged in misconduct solely for the purpose of enriching themselves, and not for the purpose of benefiting Avalon, then that agent's misconduct should not be imputed to Avalon.[35]

---

[34] *Buckley v. Deloitte & Touche USA LLP*, No. 06-civ-329, 2007 WL 1491403, at *6 (S.D.N.Y. May 22, 2007); *Wight v. BankAmerica Corp.*, 219 F.3d 79, 86 (2d Cir. 2000) (A "fundamental principle of agency" is that employees' misconduct "*within the scope of their employment* will normally be imputed to the corporation.") (emphasis added and internal quotations removed).

[35] *In re CBI Holding Co., Inc.*, 529 F.3d 432, 451 (2d Cir. 2008).

<u>SEC Not Required to Prove Reliance, Harm, or Loss Causation</u>

You have heard testimony from some witnesses about economic harm that the SEC alleges was the result of the defendants' conduct.  But the SEC does not need to prove that any person actually relied upon or suffered harm as a result of a defendant's conduct, and you do not need to find such reliance or harm in order to find a defendant liable.[36]

---

[36] *SEC v. Simpson Capital Mgm't, Inc.*, 586 F. Supp. 2d 196 (S.D.N.Y. 2008).

The Market Manipulation Claims

Section 10(b) and Rule 10b-5 of the Exchange Act

The first market manipulation claim involves Section 10(b) of the Exchange Act and subparts (a) and (c) of its accompanying rule, Rule 10b-5.  Federal statutes and rules have the force of law and must be obeyed.   Section 10(b) and Rule 10b-5 prohibit (1) using any device, scheme, or artifice to defraud in connection with the purchase or sale of securities; and (2) engaging in any act, practice, or course of business that operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of securities.[37]  The SEC has alleged that the defendants violated Section 10(b) and Rule 10b-5.

In order to meet its burden of proof on this claim against a defendant, the SEC must establish by a preponderance of the evidence each of the following elements.

First, the SEC must prove that the defendant, either directly or indirectly, committed a manipulative act in furtherance of a scheme to defraud,[38] or assisted in its perpetration.[39]  A scheme to defraud is a plan for the accomplishment of a fraudulent objective.  Fraud is a general term that covers various efforts that individuals may devise to take advantage of others by deception.[40]  Manipulative acts are those that are intended to mislead investors by injecting inaccurate information into the market to deceive investors as to how other market participants

---

[37] 15 U.S.C. § 78j(b); 17 C.F.R. 240.10b-5(a), (c); *CompuDyne Corp. v. Shane*, 453 F. Supp. 2d 807, 821 (S.D.N.Y. 2006).

[38] *CompuDyne Corp. v. Shane*, 453 F. Supp. 2d 807, 821 (S.D.N.Y. 2006); *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 491-92 (S.D.N.Y. 2005); *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 336 (S.D.N.Y. 2004).

[39] *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1471 (2d Cir. 1996).

[40] *SEC v. Wyly*, Case No. 10-cv-5760(SAS), Docket No. 377, at 134-35 (S.D.N.Y. May 7, 2014) (transcript of jury trial at 3242-43); *SEC v. Tourre*, Case No. 10-cv-3229(KBF), Docket No. 465, at 17 (S.D.N.Y. July 31, 2013) (transcript of jury trial at 2782).

have valued a security.[41]  Manipulative acts create a false impression of market activity.[42]  A manipulative act need not be successful in order to violate the securities laws.[43]  To constitute a manipulative act open market orders or transactions must be willfully combined with something more to create a false impression of how market participants value a security.[44]

Second, the SEC must prove that the defendant's manipulative act or acts caused an artificial market impact. To do so, the SEC must establish by a preponderance of the evidence that: (1) defendant possessed an ability to influence market prices; (2) an artificial price existed; (3) defendant caused the artificial prices; (4) defendant specifically intended to cause the artificial price.[45] The market is not misled when a transaction's terms are fully disclosed.[46] An artificial price is a price that does not reflect basic forces of supply and demand.[47] A price is artificial when it has been set by some mechanism that has the effect of distorting those prices and preventing the determination of those prices by free competition alone.[48] Price movements in the market are expected to be affected by orders and trades that occur in the marketplace, that

---

[41] *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 100 (2d Cir. 2007); *CP Stone Fort Holdings, LLC v. Doe*, Case No. 16 C 4991, 2017 WL 1093166, at *3-4 (N.D. Ill. Mar. 22, 2017).

[42] *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 100-101 (2d Cir. 2007); *CP Stone Fort Holdings, LLC v. Doe*, Case No. 16 C 4991, 2017 WL 1093166, at *3-4 (N.D. Ill. Mar. 22, 2017).

[43] *Koch v. SEC*, 793 F.3d 147, 153-154 (D.C. Cir. 2015); *see also United States v. Weaver*, 860 F.3d 90, 97 (2d Cir. 2017); *SEC v. Lek Sec. Corp.*, 276 F. Supp. 3d 49, 60 (S.D.N.Y. 2017).

[44] *ATSI Communications v. Shaar Fund*, 493 F.3d 87, 101 (2d Cir. 2007).

[45] *In re Amaranth Natural Gas Commodities Litig.*, 730 F.3d 170, 183 (2d Cir. 2013) (*quoting Hershey v. Energy Transfer Partners*, 610 F.3d 239, 247 (5th Cir. 2010); *CFTC v. Wilson,* No. 13 Civ. 7884 (RJS), 2018 WL 6322024 (S.D.N.Y. Nov. 30, 3018).

[46] *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 130 (2d Cir. 2011).

[47] *CFTC v. Wilson*, No. 13 Civ. 7884 (RJS), 2018 WL 6322024 at *13 (S.D.N.Y. Nov. 30, 2018) (*quoting CFTC v. Parnon Energy Inc.*, 875 F. Supp. 2d 233, 246 (S.D.N.Y.)).

[48] *CFTC v.* Wilson, 2018 WL 6322024 at *13.

market prices may have changed as a result of orders or trades at issue in this case does not necessarily mean that those resulting prices were artificial. Likewise, a trader's intent to affect market prices or knowledge that their orders or trades may affect market prices does not itself render any resulting price movement in a security artificial.[49]

Third, the SEC must prove that the defendant's manipulative act or acts injected false information into the marketplace. An order placed in the open marketplace or trades executed with uninvolved third parties generally, without something more, do not inject false information into the marketplace and thus cannot constitute manipulation.[50] The jury cannot infer unlawful intent from lawful activity alone, and otherwise lawful trading cannot be regarded as evidence of manipulation.[51] The critical question is whether the defendant's manipulative act artificially affects a security's price in a deceptive manner by injecting inaccurate information into the marketplace.[52] The vast majority of all equity orders placed in the U.S. markets are canceled prior to execution.[53] That an order was not executed or was canceled prior to execution does not, in and of itself, render the information conveyed by that order false.

Fourth, the SEC must prove that the defendant's manipulative act or acts occurred in connection with the purchase or sale of a security.  "In connection with" means that the

---

[49] *CFTC v.* Wilson, 2018 WL 6322024 at *15.

[50] *ATSI Communications,* 493 F.3d at 100.

[51] *GFL Advantage Fund v. Colkitt,* 272 F.3d 189, 207 (3d Cir. 2001).

[52] *ATSI Communication, 493 F.3d* at 100; *GFL Advantage Fund,* 272 F.3d at 205.

[53] Equity Market Speed Relative to Order Placement, March 19, 2014 (available at https://www.sec.gov/marketstructure/research/highlight-2014-02.html#.WuDUiGYlTUI); The Speed of Equity Markets October 9, 2013 (available at https://www.sec.gov/marketstructure/research/highlight-2013-05.html#.WuDigWYlTUI).

defendant's conduct coincided with, or touched, any person's purchase or sale of a security.[54]  A stock is a security.  A stock option is also a security.[55]

Fifth, the SEC must prove that the defendant knowingly used, or caused to be used, the means or instrumentalities of interstate commerce or the mails, or of any facility of any national securities exchange, in furtherance of the alleged fraud.  This element may be satisfied, for example, by any mailing, fax, email, telephone call, or other electronic transmission of documents, or wiring or electronically transferring funds in connection with the purchase or sale of a security.  This element can also be satisfied if the facilities of a national securities exchange were used in connection with the purchase or sale of a security.

It is not necessary that a defendant be directly or personally involved in any mailing or use of interstate wires, or in the use of a facility of a national securities exchange.  If the defendant was an active participant in the scheme and took steps or engaged in conduct which he knew, or could reasonably foresee, would naturally and probably result in the use of the mails, interstate wires, or a facility of a national securities exchange, then you may find that he caused the mails to be used.[56]

If, as to a given defendant, the SEC proves each of these elements by a preponderance of the evidence, you should then consider the final element – whether the defendant acted with a certain state of mind.  I will discuss the state of mind requirement next.  However, if you find

---

[54] *SEC v. Zandford*, 535 U.S. 813, 822-23 (2002); *Superintendent of Ins. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12-13 (1971); *SEC v. Wyly*, Case No. 10-cv-5760(SAS), Docket No. 377, at 134 (S.D.N.Y. May 7, 2014) (transcript of jury trial at 3242).

[55] 15 U.S.C. § 77b(1).

[56] *SEC v. Solucorp Indus. Inc.*, 274 F. Supp. 2d 379, 419 (S.D.N.Y. 2003); *SEC v. Obus*, Case No. 06-cv-3150(GBD), Docket No. 179, at 178-79 (S.D.N.Y. June 17, 2014) (transcript of jury trial at 1734-35); 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 82.02, Instruction 82-10 (2019).

Case 1:17-cv-01789-DLC   Document 484   Filed 09/18/19   Page 43 of 99

that the SEC has failed to prove any of the elements I have just discussed, you should find that defendant not liable on this claim.

<u>Section 10(b) and Rule 10b-5 of the Exchange Act – State of Mind</u>

As I noted, to prevail on its claim under Section 10(b) and Rule 10b-5, the SEC must – in addition to the two elements I have just discussed – also establish by a preponderance of the evidence that the defendant acted with a certain state of mind. There are two different ways that the SEC may satisfy the state-of-mind requirement for a Section 10(b) claim; the SEC satisfies its burden if it proves either. It does not have to prove both.

First, the SEC may prove that the defendant acted with the intent to deceive, manipulate, or defraud.[57] In other words, the defendant acted knowingly, intentionally, and deliberately, and not mistakenly or inadvertently.[58] In the context of market manipulation, this means that the defendant intended to artificially affect market activity in order to deceive investors as to how other market participants valued a security.[59] In other words, the SEC must show that the defendant intended to create a false impression of supply or demand for a security, in order to mislead investors into believing that there was more interest in buying the security, or in selling security, than there really was.[60] Intent to defraud may be established by circumstantial evidence, including a person's words, acts, or conduct, and all the surrounding circumstances and the reasonable inferences that may be drawn from them.[61]

---

[57] *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976); *Sharette v. Credit Suisse Int'l*, 127 F. Supp. 3d 60, 79 (S.D.N.Y. 2015).

[58] *SEC v. Tourre*, Case No. 10-cv-3229(KBF), Docket No. 465, at 19 (S.D.N.Y. July 31, 2013) (transcript of jury trial at 2784).

[59] *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 100, 102 (2d Cir. 2007).

[60] *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 100, 101 (2d Cir. 2007).

[61] *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 n.30 (1983); *SEC v. Masri*, 523 F. Supp. 2d 361, 367 (S.D.N.Y. 2007).

The second way in which the SEC may satisfy the state-of-mind requirement is by showing that the defendant acted with a high degree of recklessness.  Recklessness is not mere ordinary negligence.  Recklessness is an extreme departure from the standards of ordinary care, which presents a danger of misleading other persons that is either known to the defendant or is so obvious that the defendant must have been aware of it.[62]  Evidence that a defendant failed to review or check information that he had a duty to monitor, or ignored obvious signs of fraud or manipulation, can be proof of recklessness.[63]  Evidence that a defendant ignored red flags or repeatedly turned a blind eye to them can be evidence that the defendant acted recklessly.[64]

When you consider whether the SEC has proved that a defendant possessed the necessary state of mind, you should keep in mind the following principles.

First, the question of whether a person acted with intent to defraud or with reckless disregard is a question of fact for you to determine, like any other fact question.  It is a question involving one's state of mind.  Direct proof of state of mind is almost never available, and is not required.  Circumstantial evidence, if believed, is of no less value than direct evidence.[65]

Second, as I explained above, Avalon is a corporate defendant.  With regard to Avalon's state of mind, if you find that an agent of Avalon acted knowingly and with the intent to defraud

---

[62] *Kalnit v. Eichler,* 264 F.3d 131, 139 (2d Cir. 2001); *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000); *Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir. 2000).

[63] *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000).

[64] *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 649 (S.D.N.Y. 2007); *SEC v. Takeyasu*, No. 17-CV-4866-GHW, 2018 WL 2849777, at *19 (S.D.N.Y. June 11, 2018).

[65] 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 82.02, Instruction 82-8 (2019).

or with reckless disregard for the truth, while acting within the scope of his authority, and not for that agent's own self-interest, that state of mind can be attributed to Avalon.[66]

Third, the SEC is not required to establish that the defendants were successful in their alleged manipulative conduct.[67] However, if you find that one or more of the defendants profited from the alleged fraud, you may consider that fact in relation to whether the defendant possessed the necessary state of mind.[68]

Intent alone is not sufficient to establish liability under Section 10(b). Conduct that does not meet all of the elements discussed above does not establish a claim for manipulation even if someone involved this those trades possessed manipulative intent.

Good faith is an absolute defense to Section 10(b) claims. Even manipulative acts to not amount to liability unless they are made with fraudulent intent. One acts an opinion honestly believed to be true is not chargeable with fraudulent intent, even though his opinion is erroneous or his belief is mistaken. In other words, an honest belief by a defendant that their actions do not constitute violations of the securities laws is a complete defense, however inaccurate that belief turns out to be. If the defendant believed in good faith that he or it was acting properly, even if he or it was mistaken in that belief, and even if others were injured by the conduct, there would be no violation of Section 10(B).[69]

---

[66] *In re PetroChina Co. Ltd. Secs. Litig.*, 120 F. Supp. 3d 340, 361 (S.D.N.Y. 2015); *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1089 n.3 (2d Cir. 1972); *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 381-82 (S.D.N.Y. 2007); *In re Investors Funding Corp. of N.Y. Sec. Litig.*, 523 F. Supp. 533, 540-41 (S.D.N.Y. 1980).

[67] *SEC v. Martino*, 255 F. Supp. 2d 268, 287 (S.D.N.Y. 2003); *Koch v. SEC*, 793 F.3d 147, 153-54 (D.C. Cir. 2015), cert. denied, 136 S. Ct. 1492, 194 L. Ed. 2d 586 (2016); *Markowski v. SEC*, 274 F.3d 525, 529-30 (D.C. Cir. 2001).

[68] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 325 (2007).

[69] Sand, MODERN FEDERAL JURY INSTRUCTIONS (Civil) § 82-8 (2011) ("Since an essential element of plaintiff's case is intent to defraud or recklessness, it follows that good faith on the part of the defendant is a complete defense to a charge of securities fraud. A defendant, however, has no burden to establish a defense of

The SEC has the burden of establishing lack of good faith and fraudulent. A defendant has no burden to establish a defense of good faith under Section 10(b). Rather, it is plaintiff's burden to prove fraudulent intent by a preponderance of the evidence as to each defendant, including that the defendant did not act in good faith. You are to consider a defendant's good faith subjectively, from the perspective of the individual defendant. It is possible for a defendant to disregard a danger that would be obvious to the ordinary or reasonable person and still act in good faith. In such instances, the defendant's subjective good faith is inconsistent with the intent to defraud, and therefore precludes a finding of liability under Section 10(b).

In evaluating good faith, you should take into account all the facts and circumstances of this case. It is not a defendant's burden to disprove intent to defraud. It is plaintiff's burden to prove intent to defraud by a preponderance of the evidence.

To conclude, if, as to a given defendant, the SEC proves each of the elements of a Section 10(b) claim by a preponderance of the evidence, you should find that defendant liable on this claim. If the SEC fails to prove one or more of these elements as to a given defendant, you should find that defendant not liable.

---

good faith. The burden is on the plaintiff to prove fraudulent intent and a consequent lack of good faith by a preponderance of the evidence."); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 206 (1976); Howard v. SEC, 376 F.3d 1136, 1146-49 (D.C. Cir. 2004); *United States v. Sayakhom*, 186 F.3d 928, 940 (9th Cir. 1999).

