**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                      Plaintiff,<br><br>        v.<br><br>LEK SECURITIES CORPORATION,<br>SAMUEL LEK,<br>VALI MANAGEMENT PARTNERS dba<br>   AVALON FA LTD,<br>NATHAN FAYYER, and<br>SERGEY PUSTELNIK a/k/a SERGE<br>   PUSTELNIK<br><br>                      Defendants. | Case No. **17-CV-1789 (DLC)** |

**DEFENDANT AVALON'S MEMORANDUM OF LAW IN SUPPORT OF ITS OF MOTION FOR PAYMENT OF EARNED LEGAL FEES AND EXPENSES**

As indicated in defense counsel's March 13, 2020 letter to this Court and the exhibits thereto, Avalon owes counsel outstanding fees and expenses earned prior to the jury's verdict totally $191,600. Defense counsel has requested a commitment from SEC counsel to pay that outstanding prior debt from the Avalon funds previously frozen ("Frozen Funds") by this Court's March 10, 2017 order ("Freeze Order") and anticipated to be released to the SEC by this Court's forthcoming money judgment. SEC counsel has declined that request.

Prior to releasing the Frozen Funds, the Court should order the payment of defense counsels' previously earned legal fees and expenses. That debt was incurred by Avalon, in good faith, prior to the jury's verdict in this case. Even if considered a prior encumbrance, this Court's Freeze Order was an equitable order capable of sequestering funds only for equitable relief. The Frozen Funds exceed the disgorgement to be ordered by this Court by almost $1 million. $191,600 of those excess funds should be used to pay outstanding earned legal fees and expenses prior to civil penalties.

The fees owed by Avalon to its counsel are extremely reasonable.  For example, Avalon owes Mr. Barentzen $80,800 in fees and expenses. This represents a significant discount from Mr. Barentzen's typical hourly rate of $600/hour. Instead of charging his typical rate, Mr. Barentzen agreed to be paid a flat fee of $10,000 per month. The last payment that Avalon made to Mr. Barentzen was in February 2019. Mr. Barentzen worked the final eight months on this case without receiving any payment, and paid his own expenses out of pocket, including four round trips from Washington, D.C. to New York.  The legal fees that Mr. Barentzen is seeking would represent only approximately 130 hours at his typical rate.  Over the final eight months of this case during which time Mr. Barentzen was not paid at all, he worked far in excess of 130 hours and likely multiples of that amount.

Avalon owes Mr. Wines $101,600 in fees and expenses. To accommodate the defendants' financial situation, Mr. Wines likewise agreed to forgo his typical hourly rate of $650/hour for a flat fee of $20,000 per month, and $40,000 per month for trial preparation and trial. The last full payment that Mr. Wines received was in July 2019. He then received partial payments of $10,000 and $3,000 in September and November 2019 respectively. The amount of legal fees owed Mr. Wines would typically pay for approximately 165 hours of his time. Mr. Wines expended many multiples of that preparing for and participating in the trail of this matter. Mr. Wines also paid his expenses out of pocket, including multiple round trips from DC to New York.

Equity and fairness support reasonably compensating legal counsel for work done in a professional and expeditious manner that eased the burden on the SEC and this Court of a *pro se* trial. For the forgoing reasons and those detailed below, Avalon respectfully requests that this Court grant its motion for payment.

### Argument

The power to order an asset freeze in connection with a civil action brought by the SEC derives from the Court's broad equitable powers. *Smith v. SEC*, 633 F.3 121, 127 (2d. Cir. 2011). "The purpose of such relief is to facilitate enforcement of any *disgorgement remedy* that might be ordered in the event a violation is established at trial." *SEC v. Illarramendi*, 3:11-cv-78 (JBA), 2017 WL 3085681, at *2 (D. Conn. July 20, 2017) (emphasis added). The Supreme Court has recognized that federal courts *may not* exercise their equitable authority to grant temporary injunctions to freeze assets for the satisfaction of non-equitable claims. *Grupo Mexicano de Desarrolo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999) (district court "had no

authority to issue a preliminary injunction" freezing assets for future recovery of non-equitable remedies, "[b]ecause such a remedy was historically unavailable from a court of equity.")[1]

