UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE
COMMISSION,

                                    Plaintiff,

                    v.                                    CASE NO. 17-CV-1789 (DLC)

LEK SECURITIES CORPORATION,
SAMUEL LEK,
VALI MANAGEMENT PARTNERS dba
    AVALON FA LTD,
NATHAN FAYYER, and
SERGEY PUSTELNIK a/k/a
SERGE PUSTELNIK,

                                    Defendants.

---

**PLAINTIFF SEC'S MEMORANDUM TO ADDRESS**
**IMPACT OF *LIU v. SEC* ON THE FINAL JUDGMENT**

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this

memorandum pursuant to the Court's order of November 23, 2020 (ECF No. 588) directing the

SEC to file a memorandum addressing the impact of *Liu v. SEC*, -- U.S. --, 140 S. Ct. 1936, 2020

WL 3405845 (2020), on the judgment previously entered in this case.

## INTRODUCTION

The best resolution of the issues raised by *Liu* – and indeed the resolution already

suggested by the Court – would be to enter an amended judgment that (1) imposes the same

injunctive relief as the Final Judgment previously entered in this case, (2) does not order any

disgorgement or pre-judgment interest, but instead orders civil penalties of $7.5 million against

each Defendant, and (3) orders that the frozen funds that the SEC has already collected under the judgment shall be applied against the increased penalties imposed against Avalon.  A proposed amended final judgment is submitted herewith.

## BACKGROUND

Following a three-week trial, the jury rendered a verdict on November 12, 2019 in favor of the SEC and against the Defendants on all claims and on all questions submitted for the jury's consideration.  ECF No. 527.

The parties then briefed the issue of remedies to be awarded.  The SEC sought injunctive relief, disgorgement of the trading proceeds retained by the Defendants together with pre-judgment interest, and penalties of $13.8 million against each Defendant.  ECF Nos. 562-564. Defendants opposed the SEC's request for remedies.  ECF No. 567.

This Court issued an Opinion and Order on March 20, 2020 (ECF No. 574) that addressed remedies, and the Court entered final judgment ("Final Judgment") in favor of the SEC on April 14, 2020 (ECF No. 580).  The Final Judgment (1) awarded injunctive relief; (2) held the Defendants jointly and severally liable for disgorgement of $4,495,564, together with pre-judgment interest thereon in the amount of $131,750, for a total of $4,627,314; and (3) imposed penalties of $5 million against each of the Defendants.  *Id.*  The Court's March 20, 2020 Opinion and Order included extensive factual findings supporting the imposition of a $5 million penalty as to each of the Defendants, noting that the "extent and brazenness" of their manipulative schemes was "egregious," "intentional," and conducted on a "massive scale."  ECF No. 574 at 18-19, 24.

The Final Judgment also addressed funds of Avalon that had been frozen earlier in the case pursuant to a temporary restraining order and preliminary injunction entered by this Court

on March 10 and July 31, 2017, respectively (ECF Nos. 6, 95).[1]  The Final Judgment ordered

that the frozen funds, and certain accrued interest, be paid to the SEC.  ECF No. 580 at 7-8.

Further, the Final Judgment provided that such funds would be "applied first to the pre-judgment

interest, then disgorgement owed by Avalon pursuant to this Final Judgment, and if any amounts

are left over, they shall be applied towards the penalty owed by Avalon pursuant to this Final

Judgment."  *Id.* at 9.

In its March 20, 2020 Opinion and Order, the Court also noted that *Liu* was pending

before the Supreme Court, ECF No. 574 at 11-12 n.6, and considered the possibility that *Liu*

might impact any award of disgorgement, stating, "[i]n the event that no order of disgorgement

may be enforced, the civil penalty assessed against each Defendant shall be increased to $7.5

million."  *Id.* at 25 n.13.

