IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

                        Plaintiff,

        v.

LEK SECURITIES CORPORATION, et al.,

                        Defendants.

Civil Action No. 17-CV-1789 (DLC)

**DEFENDANTS AVALON FA LTD'S, NATHAN FAYYER'S AND SERGEY
PUSTELNIK'S MEMORANDUM IN OPPOSITION TO PLAINTIFF SEC'S
MEMORANDUM TO ADDRESS IMPACT OF *LIU v. SEC* ON THE FINAL JUDGMENT**

James M Wines
SDNY Bar. No. JW5859
Law Office of James M Wines
1802 Stirrup Lane
Alexandria, VA 22308
202.297.6768
winesj@wineslegal.com

Attorney for Defendants Avalon FA LTD,
Nathan Fayyer, and Sergey Pustelnick

**Table of Contents**

I.     Disgorgement Is Not Allowed Under Liu ...............................................................1

II.    This Court Lacks Authority to Reconsider Its Prior Civil Penalties Award ...........................1

III.   SEC Offers No Justification for Increasing Individual Defendants' Penalties .......................2

IV.    Elimination of Improper Disgorgement Does Not Justify Increasing Separate Civil
       Penalties...........................................................................................3

V.     If Reconsidered, Civil Penalties Should Be Reduced, Not Increased ...............................4

    A.   The SEC's Request Does Not Meet Per "Violation" Statutory Requirement ......................4

    B.   Penalty Amounts Sought Are Grossly Out of Line with Precedent and Violate Principles
         of Justice ....................................................................................7

    C.   Additional Considerations Warrant Reducing Civil Penalties ...............................9

VI.    Defendants Have Been Denied Due Process.......................................................11

Conclusion............................................................................................12

# Table of Authorities

## Cases

*Briggs v. Pennsylvania R.R. Co.,* 334 U.S. 304 (1948) ..................................................................1

*County of Suffolk v. Stone & Webster Eng'g Corp.*, 106 F.3d 1112 (2d Cir. 1997)..................2

*Grupo Mexicano de Desarrolo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) ...........11

*Halo Elec., Inc. v. Pulse Elec., Inc.,* 136 S. Ct. 1923 (2016) .......................................................4

*In re Anthony*, 110 SEC Docket 5671, 2015 WL 779516 (SEC Feb. 25, 2015) ..........................6

*In re Bogar*, 106 SEC Docket 4443, 2013 WL 3963608 (SEC Sept. 4, 2013) ............................6

*In re Havanich*, 113 SEC Docket 1039, 2016 WL 25746 (SEC Jan. 4, 2016)..............................5

*In re John Thomas Capital Mgmt. Group LLC*, SEC Release No. 693, 2014 WL 5304908 (SEC Oct. 17, 2014) ...................................................................................................................................6

*In re Lorenzo*, 107 SEC Docket 5934, 2013 WL 6858820 (SEC Dec. 31, 2013)........................6

*In re Mohammed*, 108 SEC Docket 3501, 2014 WL 1571348 (SEC April 21, 2014) ..................6

*In re Natural Blue Resources, Inc.*, 112 SEC Docket 1378, 2015 WL 4929878 (SEC Aug. 18, 2015) .......5

*In re Reliance Financial Advisors*, 113 SEC Docket 1355, 2016 WL 123127 (SEC Jan. 11, 2016) ...........10

*In re Spring Hill Capital Markets*, 112 SEC Docket 6264, 2015 WL 7730856 (SEC Nov. 30, 2015).........5

*In re Workers' Comp. Refund,* 46 F.3d 813 (8th Cir. 1995)..........................................................9

*Independent Petroleum Assoc. v. Babbitt,* 235 F.3d 588 (D.C. Cir. 2001) ..................................1

*Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016) ....................................................9

*Liu v.* SEC, 140 S. Ct. 1936 (2020) ..............................................................................................1

*Lui* .................................................................................................................................................2

*Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005...........................................................4, 9