Section 17(a)(1)

The second market manipulation claim against the defendants involves Section 17(a)(1) of the Securities Act.  Section 17(a)(1) prohibits the use of any device, scheme, or artifice to defraud in the offer or sale of a security.[70]

In order to meet its burden of proof on this claim against a defendant, the SEC must establish by a preponderance of the evidence each of the following elements:

First, the SEC must prove that the defendant either directly or indirectly committed a manipulative act in furtherance of a scheme to defraud, or substantially participated in or assisted in its perpetration.[71]  I have previously instructed you on the definition of a scheme to defraud and manipulative acts, and you should apply those definitions here. As with a claim under Section 10(b) and Rule 10b-5 above, the SEC must also prove the defendant's manipulative act or acts caused an artificial market impact and injected false information into the marketplace, and you should also apply the standards for those elements discussed above here.

Second, the SEC must prove that the defendant engaged in a manipulative act in the offer or sale of a security.  An "offer" is any attempt or offer to dispose of or sell a security.[72] Orders and trades at issue in this case that were attempts to buy or actual purchases of securities are not covered by Section 17(a)(1) and thus should not be considered in determining liability on this claim.

---

[70] 15 U.S.C. § 77q(a)(1).

[71] *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996); *SEC v. Lek Sec. Corp.*, 276 F. Supp. 3d 49, 61 (S.D.N.Y. 2017); *SEC v. Curshen*, 888 F. Supp. 2d 1299, 1307 (S.D. Fla. 2012); *SEC v. Lee*, 720 F. Supp. 2d 305, 334 (S.D.N.Y. 2010).

[72] 15 U.S.C. § 77b(3).

Third, the SEC must prove that the defendant acted with a certain state of mind – either with intent to defraud or with reckless disregard for the truth.  I have previously instructed you on these terms, and you should apply the same definitions here.  As I explained already, if you find that an agent of Avalon acted with the intent to defraud or with reckless disregard for the truth, within the scope of his authority to act for Avalon, and not for that agent's own self-interest, that state of mind can be attributed to Avalon.

Fourth, the SEC must prove that the defendant knowingly used, or caused to be used, the means or instrumentalities of interstate commerce or the mails.  I have previously instructed you on what it means to use or cause to be used the means or instrumentalities of interstate commerce or the mails, and you should apply the same instruction here.

Good faith is an absolute defense to the SEC's Section 17(a)(1) claim. In determining whether the SEC has proven by a preponderance of the evidence that the defendant did not act in good faith, you should apply the instruction regarding good faith previously provided for Section 10(b) above.

If, as to a given defendant, the SEC proves each of these elements by a preponderance of the evidence, you should find that defendant liable on this claim.  If the SEC fails to prove one or more of these elements as to a given defendant, you should find that defendant not liable.

Section 17(a)(3)

The third set of market manipulation claim against the defendants involves Section 17(a)(3) of the Securities Act.  Section 17(a)(3) prohibits engaging in any transaction, practice, or course of business in the offer or sale of security, which operates or would operate as a fraud or deceit upon the purchaser.[73]

In order to meet its burden of proof on these claims against a defendant, the SEC must establish by a preponderance of the credible evidence each of the following elements a:

First, the SEC must prove that the defendant either directly or indirectly committed a manipulative or deceptive act in furtherance of a scheme to defraud, or substantially participated in or assisted in its perpetration.[74]  I have previously instructed you on the definitions of a scheme to defraud and manipulative acts, and you should apply those definitions here. As with a claim under Section 10(b) and Rule 10b-5 above, the SEC must also prove the defendant's manipulative act or acts caused an artificial market impact and injected false information into the marketplace, and you should also apply the standards for those elements discussed above here.

Second, the SEC must prove that the defendant engaged in a manipulative act in the offer or sale of a security.  I have previously instructed you on the definition of an "offer," and you should apply that definition here.  Orders and trades at issue in this case that were attempts to buy or actual purchases of securities are not covered by Section 17(a)(1) and thus should not be considered in determining liability on this claim.

---

[73] 15 U.S.C. § 77q(a)(3).

[74] *SEC v. Lek Sec. Corp.*, 276 F. Supp. 3d 49, 61 (S.D.N.Y. 2017); *SEC v. Curshen*, 888 F. Supp. 2d 1299, 1307 (S.D. Fla. 2012); *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996); *SEC v. Lee*, 720 F. Supp. 2d 305, 334 (S.D.N.Y. 2010); *SEC v. Lek Sec. Corp.*, No. 17-cv-1789, 2019 WL 1375656, at *4 (S.D.N.Y. Mar. 26, 2019).

Third, the SEC must prove that the defendant acted with a certain state of mind.  The state of mind requirement is a bit different for this claim.  The SEC must prove that the defendant acted either with intent to defraud, or with reckless disregard for the truth, or with negligence.  I have previously instructed you on the meaning of intent to defraud and the meaning of reckless disregard for the truth, and you should apply those definitions here.

However, a claim under Section 17(a)(3) is different from the claims I have described earlier, because in order to satisfy the state-of-mind requirement, it is sufficient if the defendant acted only negligently.  In other words, under Section 17(a)(3), the SEC may also prevail even if it does not show that the defendant acted with intent to defraud or recklessly, so long as the SEC shows that the defendant acted negligently.[75]  Negligence is different from the states of mind that I previously instructed you about.  Negligence is the failure to use ordinary care under the circumstances.  "Ordinary care" is the care that reasonably prudent people in the defendant's position would use in the management of their own affairs in order to avoid injury to themselves or their own property, or to avoid injury to other people or their property.  In other words, negligence is doing something that a reasonably prudent person in the defendant's position would not do, or not doing something that a reasonably prudent person in the defendant's position would do, given the circumstances.[76] Ordinary care is not an absolute term, but a

---

[75] *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996) (citing *Aaron v. SEC*, 446 U.S. 680, 701-02 (1980)).

[76] *SEC v. Tourre*, Case No. 10-cv-3229(KBF), Docket No. 465, at 27-28 (S.D.N.Y. July 31, 2013) (transcript of jury trial at 2792-93); *SEC v. Wey*, 246 F. Supp. 3d 894, 913 (S.D.N.Y. 2017); *SEC v. Stoker*, No. 11-cv-7388(JSR), Docket No. 89, at 13 (S.D.N.Y. July 31, 2012).

relative one.[77] In deciding whether or not ordinary care was exercised in a given case, the conduct in question must be viewed in the light of all of the surrounding circumstances as shown by the evidence of the case.[78] In determining whether or not a defendant acted negligently, you may consider whether the defendant to an industry norm, custom or practice.[79]

Negligence alone is not sufficient to establish liability under Section 17(a)(3). Conduct that does not meet all of the elements discussed above does not establish a claim for manipulation even if someone involved this those trades acted negligently.

Remember that, as I explained above, Avalon is a corporate defendant. If you find that an agent of Avalon acted with the necessary state of mind, and within the scope of the agent's authority, and not for that agent's own self-interest, that state of mind can be attributed to Avalon.[80]

Fourth, the SEC must prove that the defendant knowingly used, or caused to be used, the means or instrumentalities of interstate commerce or the mails. I have previously instructed you on what it means to use or cause to be used the means or instrumentalities of interstate commerce or the mails, and you should apply the same instruction here.

---

[77] 3 O'Malley, et al., FED. JURY PRACTICE AND INSTR. §§ 120.02, 120.11 (6th ed. 2011); *Fras v. Creative Playthings, Inc.*, 151 F. App'x 10, 11 (2d Cir. 2005); *Lansing Automakers' Fed. Credit Union v. MCG Portfolio Mgmt. Corp.*, No. 5:89-CV-52, 1991 WL 238974, at *2 (W.D. Mich. Sept. 12, 1991); William E. Knepper and Dan A. Bailey, LIABILITY OF CORPORATE OFFICERS AND DIRECTORS § 3.11 (8th ed. 2011).

[78] *Id.*

[79] *Id.*

[80] *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1089 n.3 (2d Cir. 1972); *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 381-82 (S.D.N.Y. 2007); *Cromer Fin. Ltd. v. Berger*, Nos. 00 Civ. 2284(DLC), 00 Civ. 2498(DLC), 2002 WL 826847, at *4 (S.D.N.Y. May 2, 2002).

If, as to a given defendant, the SEC proves each of these elements by a preponderance of the evidence, you should find that defendant liable on this claim.  If the SEC fails to prove one or more of these elements as to a given defendant, you should find that defendant not liable.

Section 9(a)(2)

The fourth market manipulation claim against the defendants involves Section 9(a)(2) of the Exchange Act. Under Section 9(a)(2), it is illegal to effect, alone or with others, a series of transactions in a security that creates actual or apparent active trading in the security, or that raises or depresses the price of the security, for the purpose of inducing others to purchase or sell the security.[81]

To "effect" means to bring about or to make happen.[82] A "series of transactions" means three or more transactions.[83] Unexecuted orders, *i.e.* bids or offers that were canceled prior to execution are not "transactions" and therefore cannot establish liability under Section 9(a)(2) and should not be considered by the jury in determining liability under this claim.

Creating actual trading in a security means creating actual purchases and sales in that security.[84] Creating apparent trading in a security means creating the appearance that the market for that security is active.[85]

The intent that the SEC must prove to establish a violation of Section 9(a)(2) is different from the state of mind required to prove a violation of Section 10(b), which I described earlier.[86] Under Section 9(a)(2), the SEC must prove that the defendant engaged in this conduct for the

---

[81] 15 U.S.C. § 78i(a)(2).

[82] Black's Law Dictionary (7th ed.).

[83] *In re Kidder, Peabody & Co.*, 1945 SEC LEXIS 285, at *23-24 (1945).

[84] *SEC v. Schiffer*, 97 Civ. 5853(RO), 1998 U.S. Dist. LEXIS 8579, at *29 (S.D.N.Y. June 11, 1998).

[85] *SEC v. Resch-Cassin & Co.*, 362 F. Supp. 964, 975-76 (S.D.N.Y. 1973).

[86] *Rockies Fund, Inc. v. SEC*, 428 F.3d 1088, 1093 (D.C. Cir. 2005).

purpose of inducing others to purchase or sell the security.[87]  The intent must be for others to purchase or sell the same security as that involved in the series of transactions. It is not a violation of Section 9(a)(2) for a person to effect a series of transactions in one security for purpose of inducing others to purchase or sell another different security.

     With respect to Avalon, if you find that an agent of Avalon acted with the purpose of inducing others to buy or sell the security, within the scope of his authority to act for Avalon, and not for that agent's own self-interest, that purpose can be attributed to Avalon.

     Finally, the SEC must prove that the defendant knowingly used, or caused to be used, the means or instrumentalities of interstate commerce or the mails, or of any facility of any national securities exchange, in furtherance of the alleged fraud.  I have previously instructed you on this element, and you should apply that instruction here.

     If, as to a given defendant, the SEC proves each of these elements by a preponderance of the evidence, you should find that defendant liable on this claim.  If the SEC fails to prove one or more of these elements as to a given defendant, you should find that defendant not liable.

---

[87] *Crane Co. v. Westinghouse Air Brake Co.*, 419 F.2d 787, 794 (2d Cir. 1969).

## The Aiding and Abetting Claims

As I previously mentioned, the SEC has also brought a number of claims alleging that each of the defendants aided and abetted another defendant's violations of the law. "Aiding and abetting" means knowingly or recklessly providing substantial assistance to another person who violates the securities laws. Under Section 20(e) of the Exchange Act and Section 15(b) of the Securities Act, anyone who aids and abets someone else who violates the securities laws is deemed to have violated the law to the same extent. Aiding and abetting someone else's violation of the securities laws is, itself, a separate violation of the law.

Specifically, the SEC has alleged that:

(1)     Fayyer and Pustelnik aided and abetted Avalon's violations of Sections 10(b) and 9(a)(2) of the Exchange Act and Sections 17(a)(1) and 17(a)(3) of the Securities Act

(2)     Fayyer aided and abetted Pustelnik's violations of Section 10(b) of the Exchange Act and Sections 17(a)(1) and 17(a)(3) of the Securities Act

(3)     Pustelnik aided and abetted Fayyer's violations of Section 10(b) of the Exchange Act and Sections 17(a)(1) and 17(a)(3) of the Securities Act

In order to meet its burden of proof on this claim against a defendant, the SEC must establish by a preponderance of the credible evidence each of the following elements:

First, the SEC must prove by a preponderance of the evidence that one of the defendants engaged in a securities law violation. If you do not find that a securities law violation occurred, you cannot find another party liable for aiding and abetting a violation.

Second, the SEC must prove that the defendant provided substantial assistance to that other person.[88] "Substantial assistance" means that the defendant in some way associated

---

[88] 15 U.S.C. § 78t(e); 15 U.S.C. § 77o(b).

himself with the venture, that he participated in it as something that he wished to bring about, and that he sought by his action to make it succeed.[89] To prove that the defendant you are considering substantially assisted a securities violation, the plaintiff must prove two things by a preponderance of the evidence.

First, that the defendant you are considering affirmatively assisted or helped conceal the primary violation; and

Second, that the defendant you are considering proximately caused the material misrepresentations. In other words, the defendant's conduct must have been a substantial causal factor in the perpetration of the violation. It is not enough for the plaintiff to prove that "but for" the defendant's actions, the violations would not have occurred. Instead the plaintiff must prove that the defendant's actions were a substantial factor in bringing about the violation, and that the violation was a reasonably foreseeable result of the defendant's acts.[90]

The SEC must prove that a defendant was a substantial and direct cause of another defendant's violation of the securities laws.[91] Mere awareness and approval of the primary

---

[89] *SEC v. Apuzzo*, 689 F.3d 204, 206 (2d Cir. 2012).

[90] See *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 62-63 (2d Cir. 1985); Armstrong v. McAlpin, 699 F.2d 79, 92 (2d Cir. 1983); *SEC v. Espuelas*, 579 F. Supp. 2d 461, 471, 485 (S.D.N.Y. 2008) (citing *SEC v. Zwick*, No. 03 Civ. 2742 (JGK), 2007 WL 831812, at *16 (S.D.N.Y. Mar. 16, 2007)); SEC v. Treadway, 430 F. Supp. 2d 293, 339 (S.D.N.Y. 2006); *SEC v. Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d 326, 335-36 (S.D.N.Y. 2006); *WestRM-West Risk Mkts., Ltd. v. XL Reins. Am., Inc.*, No. 02 Civ. 7344, 2006 WL 2034627, at *11-12 (S.D.N.Y. July 19, 2006); *McDaniel v. Bear Stearns & Co.*, 196 F. Supp. 2d 343, 352, 359 (S.D.N.Y. 2002) (citing *Cromer v. Berger*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001)); *In re Union Carbide Corp. Consumer Prods. Bus. Litig.*, 666 F. Supp. 547, 564 (S.D.N.Y. 1987).

[91] *Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir. 1983); id. at 92 (noting "but-for" causation is insufficient to satisfy the third requirement of an aiding and abetting violation); *IIT, an Int'l Inv. Trust v. Cornfield*, 619 F.2d 909, 922 (2d Cir. 1980), abrogated on other grounds by *Morrison v. National Australia Bank Ltd.,* 130 S. Ct. 2869 (2010).

violation is insufficient to satisfy this element.[92] Merely executing the market securities orders placed by others is also insufficient to satisfy this element.[93]

Third, the must prove the defendant had actual knowledge of the other defendant's primary violation of the securities laws. It is insufficient for the SEC to prove the defendant acted recklessly or negligently. The SEC must prove that the defendant must have been aware that his role was part of an overall activity that was a violation of the securities laws.[94]

If, as to a given defendant, the SEC proves each of these elements by a preponderance of the evidence, you should find that defendant liable on this claim.  If the SEC fails to prove one or more of these elements as to a given defendant, you should find that defendant not liable.

---

[92] See *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 62-63 (2d Cir. 1985); Armstrong v. McAlpin, 699 F.2d 79, 92 (2d Cir. 1983); *SEC v. Espuelas*, 579 F. Supp. 2d 461, 471, 485 (S.D.N.Y. 2008) (citing *SEC v. Zwick*, No. 03 Civ. 2742 (JGK), 2007 WL 831812, at *16 (S.D.N.Y. Mar. 16, 2007)); SEC v. Treadway, 430 F. Supp. 2d 293, 339 (S.D.N.Y. 2006); *SEC v. Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d 326, 335-36 (S.D.N.Y. 2006); *WestRM-West Risk Mkts., Ltd. v. XL Reins. Am., Inc.*, No. 02 Civ. 7344, 2006 WL 2034627, at *11-12 (S.D.N.Y. July 19, 2006); *McDaniel v. Bear Stearns & Co.*, 196 F. Supp. 2d 343, 352, 359 (S.D.N.Y. 2002) (citing *Cromer v. Berger*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001)); *In re Union Carbide Corp. Consumer Prods. Bus. Litig.*, 666 F. Supp. 547, 564 (S.D.N.Y. 1987).