In its prior order denying Avalon's motion to modify the Freeze Order to allow payment of future attorneys' fees and expenses, this Court recognized that the purpose of that order was to ensure "that there are 'sufficient funds to satisfy *any disgorgement remedy* that might be ordered in the event a violation is established at trial.'" *SEC v. Lek Securities Corp.*, 17cv1789 (DLC), *2017 WL 1184318,* at \*1 (S.D.N.Y. Mar. 29, 2017) (emphasis added) (quoting *SEC v. Stein*, 07cv3125, 2009 (GEL), WL 1181061, at \*1 (S.D.N.Y. Apr. 30, 2009). At that time, the Court denied Avalon's application because the approximately $5.5 million Frozen Funds were insufficient to cover the more than $21 million disgorgement estimate that the SEC provided for just the layering claims. *Id.* We now know that the SEC's estimate was greatly exaggerated and that, as a result, the Court froze approximately $1 million more Avalon assets than the SEC would ultimately request in disgorgement relief for all of its claims.

Avalon should have had access to those funds during the litigation to satisfy, among other things, its legal fees and expenses. Avalon incurred that debt in good faith prior to the jury's decision and well before the imposition of any civil penalties by this Court. A portion of those excess frozen assets should now be allocated to satisfy

---

[1] The SEC cited two cases in its memorandum in support of the Freeze Order for the proposition that the Court could freeze assets beyond those necessary to satisfy disgorgement claims. *SEC v. Unifund SAL,* 910 F.2d 1028 (2d Cir. 1990) was decided almost a decade before the Supreme Court's decision in *Grupo Mexicano*. The Court in *SEC v. Spongetech Delivery Sys., Inc.*, No. 10-cv-2031 (DLI)(JMA), 2011 WL 887940 (E.D.N.Y. March 14, 2011) quotes *Unifund SAL* for the proposition that "the purpose of the freeze is to enable the SEC 'to preserve its opportunity to collect funds that may yet be disgorged.'" *Id.* at \*9 (quoting *Unifund SAL*, 910 F.2d at 1041.)

3

Avalon's preexisting legal fees and expenses prior to application to the non-equitable portion of the Court's judgment.

Moreover, it is well-settled that, along with the equitable authority to temporarily freeze assets, the Court also possesses "the corollary authority to release frozen assets or lower the amount frozen." *S.E.C. v. Duclaud Gonzalez de Castilla*, 170 F. Supp. 2d 427, 429 (S.D.N.Y. 2001) (modifying freeze order to allow payment of previously incurred litigation-related legal expenses). It would be inequitable for the Court to allow defense counsel to go unpaid for its services. Counsels' efforts during pretrial preparation and at trial enabled the efficient and orderly conduct of the trial of this matter that would have been impossible if the defendants had proceeded *pro se*. The compensation requested is very modest given the hours and effort exerted by defense counsel. The payment of counsel for work conducted during the litigation prior to judgement is certainly within this Court's equitable authority. *SEC v. Duclaud Gonzalez de Castilla*, 170 F. Supp. 2d 427, 429-30 (S.D.N.Y. 2001) (ordering the partial release of frozen funds to pay for legal expenses previously incurred in connection with SEC action). Application of that authority is especially appropriate given the complex legal matters at issue in this case where the assistant of competent defense counsel was essential for the efficient and productive conduct of the pretrial and trial processes. *See, e.g.*, *SEC v. Dowdell*, 175 F. Supp. 2d 850, 856 (W.D. Va. 2001).

## Conclusion

As the Court recognized numerous times throughout the course of the trial, defense counsel expended considerable effort in cooperation with the SEC to ensure a professional and efficient trial of this matter. Indeed, the trial finished well ahead of

schedule. Counsel worked on the matter for months for free, spending weeks away from their families and putting aside other pending matters within their practice. They made do without the assistance of junior counsel, trained paralegals, or secretaries. They processed hundreds of trial exhibits and cross examined eight witnesses on complex factual matters. In short, defense counsel has earned the modest compensation requested, and respectful requests that the Court order that prior debt satisfied.

Dated: April 10, 2020

_____
James M Wines
SDNY Bar. No. JW5859
**Law Office of James M Wines**
1802 Stirrup Lane
Alexandria, VA 22308
202.297.6768
winesj@wineslegal.com