The SEC collected frozen funds totaling $5,283,598.61.[2]  ECF No. 583.  Pursuant to the

Final Judgment, those funds satisfied the pre-judgment interest and disgorgement amounts

jointly and severally owed by the Defendants under the Final Judgment, and left $656,284.61 to

be applied towards the $5 million civil money penalty owed by Avalon.  This left Avalon still

owing $4,343,715.39 of its civil money penalty, and left the civil penalty amounts owed by

defendants Fayyer and Pustelnik ($5 million each) due in full.  *Id.*

Defendants filed their notice of appeal to the Second Circuit on June 12, 2020.  On June

22, 2020, the Supreme Court issued its decision in *Liu*.  *Liu* established several principles

involving circumstances under which courts may award disgorgement in SEC enforcement

---

[1] Pursuant to the Court's orders freezing funds, some of the frozen funds were held by the Clerk of Court, and some were held by Lek Securities Corporation ("Lek").

[2] The SEC received payment of $2,633,146.32 from the Clerk of Court on April 28, 2020, and received payment of $2,650,452.29 from Lek on April 28, 2020.  ECF No. 583, ¶ 5.

actions, certain limitations on what may be recovered as disgorgement, and circumstances in which defendants may be held jointly and severally liable.

In light of *Liu,* on July 24, 2020, the SEC filed a motion for limited remand with the Second Circuit, asking that this case be remanded to this Court for the limited purpose of considering the impact of *Liu* on the Final Judgment.  Defendants opposed the motion.  On November 20, 2020, the Second Circuit granted the SEC's motion in part, remanding the case to this Court "for a determination of whether its judgment in this case is consistent with the decision of the Supreme Court in *Liu v. Securities and Exchange Commission*, 140 S. Ct. 1936 (2020), and, if appropriate, entry of an amended judgment."  ECF No. 587.  The order further provided, "[f]ollowing the district court's new determination, either party may appeal in the normal course."

## ARGUMENT

### I.      The Court Should Amend the Judgment to Remove Disgorgement and Instead Impose Penalties of $7.5 Million Against Each Defendant

In *Liu*, the Supreme Court observed that Section 21(d)(5) of the Securities Exchange Act, 15 U.S.C. § 78u(d)(5), permits "a disgorgement award that does not exceed a wrongdoer's net profits," 140 S. Ct. at 1940, but that, once collected, the equitable nature of disgorgement "generally requires the SEC to return a defendant's gains to wronged investors for their benefit."[3] *Id.* at 1948.  This requirement arises from the language of Section 21(d)(5), which allows courts to grant the SEC "any equitable relief that may be appropriate or necessary for the benefit of investors."  *Id.*  The Court, however, left as "an open question whether, and to what extent" sending the disgorged funds to the Treasury "satisfies the SEC's obligation to award

---

[3] *Liu* only addressed issues concerning disgorgement and joint-and-several liability.  *Liu* did not address or impose limits on penalties or other kinds of relief, such as injunctive relief.

relief for the benefit of investors and is consistent with the limitations of [Section 21(d)(5)]." *Id.* (internal quotation marks omitted).

In the present case, the disgorgement award satisfies *Liu*'s requirement that the award be limited to the defendants' net profits, but returning disgorged funds to wronged investors would present significant practical obstacles. As this Court recognized in its March 20, 2020 Opinion and Order, Defendants were found liable for engaging in two manipulative schemes: "layering" and cross-market manipulation. ECF No. 574 at 5-6. Defendants carried out these manipulative schemes for over five years, from 2012 through 2016. During that time, they engaged in more than 675,000 instances of layering and 668 instances of cross-market manipulation. *Id.* at 6. Each instance involved multiple orders, purchases and/or sales of securities. The manipulative schemes generated more than $29 million in revenue, most of which was distributed to Avalon's traders. *Id.* at 21 n.10.