*Monetta Financial Serv., Inc. v. SEC*, 390 F.3d 952 (7th Cir. 2004) ........................................10

*S.E.C. v. Tourre,* 4 F. Supp. 3d 579 (S.D.N.Y. 2014) .................................................................6

*SEC v. Alternative Green Tech., Inc.*, 11-Civ-9056 (SAS), 2014 WL 7146032 (S.D.N.Y. Dec. 15, 2014) ....................................................................................................................................10

*SEC v. American Growth Funding II, LLC,* No. 16-CV-828(KMW), 2019 WL 4623504 (S.D.N.Y. Sept. 24, 2019)..................................................................................................................................7

*SEC v. Collins*, 736 F.3d 521 (D.C. Cir. 2013) ...........................................................................9

*SEC v. Credit Bancorp, Ltd.*, 738 F. Supp. 2d 376 (S.D.N.Y. 2010) ........................................10

*SEC v. First City Finc. Corp.*, 890 F.2d 1215 (D.C. Cir. 1989) ..................................................9

*SEC v. Illarramendi*, 3:11-cv-78 (JBA), 2017 WL 3085681 (D. Conn. July 20, 2017) ............11

*SEC v. Johnson*, No. 03CIV177(JFK), 2006 WL 2053379 (S.D.N.Y. July 24, 2006) ............7, 9

*SEC v. Juno Mother Earth Asset Mgmt., LLC*, 2014 WL 1325912 (S.D.N.Y. Mar. 31, 2014) ................10

*SEC v. Lek Securities Corp.,* 17- cv-1789 (DLC), 2017 WL 1184318 (S.D.N.Y. Mar. 29, 2017)...........11

*SEC v. Penn*, 14-CV-581 (VEC), 2018 WL 4378444 (S.D.N.Y. Sept. 14, 2018) .......................5

*SEC v. Rabinovich & Assocs.*, No. 07CIV10547(GEL), 2008 WL 4937360 (S.D.N.Y. Nov. 18, 2008) .....5

SEC v. Rajaratnam, 918 F.3d 36 (2d Cir. 2019).........................................................................10

*SEC v. Shelyn,* No. 04CIV2003(LAP), 2010 WL 3290977 (S.D.N.Y. Aug. 9, 2010)................7

*SEC v. Softpoint*, 958 F. Supp. 846 (S.D.N.Y. 1997)...............................................................8, 9

*SEC v. Stein*, 07-cv-3125 (GEL), 2009 WL 1181061 (S.D.N.Y. Apr. 30, 2009) ......................11

*SEC v. Terminus Energy, Inc.*, 17cv1117, 2019 WL 5103098 (S.D.N.Y. Oct. 10, 2019) ..........10

*Smith v. SEC,* 633 F.3 121 (2d. Cir. 2011) .................................................................................11

*U.S. v. Ben Zvi*, 242 F.3d 89 (2d Cir. 2001) .................................................................................2

*U.S. v. White*, No. 19-3058, 2020 WL 7702705 (D.C. Cir. Oct. 15, 2020)..................................4

*United States v. Stanley*, 54 F.3d 103 (2d Cir. 1995) ...................................................................2

*WHX Corp. v. SEC*, 362 F.3d 854 (DC Cir. 2004)..................................................................8, 10

**Statutes**

15 U.S.C. § 77t(d)(2) .......................................................................................................... 4, 5
15 U.S.C. § 78u(d)(3) .......................................................................................................... 4, 5

## I.      Disgorgement Is Not Allowed Under Liu

In its request for remand, the SEC conceded that "the district court's remedies order, which directed the appellants' disgorgement award to be paid to the Treasury without a finding that the order would be 'for the benefit of investors,' does not comply with the Supreme Court's intervening decision in *Liu v. SEC*, 140 S. Ct. 1936 (2020)."[1] (Reply Mem. In Support of SEC's Mot. For Limited Remand, at 1 (attached as Ex. 1).). On remand, the SEC asks this Court to "eliminate the previously ordered disgorgement and pre-judgment interest." (ECF No. 589 at 6.) Defendants agree the Court should amend the prior judgment to eliminate the disgorgement award precluded by *Liu.* At that point, the appellate court's limited mandate is fulfilled, and the scope of this Court's remand jurisdiction is exhausted.