[93] *Armstrong*, 699 F.2d at 91 (2d Cir. 1983); *SEC v. Masri*, 523 F. Supp. 2d 361, 375 (S.D.N.Y. 2007); *Chee v. Marine Midland Bank, N.A.*, No. 88 CIV. 0557, 1991 WL 15301, at *4 (E.D.N.Y. Jan. 29, 1991) *Unity House, Inc. v.N. Pac. Inv., Inc.*, 918 F. Supp. 1384 (D. Haw. 1996).

[94] *See Halberstam v. Welch, 705 F.2d 472, 478 (D.C. Cir. 1983); SEC v. Wey,* 246 F. Supp. 3d 894, 926-27 (S.D.N.Y. 2017); *SEC v.* Aronon, No. 11 Civ. 7033 (JST), 2013 WL 4082900, at *11 (S.D.N.Y. 2011); *SEC v. Espuelas, 579 F. Supp. 2d 461, 471 (S.D.N.Y. 2008); SEC v. KPMG LLP,* 412 F.Supp.2d 349 (S.D.N.Y. 2006); *SEC v. Cedric Kushner Promotions, Inc., 417 F. Supp. 2d 326, 334 (S.D.N.Y. 2006).*

## The Control Person Claims

The final set of claims in this case are the control person claims.  Under Section 20(a) of the Exchange Act, a defendant may be held liable for the violations of other persons over whom the defendant exercises actual power and control.

The SEC has alleged that Avalon, Fayyer, and Pustelnik were control persons of other persons or entities who violated the securities laws and that, as control persons, they are liable for those violations.  Specifically, the SEC has alleged that:

(1) Avalon and Fayyer were control persons of Avalon's traders and are liable for their violations of Sections 9(a)(2) and 10(b) of the Exchange Act and Rule 10b-5.

(2) Pustelnik was a control person of Avalon and is liable for its violations of Sections 9(a)(2) and 10(b) of the Exchange Act and Rule 10b-5.

In order to prevail on this claim against a defendant, the SEC must establish by a preponderance of the credible evidence each of the following elements:

First, the SEC must prove that the controlled person or entity engaged in the alleged securities law violation.[95]  For example, on its claim that Pustelnik is liable as a control person of Avalon, the SEC must first establish that Avalon violated Section 9(a)(2) of the Exchange Act or that Avalon violated Section 10(b) of the Exchange Act and Rule 10b-5.

Second, the SEC must prove that the defendant – the alleged control person – had direct or indirect control of the violator.[96]  Control over the alleged violator may be established by showing that the defendant had the power to direct or cause the direction of the management and policies of the violator whether through the ownership of voting securities, by contract, or

---

[95] 15 U.S.C. § 78t(a); *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998).

[96] 15 U.S.C. § 78t(a); *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998).

otherwise.[97]  Control may also be established by showing that the defendant had some indirect

means of disciplining or influencing the alleged violator, short of actually directing the

violator.[98]  To be liable as a control person, the defendant must actually possess, in fact, rather

than in theory, the ability to direct the actions of the controlled person.[99] The defendant must not

only have actual control over the primary violator, but have actual control over the transaction in

question.[100] It is not sufficient that the defendant has control person status; instead the SEC must

prove that the defendant exercised actual control over the actions that are the basis for the

primary violation.[101] Exercise of influence, without power to direct or cause the direction of

management and policies through ownership of voting securities, by contract, or in any other

direct way, is not sufficient to establish control for purposes of Section 20(a).[102] A defendant

cannot be liable under Section 20(a) for primary violations that were outside of his control.[103]

---

[97] *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472-73 (2d Cir. 1996).

[98] *Drobbin v. Nicolet Instrument Com.*, 631 F. Supp. 860, 884-85 (S.D.N.Y. 1986).

[99] *H&H Acquisition Corp. v. Financial Intranet Holdings*, 669 F. Supp. 2d 351, 361 (S.D.N.Y. 2009); *In re Global Crossing Sec. Litig.*, No. 02 Civ. 910, 2005 WL 1875445, at * 3 (S.D.N.Y. 2005).
[100] *H&H Acquisition Corp. v. Financial Intranet Holdings*, 669 F. Supp. 2d at 361; *In re Alstom SA, 406 F.Supp. 2d 433, 487 (S.D.N.Y. 2005).*

[101] *Friedman v. JP Morgan Chase & Co.*, No. 15-CV-5899, 2016 WL 2903273, at *11-12 (S.D.N.Y. May 18, 2016).

[102] *H&H Acquisition Corp. v. Financial Intranet Holdings*, 669 F. Supp. 2d at 361; *In re Alstom SA, 406 F.Supp. 2d at 486.*

[103] *Hollinger v. Titan Capital Corp.,* 914 F.2d 1564, 1575 (9th Cir. 1990) (en banc); *Moss v. Morgan Stanley, Inc.*, 553 F. Supp. 1347, 1357-58 (S.D.N.Y. 1983).

Third, the SEC must prove that the defendant was, in some meaningful sense, a culpable participant in the violation.[104] To do so the SEC must prove the defendant acted with knowledge that the primary violator was in engaging in conduct that violated the securities laws.[105]

If the SEC proves these three elements, the burden shifts to the defendant to show by a preponderance of the evidence that the defendant (1) acted in good faith, and (2) did not directly or indirectly induce the act or acts constituting the violation.[106]

Good faith is an absolute defense to the SEC Section 20(a) control person claim.[107] In order to satisfy its burden and show that it acted in good faith, a defendant must show that it was not negligent, meaning that it exercised due care in its supervision of the violator's activities and that it maintained and enforced a reasonable and proper system of supervision and internal controls.[108]

Defendants who are alleged to be control persons cannot establish their good faith simply by pointing to the fact that they had a compliance review system or supervisory procedures in place.[109]  Rather, they must demonstrate not only that they had reasonable policies and

---

[104] Although other circuits have rejected the need for proof of culpable participation, *see, e.g.*, *In re Harman Int'l Indus., Inc. Sec. Litig.*, 791 F.3d 90, 111-12 (D.C. Cir. 2015) and cases cited therein, the Second Circuit has cited as an element of control person liability "that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) (citing *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1473 (2d Cir. 1996).

[105] ABA, Model Jury Instr.: Sec. Litig., § 4.03[1] (1996); ); *Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*, 1998 WL 167330, at *13 (S.D.N.Y. Apr. 8, 1998).

[106] 15 U.S.C. § 78t(a); *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1473 (2d Cir. 1996).

[107] 15 U.S.C. § 78t(a).

[108] *Marbury Mgmt., Inc. v. Kohn*, 629 F.2d 705, 716 (2d Cir. 1980); *Hollinger v. Titan Capital Grp.*, 914 F.2d 1564, 1573, 1575 (9th Cir. 1990).

[109] *In re Parmalat Sec. Litig.*, 594 F. Supp. 2d 444, 457 (S.D.N.Y. 2009); *Hollinger v. Titan Capital Grp.*, 914 F.2d 1564, 1576 (9th Cir. 1990).

procedures for supervising their personnel, but also must show that those policies and procedures were implemented and enforced,[110] with the appropriate level of due care.[111]  To demonstrate good faith, the defendant must also prove that they did not directly or indirectly induce the act or acts constituting the underlying violation.[112]

If you find that a defendant has satisfied its burden of showing both good faith and that it did not directly or indirectly induce the act or acts constituting the violation, you must find the defendant not liable as a control person.  If, however, you find that the defendant fails to satisfy this burden, you must find him liable as a control person.

---

[110] *SEC v. First* Jersey *Sec., Inc.*, 101 F.3d 1450, 1473 (2d Cir. 1996); *In re Parmalat Sec. Litig.*, 594 F. Supp. 2d 444, 457 (S.D.N.Y. 2009).

[111] *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288DLC, 2005 WL 638268, at *15 (S.D.N.Y. Mar. 21, 2005).

[112] *SEC v. First* Jersey *Sec., Inc.*, 101 F.3d 1450, 1473 (2d Cir. 1996); *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288DLC, 2005 WL 638268, at *15 (S.D.N.Y. Mar. 21, 2005).

## **Closing Instructions**

### Selection of Foreperson

When you retire, you should elect one member of the jury as your foreperson. That

person will preside over the deliberations and speak for you here in open court.[113]

---

[113] 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 78.01, Instruction 78-5 (2019).

<u>Right to See Exhibits and Hear Testimony; Communications with the Court</u>

You are about to go into the jury room and begin your deliberations. If during those deliberations you want to see any of the exhibits, you may request that they be brought into the jury room. If you want any of the testimony read back to you, may also request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony.

Your requests for exhibits or testimony—in fact any communication with the court— should be made to me in writing, signed by your foreperson, and given to one of the marshals. In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.[114]

---

[114] 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 78.01, Instruction 78-1 (2019).

### Duty to Deliberate; Need for Unanimity

You will now return to decide the case. In order to prevail, the plaintiff (or defendant) must sustain his or her burden of proof as I have explained to you with respect to each element of the complaint (or affirmative defense).  If you find that the SEC has succeeded, you should return a verdict in its favor on that claim. If you find that the plaintiff failed to sustain the burden on any element of the claim, you should return a verdict against the plaintiff.  (Similarly, if you find that the defendant has failed to sustain his or her burden with respect to any element of the defendant's affirmative defense, you must return a verdict against the defendant on that defense.)

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Again, each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.[115]

---

[115] 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 78.01, Instruction 78-3 (2019).

## Return of Verdict

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it and advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that (if applicable: each of) you should be in agreement with the verdict which is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.[116]

---

[116] 4 L. Sand et al., MODERN FED. JURY INSTR.- CIVIL § 78.01, Instruction 78-6 (2019)

<u>**SEC v. Lek Securities Corp. et al.**</u>
**Case No. 17-cv-1789(DLC)**

**Defendants' Proposed Verdict Form**

We, the jury, unanimously find as follows as to each of the claims asserted by the

plaintiff:

### Claim 1 – Layering Strategy Section 10(b) and Rule 10b-5

**As to Defendant Avalon:**

With regard to the trading activity described as "layering," did the SEC prove by a
preponderance of the evidence:

Question 1: That <u>Avalon</u> committed a manipulative act in furtherance of a scheme
to defraud?

Yes _____ (if yes, proceed to Question 2(a))

No _____ (if no, answer Question 7 "No")

Question 2(a): That <u>Avalon</u> possessed an ability to influence U.S. securities
market prices?

Yes _____ (if yes, proceed to Question 2(b))

No _____ (if no, answer Question 7 "No")

Question 2(b): That an artificial price existed in the U.S. securities market?

Yes _____ (if yes, proceed to Question 2(c))

No _____ (if no, answer Question 7 "No")

Question 2(c): That <u>Avalon</u> caused the artificial prices in the U.S. securities
market?

Yes _____ (if yes, proceed to Question 2(d))

No _____ (if no, answer Question 7 "No")

Question 2(d): That <u>Avalon</u> specifically intended to cause the artificial price?

Yes _____ (if yes, proceed to Question 3)

No _____ (if no, answer Question 7 "No")

Question 3: That <u>Avalon's</u> manipulative act(s) injected false information into the U.S. securities marketplace?

Yes _____ (if yes, proceed to Question 4)

No _____ (if no, answer Question 7 "No")

Question 4: That <u>Avalon's</u> manipulative act(s) occurred in connection with the purchase or sale of a security?

Yes _____ (if yes, proceed to Question 5)

No _____ (if no, answer Question 7 "No")

Question 5: That <u>Avalon</u> knowingly used or caused to be used, the means or instrumentalities of interstate commerce or the mails, or a facility of any national securities exchange, in furtherance of the fraud?

Yes _____ (if yes, proceed to Question 6(a))

No _____ (if no, answer Question 7 "No")

Question 6(a): That <u>Avalon</u> did not act in good faith – *i.e.* that <u>Avalon</u> did not act on an opinion honestly believe to be true, even if that opinion was erroneous or that belief mistaken?

Yes _____ (if yes proceed to Question 6(b))

No _____ (if no, answer Question 7 "No")

Question 6(b): That <u>Avalon</u> acted with the intent to deceive, manipulate or defraud – *i.e.* that <u>Avalon</u> acted knowingly, intentionally, and deliberately, and not mistakenly or inadvertently?

Yes _____ (if yes, proceed to Question 7)

No _____ (if no, proceed to Question 6(c))

Question 6(c): That <u>Avalon</u> acted with a high degree of recklessness – *i.e.* an extreme departure from the standards of ordinary care?

2

Yes _____ (if yes proceed to Question 7)

No _____ (if no, answer Question 7 "No")

Question 7: That <u>Avalon</u> violate Section 10(b) and Rule 10b-5 of the Exchange Act with regard to the trading activity described as "layering"?

Yes _____

No _____

**As to Defendant Nathan Fayyer**

With regard to the trading activity described as "layering," did the SEC prove by a preponderance of the evidence:

Question 8: That <u>Fayyer</u> committed a manipulative act in furtherance of a scheme to defraud?

Yes _____ (if yes, proceed to Question 9(a))

No _____ (if no, answer Question 14 "No")

Question 9(a): That <u>Fayyer</u> possessed an ability to influence U.S. securities market prices?

Yes _____ (if yes, proceed to Question 9(b))

No _____ (if no, answer Question 14 "No")

Question 9(b): That an artificial price existed in the U.S. securities market?

Yes _____ (if yes, proceed to Question 9(c))

No _____ (if no, answer Question 14 "No")

Question 9(c): That <u>Fayyer</u> caused the artificial prices in the U.S. securities market?

Yes _____ (if yes, proceed to Question 9(d))

No _____ (if no, answer Question 14 "No")

Question 9(d): That <u>Fayyer</u> specifically intended to cause the artificial price?

Yes _____ (if yes, proceed to Question 10)

3

No _____ (if no, answer Question 14 "No")

Question 10: That Fayyer's manipulative act(s) injected false information into the U.S. securities marketplace?

Yes _____ (if yes, proceed to Question 11)

No _____ (if no, answer Question 14 "No")

Question 11: That Fayyer's manipulative act(s) occurred in connection with the purchase or sale of a security?

Yes _____ (if yes, proceed to Question 12)

No _____ (if no, answer Question 14 "No")

Question 12: That Fayyer knowingly used or caused to be used, the means or instrumentalities of interstate commerce or the mails, or a facility of any national securities exchange, in furtherance of the fraud?

Yes _____ (if yes, proceed to Question 13(a))

No _____ (if no, answer Question 14 "No")

Question 13(a): That Fayyer did not act in good faith – *i.e.* that Fayyer did not act on an opinion honestly believe to be true, even if that opinion was erroneous or that belief mistaken?

Yes _____ (if yes proceed to Question 13(b))

No _____ (if no, answer Question 14 "No")

Question 13(b): That Fayyer acted with the intent to deceive, manipulate or defraud – *i.e.* that Fayyer acted knowingly, intentionally, and deliberately, and not mistakenly or inadvertently?

Yes _____ (if yes, proceed to Question 14)

No _____ (if no, proceed to Question 13(c))

Question 13(c): That Fayyer acted with a high degree of recklessness – *i.e.* an extreme departure from the standards of ordinary care?

Yes _____ (if yes proceed to Question 14)

4

No _____ (if no, answer Question 14 "No")

Question 14: That <u>Fayyer</u> violate Section 10(b) and Rule 10b-5 of the Exchange Act with regard to the trading activity described as "layering"?

Yes _____

No _____

**As to Defendant Serge Pustelnik**

With regard to the trading activity described as "layering," did the SEC prove by a preponderance of the evidence:

Question 15: That <u>Pustelnik</u> committed a manipulative act in furtherance of a scheme to defraud?

Yes _____ (if yes, proceed to Question 16(a))

No _____ (if no, answer Question 21 "No")

Question 16(a): That <u>Pustelnik</u> possessed an ability to influence U.S. securities market prices?

Yes _____ (if yes, proceed to Question 16(b))

No _____ (if no, answer Question 21 "No")

Question 16(b): That an artificial price existed in the U.S. securities market?

Yes _____ (if yes, proceed to Question 16(c))

No _____ (if no, answer Question 21 "No")

Question 16(c): That <u>Pustelnik</u> caused the artificial prices in the U.S. securities market?