The burden and cost of identifying all or even most of the specific harmed investors and quantifying their specific losses would be enormous. To be sure, as shown at trial, some of the investors harmed by Defendants' manipulative schemes have been identified. But identifying the universe of harmed investors and their losses and ultimately making a distribution would require matching hundreds of thousands of purchases and sales by Avalon traders with purchases and sales by the harmed investors who were on the other side of those transactions. This would be an enormously costly endeavor because of the sheer volume of orders, purchases, and sales in the hundreds of thousands of instances of manipulative activity, which took place across numerous securities exchanges. The cost of performing a forensic analysis to identify all of the counterparties and to quantify the extent of the harm each of them suffered could well consume a large proportion of the disgorgement amount awarded by the Court (and the amounts collected

thus far by the SEC), potentially leaving relatively little for actual distribution to harmed investors.

Given the unique circumstances this case presents, a distribution of disgorged funds to investors is rather impractical and is not the most appropriate course since a more direct and practical solution exists.  Defendants' egregious fraud supports the practical solution envisioned by the Court in its March 20, 2020 Opinion and Order.  That solution would be to amend the Final Judgment to eliminate the previously ordered disgorgement and pre-judgment interest, and instead impose penalties of $7.5 million against each Defendant.

*Liu* also left open the question of whether an award of disgorgement would be allowable if the disgorged funds were sent to the Treasury, rather than to harmed investors.  140 S. Ct. at 1948.  Specifically, *Liu* indicated that in cases in which ill-gotten gains "cannot practically be disbursed to the victims," courts "may evaluate" whether the alternative of sending the ill-gotten gains to the Treasury "would indeed be for the benefit of investors . . . and consistent with equitable principles."  *Id*.  Conducting such an analysis with an eye toward sending the disgorged funds to the Treasury may be the right course in certain cases and could even be done in the present case.  But addressing that unresolved question seems unnecessary here because the Court has already envisioned an eminently practical solution – increasing the penalties – that is fully justified by the particularly egregious conduct of the Defendants in this case.[4]

The Court specifically noted in its March 20, 2020 Opinion and Order that the penalties of $5 million per Defendant were a fraction of the maximum tier-three penalties available, and

---

[4] If the Court were to decide that disgorgement and pre-judgment interest should remain in the final judgment, then the SEC respectfully requests that it be given the opportunity to propose to the Court whether to have those amounts distributed to harmed investors (notwithstanding the cost and practical difficulties identified herein) or sent to the Treasury.

substantially less than the $13.8 million in penalties against each Defendant that the SEC

originally requested.[5]  ECF No. 574 at 24-25.  The Court concluded that a lower penalty amount

– $5 million – was appropriate "based at least in part on the assumption that the amount already

seized by the SEC, or at least most of that amount, will be used to satisfy Defendants' duty to

disgorge their profits from their schemes."  *Id.* at 25.  Thus, the Court added, "[i]n the event that

no order of disgorgement may be enforced, the civil penalty assessed against each Defendant

shall be increased to $7.5 million."  *Id.* at 25 n.13.

Although *Liu* does not make disgorgement "unenforceable" in this case, pursuing

disgorgement under *Liu* would present significant practical barriers and additional expenditure of

resources that simply are not necessary given the availability of substantially larger penalties.

Because the original basis for limiting penalties to only $5 million as outlined in the Court's

March 20, 2020 Opinion and Order took into account the additional monetary relief of

disgorgement and prejudgment interest, higher penalties of $7.5 million are appropriate if

disgorgement and prejudgment interest are eliminated here.

Defendants presumably will argue that disgorgement simply should be eliminated and

penalties should not be increased above their existing level of $5 million per Defendant.  That

outcome would be unjust.  Defendants should not be allowed to benefit from the fact that their

fraud was so widespread and affected so much market activity that identifying harmed investors

would be a highly complex and extremely costly endeavor, nor should they be permitted to retain

---

[5] The SEC originally requested maximum third-tier penalties against each defendant, calculated using the maximum penalty rate for natural persons of $150,000 per violation.  The SEC asserted that each month in which Defendants engaged in either manipulative practice (layering or the cross-market manipulation) should be treated as a separate violation.  This amounts to fifty-four months for the layering scheme and thirty-eight months for the cross-market scheme, for a total of ninety-two months and would lead to a total penalty per Defendant of $13.8 million.  ECF No. 574, at 17.

the financial benefits of their fraud.