## II.     This Court Lacks Authority to Reconsider Its Prior Civil Penalties Award[2]

This Court lacks remand authority to reconsider its prior civil penalties award. The remand issued by the Court of Appeals was limited to the issue of "whether the disgorgement award in the April 14 judgment is consistent with *Liu*." (EFC No. 588.) The mandate rule provides that "'an inferior court has no power or authority to deviate from the mandate issued by an appellate court.'" *Independent Petroleum Assoc. v. Babbitt,* 235 F.3d 588, 596-97 (D.C. Cir. 2001) (*quoting Briggs v. Pennsylvania R.R. Co.,* 334 U.S. 304, 306 (1948). This Court thus has no authority to expand its limited appellate mandate to include additional separate legal issues

---

[1]      The SEC ignores that the Court's prior ruling also violated the second requirement established by the *Liu* decision: namely, that any disgorgement awarded be limited to net profits after legitimate expenses. *Liu,* 140 S. Ct. at 1946 ("Congress prohibited the SEC from seeking an equitable remedy in excess of defendant's net profits.") The SEC requested and this Court previously awarded approximately $4.6 million in disgorgement because the SEC argued that "figure appears to be a reasonable approximation of the *gross profits received by Avalon*." (ECF No. 563 at 6.)

[2]      Defendants refer to and incorporate by reference the arguments made in their Memorandum in Opposition to Plaintiff SEC's Motion for Judgment Including Remedies (ECF No. 567).

previously decided.

Even though the Court's initial judgment awarded the SEC a lesser amount of civil penalties than requested, the SEC did not file a timely appeal seeking review of that civil penalty award. "Where an appellate court vacates a sentence and remands for reconsideration of a specific issue, the mandate rule prevents the district court from hearing an issue not raised on the initial appeal." *United States v. Stanley*, 54 F.3d 103, 107 (2d Cir. 1995). "'A decision made at a previous stage of the litigation, which could have been challenged in the ensuing appeal but was not, becomes the law of the case; the parties are deemed to have waive the right to challenge that decision, for it would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost.'" *U.S. v. Ben Zvi*, 242 F.3d 89, 96 (2d Cir. 2001) (*quoting County of Suffolk v. Stone & Webster Eng'g Corp.*, 106 F.3d 1112, 1117 (2d Cir. 1997)).

Nor can the SEC point to any change in the controlling law regarding the award of civil penalties that would warrant reexamination of this Court's prior award. The SEC acknowledges that the Supreme Court's decision in *Lui*, which this Court has been asked to consider, was limited exclusively to the topic of disgorgement and "did not address or impose limits on penalties or other kinds of relief." (*See* ECF 589 at 4 n. 3.) There is no authority for this Court to revisit its prior civil penalty ruling under the Court of Appeal's limited remand mandate, and the SEC's request for this Court to do so should be denied.

### III.    SEC Offers No Justification for Increasing Individual Defendants' Penalties

On March 20, 2020, this Court ordered the over $5.2 million in previously frozen Avalon funds to be paid to the SEC to satisfy the Court's approximately $4.6 million disgorgement and prejudgment interest awards (collectively "disgorgement award") and for the SEC to "send all

2

funds paid pursuant to this Final Judgment to the United States Treasury." (ECF No. 580 at 8-9.) Thus, although the Court's disgorgement award was nominally joint and several, the Court's order explicitly required those remedies be paid in full *directly and immediately from funds belonging to Avalon*. (*Id.*) On May 27, 2020, the SEC confirmed that Avalon had fully satisfied the Court's disgorgement award. (ECF No. 583.) The SEC now concedes that the Court's disgorgement award "does not comply with the Supreme Court's intervening decision in *Liu*" (Ex 1 at 1.) and seeks to "reclassify" the Avalon funds previously paid to satisfy disgorgement to now apply to amounts owed by Avalon in penalties. (SEC Mem. at 9.)