Yes _____ (if yes, proceed to Question 16(d))

No _____ (if no, answer Question 21 "No")

Question 16(d): That <u>Pustelnik</u> specifically intended to cause the artificial price?

Yes _____ (if yes, proceed to Question 17)

5

No _____ (if no, answer Question 21 "No")

Question 17: That <u>Pustelnik's</u> manipulative act(s) injected false information into the U.S. securities marketplace?

Yes _____ (if yes, proceed to Question 18)

No _____ (if no, answer Question 21 "No")

Question 18: That <u>Pustelnik's</u> manipulative act(s) occurred in connection with the purchase or sale of a security?

Yes _____ (if yes, proceed to Question 19)

No _____ (if no, answer Question 21 "No")

Question 19: That <u>Pustelnik</u> knowingly used or caused to be used, the means or instrumentalities of interstate commerce or the mails, or a facility of any national securities exchange, in furtherance of the fraud?

Yes _____ (if yes, proceed to Question 20(a))

No _____ (if no, answer Question 21 "No")

Question 20(a): That <u>Pustelnik</u> did not act in good faith – *i.e.* that <u>Pustelnik</u> did not act on an opinion honestly believe to be true, even if that opinion was erroneous or that belief mistaken?

Yes _____ (if yes proceed to Question 20(b))

No _____ (if no, answer Question 21 "No")


Question 20(b): That <u>Pustelnik</u> acted with the intent to deceive, manipulate or defraud – *i.e.* that <u>Pustelnik</u> acted knowingly, intentionally, and deliberately, and not mistakenly or inadvertently?

Yes _____ (if yes, proceed to Question 21)

No _____ (if no, proceed to Question 20(c))

Question 20(c): That <u>Pustelnik</u> acted with a high degree of recklessness – *i.e.* an extreme departure from the standards of ordinary care?

Yes _____ (if yes proceed to Question 21)

6

No _____ (if no, answer Question 21 "No")

Question 21: That <u>Pustelnik</u> violate Section 10(b) and Rule 10b-5 of the Exchange Act with regard to the trading activity described as "layering"?

Yes _____

No _____

### Claim 1 – Cross-Market Strategy Section 10(b) and Rule 10b-5

**As to Defendant Avalon:**

With regard to the trading activity described as "cross-market strategy," did the SEC prove by a preponderance of the evidence:

Question 22: That <u>Avalon</u> committed a manipulative act in furtherance of a scheme to defraud?

Yes _____ (if yes, proceed to Question 23(a))

No _____ (if no, answer Question 28 "No")

Question 23(a): That <u>Avalon</u> possessed an ability to influence U.S. securities market prices?

Yes _____ (if yes, proceed to Question 23(b))

No _____ (if no, answer Question 28 "No")

Question 23(b): That an artificial price existed in the U.S. securities market?

Yes _____ (if yes, proceed to Question 23(c))

No _____ (if no, answer Question 28 "No")

Question 23(c): That <u>Avalon</u> caused the artificial prices in the U.S. securities market?

Yes _____ (if yes, proceed to Question 23(d))

No _____ (if no, answer Question 28 "No")

Question 23(d): That <u>Avalon</u> specifically intended to cause the artificial price?

Yes _____ (if yes, proceed to Question 24)

No _____ (if no, answer Question 28 "No")

Question 24: That <u>Avalon's</u> manipulative act(s) injected false information into the U.S. securities marketplace?

Yes _____ (if yes, proceed to Question 25)

No _____ (if no, answer Question 28 "No")

Question 25: That <u>Avalon's</u> manipulative act(s) occurred in connection with the purchase or sale of a security?

Yes _____ (if yes, proceed to Question 26)

No _____ (if no, answer Question 28 "No")

Question 26: That <u>Avalon</u> knowingly used or caused to be used, the means or instrumentalities of interstate commerce or the mails, or a facility of any national securities exchange, in furtherance of the fraud?

Yes _____ (if yes, proceed to Question 27(a))

No _____ (if no, answer Question 28 "No")

Question 27(a): That <u>Avalon</u> did not act in good faith – *i.e.* that <u>Avalon</u> did not act on an opinion honestly believe to be true, even if that opinion was erroneous or that belief mistaken?

Yes _____ (if yes proceed to Question 27(b))

No _____ (if no, answer Question 28 "No")

Question 27(b): That <u>Avalon</u> acted with the intent to deceive, manipulate or defraud – *i.e.* that <u>Avalon</u> acted knowingly, intentionally, and deliberately, and not mistakenly or inadvertently?

Yes _____ (if yes, proceed to Question 28)

No _____ (if no, proceed to Question 27(c))

Question 27(c): That <u>Avalon</u> acted with a high degree of recklessness – *i.e.* an extreme departure from the standards of ordinary care?

8

Yes _____ (if yes proceed to Question 28)

No _____ (if no, answer Question 28 "No")

Question 28: That <u>Avalon</u> violate Section 10(b) and Rule 10b-5 of the Exchange Act with regard to the trading activity described as "cross-market stragey"?

Yes _____

No _____

**As to Defendant Nathan Fayyer**

With regard to the trading activity described as "cross-market strategy," did the SEC prove by a preponderance of the evidence:

Question 29: That <u>Fayyer</u> committed a manipulative act in furtherance of a scheme to defraud?

Yes _____ (if yes, proceed to Question 30(a))

No _____ (if no, answer Question 35 "No")

Question 30(a): That <u>Fayyer</u> possessed an ability to influence U.S. securities market prices?

Yes _____ (if yes, proceed to Question 30(b))

No _____ (if no, answer Question 35 "No")

Question 30(b): That an artificial price existed in the U.S. securities market?

Yes _____ (if yes, proceed to Question 30(c))

No _____ (if no, answer Question 35 "No")

Question 30(c): That <u>Fayyer</u> caused the artificial prices in the U.S. securities market?

Yes _____ (if yes, proceed to Question 30(d))

No _____ (if no, answer Question 35 "No")

Question 30(d): That <u>Fayyer</u> specifically intended to cause the artificial price?

Yes _____ (if yes, proceed to Question 31)

No _____ (if no, answer Question 35 "No")

Question 31: That <u>Fayyer's</u> manipulative act(s) injected false information into the U.S. securities marketplace?

Yes _____ (if yes, proceed to Question 32)

No _____ (if no, answer Question 35 "No")

Question 32: That <u>Fayyer's</u> manipulative act(s) occurred in connection with the purchase or sale of a security?

Yes _____ (if yes, proceed to Question 33)

No _____ (if no, answer Question 35 "No")

Question 33: That <u>Fayyer</u> knowingly used or caused to be used, the means or instrumentalities of interstate commerce or the mails, or a facility of any national securities exchange, in furtherance of the fraud?

Yes _____ (if yes, proceed to Question 34(a))

No _____ (if no, answer Question 35 "No")

Question 34(a): That <u>Fayyer</u> did not act in good faith – *i.e.* that <u>Fayyer</u> did not act on an opinion honestly believe to be true, even if that opinion was erroneous or that belief mistaken?

Yes _____ (if yes proceed to Question 34(b))

No _____ (if no, answer Question 35 "No")

Question 34(b): That <u>Fayyer</u> acted with the intent to deceive, manipulate or defraud – *i.e.* that <u>Fayyer</u> acted knowingly, intentionally, and deliberately, and not mistakenly or inadvertently?

Yes _____ (if yes, proceed to Question 35)

No _____ (if no, proceed to Question 34(c))

Question 34(c): That <u>Fayyer</u> acted with a high degree of recklessness – *i.e.* an extreme departure from the standards of ordinary care?

Yes _____ (if yes proceed to Question 35)

10

No _____ (if no, answer Question 35 "No")

Question 35: That <u>Fayyer</u> violate Section 10(b) and Rule 10b-5 of the Exchange Act with regard to the trading activity described as "cross-market strategy"?

Yes _____

No _____

**As to Defendant Serge Pustelnik**

With regard to the trading activity described as "cross-market strategy," did the SEC prove by a preponderance of the evidence:

Question 36: That <u>Pustelnik</u> committed a manipulative act in furtherance of a scheme to defraud?

Yes _____ (if yes, proceed to Question 37(a))

No _____ (if no, answer Question 42 "No")

Question 37(a): That <u>Pustelnik</u> possessed an ability to influence U.S. securities market prices?

Yes _____ (if yes, proceed to Question 37(b))

No _____ (if no, answer Question 42 "No")

Question 37(b): That an artificial price existed in the U.S. securities market?

Yes _____ (if yes, proceed to Question 37(c))

No _____ (if no, answer Question 42 "No")

Question 37(c): That <u>Pustelnik</u> caused the artificial prices in the U.S. securities market?

Yes _____ (if yes, proceed to Question 37(d))

No _____ (if no, answer Question 42 "No")

Question 37(d): That <u>Pustelnik</u> specifically intended to cause the artificial price?

Yes _____ (if yes, proceed to Question 38)

No _____ (if no, answer Question 42 "No")

Question 38: That <u>Pustelnik's</u> manipulative act(s) injected false information into the U.S. securities marketplace?

Yes _____ (if yes, proceed to Question 39)

No _____ (if no, answer Question 42 "No")

Question 39: That <u>Pustelnik's</u> manipulative act(s) occurred in connection with the purchase or sale of a security?

Yes _____ (if yes, proceed to Question 40)

No _____ (if no, answer Question 42 "No")

Question 40: That <u>Pustelnik</u> knowingly used or caused to be used, the means or instrumentalities of interstate commerce or the mails, or a facility of any national securities exchange, in furtherance of the fraud?

Yes _____ (if yes, proceed to Question 41(a))

No _____ (if no, answer Question 42 "No")

Question 41(a): That <u>Pustelnik</u> did not act in good faith – *i.e.* that <u>Pustelnik</u> did not act on an opinion honestly believe to be true, even if that opinion was erroneous or that belief mistaken?

Yes _____ (if yes proceed to Question 41(b))

No _____ (if no, answer Question 42 "No")

Question 41(b): That <u>Pustelnik</u> acted with the intent to deceive, manipulate or defraud – *i.e.* that <u>Pustelnik</u> acted knowingly, intentionally, and deliberately, and not mistakenly or inadvertently?

Yes _____ (if yes, proceed to Question 42)

No _____ (if no, proceed to Question 41(c))

Question 41(c): That <u>Pustelnik</u> acted with a high degree of recklessness – *i.e.* an extreme departure from the standards of ordinary care?

Yes _____ (if yes proceed to Question 42)

12

No _____ (if no, answer Question 42 "No")

Question 42: That <u>Pustelnik</u> violate Section 10(b) and Rule 10b-5 of the Exchange Act with regard to the trading activity described as "cross-market strategy"?

Yes _____

No _____

### Claim 2 – Layering Strategy Section 17(a)(1)

**As to Defendant Avalon:**

With regard to the trading activity described as "layering," did the SEC prove by a preponderance of the evidence:

Question 43: That <u>Avalon</u> either directly or indirectly committed a manipulative act in furtherance of a scheme to defraud, or substantially participated in or assisted in its perpetration?

Yes _____ (if yes, proceed to Question 44(a))

No _____ (if no, answer Question 49 "No")

Question 44(a): That <u>Avalon</u> possessed an ability to influence U.S. securities market prices?

Yes _____ (if yes, proceed to Question 44(b))

No _____ (if no, answer Question 49 "No")

Question 44(b): That an artificial price existed in the U.S. securities market?

Yes _____ (if yes, proceed to Question 44(c))

No _____ (if no, answer Question 49 "No")

Question 44(c): That <u>Avalon</u> caused the artificial prices in the U.S. securities market?

Yes _____ (if yes, proceed to Question 44(d))

No _____ (if no, answer Question 49 "No")

Question 44(d): That <u>Avalon</u> specifically intended to cause the artificial price?

Yes _____ (if yes, proceed to Question 45)

No _____ (if no, answer Question 49 "No")

Question 45: That Avalon's manipulative act(s) injected false information into the U.S. securities marketplace?

Yes _____ (if yes, proceed to Question 46)

No _____ (if no, answer Question 49 "No")

Question 46: That Avalon's manipulative act(s) occurred in connection with the offer or sale of a security?

Yes _____ (if yes, proceed to Question 47)

No _____ (if no, answer Question 49 "No")

Question 47: That Avalon knowingly used or caused to be used, the means or instrumentalities of interstate commerce or the mails, or a facility of any national securities exchange, in furtherance of the fraud?

Yes _____ (if yes, proceed to Question 48(a))

No _____ (if no, answer Question 49 "No")

Question 48(a): That Avalon did not act in good faith – *i.e.* that Avalon did not act on an opinion honestly believe to be true, even if that opinion was erroneous or that belief mistaken?

Yes _____ (if yes proceed to Question 48(b))

No _____ (if no, answer Question 49 "No")

Question 48(b): That Avalon acted with the intent to deceive, manipulate or defraud – *i.e.* that Avalon acted knowingly, intentionally, and deliberately, and not mistakenly or inadvertently?

Yes _____ (if yes, proceed to Question 49)

No _____ (if no, proceed to Question 48(c))

Question 48(c): That Avalon acted with a high degree of recklessness – *i.e.* an extreme departure from the standards of ordinary care?

14

Yes _____ (if yes proceed to Question 49)

No _____ (if no, answer Question 49 "No")

Question 49: That <u>Avalon</u> violate Section 17(a)(1) of the Securities Act with regard to the trading activity described as "layering"?

Yes _____

No _____

**As to Defendant Nathan Fayyer:**

With regard to the trading activity described as "layering," did the SEC prove by a preponderance of the evidence:

Question 50: That <u>Fayyer</u> either directly or indirectly committed a manipulative act in furtherance of a scheme to defraud, or substantially participated in or assisted in its perpetration?

Yes _____ (if yes, proceed to Question 51(a))

No _____ (if no, answer Question 56 "No")

Question 51(a): That <u>Fayyer</u> possessed an ability to influence U.S. securities market prices?

Yes _____ (if yes, proceed to Question 51(b))

No _____ (if no, answer Question 56 "No")

Question 51(b): That an artificial price existed in the U.S. securities market?

Yes _____ (if yes, proceed to Question 51(c))

No _____ (if no, answer Question 56 "No")

Question 51(c): That <u>Fayyer</u> caused the artificial prices in the U.S. securities market?

Yes _____ (if yes, proceed to Question 51(d))

No _____ (if no, answer Question 56 "No")

Question 51(d): That <u>Fayyer</u> specifically intended to cause the artificial price?

15

Yes _____ (if yes, proceed to Question 52)

No _____ (if no, answer Question 56 "No")

Question 52: That <u>Fayyer's</u> manipulative act(s) injected false information into the U.S. securities marketplace?

Yes _____ (if yes, proceed to Question 53)

No _____ (if no, answer Question 56"No")

Question 53: That <u>Fayyer's</u> manipulative act(s) occurred in connection with the offer or sale of a security?

Yes _____ (if yes, proceed to Question 54)

No _____ (if no, answer Question 56 "No")

Question 54: That <u>Fayyer</u> knowingly used or caused to be used, the means or instrumentalities of interstate commerce or the mails, or a facility of any national securities exchange, in furtherance of the fraud?

Yes _____ (if yes, proceed to Question 55(a))

No _____ (if no, answer Question 56 "No")

Question 55(a): That <u>Fayyer</u> did not act in good faith – *i.e.* that <u>Fayyer</u> did not act on an opinion honestly believe to be true, even if that opinion was erroneous or that belief mistaken?

Yes _____ (if yes proceed to Question 55(b))

No _____ (if no, answer Question 56 "No")

Question 55(b): That <u>Fayyer</u> acted with the intent to deceive, manipulate or defraud – *i.e.* that <u>Fayyer</u> acted knowingly, intentionally, and deliberately, and not mistakenly or inadvertently?

Yes _____ (if yes, proceed to Question 56)

No _____ (if no, proceed to Question 55(c))

Question 55(c): That <u>Fayyer</u> acted with a high degree of recklessness – *i.e.* an extreme departure from the standards of ordinary care?

16

Yes _____ (if yes proceed to Question 56)

No _____ (if no, answer Question 56 "No")

Question 56: That <u>Fayyer</u> violate Section 17(a)(1) of the Securities Act with regard to the trading activity described as "layering"?

Yes _____

No _____

**As to Defendant Sergey Pustelnik:**

With regard to the trading activity described as "layering," did the SEC prove by a preponderance of the evidence:

Question 57: That <u>Pustelnik</u> either directly or indirectly committed a manipulative act in furtherance of a scheme to defraud, or substantially participated in or assisted in its perpetration?