The facts outlined in the Court's March 20, 2020 Opinion and Order provide strong support for penalties of $7.5 million per Defendant, under the factors set forth in *SEC v. Rajaratnam*, 918 F.3d 36, 44 (2d Cir. 2019), and *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007).  As this Court found, "[t]he Defendants were the central figures in two separate years-long schemes to defraud the securities market.  Their manipulation was intentional. Furthermore, as the trial established, Defendants' manipulation distorted the market and caused significant losses for other traders."  ECF No. 574 at 17.  And worse, as the Court found, Defendants Fayyer's and Pustelnik's conduct in this case amounted to "obstruction of justice." *Id.* at 23.

First, the Court found that the Defendants' fraud was egregious, especially in light of its course and scope over many years and voluminous trades, and the way that the Defendants "coordinated nearly every facet of the plan to manipulate the market."  *Id.* at 18.  Second, the Court found that the Defendants' conduct was intentional, as reflected for example, by "their efforts to conceal their activity and connections to the schemes."  *Id.* at 19.  This included Fayyer and Pustelnik "[giving] false testimony under oath during the SEC investigation and at trial."  *Id.* Third, the Court found that the Defendants' conduct created "substantial losses to other market participants who traded at unfavorable prices due to the manipulative practices."  *Id.* at 20. Fourth, the Court determined that "Defendants' conduct was not intermittent; it was recurrent behavior meant to cheat the market."  In fact, "Defendants took aggressive measures to evade the securities law. Their illicit activities persisted – and indeed increased – when Defendants came under regulatory scrutiny."  *Id.*  Finally, the Court found that the Defendants' financial situation "does not offset the need to impose a significant penalty."  *Id.*

8

In short, the record in this case comfortably justifies penalties of $7.5 million against each of the Defendants. *See SEC v. Alpine Secs. Corp.*, No. 19-3272 (2d. Cir. Dec. 4, 2020), Slip op. at 34 (recognizing court's broad discretion in imposing penalties, and affirming $12 million penalty in light of the defendant's "systematic and widespread evasion of the law").

## II.    <u>The Amounts Already Collected From Avalon Should Be Reclassified</u>

The SEC already has collected the Avalon funds frozen by this Court's March 10 and July 31, 2017 Orders.  These funds – totaling $5,283,598.61 – were applied first towards the pre-judgment interest and disgorgement amounts jointly and severally owed by Defendants, and the remainder was applied towards Avalon's penalty.  ECF No. 583.  If the Court eliminates the disgorgement and pre-judgment interest and imposes a $7.5 million penalty against each Defendant, then the collected funds should be applied first against Avalon's penalties.  Reclassifying the frozen funds in this manner would leave Avalon still owing a penalty of $2,216,401.39.  Fayyer and Pustelnik would each owe their $7.5 million penalties in full.

## <u>CONCLUSION</u>

For the foregoing reasons, the SEC respectfully requests that the Court enter an amended final judgment that (1) imposes the same injunctive relief as the Final Judgment previously entered in this case, (2) does not order any disgorgement or pre-judgment interest, but instead orders civil penalties of $7.5 million against each Defendant, and (3) orders that the frozen funds already collected from Avalon be applied toward Avalon's penalty.  A proposed Amended Final Judgment is submitted herewith.

Dated:  December 18, 2020                                 Respectfully submitted,

                                                                     _____/s/ David J. Gottesman_____
                                                                     David J. Gottesman
                                                                     Olivia S. Choe
                                                                     Sarah S. Nilson

U.S. Securities and Exchange Commission
100 F Street N.E.
Washington, D.C. 20549
Tel:  (202) 551-4470 (Gottesman)
Cell:  (202) 330-3594 (Gottesman)
Email:  gottesmand@sec.gov
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 18, 2020, a true and correct copy of the above

document was served on all counsel of record by filing this document using the CM/ECF system.


       <u>      /s/ David J. Gottesman     </u>