The SEC offers no explanation why the return of approximately $4.6 million in improper disgorgement ordered *paid by Avalon* should increase by $2.5 million each of the separate civil penalties *owed by Messrs. Fayyer and Pustelnik*. Elimination of the improper disgorgement paid by Avalon will not return any additional funds to Messrs. Fayyer or Pustelnik. Increasing by 50% the civil penalties assessed against these individual defendants simply because the SEC lost a Supreme Court appeal in another unrelated case would be entirely arbitrary and capricious, and manifestly unjust.

## IV.     Elimination of Improper Disgorgement Does Not Justify Increasing Separate Civil Penalties

Contrary to the SEC's argument (Mem. at 7), this Court explicitly rejected defendants' previous request that it take into account the disgorgement ordered in determining the appropriate amount of civil penalties. (ECF No. 574, at 21-22.) The Court countered that the defendants, like the SEC does now, had "conflate[d] the aims of the different remedies available for securities law violations." (*Id.*) Because the Court refused to consider the amount of disgorgement in determining the initial civil penalties award, the elimination of that

disgorgement cannot now rationally justify any increase in those civil penalties.

The arbitrary nature of the SEC's request is further highlighted by the fact that *Liu* has rendered improper the approximately $4.6 million disgorgement award, yet the SEC is requesting a total of $7.5 million in additional civil penalties as a result ($2.5 million per defendant). The SEC offers zero explanation for this almost $3 million discrepancy. That is because those numbers are not based on any reasoned approach or explanation – they are simply made up.

While this Court may exercise some discretion in awarding civil penalties, that "'[d]iscretion is not whim.'" *Halo Elec., Inc. v. Pulse Elec., Inc.,* 136 S. Ct. 1923, 1931 (2016) (*quoting Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005)). "And judicial discretion based on whim is something our system does not tolerate." *U.S. v. White*, No. 19-3058, 2020 WL 7702705 at *8 (D.C. Cir. Oct. 15, 2020).

## V.      If Reconsidered, Civil Penalties Should Be Reduced, Not Increased

### A.  The SEC's Request Does Not Meet the Per "Violation" Statutory Requirement

The Court's discretion is further limited by the applicable statutes, which only authorize the Court to award civil penalties on a per "violation" basis.[3] *See,* 15 U.S.C. §§ 77t(d)(2) and 78u(d)(3). The SEC correctly notes that "Defendants were found liable for engaging in *two* manipulative schemes: layering and cross-market manipulation." (ECF No. 589 at 5 (citing ECF No. 574 at 5-6) (emphasis added); *see also* ECF No. 574 at 12 ("The jury found that the defendants . . . engaged in *two distinct schemes*") (emphasis added).) The jury was never asked to determine the number of transactions or so-called "loops" that constituted securities law

---

[3]      Defendants have already demonstrated that there is no record evidence as to what number of so-called layering or cross-market loops identified by the SEC's experts constitute actual violations of the securities laws. (ECF No. 567 at 2-5.)

violations attributable to any of the defendants. On the contrary, this Court explicitly instructed the jury that the "SEC is not required to prove that all of Avalon's trading violated the federal securities laws or that any particular amount or percentage of the Avalon orders and/or executions occurred in violation of the law."[4] (ECF No. 556 at 2612.)