Yes _____ (if yes, proceed to Question 58(a))

No _____ (if no, answer Question 63 "No")

Question 58(a): That <u>Pustelnik</u> possessed an ability to influence U.S. securities market prices?

Yes _____ (if yes, proceed to Question 58(b))

No _____ (if no, answer Question 63 "No")

Question 58(b): That an artificial price existed in the U.S. securities market?

Yes _____ (if yes, proceed to Question 58(c))

No _____ (if no, answer Question 63 "No")

Question 58(c): That <u>Pustelnik</u> caused the artificial prices in the U.S. securities market?

Yes _____ (if yes, proceed to Question 58(d))

No _____ (if no, answer Question 63 "No")

17

Question 58(d): That <u>Pustelnik</u> specifically intended to cause the artificial price?

     Yes _____ (if yes, proceed to Question 59)

     No _____ (if no, answer Question 63 "No")

Question 59: That <u>Pustelnik's</u> manipulative act(s) injected false information into the U.S. securities marketplace?

     Yes _____ (if yes, proceed to Question 60)

     No _____ (if no, answer Question 63 "No")

Question 60: That <u>Pustelnik's</u> manipulative act(s) occurred in connection with the offer or sale of a security?

     Yes _____ (if yes, proceed to Question 61)

     No _____ (if no, answer Question 63 "No")

Question 61: That <u>Pustelnik</u> knowingly used or caused to be used, the means or instrumentalities of interstate commerce or the mails, or a facility of any national securities exchange, in furtherance of the fraud?

     Yes _____ (if yes, proceed to Question 62(a))

     No _____ (if no, answer Question 63 "No")

Question 62(a): That <u>Pustelnik</u> did not act in good faith – *i.e.* that <u>Pustelnik</u> did not act on an opinion honestly believe to be true, even if that opinion was erroneous or that belief mistaken?

     Yes _____ (if yes proceed to Question 62(b))

     No _____ (if no, answer Question 63 "No")

Question 62(b): That <u>Pustelnik</u> acted with the intent to deceive, manipulate or defraud – *i.e.* that <u>Pustelnik</u> acted knowingly, intentionally, and deliberately, and not mistakenly or inadvertently?

     Yes _____ (if yes, proceed to Question 63)

     No _____ (if no, proceed to Question 62(c))

Question 62(c): That <u>Pustelnik</u> acted with a high degree of recklessness – *i.e.* an extreme departure from the standards of ordinary care?

Yes _____ (if yes proceed to Question 63)

No _____ (if no, answer Question 63 "No")

Question 63: That <u>Pustelnik</u> violate Section 17(a)(1) of the Securities Act with regard to the trading activity described as "layering"?

Yes _____

No _____

## Claim 2 – Cross-Market Strategy Section 17(a)(1)

**As to Defendant Avalon:**

With regard to the trading activity described as "cross-market strategy," did the SEC prove by a preponderance of the evidence:

Question 64: That <u>Avalon</u> either directly or indirectly committed a manipulative act in furtherance of a scheme to defraud, or substantially participated in or assisted in its perpetration?

Yes _____ (if yes, proceed to Question 65(a))

No _____ (if no, answer Question 70 "No")

Question 65(a): That <u>Avalon</u> possessed an ability to influence U.S. securities market prices?

Yes _____ (if yes, proceed to Question 65(b))

No _____ (if no, answer Question 70 "No")

Question 65(b): That an artificial price existed in the U.S. securities market?

Yes _____ (if yes, proceed to Question 65(c))

No _____ (if no, answer Question 70 "No")

Question 65(c): That <u>Avalon</u> caused the artificial prices in the U.S. securities market?

Yes _____ (if yes, proceed to Question 65(d))

No _____ (if no, answer Question 70 "No")

Question 65(d): That <u>Avalon</u> specifically intended to cause the artificial price?

Yes _____ (if yes, proceed to Question 66)

No _____ (if no, answer Question 70 "No")

Question 66: That <u>Avalon's</u> manipulative act(s) injected false information into the U.S. securities marketplace?

Yes _____ (if yes, proceed to Question 67)

No _____ (if no, answer Question 70 "No")

Question 67: That <u>Avalon's</u> manipulative act(s) occurred in connection with the offer or sale of a security?

Yes _____ (if yes, proceed to Question 68)

No _____ (if no, answer Question 70 "No")

Question 68: That <u>Avalon</u> knowingly used or caused to be used, the means or instrumentalities of interstate commerce or the mails, or a facility of any national securities exchange, in furtherance of the fraud?

Yes _____ (if yes, proceed to Question 69(a))

No _____ (if no, answer Question 70 "No")

Question 69(a): That <u>Avalon</u> did not act in good faith – *i.e.* that <u>Avalon</u> did not act on an opinion honestly believe to be true, even if that opinion was erroneous or that belief mistaken?

Yes _____ (if yes proceed to Question 69(b))

No _____ (if no, answer Question 70 "No")

Question 69(b): That <u>Avalon</u> acted with the intent to deceive, manipulate or defraud – *i.e.* that <u>Avalon</u> acted knowingly, intentionally, and deliberately, and not mistakenly or inadvertently?

Yes _____ (if yes, proceed to Question 70)

20

No _____ (if no, proceed to Question 69(c))

Question 69(c): That <u>Avalon</u> acted with a high degree of recklessness – *i.e.* an extreme departure from the standards of ordinary care?

Yes _____ (if yes proceed to Question 70)

No _____ (if no, answer Question 70 "No")

Question 70: That <u>Avalon</u> violate Section 17(a)(1) of the Securities Act with regard to the trading activity described as "cross-market strategy"?

Yes _____

No _____

**As to Defendant Nathan Fayyer:**

With regard to the trading activity described as "cross-market strategy," did the SEC prove by a preponderance of the evidence:

Question 71: That <u>Fayyer</u> either directly or indirectly committed a manipulative act in furtherance of a scheme to defraud, or substantially participated in or assisted in its perpetration?

Yes _____ (if yes, proceed to Question 72(a))

No _____ (if no, answer Question 77 "No")

Question 72(a): That <u>Fayyer</u> possessed an ability to influence U.S. securities market prices?

Yes _____ (if yes, proceed to Question 72(b))

No _____ (if no, answer Question 77 "No")

Question 72(b): That an artificial price existed in the U.S. securities market?

Yes _____ (if yes, proceed to Question 72(c))

No _____ (if no, answer Question 77 "No")

Question 72(c): That <u>Fayyer</u> caused the artificial prices in the U.S. securities market?

Yes _____ (if yes, proceed to Question 72(d))

No _____ (if no, answer Question 77 "No")

Question 72(d): That <u>Fayyer</u> specifically intended to cause the artificial price?

Yes _____ (if yes, proceed to Question 73)

No _____ (if no, answer Question 77 "No")

Question 73: That <u>Fayyer's</u> manipulative act(s) injected false information into the U.S. securities marketplace?

Yes _____ (if yes, proceed to Question 74)

No _____ (if no, answer Question 77 "No")

Question 74: That <u>Fayyer's</u> manipulative act(s) occurred in connection with the offer or sale of a security?

Yes _____ (if yes, proceed to Question 75)

No _____ (if no, answer Question 77 "No")

Question 75: That <u>Fayyer</u> knowingly used or caused to be used, the means or instrumentalities of interstate commerce or the mails, or a facility of any national securities exchange, in furtherance of the fraud?

Yes _____ (if yes, proceed to Question 76(a))

No _____ (if no, answer Question 77 "No")

Question 76(a): That <u>Fayyer</u> did not act in good faith – *i.e.* that <u>Fayyer</u> did not act on an opinion honestly believe to be true, even if that opinion was erroneous or that belief mistaken?

Yes _____ (if yes proceed to Question 76(b))

No _____ (if no, answer Question 77 "No")

Question 76(b): That <u>Fayyer</u> acted with the intent to deceive, manipulate or defraud – *i.e.* that <u>Fayyer</u> acted knowingly, intentionally, and deliberately, and not mistakenly or inadvertently?

Yes _____ (if yes, proceed to Question 77)

No _____ (if no, proceed to Question 76(c))

Question 76(c): That <u>Fayyer</u> acted with a high degree of recklessness – *i.e.* an extreme departure from the standards of ordinary care?

Yes _____ (if yes proceed to Question 77)

No _____ (if no, answer Question 77 "No")

Question 77: That <u>Fayyer</u> violate Section 17(a)(1) of the Securities Act with regard to the trading activity described as "cross-market strategy"?

Yes _____

No _____

**As to Defendant Sergey Pustelnik:**

With regard to the trading activity described as "cross-market strategy," did the SEC prove by a preponderance of the evidence:

Question 78: That <u>Pustelnik</u> either directly or indirectly committed a manipulative act in furtherance of a scheme to defraud, or substantially participated in or assisted in its perpetration?

Yes _____ (if yes, proceed to Question 79(a))

No _____ (if no, answer Question 84 "No")

Question 79(a): That <u>Pustelnik</u> possessed an ability to influence U.S. securities market prices?

Yes _____ (if yes, proceed to Question 79(b))

No _____ (if no, answer Question 84 "No")

Question 79(b): That an artificial price existed in the U.S. securities market?

Yes _____ (if yes, proceed to Question 79(c))

No _____ (if no, answer Question 84 "No")

Question 79(c): That <u>Pustelnik</u> caused the artificial prices in the U.S. securities market?

Yes _____ (if yes, proceed to Question 79(d))

No _____ (if no, answer Question 84 "No")

Question 79(d): That <u>Pustelnik</u> specifically intended to cause the artificial price?

Yes _____ (if yes, proceed to Question 80)

No _____ (if no, answer Question 84 "No")

Question 80: That <u>Pustelnik's</u> manipulative act(s) injected false information into the U.S. securities marketplace?

Yes _____ (if yes, proceed to Question 81)

No _____ (if no, answer Question 84 "No")

Question 81: That <u>Pustelnik's</u> manipulative act(s) occurred in connection with the offer or sale of a security?

Yes _____ (if yes, proceed to Question 82)

No _____ (if no, answer Question 84 "No")

Question 82: That <u>Pustelnik</u> knowingly used or caused to be used, the means or instrumentalities of interstate commerce or the mails, or a facility of any national securities exchange, in furtherance of the fraud?

Yes _____ (if yes, proceed to Question 83(a))

No _____ (if no, answer Question 84 "No")

Question 83(a): That <u>Pustelnik</u> did not act in good faith – *i.e.* that <u>Pustelnik</u> did not act on an opinion honestly believe to be true, even if that opinion was erroneous or that belief mistaken?

Yes _____ (if yes proceed to Question 83(b))

No _____ (if no, answer Question 84 "No")

Question 83(b): That <u>Pustelnik</u> acted with the intent to deceive, manipulate or defraud – *i.e.* that <u>Pustelnik</u> acted knowingly, intentionally, and deliberately, and not mistakenly or inadvertently?

Yes _____ (if yes, proceed to Question 84)

24

No _____ (if no, proceed to Question 83(c))

Question 83(c): That <u>Pustelnik</u> acted with a high degree of recklessness – *i.e.* an extreme departure from the standards of ordinary care?

Yes _____ (if yes proceed to Question 84)

No _____ (if no, answer Question 84 "No")

Question 84: That <u>Pustelnik</u> violate Section 17(a)(1) of the Securities Act with regard to the trading activity described as "cross-market strategy"?

Yes _____

No _____

### Claim 3 – Layering Strategy Section 17(a)(3)

**As to Defendant Avalon:**

With regard to the trading activity described as "layering," did the SEC prove by a preponderance of the evidence:

Question 85: That <u>Avalon</u> either directly or indirectly committed a manipulative or deceptive act in furtherance of a scheme to defraud, or substantially participated in or assisted in its perpetration?

Yes _____ (if yes, proceed to Question 86(a))

No _____ (if no, answer Question 91 "No")

Question 86(a): That <u>Avalon</u> possessed an ability to influence U.S. securities market prices?

Yes _____ (if yes, proceed to Question 86(b))

No _____ (if no, answer Question 91 "No")

Question 86(b): That an artificial price existed in the U.S. securities market?

Yes _____ (if yes, proceed to Question 86(c))

No _____ (if no, answer Question 91 "No")

Question 86(c): That <u>Avalon</u> caused the artificial prices in the U.S. securities market?

Yes _____ (if yes, proceed to Question 86(d))

No _____ (if no, answer Question 91 "No")

Question 86(d): That <u>Avalon</u> specifically intended to cause the artificial price?

Yes _____ (if yes, proceed to Question 87)

No _____ (if no, answer Question 91 "No")

Question 87: That <u>Avalon's</u> manipulative act(s) injected false information into the U.S. securities marketplace?

Yes _____ (if yes, proceed to Question 88)

No _____ (if no, answer Question 91 "No")

Question 88: That <u>Avalon's</u> manipulative act(s) occurred in connection with the offer or sale of a security?

Yes _____ (if yes, proceed to Question 89)

No _____ (if no, answer Question 91 "No")

Question 89: That <u>Avalon</u> knowingly used or caused to be used, the means or instrumentalities of interstate commerce or the mails, or a facility of any national securities exchange, in furtherance of the fraud?

Yes _____ (if yes, proceed to Question 90(a))

No _____ (if no, answer Question 91 "No")

Question 90(a): That <u>Avalon</u> acted with the intent to deceive, manipulate or defraud – *i.e.* that <u>Avalon</u> acted knowingly, intentionally, and deliberately, and not mistakenly or inadvertently?

Yes _____ (if yes, proceed to Question 91)

No _____ (if no, proceed to Question 90(b))

Question 90(b): That <u>Avalon</u> acted with a high degree of recklessness – *i.e.* an extreme departure from the standards of ordinary care?

Yes _____ (if yes proceed to Question 91)

No _____ (if no, proceed to Question 90(c)")

Question 90(c): That <u>Avalon</u> acted, in light of all the circumstances, negligently – *i.e.* failed to use ordinary care?

Yes _____ (if yes proceed to Question 91)

No _____ (if no, answer Question 91 "No")

Question 91: That <u>Avalon</u> violate Section 17(a)(3) of the Securities Act with regard to the trading activity described as "layering"?

Yes _____

No _____

**As to Defendant Nathan Fayyer:**

With regard to the trading activity described as "layering," did the SEC prove by a preponderance of the evidence:

Question 92: That <u>Fayyer</u> either directly or indirectly committed a manipulative or deceptive act in furtherance of a scheme to defraud, or substantially participated in or assisted in its perpetration?

Yes _____ (if yes, proceed to Question 93(a))

No _____ (if no, answer Question 98 "No")

Question 93(a): That <u>Fayyer</u> possessed an ability to influence U.S. securities market prices?

Yes _____ (if yes, proceed to Question 93(b))

No _____ (if no, answer Question 98 "No")

Question 93(b): That an artificial price existed in the U.S. securities market?

Yes _____ (if yes, proceed to Question 93(c))

No _____ (if no, answer Question 98 "No")

Question 93(c): That <u>Fayyer</u> caused the artificial prices in the U.S. securities market?

Yes _____ (if yes, proceed to Question 93(d))

No _____ (if no, answer Question 98 "No")

Question 93(d): That <u>Fayyer</u> specifically intended to cause the artificial price?

Yes _____ (if yes, proceed to Question 94)

No _____ (if no, answer Question 98 "No")

Question 94: That <u>Fayyer's</u> manipulative act(s) injected false information into the U.S. securities marketplace?

Yes _____ (if yes, proceed to Question 95)

No _____ (if no, answer Question 98 "No")

Question 95: That <u>Fayyer's</u> manipulative act(s) occurred in connection with the offer or sale of a security?

Yes _____ (if yes, proceed to Question 96)

No _____ (if no, answer Question 98 "No")

Question 96: That <u>Fayyer</u> knowingly used or caused to be used, the means or instrumentalities of interstate commerce or the mails, or a facility of any national securities exchange, in furtherance of the fraud?

Yes _____ (if yes, proceed to Question 97(a))

No _____ (if no, answer Question 98 "No")

Question 97(a): That <u>Fayyer</u> acted with the intent to deceive, manipulate or defraud – *i.e.* that <u>Fayyer</u> acted knowingly, intentionally, and deliberately, and not mistakenly or inadvertently?

Yes _____ (if yes, proceed to Question 98)

No _____ (if no, proceed to Question 97(b))

Question 97(b): That <u>Fayyer</u> acted with a high degree of recklessness – *i.e.* an extreme departure from the standards of ordinary care?

Yes _____ (if yes proceed to Question 98)

28

No _____ (if no, proceed to Question 97(c)")

Question 97(c): That <u>Fayyer</u> acted, in light of all the circumstances, negligently – *i.e.* failed to use ordinary care?