Limiting the number of "violations" for purposes of calculating civil penalties avoids artificially inflating these two distinct activities into their hundreds of thousands of component parts. *See, e.g., SEC v. Penn*, 14-CV-581 (VEC), 2018 WL 4378444, at *6 (S.D.N.Y. Sept. 14, 2018) (declining to "disaggregate a continuous course of fraudulent conduct" by charging a penalty for each improper transfer noting "it was one scheme to defraud, not many."); *SEC v. Rabinovich & Assocs.*, No. 07CIV10547(GEL), 2008 WL 4937360, at *6 (S.D.N.Y. Nov. 18, 2008) (a single third tier penalty appropriate "[a]lthough [defendant] engaged in repeated violations of the securities laws, [where] they all arose from a single scheme or plan.") This "course of action" approach is consistently applied by the SEC's own administrative judges. *See In re Reliance Financial Advisors*, 113 SEC Docket 1355, 2016 WL 123127, at *27 (SEC Jan. 11, 2016) (combining multiple misrepresentations regarding two subjects into two violations for civil penalty purposes); *In re Havanich*, 113 SEC Docket 1039, 2016 WL 25746, at *11 (SEC Jan. 4, 2016) (considering all transactions executed over a two-year period that broker dealer was unregistered "one course of action" for civil penalty purposes); *In re Spring Hill Capital Markets*, 112 SEC Docket 6264, 2015 WL 7730856, at *19 (SEC Nov. 30, 2015) (combining multiple violations into two "courses of action" for civil penalty purposes); *In re Natural Blue Resources, Inc.*, 112 SEC Docket 1378, 2015 WL 4929878, at *33 (SEC Aug. 18, 2015)

---

[4]      Similarly, it is also not determinable which or how many of the transactions at issue were found by the jury to have involved the scienter required for imposition of penalties beyond the first tier. *See,*15 U.S.C. §77t(d)(2); 15 U.S.C. § 78u(d)(3).

(considering numerous acts and omissions over a three-year period "one course of action" for civil penalty purposes); *In re Anthony*, 110 SEC Docket 5671, 2015 WL 779516, at *107 (SEC Feb. 25, 2015) (assigning a single penalty to each defendant found liable for a five-year scheme in which they sold multiple unregistered notes and committed other misrepresentations and omissions related to those sales); *In re Mohammed*, 108 SEC Docket 3501, 2014 WL 1571348, at *34 (SEC April 21, 2014) (considering repeated investments inconsistent with fund disclosures in annual and semi-annual reports "as one course of action resulting in one unit of violation" for civil penalty purposes); *In re John Thomas Capital Mgmt. Group LLC*, SEC Release No. 693, 2014 WL 5304908, at *31 (SEC Oct. 17, 2014) (collecting multiple misrepresentations into "three course of actions" for civil penalty purposes); *In re Lorenzo*, 107 SEC Docket 5934, 2013 WL 6858820, at *9 (SEC Dec. 31, 2013) (combining multiple misrepresentations into "one course of action" for civil penalty purposes); *In re Bogar*, 106 SEC Docket 4443, 2013 WL 3963608, at *28 (SEC Sept. 4, 2013) (grouping multiple misrepresentations and omissions into "two courses of action" for civil penalty purposes).

Nor is there is evidence in the record that the individual "loops" at issue resulted in substantial losses to other persons as required for tier three penalties. *See, S.E.C. v. Tourre,* 4 F. Supp. 3d 579, 596 (S.D.N.Y. 2014) (requiring separate "significant loss" determination for each violation to be subjected to tier three penalties). On the contrary, the so-called layering loops identified by the SEC's expert resulted in less than $32 in losses on average. (*See, e.g.,* PX 54.) According to the SEC's own expert, the "layering loops" either made no money or lost Avalon traders money in over 200,000 instances. (*Id.*) The SEC cannot have it both ways – either defendants engaged in two violations that resulted in substantial losses to Avalon's traders' counterparties or defendants engaged in hundreds of thousands of trades that never posed any

significant risk of loss warranting third tier penalties.

Alternatively, the jury found each Defendant violated six federal securities laws. (*See* ECF No. 527.) Courts in this jurisdiction have counted the number of statutes to determine violations for purposes of calculating civil penalties. *See, e.g.*, *SEC v. American Growth Funding II, LLC,* No. 16-CV-828(KMW), 2019 WL 4623504, at *4 (S.D.N.Y. Sept. 24, 2019) (assessing civil penalties for each of the six statutory violations found by the jury); *SEC v. Shelyn,* No. 04CIV2003(LAP), 2010 WL 3290977, at *2, *8 (S.D.N.Y. Aug. 9, 2010) (awarding civil penalty for each of five statutory violations, despite more than 700 instances of alleged fraud); *SEC v. Johnson,* No. 03CIV177(JFK), 2006 WL 2053379, at *10 (S.D.N.Y. July 24, 2006) ("Because the jury found [defendant] liable for four violations of securities fraud, civil penalties will be ordered for these four violations.").