Yes _____ (if yes proceed to Question 98)

No _____ (if no, answer Question 98 "No")

Question 98: That <u>Fayyer</u> violate Section 17(a)(3) of the Securities Act with regard to the trading activity described as "layering"?

Yes _____

No _____

**As to Defendant Sergey Pustelnik:**

With regard to the trading activity described as "layering," did the SEC prove by a preponderance of the evidence:

Question 99: That <u>Pustelnik</u> either directly or indirectly committed a manipulative or deceptive act in furtherance of a scheme to defraud, or substantially participated in or assisted in its perpetration?

Yes _____ (if yes, proceed to Question 100(a))

No _____ (if no, answer Question 105 "No")

Question 100(a): That <u>Pustelnik</u> possessed an ability to influence U.S. securities market prices?

Yes _____ (if yes, proceed to Question 100(b))

No _____ (if no, answer Question 105 "No")

Question 100(b): That an artificial price existed in the U.S. securities market?

Yes _____ (if yes, proceed to Question 100(c))

No _____ (if no, answer Question 105 "No")

Question 100(c): That <u>Pustelnik</u> caused the artificial prices in the U.S. securities market?

Yes _____ (if yes, proceed to Question 100(d))

No _____ (if no, answer Question 105 "No")

Question 100(d): That <u>Pustelnik</u> specifically intended to cause the artificial price?

Yes _____ (if yes, proceed to Question 101)

No _____ (if no, answer Question 105 "No")

Question 101: That <u>Pustelnik's</u> manipulative act(s) injected false information into the U.S. securities marketplace?

Yes _____ (if yes, proceed to Question 102)

No _____ (if no, answer Question 105 "No")

Question 102: That <u>Pustelnik's</u> manipulative act(s) occurred in connection with the offer or sale of a security?

Yes _____ (if yes, proceed to Question 103)

No _____ (if no, answer Question 105 "No")

Question 103: That <u>Pustelnik</u> knowingly used or caused to be used, the means or instrumentalities of interstate commerce or the mails, or a facility of any national securities exchange, in furtherance of the fraud?

Yes _____ (if yes, proceed to Question 104(a))

No _____ (if no, answer Question 105 "No")

Question 104(a): That <u>Pustelnik</u> acted with the intent to deceive, manipulate or defraud – *i.e.* that <u>Pustelnik</u> acted knowingly, intentionally, and deliberately, and not mistakenly or inadvertently?

Yes _____ (if yes, proceed to Question 105)

No _____ (if no, proceed to Question 104(b))

Question 104(b): That <u>Pustelnik</u> acted with a high degree of recklessness – *i.e.* an extreme departure from the standards of ordinary care?

Yes _____ (if yes proceed to Question 105)

No _____ (if no, proceed to Question 104(c)")

Question 104(c): That <u>Pustelnik</u> acted, in light of all the circumstances, negligently – *i.e.* failed to use ordinary care?

Yes _____ (if yes proceed to Question 105)

No _____ (if no, answer Question 105 "No")

Question 105: That <u>Pustelnik</u> violate Section 17(a)(3) of the Securities Act with regard to the trading activity described as "layering"?

Yes _____

No _____

## Claim 3 – Cross-Market Strategy Section 17(a)(3)

**As to Defendant Avalon:**

With regard to the trading activity described as "cross-market strategy," did the SEC prove by a preponderance of the evidence:

Question 107: That <u>Avalon</u> either directly or indirectly committed a manipulative or deceptive act in furtherance of a scheme to defraud, or substantially participated in or assisted in its perpetration?

Yes _____ (if yes, proceed to Question 108(a))

No _____ (if no, answer Question 113 "No")

Question 108(a): That <u>Avalon</u> possessed an ability to influence U.S. securities market prices?

Yes _____ (if yes, proceed to Question 108(b))

No _____ (if no, answer Question 113 "No")

Question 108(b): That an artificial price existed in the U.S. securities market?

Yes _____ (if yes, proceed to Question 108(c))

No _____ (if no, answer Question 113 "No")

Question 108(c): That <u>Avalon</u> caused the artificial prices in the U.S. securities market?

> Yes _____ (if yes, proceed to Question 108(d))

> No _____ (if no, answer Question 113 "No")

Question 108(d): That <u>Avalon</u> specifically intended to cause the artificial price?

> Yes _____ (if yes, proceed to Question 109)

> No _____ (if no, answer Question 113 "No")

Question 109: That <u>Avalon's</u> manipulative act(s) injected false information into the U.S. securities marketplace?

> Yes _____ (if yes, proceed to Question 110)

> No _____ (if no, answer Question 113 "No")

Question 110: That <u>Avalon's</u> manipulative act(s) occurred in connection with the offer or sale of a security?

> Yes _____ (if yes, proceed to Question 111)

> No _____ (if no, answer Question 113 "No")

Question 111: That <u>Avalon</u> knowingly used or caused to be used, the means or instrumentalities of interstate commerce or the mails, or a facility of any national securities exchange, in furtherance of the fraud?

> Yes _____ (if yes, proceed to Question 112(a))

> No _____ (if no, answer Question 113 "No")

Question 112(a): That <u>Avalon</u> acted with the intent to deceive, manipulate or defraud – *i.e.* that <u>Avalon</u> acted knowingly, intentionally, and deliberately, and not mistakenly or inadvertently?

> Yes _____ (if yes, proceed to Question 113)

> No _____ (if no, proceed to Question 112(b))

Question 112(b): That <u>Avalon</u> acted with a high degree of recklessness – *i.e.* an extreme departure from the standards of ordinary care?

Yes _____ (if yes proceed to Question 113)

No _____ (if no, proceed to Question 112(c)")

Question 112(c): That <u>Avalon</u> acted, in light of all the circumstances, negligently – *i.e.* failed to use ordinary care?

Yes _____ (if yes proceed to Question 113)

No _____ (if no, answer Question 113 "No")

Question 113: That <u>Avalon</u> violate Section 17(a)(3) of the Securities Act with regard to the trading activity described as "cross-market strategy"?

Yes _____

No _____

**As to Defendant Nathan Fayyer:**

With regard to the trading activity described as "cross-market strategy," did the SEC prove by a preponderance of the evidence:

Question 114: That <u>Fayyer</u> either directly or indirectly committed a manipulative or deceptive act in furtherance of a scheme to defraud, or substantially participated in or assisted in its perpetration?

Yes _____ (if yes, proceed to Question 115(a))

No _____ (if no, answer Question 120 "No")

Question 115(a): That <u>Fayyer</u> possessed an ability to influence U.S. securities market prices?

Yes _____ (if yes, proceed to Question 115(b))

No _____ (if no, answer Question 120 "No")

Question 115(b): That an artificial price existed in the U.S. securities market?

Yes _____ (if yes, proceed to Question 115(c))

No _____ (if no, answer Question 120 "No")

Question 115(c): That <u>Fayyer</u> caused the artificial prices in the U.S. securities market?

Yes _____ (if yes, proceed to Question 115(d))

No _____ (if no, answer Question 120 "No")

Question 115(d): That <u>Fayyer</u> specifically intended to cause the artificial price?

Yes _____ (if yes, proceed to Question 116)

No _____ (if no, answer Question 120 "No")

Question 116: That <u>Fayyer's</u> manipulative act(s) injected false information into the U.S. securities marketplace?

Yes _____ (if yes, proceed to Question 117)

No _____ (if no, answer Question 120 "No")

Question 117: That <u>Fayyer's</u> manipulative act(s) occurred in connection with the offer or sale of a security?

Yes _____ (if yes, proceed to Question 118)

No _____ (if no, answer Question 120 "No")

Question 118: That <u>Fayyer</u> knowingly used or caused to be used, the means or instrumentalities of interstate commerce or the mails, or a facility of any national securities exchange, in furtherance of the fraud?

Yes _____ (if yes, proceed to Question 119(a))

No _____ (if no, answer Question 120 "No")

Question 119(a): That <u>Fayyer</u> acted with the intent to deceive, manipulate or defraud – *i.e.* that <u>Fayyer</u> acted knowingly, intentionally, and deliberately, and not mistakenly or inadvertently?

Yes _____ (if yes, proceed to Question 120)

No _____ (if no, proceed to Question 119(b))

Question 119(b): That <u>Fayyer</u> acted with a high degree of recklessness – *i.e.* an extreme departure from the standards of ordinary care?

Yes _____ (if yes proceed to Question 120)

No _____ (if no, proceed to Question 119(c)")

Question 119(c): That <u>Fayyer</u> acted, in light of all the circumstances, negligently – *i.e.* failed to use ordinary care?

Yes _____ (if yes proceed to Question 120)

No _____ (if no, answer Question 120 "No")

Question 120: That <u>Fayyer</u> violate Section 17(a)(3) of the Securities Act with regard to the trading activity described as "cross-market strategy"?

Yes _____

No _____

**As to Defendant Sergey Pustelnik:**

With regard to the trading activity described as "cross-market strategy," did the SEC prove by a preponderance of the evidence:

Question 121: That <u>Pustelnik</u> either directly or indirectly committed a manipulative or deceptive act in furtherance of a scheme to defraud, or substantially participated in or assisted in its perpetration?

Yes _____ (if yes, proceed to Question 122(a))

No _____ (if no, answer Question 127 "No")

Question 122(a): That <u>Pustelnik</u> possessed an ability to influence U.S. securities market prices?

Yes _____ (if yes, proceed to Question 122(b))

No _____ (if no, answer Question 127 "No")

Question 122(b): That an artificial price existed in the U.S. securities market?

Yes _____ (if yes, proceed to Question 122(c))

No _____ (if no, answer Question 127 "No")

Question 122(c): That <u>Pustelnik</u> caused the artificial prices in the U.S. securities market?

Yes \_\_\_\_\_ (if yes, proceed to Question 122(d))

No \_\_\_\_\_ (if no, answer Question 127 "No")

Question 122(d): That <u>Pustelnik</u> specifically intended to cause the artificial price?

Yes \_\_\_\_\_ (if yes, proceed to Question 123)

No \_\_\_\_\_ (if no, answer Question 127 "No")

Question 123: That <u>Pustelnik's</u> manipulative act(s) injected false information into the U.S. securities marketplace?

Yes \_\_\_\_\_ (if yes, proceed to Question 124)

No \_\_\_\_\_ (if no, answer Question 127 "No")

Question 124: That <u>Pustelnik's</u> manipulative act(s) occurred in connection with the offer or sale of a security?

Yes \_\_\_\_\_ (if yes, proceed to Question 125)

No \_\_\_\_\_ (if no, answer Question 127 "No")

Question 125: That <u>Pustelnik</u> knowingly used or caused to be used, the means or instrumentalities of interstate commerce or the mails, or a facility of any national securities exchange, in furtherance of the fraud?

Yes \_\_\_\_\_ (if yes, proceed to Question 126(a))

No \_\_\_\_\_ (if no, answer Question 127 "No")

Question 126(a): That <u>Pustelnik</u> acted with the intent to deceive, manipulate or defraud – *i.e.* that <u>Pustelnik</u> acted knowingly, intentionally, and deliberately, and not mistakenly or inadvertently?

Yes \_\_\_\_\_ (if yes, proceed to Question 127)

No \_\_\_\_\_ (if no, proceed to Question 126(b))

Question 126(b): That <u>Pustelnik</u> acted with a high degree of recklessness – *i.e.* an extreme departure from the standards of ordinary care?

Yes \_\_\_\_\_ (if yes proceed to Question 127)

36

No _____ (if no, proceed to Question 126(c)")

Question 126(c): That <u>Pustelnik</u> acted, in light of all the circumstances, negligently – *i.e.* failed to use ordinary care?

Yes _____ (if yes proceed to Question 127)

No _____ (if no, answer Question 127 "No")

Question 127: That <u>Pustelnik</u> violate Section 17(a)(3) of the Securities Act with regard to the trading activity described as "cross-market strategy"?

Yes _____

No _____

## Claim 4 – Layering Strategy Section 9(a)(2)

**As to Defendant Avalon:**

With regard to the trading activity described as "layering," did the SEC prove by a preponderance of the evidence:

Question 128: That <u>Avalon</u> effected, alone or with others, a series of transactions – *i.e.* brought about or made happen three or more transactions?

Yes _____ (if yes, proceed to Question 129)

No _____ (if no, answer Question 132 "No")

Question 129: That those series of transactions created actual or apparent active trading in the security?

Yes _____ (if yes, proceed to Question 130)

No _____ (if no, answer Question 132 "No")

Question 130: That <u>Avalon</u> knowingly used or caused to be used, the means or instrumentalities of interstate commerce or the mails, or a facility of any national securities exchange, in furtherance of the fraud?

Yes _____ (if yes, proceed to Question 131)

No _____ (if no, answer Question 132 "No")

Question 131: That <u>Avalon</u> acted with the intent to induce others to purchase or sell the same security as those in which <u>Avalon</u> effected a series of transactions?

Yes _____ (if yes, proceed to Question 132)

No _____ (if no, answer Question 132 "No")

Question 132: That <u>Avalon</u> violated Section 9(a)(2) of the Exchange Act with regard to the trading activity described as "layering"?

Yes _____

No _____

**As to Defendant Nathan Fayyer:**

With regard to the trading activity described as "layering," did the SEC prove by a preponderance of the evidence:

Question 133: That <u>Fayyer</u> effected, alone or with others, a series of transactions – *i.e.* brought about or made happen three or more transactions?

Yes _____ (if yes, proceed to Question 134)

No _____ (if no, answer Question 137 "No")

Question 134: That those series of transactions created actual or apparent active trading in the security?

Yes _____ (if yes, proceed to Question 135)

No _____ (if no, answer Question 137 "No")

Question 135: That <u>Fayyer</u> knowingly used or caused to be used, the means or instrumentalities of interstate commerce or the mails, or a facility of any national securities exchange, in furtherance of the fraud?

Yes _____ (if yes, proceed to Question 136)

No _____ (if no, answer Question 137 "No")

Question 136: That <u>Fayyer</u> acted with the intent to induce others to purchase or sell the same security as those in which <u>Fayyer</u> effected a series of transactions?

Yes _____ (if yes, proceed to Question 137)

38

No _____ (if no, answer Question 137 "No")

Question 137: That <u>Fayyer</u> violate Section 9(a)(2) of the Exchange Act with regard to the trading activity described as "layering"?

Yes _____

No _____

## Claim 4 – Cross-Market Strategy Section 9(a)(2)

### As to Defendant Avalon:

With regard to the trading activity described as "cross-market strategy," did the SEC prove by a preponderance of the evidence:

Question 138: That <u>Avalon</u> effected, alone or with others, a series of transactions – *i.e.* brought about or made happen three or more transactions?

Yes _____ (if yes, proceed to Question 139)

No _____ (if no, answer Question 142 "No")

Question 139: That those series of transactions created actual or apparent active trading in the security?

Yes _____ (if yes, proceed to Question 140)

No _____ (if no, answer Question 142 "No")

Question 140: That <u>Avalon</u> knowingly used or caused to be used, the means or instrumentalities of interstate commerce or the mails, or a facility of any national securities exchange, in furtherance of the fraud?

Yes _____ (if yes, proceed to Question 141)

No _____ (if no, answer Question 142 "No")

Question 141: That <u>Avalon</u> acted with the intent to induce others to purchase or sell the same security as those in which <u>Avalon</u> effected a series of transactions?

Yes _____ (if yes, proceed to Question 142)

No _____ (if no, answer Question 142 "No")

Question 142: That <u>Avalon</u> violated Section 9(a)(2) of the Exchange Act with regard to the trading activity described as "cross-market strategy"?

Yes _____

No _____

**As to Defendant Nathan Fayyer:**

With regard to the trading activity described as "cross-market strategy," did the SEC prove by a preponderance of the evidence:

Question 143: That <u>Fayyer</u> effected, alone or with others, a series of transactions – *i.e.* brought about or made happen three or more transactions?

Yes _____ (if yes, proceed to Question 144)

No _____ (if no, answer Question 147 "No")

Question 144: That those series of transactions created actual or apparent active trading in the security?

Yes _____ (if yes, proceed to Question 145)

No _____ (if no, answer Question 147 "No")

Question 145: That <u>Fayyer</u> knowingly used or caused to be used, the means or instrumentalities of interstate commerce or the mails, or a facility of any national securities exchange, in furtherance of the fraud?

Yes _____ (if yes, proceed to Question 146)

No _____ (if no, answer Question 147 "No")

Question 146: That <u>Fayyer</u> acted with the intent to induce others to purchase or sell the same security as those in which <u>Fayyer</u> effected a series of transactions?