The $7.5 million in civil penalties now advocated by the SEC, on the other hand, has no rational basis. The SEC makes no attempt to identify the "violations" attributable to each defendant nor express the statutory calculation that arrives the $7.5 million requested. Congress did not authorize this Court to award civil penalties at whatever random amount it or the SEC may deem fit.

### B. Penalty Amounts Sought Are Grossly Out of Line with Precedent and Violate Principles of Justice

The total of $22.5 million in civil penalties sought by the SEC is approximately five times the amount that the SEC alleges that defendants profited from the conduct (*see* ECF No. 563 at 6) and grossly exceeds any penalties levied against others accused of the same wrongdoing. (*See* ECF 567 at 6-7.) In the two previous SEC "layering" actions entered into evidence by the SEC, the highest civil penalty awarded against any natural person was $250,000,

and the average was $145,000. (*See* PX 192, 193.) The highest fine FINRA imposed on any individual in the two "cross-market" actions the SEC entered into evidence was $15,000. (*See* PX 284, 285.)

The Court ordered the other two defendants in this case, Lek Securities and Sam Lek (collectively, the "Lek Defendants"), to pay civil penalties of $1 million and $420,000, respectively. The Lek Defendants were alleged to have committed the exact same misconduct.[5] The Lek Defendants settled on the eve of trial only after forcing the SEC to litigate motions for dismissal, summary judgment and reconsiderations – substantial undertakings in which the remaining defendants did not participate. The Court may not be constrained in absolute terms by the penalties agreed to by the Lek Defendants, but the record indicates the Court's determination that those penalties constituted sufficient deterrence for the exact same conduct for which the remaining defendants have been found liable. Awarding twenty times more penalties against those remaining defendants for the same alleged wrongdoing represents "a fundamental inconsistency" that should not be allowed.[6] *SEC v. Softpoint*, 958 F. Supp. 846, 868 (S.D.N.Y. 1997).

---

[5]    The Court's attempt to distinguish the Lek Defendant's conduct (ECF No. 574 at 22) is unavailing. The trading at issue was not "concealed" from the Lek Defendants as suggested by the Court. (*Id.*) Rather, every trade at issue was actually executed *by Lek,* the only party to this case that is an exchange member with access to the US securities markets. (*See, e.g.,* ECF No. 1.) It was the Lek Defendants, not Avalon, Fayyer or Pustelnik, who received repeated notice from regulators regarding the trading. It was Sam Lek's undisputed testimony that every single trade at issue was subjected to thorough review by Lek's automated compliance systems and that Mr. Lek himself personally reviewed much of the contested trading. There is no evidence that the Lek Defendants were unaware of any aspect of the trading at issue or that regulators had long disputed its propriety.

[6]    Equally unavailing is the Court's attempt to justify additional penalties for Avalon, Fayyer and Pustelnik based on defendants' awareness that regulators took issue with the trading. (ECF No. 574 at 23-24.) All of the regulatory inquiries to which the Court refers were sent to and responded to by the Lek Defendants (*See, e.g.,* PX 263-275), who the Court charged less than a total of $1.5 million in civil penalties. Moreover, it is well established that failure to adhere to the nonbinding opinions expressed by regulatory staff is not a permissible basis for an increase in civil penalties. *See, e.g., WHX Corp. v. SEC*, 362 F.3d 854, 860-61 (D.C. Cir. 2004) ("Finding a violation 'serious' and 'willful' simply because of a failure to comply immediately with the staff's interpretation . . . is arbitrary and capricious.").