Yes _____ (if yes, proceed to Question 147)

No _____ (if no, answer Question 147 "No")

Question 147: That <u>Fayyer</u> violate Section 9(a)(2) of the Exchange Act with regard to the trading activity described as "cross-market strategy"?

Yes _____

40

No _____

**Claim 5 – Layering Strategy Aiding and Abetting**

**Avalon Primary Violations**

Question 148: With regard to the trading activity described as "layering," did you find <u>Avalon</u> liable for Claims 1, 2, 3, or 4, - *i.e.* did you respond "Yes" to Questions 7, 49, 91, or 132?

Yes _____ (if yes, proceed to Question 149)

No _____ (if no, proceed to Question 159)

**As to Defendant Nathan Fayyer:**

With regard to the trading activity described as "layering," did the SEC prove by a preponderance of the evidence:

Question 149: That <u>Fayyer</u> affirmatively assisted or helped to conceal the conduct by <u>Avalon</u> that you determined created liability under Claims 1, 2, 3, or 4?

Yes _____ (if yes, proceed to Question 150)

No _____ (if no, answer Question 153 "No")

Question 150: That <u>Fayyer's</u> assistance was a substantial causal factor in the conduct by <u>Avalon</u> that you determined created liability under Claims 1, 2, 3, or 4 – *i.e.* that <u>Fayyer's</u> actions were a substantial factor in bringing about the violation, and that the violation was a reasonably foreseeable result of <u>Fayyer's</u> acts?

Yes _____ (if yes, proceed to Question 151)

No _____ (if no, answer Question 153 "No")

Question 151: That <u>Fayyer</u> did not act in good faith – *i.e.* that <u>Fayyer</u> did not act on an opinion honestly believe to be true, even if that opinion was erroneous or that belief mistaken?

Yes _____ (if yes proceed to Question 152)

No _____ (if no, answer Question 153 "No")

Question 152: That <u>Fayyer</u> had actual knowledge of <u>Avalon</u> violations?

41

Yes _____ (if yes, proceed to Question 153)

No _____ (if no, answer Question 153 "No")

Question 153: That <u>Fayyer</u> aided and abetted <u>Avalon's</u> violation with regard to the trading activity described as "layering":

Section 10(b) or Rule 10b-5 of the Exchange Act

Yes _____

No _____

Section 17(a)(1) of the Securities Act

Yes _____

No _____

Section 17(a)(3) of the Securities Act

Yes _____

No _____

Section 9(a)(2) of the Exchange Act

Yes _____

No _____

**As to Defendant Sergey Pustelnik:**

With regard to the trading activity described as "layering," did the SEC prove by a preponderance of the evidence:

Question 154: That <u>Pustelnik</u> affirmatively assisted or helped to conceal the conduct by <u>Avalon</u> that you determined created liability under Claims 1, 2, 3, or 4?

Yes _____ (if yes, proceed to Question 155)

No _____ (if no, answer Question 158 "No")

Question 155: That <u>Pustelnik's</u> assistance was a substantial causal factor in the conduct by <u>Avalon</u> that you determined created liability under Claims 1, 2, 3, or 4 – *i.e.* that <u>Pustelnik's</u> actions were a substantial factor in bringing about the violation, and that the violation was a reasonably foreseeable result of <u>Pustelnik's</u> acts?

> Yes _____ (if yes, proceed to Question 156)
>
> No _____ (if no, answer Question 158 "No")

Question 156: That <u>Pustelnik</u> did not act in good faith – *i.e.* that <u>Pustelnik</u> did not act on an opinion honestly believe to be true, even if that opinion was erroneous or that belief mistaken?

> Yes _____ (if yes proceed to Question 157)
>
> No _____ (if no, answer Question 158 "No")

Question 157: That <u>Pustelnik</u> had actual knowledge of <u>Avalon</u> violations?

> Yes _____ (if yes, proceed to Question 158)
>
> No _____ (if no, answer Question 158 "No")

Question 158: That <u>Pustelnik</u> aided and abetted <u>Avalon's</u> violation with regard to the trading activity described as the "cross-market strategy":

> Section 10(b) or Rule 10b-5 of the Exchange Act
>
> Yes _____
>
> No _____
>
> Section 17(a)(1) of the Securities Act
>
> Yes _____
>
> No _____
>
> Section 17(a)(3) of the Securities Act
>
> Yes _____
>
> No _____

Section 9(a)(2) of the Exchange Act

Yes _____

No _____

**Fayyer Primary Violation**

Question 159: With regard to the trading activity described as "layering," did you find <u>Fayyer</u> liable for Claims 1, 2, 3, or 4, - *i.e.* did you respond "Yes" to Questions 14, 56, 98, or 137?

Yes _____ (if yes, proceed to Question 160)

No _____ (if no, proceed to Question 165)

**As to Defendant Sergey Pustelnik:**

With regard to the trading activity described as "layering," did the SEC prove by a preponderance of the evidence:

Question 160: That <u>Pustelnik</u> affirmatively assisted or helped to conceal the conduct by <u>Fayyer</u> that you determined created liability under Claims 1, 2, 3, or 4?

Yes _____ (if yes, proceed to Question 161)

No _____ (if no, answer Question 164 "No")

Question 161: That <u>Pustelnik's</u> assistance was a substantial causal factor in the conduct by <u>Fayyer</u> that you determined created liability under Claims 1, 2, 3, or 4 – *i.e.* that <u>Pustelnik's</u> actions were a substantial factor in bringing about the violation, and that the violation was a reasonably foreseeable result of <u>Pustelnik's</u> acts?

Yes _____ (if yes, proceed to Question 162)

No _____ (if no, answer Question 164 "No")

Question 162: That <u>Pustelnik</u> did not act in good faith – *i.e.* that <u>Pustelnik</u> did not act on an opinion honestly believe to be true, even if that opinion was erroneous or that belief mistaken?

Yes _____ (if yes proceed to Question 163)

No _____ (if no, answer Question 164 "No")

Question 163: That <u>Pustelnik</u> had actual knowledge of <u>Fayyer's</u> violations?

Yes _____ (if yes, proceed to Question 164)

No _____ (if no, answer Question 164 "No")

Question 164: That <u>Pustelnik</u> aided and abetted <u>Fayyer's</u> violation with regard to the trading activity described as "layering":

Section 10(b) or Rule 10b-5 of the Exchange Act

Yes _____

No _____

Section 17(a)(1) of the Securities Act

Yes _____

No _____

Section 17(a)(3) of the Securities Act

Yes _____

No _____

Section 9(a)(2) of the Exchange Act

Yes _____

No _____

**Pustelnik Primary Violations**

Question 165: With regard to the trading activity described as "layering," did you find <u>Pustelnik</u> liable for Claims 1, 2, or 3 - *i.e.* did you respond "Yes" to Questions 21, 63, or 105?

Yes _____ (if yes, proceed to Question 166)

No _____ (if no, proceed to Question 171)

**As to Defendant Nathan Fayyer:**

With regard to the trading activity described as "layering," did the SEC prove by a preponderance of the evidence:

Question 166: That Fayyer affirmatively assisted or helped to conceal the conduct by Pustelnik that you determined created liability under Claims 1, 2, 3, or 4?

Yes _____ (if yes, proceed to Question 167)

No _____ (if no, answer Question 170 "No")

Question 167: That Fayyer's assistance was a substantial causal factor in the conduct by Pustelnik that you determined created liability under Claims 1, 2, 3, or 4 – *i.e.* that Fayyer's actions were a substantial factor in bringing about the violation, and that the violation was a reasonably foreseeable result of Fayyer's acts?

Yes _____ (if yes, proceed to Question 168)

No _____ (if no, answer Question 170 "No")

Question 168: That Fayyer did not act in good faith – *i.e.* that Fayyer did not act on an opinion honestly believe to be true, even if that opinion was erroneous or that belief mistaken?

Yes _____ (if yes proceed to Question 169)

No _____ (if no, answer Question 170 "No")

Question 169: That Fayyer had actual knowledge of Pustelnik violations?

Yes _____ (if yes, proceed to Question 170)

No _____ (if no, answer Question 170 "No")

Question 170: That Fayyer aided and abetted Pustelnik's violation with regard to the trading activity described as "layering":

Section 10(b) or Rule 10b-5 of the Exchange Act

46

Yes _____

No _____

Section 17(a)(1) of the Securities Act

Yes _____

No _____

Section 17(a)(3) of the Securities Act

Yes _____

No _____

### Claim 5 – Cross-Market Strategy Aiding and Abetting

**Avalon Primary Violations**

Question 171: With regard to the trading activity described as "cross-market strategy," did you find <u>Avalon</u> liable for Claims 1, 2, 3, or 4, - *i.e.* did you respond "Yes" to Questions 28, 70, 113, or 142?

Yes _____ (if yes, proceed to Question 172)

No _____ (if no, proceed to Question 182)

**As to Defendant Nathan Fayyer:**

With regard to the trading activity described as "cross-market strategy," did the SEC prove by a preponderance of the evidence:

Question 172: That <u>Fayyer</u> affirmatively assisted or helped to conceal the conduct by <u>Avalon</u> that you determined created liability under Claims 1, 2, 3, or 4?

Yes _____ (if yes, proceed to Question 173)

No _____ (if no, answer Question 176 "No")

Question 173: That <u>Fayyer's</u> assistance was a substantial causal factor in the conduct by <u>Avalon</u> that you determined created liability under Claims 1, 2, 3, or 4 – *i.e.* that <u>Fayyer's</u> actions were a substantial factor in bringing about the violation, and that the violation was a reasonably foreseeable result of <u>Fayyer's</u> acts?

Yes _____ (if yes, proceed to Question 174)

No _____ (if no, answer Question 176 "No")

Question 174: That <u>Fayyer</u> did not act in good faith – *i.e.* that <u>Fayyer</u> did not act on an opinion honestly believe to be true, even if that opinion was erroneous or that belief mistaken?

Yes _____ (if yes proceed to Question 175)

No _____ (if no, answer Question 176 "No")

Question 175: That <u>Fayyer</u> had actual knowledge of <u>Avalon</u> violations?

Yes _____ (if yes, proceed to Question 176)

No _____ (if no, answer Question 176 "No")


Question 176: That <u>Fayyer</u> aided and abetted <u>Avalon's</u> violation with regard to the trading activity described as "cross-market strategy":

Section 10(b) or Rule 10b-5 of the Exchange Act

Yes _____

No _____

Section 17(a)(1) of the Securities Act

Yes _____

No _____

Section 17(a)(3) of the Securities Act

Yes _____

No _____

Section 9(a)(2) of the Exchange Act

Yes _____

No _____

**As to Defendant Sergey Pustelnik:**

With regard to the trading activity described as "cross-market strategy," did the SEC prove by a preponderance of the evidence:

Question 177: That Pustelnik affirmatively assisted or helped to conceal the conduct by Avalon that you determined created liability under Claims 1, 2, 3, or 4?

        Yes _____ (if yes, proceed to Question 178)

        No _____ (if no, answer Question 181 "No")

Question 178: That Pustelnik's assistance was a substantial causal factor in the conduct by Avalon that you determined created liability under Claims 1, 2, 3, or 4 – *i.e.* that Pustelnik's actions were a substantial factor in bringing about the violation, and that the violation was a reasonably foreseeable result of Pustelnik's acts?

        Yes _____ (if yes, proceed to Question 179)

        No _____ (if no, answer Question 181 "No")

Question 179: That Pustelnik did not act in good faith – *i.e.* that Pustelnik did not act on an opinion honestly believe to be true, even if that opinion was erroneous or that belief mistaken?

        Yes _____ (if yes proceed to Question 180)

        No _____ (if no, answer Question 181 "No")

Question 180: That Pustelnik had actual knowledge of Avalon violations?

        Yes _____ (if yes, proceed to Question 181)

        No _____ (if no, answer Question 181 "No")

Question 181: That Pustelnik aided and abetted Avalon's violation with regard to the trading activity described as "cross-market strategy":

        Section 10(b) or Rule 10b-5 of the Exchange Act

        Yes _____

No _____

Section 17(a)(1) of the Securities Act

Yes _____

No _____

Section 17(a)(3) of the Securities Act

Yes _____

No _____

Section 9(a)(2) of the Exchange Act

Yes _____

No _____

**Fayyer Primary Violation**

Question 182: With regard to the trading activity described as "cross-market strategy," did you find Fayyer liable for Claims 1, 2, 3, or 4, - *i.e.* did you respond "Yes" to Questions 35, 77, 120, or 147?

Yes _____ (if yes, proceed to Question 183)

No _____ (if no, proceed to Question 188)

**As to Defendant Sergey Pustelnik:**

With regard to the trading activity described as "cross-market strategy," did the SEC prove by a preponderance of the evidence:

Question 183: That Pustelnik affirmatively assisted or helped to conceal the conduct by Fayyer that you determined created liability under Claims 1, 2, 3, or 4?

Yes _____ (if yes, proceed to Question 184)

No _____ (if no, answer Question 187 "No")

Question 184: That Pustelnik's assistance was a substantial causal factor in the conduct by Fayyer that you determined created liability under Claims 1, 2, 3, or 4 – *i.e.* that Pustelnik's actions were a substantial factor in bringing about the violation, and that the violation was a reasonably foreseeable result of Pustelnik's acts?

    Yes _____ (if yes, proceed to Question 185)

    No _____ (if no, answer Question 187 "No")

Question 185: That Pustelnik did not act in good faith – *i.e.* that Pustelnik did not act on an opinion honestly believe to be true, even if that opinion was erroneous or that belief mistaken?

    Yes _____ (if yes proceed to Question 186)

    No _____ (if no, answer Question 187 "No")

Question 186: That Pustelnik had actual knowledge of Fayyer's violations?

    Yes _____ (if yes, proceed to Question 187)

    No _____ (if no, answer Question 187 "No")

Question 187: That Pustelnik aided and abetted Fayyer's violation with regard to the trading activity described as "cross-market strategy":

    Section 10(b) or Rule 10b-5 of the Exchange Act

    Yes _____

    No _____

    Section 17(a)(1) of the Securities Act

    Yes _____

    No _____

    Section 17(a)(3) of the Securities Act

    Yes _____

    No _____

Section 9(a)(2) of the Exchange Act

Yes _____

No _____

## Pustelnik Primary Violations

Question 188: With regard to the trading activity described as "cross-market strategy," did you find <u>Pustelnik</u> liable for Claims 1, 2, or 3 - *i.e.* did you respond "Yes" to Questions 42, 84, or 127?

Yes _____ (if yes, proceed to Question 189)

No _____ (if no, proceed to Question 194)

## As to Defendant Nathan Fayyer:

With regard to the trading activity described as "layering," did the SEC prove by a preponderance of the evidence:

Question 189: That <u>Fayyer</u> affirmatively assisted or helped to conceal the conduct by <u>Pustelnik</u> that you determined created liability under Claims 1, 2, 3, or 4?

Yes _____ (if yes, proceed to Question 190)

No _____ (if no, answer Question 193 "No")

Question 190: That <u>Fayyer's</u> assistance was a substantial causal factor in the conduct by <u>Pustelnik</u> that you determined created liability under Claims 1, 2, 3, or 4 – *i.e.* that <u>Fayyer's</u> actions were a substantial factor in bringing about the violation, and that the violation was a reasonably foreseeable result of <u>Fayyer's</u> acts?

Yes _____ (if yes, proceed to Question 191)

No _____ (if no, answer Question 193 "No")

Question 191: That <u>Fayyer</u> did not act in good faith – *i.e.* that <u>Fayyer</u> did not act on an opinion honestly believe to be true, even if that opinion was erroneous or that belief mistaken?

Yes _____ (if yes proceed to Question 192)

No _____ (if no, answer Question 193 "No")

Question 192: That <u>Fayyer</u> had actual knowledge of <u>Pustelnik</u> violations?

    Yes _____ (if yes, proceed to Question 193)

    No _____ (if no, answer Question 193 "No")


Question 193: That <u>Fayyer</u> aided and abetted <u>Pustelnik's</u> violation with regard to the trading activity described as "cross-market strategy":

    Section 10(b) or Rule 10b-5 of the Exchange Act

    Yes _____

    No _____

    Section 17(a)(1) of the Securities Act

    Yes _____

    No _____

    Section 17(a)(3) of the Securities Act

    Yes _____

    No _____


**Claim 6 – Layering Strategy Control Person**

**Avalon Traders Primary Violation**

With regard to the trading activity described as "layering," did the SEC prove by a preponderance of the evidence:

    Question 194: That certain Avalon traders committed a manipulative act in furtherance of a scheme to defraud?