In *Softpoint,* then District Judge Sotomayor was "deeply troubled" by the SEC's request for civil penalties that were three times the amount the scheme profited and more than eight times the penalties agreed to by the SEC for other default defendants whose conduct was equal or only slightly less egregious. *Id.* Instead, the Court ordered civil penalties equal to those of the other default defendants. *Id.* Likewise here, fairness dictates that some reasonable degree of proportionality be maintained in the penalties assessed against defendants held liable for the same misconduct. *See, e.g., Martin*, 546 U.S. at 139 ("[L]imiting discretion according to legal standards helps promote the basic principle of justice that like cases should be decided alike."); *see also Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1986 (2016). *See, e.g., SEC v. Collins*, 736 F.3d 521, 527 (D.C. Cir. 2013) (penalty determinations should not be "oblivious to history and precedent" or "out of line with the agency's decisions in other cases"). To do otherwise, would impose an impermissible "trial tax" on defendants for exercising their constitutionally protected rights. *See, e.g., In re Workers' Comp. Refund,* 46 F.3d 813, 822 (8th Cir. 1995) (a "litigation penalty" can violate the constitutional right to access the courts where it includes "retaliatory action . . . designed to either punish [an individual] for having exercised his constitutional right to seek judicial relief or to intimidate or chill his exercise of that right in the future."); *SEC v. First City Finc. Corp.*, 890 F.2d 1215, 1229 (D.C. Cir. 1989) (defendants are not to be punished because they vigorously contest the government's accusations); *accord SEC v. Johnson*, No. 03CIV177(JFK), 2006 WL 2053379, at *6 (S.D.N.Y. July 24, 2006) (adopting D.C. Circuit's rationale and refusing to penalize defendant for "simply mounting a vigorous defense").

### C.  Additional Considerations Warrant Reducing Civil Penalties

Additional factors warrant further reductions in civil penalties. First, the conduct at issue

was not clearly prohibited at the time by any existing statute, rule or regulation or any judicial

precedent, *see, e.g., Monetta Financial Serv., Inc. v. SEC*, 390 F.3d 952, 957-58 (7th Cir. 2004)

(vacating SEC sanctions where no formal rule prohibited the conduct are issue); *WHX Corp. v.

SEC*, 362 F.3d 854, 860 (DC Cir. 2004) (vacating SEC sanctions where rules governing conduct

were ambiguous even though defendants were on notice of the SEC's interpretation that conduct

was violative).[7] Second, these are the defendants' first securities law violations. *See, e.g., SEC v.

Alternative Green Tech., Inc.*, 11-Civ-9056 (SAS), 2014 WL 7146032, at * 6 (S.D.N.Y. Dec. 15,

2014) (reducing civil penalty in light of the fact it was defendant's first securities law violation).

Additionally, the Second Circuit has concluded "[without] hesitation . . . that[] in

calculating the size of a penalty necessary to deter misconduct, the extent of a defendant's wealth

is a relevant consideration." *SEC v. Rajaratnam*, 918 F.3d 36, 45 (2d Cir. 2019); *see also SEC v.

Terminus Energy, Inc.*, 17cv1117, 2019 WL 5103098, at *3 (S.D.N.Y. Oct. 10, 2019) (reducing

penalty where defendant had nominal assets or income and an ill wife); *SEC v. Juno Mother

Earth Asset Mgmt., LLC*, 2014 WL 1325912, at * 5 (S.D.N.Y. Mar. 31, 2014) (imposing reduced

penalty "[g]iven defendants['] demonstrated current and future financial condition and also [the

need] to have the penalties within the realm of reason."); *SEC v. Credit Bancorp, Ltd.*, 738 F.