        Yes _____ (if yes, proceed to Question 195(a))

        No _____ (if no, answer Questions 207 and 214 "No")

    Question 195(a): That those Avalon traders possessed an ability to influence U.S. securities market prices?

Yes _____ (if yes, proceed to Question 195(b))

No _____ (if no, answer Questions 207 and 214 "No")

Question 195(b): That an artificial price existed in the U.S. securities market?

Yes _____ (if yes, proceed to Question 195(c))

No _____ (if no, answer Questions 207 and 214 "No")

Question 195(c): That those Avalon traders caused the artificial prices in the U.S. securities market?

Yes _____ (if yes, proceed to Question 195(d))

No _____ (if no, answer Questions 207 and 214 "No")

Question 195(d): That those Avalon traders specifically intended to cause the artificial price?

Yes _____ (if yes, proceed to Question 196)

No _____ (if no, answer Questions 207 and 214 "No")

Question 196: That those Avalon traders  manipulative act(s) injected false information into the U.S. securities marketplace?

Yes _____ (if yes, proceed to Question 197)

No _____ (if no, answer Questions 207 and 214 "No")

Question 197: That those Avalon traders' manipulative act(s) occurred in connection with the purchase or sale of a security?

Yes _____ (if yes, proceed to Question 198)

No _____ (if no, answer Questions 207 and 214 "No")

Question 198: That those Avalon traders' knowingly used or caused to be used, the means or instrumentalities of interstate commerce or the mails, or a facility of any national securities exchange, in furtherance of the fraud?

Yes _____ (if yes, proceed to Question 199(a))

No _____ (if no, answer Questions 207 and 214 "No")

Question 199(a): That those Avalon traders did not act in good faith – *i.e.* that they did not act on an opinion honestly believe to be true, even if that opinion was erroneous or that belief mistaken?

Yes _____ (if yes proceed to Question 199(b))

No _____ (if no, answer Questions 207 and 214 "No")

Question 199(b): That those Avalon traders acted with the intent to deceive, manipulate or defraud – *i.e.* that they acted knowingly, intentionally, and deliberately, and not mistakenly or inadvertently?

Yes _____ (if yes, proceed to Question 200)

No _____ (if no, proceed to Question 199(c))

Question 199(c): That those Avalon traders acted with a high degree of recklessness – *i.e.* an extreme departure from the standards of ordinary care?

Yes _____ (if yes proceed to Question 200)

No _____ (if no, answer Questions 207 and 214 "No")

Question 200: That Avalon traders violate Section 10(b) and Rule 10b-5 or Section 9(a)(2) of the Exchange Act with regard to the trading activity described as "layering"?

Yes _____ (if yes, proceed to Question 201)

No _____ (if no, proceed to Question 215)

**As to Defendant Avalon:**

Question 201: That <u>Avalon</u> exercised actual power and control over those Avalon traders with regard to the trading activity described as "layering".

Yes _____ (if yes, proceed to Question 202)

No _____ (if no, answer Question 207 "No")

Question 202: That <u>Avalon</u> exercised actual power and control over the transactions that constituted the Avalon traders' violations?

Yes _____ (if yes, proceed to Question 203)

No _____ (if no, answer Question 207 "No")

Question 203: That <u>Avalon</u> had actual knowledge that the Avalon traders were engaging in conduct that violated the securities laws?

Yes _____ (if yes, proceed to Question 204)

No _____ (if no, answer Question 207 "No")

Question 204: That <u>Avalon</u> was, in some meaningful sense, a culpable participant in the violation?

Yes _____ (if yes, proceed to Question 205)

No _____ (if no, answer Question 207 "No")

Did Avalon prove by a preponderance of the evidence that:

Question 205: That <u>Avalon</u> acted in good faith – *i.e.* that <u>Avalon</u> acted on an opinion honestly believe to be true, even if that opinion was erroneous or that belief mistaken?

Yes _____ (if yes, answer Question 207 "No")

No _____ (if no, proceed to Question 206)

Question 206: That <u>Avalon</u> did not directly or indirectly induce the act or acts by the Avalon traders that constituted the violations?

Yes _____ (if yes, answer Question 207 "No")

No _____ (if no, proceed to Question 207)

Did the SEC prove by a preponderance of the evidence:

Question 207: That <u>Avalon</u> is liable as a control person of the Avalon traders with regard to the trading activity described as "layering"?

Yes _____

No _____

**As to Defendant Nathan Fayyer:**

Question 208: That <u>Fayyer</u> exercised actual power and control over those Avalon traders with regard to the trading activity described as "layering".

        Yes _____ (if yes, proceed to Question 209)

        No _____ (if no, answer Question 214 "No")

Question 209: That <u>Fayyer</u> exercised actual power and control over the transactions that constituted the Avalon traders' violations?

        Yes _____ (if yes, proceed to Question 210)

        No _____ (if no, answer Question 214 "No")

Question 210: That <u>Fayyer</u> had actual knowledge that the Avalon traders were engaging in conduct that violated the securities laws?

        Yes _____ (if yes, proceed to Question 211)

        No _____ (if no, answer Question 214 "No")

Question 211: That <u>Fayyer</u> was, in some meaningful sense, a culpable participant in the violation?

        Yes _____ (if yes, proceed to Question 212)

        No _____ (if no, answer Question 214 "No")

Did Fayyer prove by a preponderance of the evidence that:

Question 212: That <u>Fayyer</u> acted in good faith – *i.e.* that <u>Fayyer</u> acted on an opinion honestly believe to be true, even if that opinion was erroneous or that belief mistaken?

        Yes _____ (if yes, answer Question 214 "No")

        No _____ (if no, proceed to Question 213)

Question 213: That <u>Fayyer</u> did not directly or indirectly induce the act or acts by the Avalon traders that constituted the violations?

        Yes _____ (if yes, answer Question 214 "No")

        No _____ (if no, proceed to Question 214)

Did the SEC prove by a preponderance of the evidence:

Question 214: That <u>Fayyer</u> is liable as a control person of the Avalon traders with regard to the trading activity described as "layering"?

Yes _____

No _____

**Avalon Primary Violations**

Question 215: With regard to the trading activity described as "layering," did you find <u>Avalon</u> liable for Claims 1 or 4, - *i.e.* did you respond "Yes" to Questions 7 or 132?

Yes _____ (if yes, proceed to Question 216)

No _____ (if no, answer Question 222 "No")

Question 216: That <u>Pustelnik</u> exercised actual power and control over <u>Avalon</u> with regard to the trading activity described as "layering".

Yes _____ (if yes, proceed to Question 217)

No _____ (if no, answer Question 222 "No")

Question 217: That <u>Pustelnik</u> exercised actual power and control over the transactions that constituted <u>Avalon</u>' violations?

Yes _____ (if yes, proceed to Question 218)

No _____ (if no, answer Question 222 "No")

Question 218: That <u>Pustelnik</u> had actual knowledge that <u>Avalon</u> was engaging in conduct that violated the securities laws?

Yes _____ (if yes, proceed to Question 219)

No _____ (if no, answer Question 222 "No")

Question 219: That <u>Pustelnik</u> was, in some meaningful sense, a culpable participant in the violation?

Yes _____ (if yes, proceed to Question 220)

No _____ (if no, answer Question 222 "No")

Did <u>Pustelnik</u> prove by a preponderance of the evidence that:

> Question 220: That <u>Pustelnik</u> acted in good faith – *i.e.* that <u>Pustelnik</u> acted on an opinion honestly believe to be true, even if that opinion was erroneous or that belief mistaken?
>
> > Yes _____ (if yes, answer Question 222 "No")
> >
> > No _____ (if no, proceed to Question 221)
>
> Question 221: That <u>Pustelnik</u> did not directly or indirectly induce the act or acts by the Avalon traders that constituted the violations?
>
> > Yes _____ (if yes, answer Question 222 "No")
> >
> > No _____ (if no, proceed to Question 222)

Did the SEC prove by a preponderance of the evidence:

> Question 222: That <u>Pustelnik</u> is liable as a control person of the Avalon traders with regard to the trading activity described as "layering"?
>
> > Yes _____
> >
> > No _____

## Claim 6 – Cross-Market Strategy Control Person

**Avalon Traders Primary Violation**

With regard to the trading activity described as "cross-market strategy," did the SEC prove by a preponderance of the evidence:

> Question 223: That certain Avalon traders committed a manipulative act in furtherance of a scheme to defraud?
>
> > Yes _____ (if yes, proceed to Question 124(a))
> >
> > No _____ (if no, answer Questions 237 and 244 "No")
>
> Question 224(a): That those Avalon traders possessed an ability to influence U.S. securities market prices?
>
> > Yes _____ (if yes, proceed to Question 224(b))

No _____ (if no, answer Questions 237 and 244 "No")

Question 224(b): That an artificial price existed in the U.S. securities market?

Yes _____ (if yes, proceed to Question 224(c))

No _____ (if no, answer Questions 237 and 244 "No")

Question 224(c): That those Avalon traders caused the artificial prices in the U.S. securities market?

Yes _____ (if yes, proceed to Question 224(d))

No _____ (if no, answer Questions 237 and 244 "No")

Question 224(d): That those Avalon traders specifically intended to cause the artificial price?

Yes _____ (if yes, proceed to Question 225)

No _____ (if no, answer Questions 237 and 244 "No")

Question 225: That those Avalon traders  manipulative act(s) injected false information into the U.S. securities marketplace?

Yes _____ (if yes, proceed to Question 226)

No _____ (if no, answer Questions 237 and 244 "No")

Question 226: That those Avalon traders' manipulative act(s) occurred in connection with the purchase or sale of a security?

Yes _____ (if yes, proceed to Question 227)

No _____ (if no, answer Questions 237 and 244 "No")

Question 227: That those Avalon traders' knowingly used or caused to be used, the means or instrumentalities of interstate commerce or the mails, or a facility of any national securities exchange, in furtherance of the fraud?

Yes _____ (if yes, proceed to Question 128(a))

No _____ (if no, answer Questions 237 and 244 "No")

Question 228(a): That those Avalon traders did not act in good faith – *i.e.* that they did not act on an opinion honestly believe to be true, even if that opinion was erroneous or that belief mistaken?

> Yes _____ (if yes proceed to Question 228(b))

> No _____ (if no, answer Questions 237 and 244 "No")

Question 229(b): That those Avalon traders acted with the intent to deceive, manipulate or defraud – *i.e.* that they acted knowingly, intentionally, and deliberately, and not mistakenly or inadvertently?

> Yes _____ (if yes, proceed to Question 230)

> No _____ (if no, proceed to Question 229(c))

Question 229(c): That those Avalon traders acted with a high degree of recklessness – *i.e.* an extreme departure from the standards of ordinary care?

> Yes _____ (if yes proceed to Question 230)

> No _____ (if no, answer Questions 237 and 244 "No")

Question 230: That Avalon traders violate Section 10(b) and Rule 10b-5 or Section 9(a)(2) of the Exchange Act with regard to the trading activity described as "cross-market strategy"?

> Yes _____ (if yes, proceed to Question 231)

> No _____ (if no, proceed to Question 245)

**As to Defendant Avalon:**

Question 231: That <u>Avalon</u> exercised actual power and control over those Avalon traders with regard to the trading activity described as "cross-market strategy".

> Yes _____ (if yes, proceed to Question 232)

> No _____ (if no, answer Question 237 "No")

Question 232: That <u>Avalon</u> exercised actual power and control over the transactions that constituted the Avalon traders' violations?

> Yes _____ (if yes, proceed to Question 233)

No _____ (if no, answer Question 237 "No")

Question 233: That <u>Avalon</u> had actual knowledge that the Avalon traders were engaging in conduct that violated the securities laws?

Yes _____ (if yes, proceed to Question 234)

No _____ (if no, answer Question 237 "No")

Question 234: That <u>Avalon</u> was, in some meaningful sense, a culpable participant in the violation?

Yes _____ (if yes, proceed to Question 235)

No _____ (if no, answer Question 237 "No")

Did Avalon prove by a preponderance of the evidence that:

Question 235: That <u>Avalon</u> acted in good faith – *i.e.* that <u>Avalon</u> acted on an opinion honestly believe to be true, even if that opinion was erroneous or that belief mistaken?

Yes _____ (if yes, answer Question 237 "No")

No _____ (if no, proceed to Question 236)

Question 236: That <u>Avalon</u> did not directly or indirectly induce the act or acts by the Avalon traders that constituted the violations?

Yes _____ (if yes, answer Question 237 "No")

No _____ (if no, proceed to Question 237)

Did the SEC prove by a preponderance of the evidence:

Question 237: That <u>Avalon</u> is liable as a control person of the Avalon traders with regard to the trading activity described as "cross-market strategy"?

Yes _____

No _____

**As to Defendant Nathan Fayyer:**

62

Question 238: That <u>Fayyer</u> exercised actual power and control over those Avalon traders with regard to the trading activity described as "cross-market strategy".

Yes _____ (if yes, proceed to Question 239)

No _____ (if no, answer Question 234 "No")

Question 239: That <u>Fayyer</u> exercised actual power and control over the transactions that constituted the Avalon traders' violations?

Yes _____ (if yes, proceed to Question 240)

No _____ (if no, answer Question 244 "No")

Question 240: That <u>Fayyer</u> had actual knowledge that the Avalon traders were engaging in conduct that violated the securities laws?

Yes _____ (if yes, proceed to Question 241)

No _____ (if no, answer Question 244 "No")

Question 241: That <u>Fayyer</u> was, in some meaningful sense, a culpable participant in the violation?

Yes _____ (if yes, proceed to Question 242)

No _____ (if no, answer Question 244 "No")

Did Fayyer prove by a preponderance of the evidence that:

Question 242: That <u>Fayyer</u> acted in good faith – *i.e.* that <u>Fayyer</u> acted on an opinion honestly believe to be true, even if that opinion was erroneous or that belief mistaken?

Yes _____ (if yes, answer Question 244 "No")

No _____ (if no, proceed to Question 243)

Question 243: That <u>Fayyer</u> did not directly or indirectly induce the act or acts by the Avalon traders that constituted the violations?

Yes _____ (if yes, answer Question 244 "No")

No _____ (if no, proceed to Question 244)

Did the SEC prove by a preponderance of the evidence:

> Question 244: That <u>Fayyer</u> is liable as a control person of the Avalon traders with regard to the trading activity described as "cross-market strategy"?
>
>> Yes _____
>>
>> No _____

**Avalon Primary Violations**

Question 245: With regard to the trading activity described as "cross-market strategy," did you find <u>Avalon</u> liable for Claims 1 or 4, - *i.e.* did you respond "Yes" to Questions 28 or 142?

> Yes _____ (if yes, proceed to Question 246)
>
> No _____ (if no, answer Question 252 "No")

> Question 246: That <u>Pustelnik</u> exercised actual power and control over <u>Avalon with regard to the trading activity described as "cross-market strategy"</u>.
>
>> Yes _____ (if yes, proceed to Question 247)
>>
>> No _____ (if no, answer Question 252 "No")

Question 247: That <u>Pustelnik</u> exercised actual power and control over the transactions that constituted <u>Avalon</u>' violations?

> Yes _____ (if yes, proceed to Question 248)
>
> No _____ (if no, answer Question 252 "No")

Question 248: That <u>Pustelnik</u> had actual knowledge that <u>Avalon</u> was engaging in conduct that violated the securities laws?

> Yes _____ (if yes, proceed to Question 249)
>
> No _____ (if no, answer Question 252 "No")

Question 249: That <u>Pustelnik</u> was, in some meaningful sense, a culpable participant in the violation?

> Yes _____ (if yes, proceed to Question 250)

No _____ (if no, answer Question 252 "No")

Did <u>Pustelnik</u> prove by a preponderance of the evidence that:

    Question 250: That <u>Pustelnik</u> acted in good faith – *i.e.* that <u>Pustelnik</u> acted on an opinion honestly believe to be true, even if that opinion was erroneous or that belief mistaken?

        Yes _____ (if yes, answer Question 252 "No")

        No _____ (if no, proceed to Question 251)

    Question 251: That <u>Pustelnik</u> did not directly or indirectly induce the act or acts by the Avalon traders that constituted the violations?

        Yes _____ (if yes, answer Question 252 "No")

        No _____ (if no, proceed to Question 252)

Did the SEC prove by a preponderance of the evidence:

    Question 252: That <u>Pustelnik</u> is liable as a control person of the Avalon traders with regard to the trading activity described as "cross-market strategy"?

        Yes _____

        No _____

SO SAY WE ALL.

                                _____

                                FOREPERSON

                                _____

                                DATE