Supp. 2d 376, 391 (S.D.N.Y. 2010) (finding the defendant's "current and future financial

situation preclude[d] imposing a penalty."). As demonstrated in their previous affidavits, the

Defendants lack the means to pay any substantial civil penalty. To burden them and their families

with a staggering non-dischargeable debt that will not be repaid in their lifetimes would be an

---

[7]      Defendants continue to maintain, as they did throughout trial, that their trading was not manipulative as a matter of law.  The supposed "layering" scheme was supported by a legitimate economic purpose, as it narrowed the spread and provided liquidity to the market.  (*See, e.g.*, ECF No. 541, at 758:5-25.)  Further, the supposed layering scheme did not involve any artificiality as required by federal securities law.  (*See, e.g.*, ECF No. 554, at 2307:5-24.) And the supposed "cross-market" scheme was likewise supported by a legitimate economic purpose (*see, e.g.*, ECF No. 550, at 2068:4-20), and it involved no manipulation because it injected no false information into the market. (*See, e.g.*, ECF No. 550, at 1981:7-1983:9; ECF No. 552, at 2116:6-13.)

unwarranted cruelty that would greatly exceed any appropriate deterrent objectives.[8]

### VI.     Defendants Have Been Denied Due Process

At the start of this case, the SEC seized over $4.5 million of Avalon's funds –

constituting all of Avalon's available assets. (*See,* ECF Nos. 6, 32, 95.) At the time, the Court

recognized that the purpose of its freeze order was to ensure "that there are 'sufficient funds to

satisfy *any disgorgement remedy* that might be ordered in the event a violation is established at

trial.'" *SEC v. Lek Securities Corp.,* 17- cv-1789 (DLC), 2017 WL 1184318, at *1 (S.D.N.Y.

Mar. 29, 2017) (emphasis added) (quoting *SEC v. Stein*, 07-cv-3125 (GEL), 2009 WL 1181061,

at *1 (S.D.N.Y. Apr. 30, 2009)).

That is because the power to order an asset freeze in connection with a civil action

brought by the SEC derives solely from the Court's equitable powers. *Smith v. SEC,* 633 F.3 121,

127 (2d. Cir. 2011). "The purpose of such relief is to facilitate enforcement of any disgorgement

remedy that might be ordered in the event a violation is established at trial." *SEC v. Illarramendi*,

3:11-cv-78 (JBA), 2017 WL 3085681, at *2 (D. Conn. July 20, 2017) (emphasis added). The

Supreme Court has recognized that federal courts may not exercise their equitable authority to

grant temporary injunctions to freeze assets for the satisfaction of non-equitable claims. *Grupo*

*Mexicano de Desarrolo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999) (district

court "had no authority to issue a preliminary injunction" freezing assets for future recovery of

---

[8]      The Court's counter (ECF No. 574 at 21) that defendants did not submit financial information regarding Avalon is incorrect. Mr. Fayyer previously submitted an affidavit confirming that Avalon had no material assets beyond those seized by the Court's prior freeze order. (*See* ECF No. 32.) Mr. Fayyer, who is the sole owner of Avalon, also submitted another affidavit stating that he did not have any ability to pay monetary penalties beyond the Avalon funds already frozen by the Court. (ECF No. 568.) The Court's callous suggestion that the defendants, who have been labeled fraudsters and barred from the industry may yet somehow find a means to earn $7.5 million each in their lifetimes is disingenuous and callous.

non-equitable remedies, "[b]ecause such a remedy was historically unavailable from a court of equity").

Now, after four years of litigation, the SEC rightly disclaims any entitlement to disgorgement or any other equity-based monetary relief. Avalon and Mr. Fayyer were thus wrongly deprived access to those frozen funds during the litigation to pay for, among other things, their legal fees, experts, consultants and other expenses. As a result, defendants have been denied due process and this case should be dismissed.

### Conclusion

This Court has no authority and no rational basis for increasing its prior civil penalties award. On the contrary, the Court should reduce civil penalties to conform with precedent and principles of fairness.


Dated: January 15, 2021

_____
James M Wines
SDNY Bar. No. JW5859
Law Office of James M Wines
1802 Stirrup Lane
Alexandria, VA 22308
202.297.6768
winesj@wineslegal.com

Attorney for Defendants Avalon FA LTD,
Nathan Fayyer, and Sergey Pustelnik